UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT F. KENNEDY HUMAN RIGHTS; SOUTHERN BORDER COMMUNITIES COALITION; URBAN JUSTICE CENTER,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of Homeland Security,<br><br>Defendants. | Civil Action No. 25-1270- |

**DECLARATION OF JOY ZIEGEWEID**

I, Joy Ziegeweid, declare as follows:

1. I am over the age of 18 and competent to testify to the matters described below. This declaration is based on my personal knowledge and information that has been shared with me through conversations with my colleagues.

2. I am the director of immigration legal services at Urban Justice Center's Domestic Violence Project. I have held that role at UJC for eight years.

3. UJC is a nonprofit legal services organization. We provide free legal services to low-income New Yorkers in specific subject matter areas, including housing and domestic violence. Once a client retains our services, we continue representing that client at no charge for as long as it takes to resolve the legal problem that caused them to seek out our services, which can sometimes take months or years.

1

4. UJC's Domestic Violence Project (DVP) is composed of 23 full-time staff along with pro bono attorneys, interns and volunteers. The DVP's mission is to meet the full needs of survivors by providing comprehensive, trauma-informed, holistic legal and advocacy services to survivors of intimate partner violence in New York City.

5. When UJC first established its Domestic Violence Project in 2003, the project focused on obtaining orders of protection and representing domestic violence survivors in family court proceedings. Over the years, however, our DVP lawyers and advocates noticed that the many undocumented survivors who sought our assistance often had a difficult time freeing themselves from abusive situations because their immigration status gave abusive intimate partners powerful leverage they could use to control them. Sometimes abusers wielded this leverage directly by threatening to contact ICE and have the client deported unless they did what the abuser wanted. Often the coercion was more subtle and involved financial dependency, because survivors of intimate partner abuse who are ineligible to work legally in the United States either do not have their own source of income or have to rely on employment in the shadow economy, where exploitation is common.

6. Recognizing the barriers that immigration status posed to domestic violence survivors' ability to become independent from their abusers and rebuild their lives, DVP established an immigration law unit in 2017. That unit, which I head, seeks to obtain legal immigration status for domestic violence survivors and their children through a variety of remedies, including Violence Against Women Act (VAWA) self-petitions, Battered Spouse waivers, T and U nonimmigrant status petitions, and Special Immigrant Juvenile Status petitions. All of these forms of immigration relief are obtained from, and require dealings with, U.S. Citizenship and Immigration Services (CIS).

7. I and other DVP lawyers request assistance from the CIS Ombudsman's Office around a dozen times per year. We utilize the CIS Ombudsman's Office when a client's petition has been pending with USCIS for longer than the usual processing time, or when CIS makes an error in one of our cases or does something about which we need clarification (such as noting in the client's online portal that a notice was sent but where no notice has been received and the nature of the notice is unclear from the online portal). In my experience, USCIS is a slow-moving, opaque, and error-prone bureaucracy, but involving the CIS Ombudsman's Office is often a way of getting information about the status of a case that has gotten stuck in that bureaucracy. On some occasions, reaching out to the Ombudsman's Office can get the case unstuck completely. For example, I requested assistance from the Ombudsman's office for an I-751 Battered Spouse Waiver that had been pending for years outside of standard processing times, and after Ombudsman intervention, my client was scheduled for an interview with USCIS. In another case, my client's I-90 application to renew her green card was well outside of processing times, and after Ombudsman intervention, USCIS sent a request for additional evidence which we were able to respond to so that my client's case could be adjudicated. In another, my client had an approved VAWA petition and an application for lawful permanent residence on Form I-485 that was also well outside of processing times. After Ombudsman intervention, my client's I-485 was transferred to the National Benefits Center and processing continued to a final adjudication.

8. The other mechanisms that DVP lawyers can use to request information or assistance from USCIS besides the ombudsman's office are particularly ill-suited to our VAWA-protected clients and their often time-sensitive needs. For example, until March 2024, the 1-800 Contact Center that people can contact at USCIS for information about the status of many types of immigration applications would not take any inquiries or answer any questions from applicants

or attorneys for applicants who had filed VAWA self-petitions, U visa or T visa petitions, and related requests for relief under the auspices of the Violence Against Women Act, as a measure to protect survivors' privacy and prevent exploitation by their abusers. Following a USCIS policy change in March 2024, applicants and petitioners may now use the Contact Center if they are able to pass additional screening procedures, but attorneys for VAWA-protected clients may not make inquiries via the Contact Center.

9. USCIS also offers an email hotline option to attorneys, but on a recent stakeholder call with immigration lawyers, noted that responses through the email hotline take approximately 120 days.[1] In my and my colleagues' experience, responses to emails sent through the hotline typically take even longer than this, and often no response to an email inquiry ever arrives. When a client is facing an impending deadline, or in the situation described above where we are trying to find out the nature of a notice USCIS claims to have sent but which was not received, where we don't know if the notice requires a response by a certain deadline, waiting four months or more for an answer is simply unacceptable.

10. Losing the ability to go to the CIS Ombudsman's Office for help means that I am unable to engage with and hold accountable the agency that adjudicates my clients' claims. It is unimaginable that one could file a case in any municipal, state, or federal court with no ability to contact and receive information from the clerk's office or other court personnel, but as an attorney practicing administrative law before USCIS, the agency often feels like a black box. From talking to my colleagues at UJC, I know that they are experiencing similar feelings of frustration. We will continue to work as hard as ever for our clients, but we will have less effective tools with which

---

[1] https://www.uscis.gov/sites/default/files/document/outreach-engagements/USCISMeetingwithAILAandCoalitionPartnersonUVisasTVisasandVAWA.pdf.

4

to do that work.  Moreover, the additional time that representation takes when we are unable to effectively engage with USCIS to ensure timely and appropriate resolution of our clients' cases means we will likely have to turn down other clients requesting assistance.  Our metrics of success as an organization include both the number of clients served and the outcomes we are able to obtain for those clients.  The shutdown of the CIS Ombudsman's Office threatens our performance on both metrics by forcing us to serve fewer clients and negatively impacting the immigration outcomes for those clients.

11. In turn, when we are unable to secure legal immigration status for domestic violence survivors, DVP's mission of providing comprehensive, holistic services to meet all of our clients' needs is undermined.  We added the Immigration Law Unit to DVP in 2017 because we recognized these immigration services are necessary to fully serve our survivor clients and enable them to recover from abusive relationships and gain financial independence, but because of Defendants' actions of shutting down the CIS Ombudsman's Office, the immigration law functions of DVP are no longer as effective as they were before the shutdown.

12. UJC's service to our clients is also impaired by the shutdown of CRCL because CRCL played an important role in training other components of DHS in the confidentiality provisions of 8 U.S.C. § 1367.  Our clients were often very nervous about filing for immigration relief because they feared that their abusers would find out about their application.  My colleagues and I would counsel clients that these filings must be kept confidential by statute, and that if that protection was violated, they could file a complaint with CRCL.

13. My DVP colleague recently had to file a CRCL complaint when USCIS unlawfully disclosed the fact that a client had filed a U nonimmigrant status petition, and disclosed the client's U petition filed on behalf of her minor child, to her abusive spouse, in violation of 8 U.S.C. § 1367.

That spouse then used the information against the client in family court proceedings. My colleague filed this complaint with CRCL on April 4, 2025, two weeks after the office had been shut down, and to date has received no response.

14. I fear that with CRCL no longer training other components of DHS on the requirements of 8 U.S.C. § 1367, and without the deterrent function of being able to file complaints with CRCL when that statute is violated, experiences like my colleague's will become more common, and the protections of this statute will lose their force. A toothless confidentiality mechanism will inhibit my and my colleagues' ability to represent our clients effectively in obtaining immigration relief, in turn interfering with our ability to provide comprehensive, holistic legal services to our domestic violence survivor clients.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 30, 2025

*/s/ Joy Ziegeweid*