UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT F. KENNEDY HUMAN RIGHTS; SOUTHERN BORDER COMMUNITIES COALITION; URBAN JUSTICE CENTER,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of Homeland Security,<br><br>Defendants. | Civil Action No. 25-1270-ACR |

**DECLARATION OF PEDRO RIOS**

I, Pedro Rios, declare as follows:

1. I am over the age of 18 and competent to testify to the matters described below. This declaration is based on my personal knowledge and information that has been shared with me through conversations with my colleagues.

2. I am the director of the American Friends Service Committee (AFSC)'s US-Mexico Border Program. I joined AFSC in 2003 and have been continually monitoring and advocating for human rights for over 20 years.

3. AFSC is a Quaker organization that has been in existence since 1917. AFSC's mission is to promote peace, equality and human rights. Through its US-Mexico Border Program, AFSC monitors human and civil rights abuses at the border, whether committed by government officials or private actors, and provides humanitarian assistance as needed. AFSC's US-Mexico Border Program is also a member of the Southern Border Communities Coalition.

1

4.      Filing reports with government agencies to document the abuses we observe has always been an important activity that AFSC uses to accomplish its mission. To that end, I personally observed conditions at the open-air detention site operated by CBP near San Ysidro, California, spending as many as 3-6 hours per day five days a week at the site between September of 2023 and early February of 2024. I also rendered humanitarian aid to migrants detained at these sites, providing food to supplement the inadequate rations from CBP and securing emergency medical aid for those who needed it. I recounted my observations from these visits in declarations in support of two complaints that SBCC filed with CRCL about the conditions at the open-air detention sites in May and December of 2023.

5.      AFSC also filed approximately three to five complaints with CRCL per year, mostly involving use of excessive force by CBP personnel. In addition to filing formal complaints, I would call my contacts at CRCL when I observed incidents at the border involving deprivations of civil rights or use of excessive force by CBP personnel. For example, in November 2024 I contacted CRCL after seeing a video of a Border Patrol agent striking a migrant trapped in between two barriers at the border with his vehicle.

6.      I would frequently check in with my contacts at CRCL as situations were unfolding at the border because they often had more information than I did based on their close communications with CBP, even though I was on the scene, and they were in DC. I would usually call someone I knew at CRCL, relay a news report or something I had personally observed, and ask them what they could tell me about the situation that might already be publicly available. I obtained valuable information through these contacts with CRCL on numerous occasions.

7.      In addition to the many complaints it filed with CRCL, AFSC filed one or two complaints with OIDO, including one on behalf of a transgender woman experiencing

discrimination and harassment at a male detention facility. AFSC did not have as much experience with OIDO as with CRCL because it was a relatively new agency. However, in recent years OIDO had begun conducting in-person outreach in San Diego, and I introduced their representatives to representatives of other community groups in the area.

8.  Compared to other entities within DHS that take complaints from the public, such as the Office of the Inspector General (OIG) and CBP's Office of Professional Responsibility (OPR), CRCL was much more engaged with the public, affirmatively reached out to AFSC and other community groups for input, and took a genuine interest in what we had to say. CRCL also conducted outreach and educational activities to explain how the complaint process worked and to teach organizations how to file complaints. With the loss of CRCL, and with only OIG and OPR left as channels for reporting violations by DHS officials, I believe, based on my decades of experience interfacing with government officials to report human rights abuses, that DHS will be less transparent and less accountable to the public than it was before. I worry about what this will mean for conditions on the border and for those in CBP and ICE custody.

9.  The loss of CRCL harms AFSC's ability to obtain information and to effectively carry out its mission of promoting human rights through monitoring and documenting on-the-ground conditions. Other components of the government are less forthcoming with information than CRCL was, and I am not confident based on past experience that OIG or OPR will act on information we report to them.

.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 2, 2025



_____
Pedro Rios

3