UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT F. KENNEDY HUMAN RIGHTS; SOUTHERN BORDER COMMUNITIES COALITION; URBAN JUSTICE CENTER,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of Homeland Security,<br><br>Defendants. | Civil Action No. 25-1270-ACR |

**DECLARATION OF KELSEY VITULLO**

I, Kelsey Vitullo, declare as follows:

1. I am over the age of 18 and competent to testify to the matters described below. This declaration is based on my personal knowledge and information that has been shared with me through conversations with my colleagues. I provide this declaration to explain the functions of the Office of the Immigration Detention Ombudsman (OIDO) and to relay information about the dissolution of that office. I do not speak on behalf of DHS, or any other part of the federal government, and I provide this declaration only in my personal capacity.

2. I worked for OIDO as a contractor beginning in April of 2022 and became a full-time employee with OIDO in January of 2024. I currently work as a case manager for OIDO.

3. As a case manager, I am assigned to six (6) immigration detention facilities. I am expected to visit each of my assigned facilities two to three times a week, although I visit those

1

located farther from my home slightly less often.  I visit each of my assigned facilities at minimum once per month.

4. When visiting a facility, I interview detained people to take formal complaints from them about problems they're experiencing and follow up on complaints from that facility that were received through other means, such as OIDO's online portal.  Several facilities have entered into contracts with a provider of iPad-like tablets, and in those facilities, detained people can email complaints to their assigned OIDO case manager on their tablets.  Those complaints do not go onto the central portal but come directly to my email address.  During a typical facility visit, I conduct eight to ten interviews and also have an opportunity to tour the facility to observe conditions, such as the staff-to-detainee ratio.  I also speak with staff about any concerns or needs they want to bring to OIDO's attention.

5. The most common issue detained people complained to me and my colleagues about was inadequate medical care.  We also often received complaints of sexual abuse, lack of food or warm clothing, mistreatment by staff, and lengthy placements in segregation or solitary confinement.

6. One medical complaint I received was that the facility was not providing insulin injections timely, preventing the diabetic detainees from eating their meals during allotted meal times.  Diabetic detainees would wait hours to eat their meals that had since gone cold. This delay also caused medical side effects.  After receiving the medical complaint, I offered the detainee immediate medical assistance, notified the assigned ICE liaison, and met with medical staff to report the complaint.  I confirmed from medical staff that the insulin was in fact being received late due to lack of adequate medical staff.  I provided these findings to facility administration for resolution and then reported these findings to my immediate supervisor who provided them to an

ICE Supervisory Detention and Deportation Officer. Facility administration attempted to change the process through which insulin was distributed to avoid insulin injection delays. The detainee was also moved to another detention facility that could better handle diabetic patients.

7. Many detention facilities are understaffed and overcrowded. These inadequate staff-to-detainee ratios often meant that detainees could not be taken to recreation or medical appointments as often as they were supposed to be, because there were not enough staff members on site to escort and supervise them. For example, I received a complaint from a detained person who had injured his finger and asked for medical attention but had not been seen for three days. After I raised this issue with staff, he was evaluated the same day and had a splint put on his finger.

8. In addition to following up on the complaints we received, we were responsible for observing conditions at the facilities for any deviations from detention standards, which for facilities operated by private contractors, were a term of their contracts. For example, I would sometimes notice environmental issues like water leaks and lack of temperature control, which I would point out to staff.

9. When I observed these problems, I would immediately document them in Immigration Detention Case Management System (IDCMS), our electronic database, and report the observations to facility staff. Typically, the environmental concerns were addressed immediately. If complaints were not corrected by the facility, I would then report these concerns to ICE staff. If these complaints needed to be escalated further, we would report them to OIDO and ICE leadership.

10. Another function I typically performed while visiting facilities was to answer detained people's questions and explain ICE processes to them so they understood what to expect and what their legal rights and options were. Because my colleagues and I were on the ground in

the facilities, and often spoke the same languages as the detained people, we were able to get them information or connect them to the right people who could answer their questions.

**Events Surrounding the Closure of OIDO**

11. On Friday, March 21, 2025, at approximately 2:41pm, I received an email from DHS's Office of the Chief Human Capital Officer (OCHCO) that was sent to all OIDO staff informing us that there would be an all-OIDO meeting in 19 minutes via Teams.

12. When we joined the Teams meeting, we were told to wait because the CIS Ombudsman Office staff had not signed off yet. From this, I surmised that the CIS Ombudsman Office staff had just received the same message we were about to receive. When the meeting began, an OCHCO employee told us that OIDO was being abolished and that everyone in the office would receive a Reduction in Force (RIF) notice. We were also told that we must stop work immediately and could not create an out-of-office message, send any emails to people we'd been working with, or do anything else to let anyone know of our status. A contracting representative on the call asked what this meant for OIDO contractors and whether there was anyone who would not be subject to the RIF; the answer was that contractors, too, must immediately stop work.

13. I received a RIF notice later that day. Attached as Exhibit E is a true and correct copy of the RIF notice I received. On March 21, there were around 110 employees at OIDO. I understand that all of them received a RIF notice like mine and that all of them, like me, are now on administrative leave.

14. Since March 21, I have continued to receive complaints from detained people, submitted through the tablets, to which I have been unable to respond. In addition, I have received emails from several staff members at facilities I routinely visit telling me that there are detainees who wish to speak with me and asking when I will be coming back. No one from DHS has told

me why we're not allowed to speak with anyone and let them know why we're not responding to complaints or returning to the facilities.

15.     On Sunday, April 27, I received an email indicating that all OIDO employees, along with employees at other components within DHS, would lose access to DHS email and other computer systems at the end of the following day, Monday, April 28. On Monday afternoon, Acting Ombudsman Mary Ellen Meymarian convened a Teams meeting with all OIDO employees at which she explained the loss of systems access and the steps we should take to return our government equipment.

16.     During the April 28 meeting, Acting Ombudsman Meymarian noted that she had a lot of documents in her office she needed to shred, and that anyone with "shred material" should either bring it to Patriots Plaza or another DHS headquarters location or, if they were in the field, shred it themselves. She did not say anything at this meeting about how to handle documents that needed to be preserved, only how to handle documents that needed to be shredded. She mentioned that she had tried to organize a meeting with Records Management to explain what we should do with documents but then said something to the effect that this plan had "gone out the window." It is my understanding that standard offboarding procedures for government employees typically involve a briefing with a records officer to discuss what should be done with any government records still in the departing employee's possession, but no such briefing occurred for me or, to my knowledge, any of my OIDO colleagues. On Friday afternoon, May 2, I received an email from Acting Ombudsman Meymarian, which I believe was sent to all OIDO employees, reminding us of our obligations not to destroy federal records, and explaining how we could return hard copy records to DHS headquarters. A true and correct copy of the email is attached to this declaration as Exhibit F. None of this information about how to return records had been conveyed during the

5

meeting on Monday, April 28. Because so many employees at OIDO have relatively little government experience, and because we did not have a briefing with Records Management to discuss what records should be preserved or receive any guidance about preserving documents until four days after the meeting, I am concerned that handwritten case manager notes and other official records will be permanently destroyed in the rush to shut down OIDO.

17. I know that the facilities are growing increasingly crowded and that conditions are likely deteriorating, and I'm torn up by the fact that I am not being permitted to do my job at a time when there is an urgent need for our services. I know from experience that facility staff are also spread very thin and do not have time to take care of the many small problems that OIDO case workers used to help with, so I believe that our absence from the facilities is making their jobs more difficult and adding to their stress. I also worry that not having us there to handle problems at the lowest level will cause those problems to magnify, leading to expensive legal actions against DHS and to avoidable suffering and death among detained people.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 6, 2025

*Kelsey Vitullo* (signature)

Kelsey Vitullo

# EXHIBIT E

PLFS-0179a

Case 1:25-cv-01270-ACR   Document 15-11   Filed 05/08/25   Page 8 of 15

U.S. Department of Homeland Security
Washington, DC 20528



March 21, 2025

MEMORANDUM FOR VITULLO, KELSEY ANN

FROM:   Nicole C. Barksdale-Perry
        Executive Director
        Human Resources Management & Services
        Office of the Chief Human Capital Officer

        [Digitally signed by NICOLE C PERRY, Date: 2025.03.21 10:25:32 -04'00']

SUBJECT:   Reduction in Force Notice

A reduction in force within your competitive area has been conducted with an effective date of March 21, 2025. This action is a result of the dissolution of the Office of the Immigration Detention Ombudsman (OIDO).

In accordance with Executive Order *14210, titled "Implementing the President's 'Department of Government Efficiency' Workforce Optimization Initiative,"* signed by President Trump on February 11, 2025, each agency, department, or commission head, must prioritize the reduction of positions performing functions not explicitly mandated by statute or regulation. Following a comprehensive statute-by-statute analysis, positions or functions identified as non-essential or not legally mandated are subject to this RIF. It is with great regret that I must inform you that your position of IMMIGRATION DETENTION CASE MANAGER within OIDO is being abolished, and you have been reached for reduction in force action. This memorandum constitutes a specific reduction in force (RIF) notice.

This reduction in force is being carried out in accordance with current law and regulations, which include Chapter 35 of Title 5, United States Code, 5 Code of Federal Regulations, Part 351, and OPM policy. In accordance with these provisions, you will be released from your competitive level, and you do not have assignment rights to another position in your competitive area.  Your position and all positions in your competitive level are being abolished, therefore there is no one with lower standing that you can displace in your competitive area.  As a result, you will be separated from the Federal service by reduction in force on May 23, 2025.

To conduct the RIF, the Office of the Chief Human Capital Officer (OCHCO), Human Resources Management and Services (HRMS), prepared retention registers which listed employees in retention standing order based on civil service tenure, veterans'

**PLFS-0179b**

preference, length of Federal service and performance ratings. We used the following information to determine your retention standing as of the RIF effective date:

**Competitive Area:** OIDO STATE COLLEGE, PA
**Type of Service:** 07-Excepted-Conditional
**Position Title, Series, Grade:** IMMIGRATION DETENTION CASE MANAGER 0301 GS 11
**Competitive Level:** 0AH0
**Tenure Group and Subgroup:** 2-Group 2 B (Non-Preference Eligible)
**Service Computation Date (SCD):** 1/14/2024
**Latest Three Performance Evaluations:** 4.75
**Adjusted SCD (SCD adjusted by latest three performance ratings):** 1/14/2004

You have been reached for release from your competitive level in accordance with reduction in force regulations and procedures. You have no assignment rights to be placed in any other position in any other competitive level within your competitive area. Therefore, you will be separated from DHS at the close of business on May 23, 2025.

You are eligible to receive severance pay. We will provide your severance pay calculation no later than May 23, 2025.

Attached to this letter is an "Employee's Guide to RIF Benefits" which contains information regarding leave and other benefits available to employees separated by RIF, as well as information on the DHS Career Transition Assistance Plan. In addition, you may authorize the Human Resources Office to release your qualifications information to Federal, state and private sector agencies and organizations by completing the attached release authorization. Information regarding benefits available under the Workforce Investment Act of 1998 Program, including unemployment insurance, can be found at http://www.doleta.gov/usworkforce/WIA/planstatus.cfm.

If you resign on or before the RIF separation date of May 23, 2025, your separation will be considered voluntary. Please be advised that you may affect your appeal rights if you resign. You are strongly encouraged to contact the Human Resources Office for information if you are considering resigning during this specific notice period.

Staff of the OCHCO is available to assist you by explaining this proposed action and will provide you with copies of pertinent regulations, benefits information, or other material related to this action that you may wish to review. You are entitled to a copy of OPM's retention regulations found in 5 CFR Part 351, which will be provided to you upon request, and you may inspect the appropriate retention register through the OCHCO. You may obtain any information in writing by sending your request to OCHCO – RIF Team, email: workforceshapinghq@hq.dhs.gov.

You have the right to appeal this action to the Merit Systems Protection Board (MSPB). Should you elect to appeal to the MSPB, your appeal must be in writing and must be submitted no later than 30 calendar days after the effective date of the reduction in force action.  An appeal form and copy of the MSPB's regulations are at www.mspb.gov. The address to which an appeal should be sent is as follows:  MSPB Washington Regional Office, 1901 S. Bell Street, Suite 950, Arlington, Virginia 22202 or email washingtonregionaloffice@mspb.gov.

Alternatively, an electronic appeal may be filed at https://e-appeal.mspb.gov/. See "How to File an Appeal" at http://www.mspb.gov/appeals/appeals.htm.  If you file an appeal the Board must serve an acknowledgement order to the following address:

<div align="center">
John T. Koerner<br>
Assistant General Counsel for Labor and Employment Law<br>
General Law Division, Office of the General Counsel<br>
U.S. Department of Homeland Security<br>
2707 Martin Luther King Jr. Ave, SE<br>
Mail Stop 0485<br>
Washington, D.C.  20528<br>
Telephone:  202-603-8038<br>
Facsimile:  202-282-9186<br>
John.Koerner@hq.dhs.gov
</div>

If you believe this action has been taken because of a prohibited personnel practice other than discrimination on the basis of your race, color, religion, sex, national origin, age, disability, marital status, or political affiliation, you may seek corrective action with the Office of the Special Counsel (OSC). Your decision to file an MSPB appeal at this time or to seek corrective action from the OSC is exclusive and irrevocable.  See Prohibited Personnel Practices Overview for more information about seeking corrective action.

If you believe that this action has been taken because of race, color, religion, sex (including pregnancy and gender identity), national origin, sexual orientation, physical disability, genetic information, or age, you may file a complaint with DHS's HRMS Workforce Management. This office can be reached at workforcerelationstaskers@hq.dhs.gov.   To initiate a complaint, you must contact a Workforce Relations Program, Employee Relations and Performance Management within 45 days of the effective date of this action.

This reduction in force action should not be considered as reflecting upon your performance or conduct. It is being taken solely due to the reduction in the number of positions as described earlier in this letter. The Department of Homeland Security (DHS)

sincerely appreciates the services you have rendered during your employment, and we regret that you have been personally affected.

Please sign and return a copy of this notice to acknowledge receipt.

Attachments: RIF Information Sheet
Employee Guide to RIF Benefits
DHS Placement Programs
Reemployment Priority List Registration Form
Authorization to Release Qualifications Information

Sent by email to: kelsey.vitullo@hq.dhs.gov

No hard copy to follow.

**Receipt Acknowledged:**

_____
Employee Name

_____          _____
Employee's Signature                                      Date

**RELEASE STATEMENT FOR QUALIFICATIONS INFORMATION**

Privacy Act Notice

I authorize the Department of Homeland Security (DHS) to disclose information regarding my employment qualifications to public and private employers. I will provide/have provided this information to DHS prior to my separation date, either through submission of new materials or prior application form. I understand that this authorization is voluntary. If I choose to rescind this authorization in the future, I will notify the DHS in writing.

_____
Employee Name

_____
Employee's Signature                                        Date

**PLFS-0179f**

# EXHIBIT F

 
Gmail                                                                    Kelsey Vitullo <vitullokelsey@gmail.com>

## Important - Notice About Federal Records Retention

**MEYMARIAN, MARYELLEN** <MARYELLEN.MEYMARIAN@hq.dhs.gov>                    Fri, May 2, 2025 at 5:37 PM
To: "MEYMARIAN, MARYELLEN" <MARYELLEN.MEYMARIAN@hq.dhs.gov>
Cc: "Swartz, Neal" <Neal.Swartz@hq.dhs.gov>, "Smith, Laura (HQ)" <laura.smith@hq.dhs.gov>, "Baroukh, Nader" <Nader.Baroukh@hq.dhs.gov>, "Browne, Rene" <Rene.Browne@hq.dhs.gov>, "Pachon, Marc" <marc.pachon@hq.dhs.gov>, "SARTINI, RON" <RON.SARTINI@hq.dhs.gov>, "Mok, Eugene" <EUGENE.MOK@hq.dhs.gov>

OIDO Staff

You are reminded, as an employee of the Department of Homeland Security (DHS), **you have a legal obligation to retain and preserve** records under the Federal Records Act, and DHS Management Directive 141-01.  A decommissioned office must maintain records in accordance with a legal disposition authority, potentially beyond the end of business functions in an organization (44 U.S.C. Chapter 31 and 36 CFR § 1231).

Local and remote employees in possession of any federal records **must return them** to a DHS facility in accordance with office closure guidance.  This includes original records and copies of DHS documents that contain substantive notes from decision makers.  To reemphasize, employees should not destroy federal records.  They must be returned to DHS for proper disposition.  When in doubt whether a document is a federal record, please return it to DHS.

**Local employees** -- drop off all records and non-records with IT equipment utilizing the date, time, and drop-off location provided by OCIO staff.   Place records in an envelope marked "**Records – Return to the Designated Decommissioning Officer - Ron Sartini**". Include your name on the folder or container holding the records.  A secure container will be provided for the safe disposal of non-records. If you have already dropped off your equipment and still have records, you can either return to drop them off at a designated DHS facility or follow the guidance below for remote employees.

**Remote employees** / contractors – DHS is still determining the best method to return hard copy records.  Do not include them in the box returning your equipment as the records and equipment go to separate locations.  To help facilitate logistics, notify DHS of the description, volume and location of records by emailing: ogc@hq.dhs.gov.  If you already mailed in records with your equipment, notify DHS at the above email address.  You may destroy non-records (convenience copies/non substantive notes) in accordance with the methods described in DHS Directive 11042.1, "Safeguarding Sensitive But Unclassified Information".

Contact dhsrecordsmanagement@hq.dhs.gov for questions regarding this guidance.

**PLFS-0179h**

Thanks

**Maryellen Meymarian**

Acting Ombudsman

Department of Homeland Security

Office of the Immigration Detention Ombudsman (OIDO)

(202) 760-1064