UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT F. KENNEDY HUMAN RIGHTS; SOUTHERN BORDER COMMUNITIES COALITION; URBAN JUSTICE CENTER,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of Homeland Security,<br><br>Defendants. | Civil Action No. 25-cv-1270-ACR |

## DECLARATION OF LAURA ST. JOHN

I, Laura St. John, make the following declaration based on my personal knowledge and declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct

1. I am over the age of 18 and competent to testify to the matters described below.

2. I am a licensed attorney and a member in good standing in both the California and Arizona bars. I am currently employed as Legal Director of the Florence Immigrant & Refugee Rights Project ("Florence Project" or "FIRRP"). I have practiced as an immigration attorney with the Florence Project since March 2011.

3. Founded in 1989, the Florence Project is a 501(c)(3) non-profit that is dedicated to providing free legal and social services to the thousands of adults and children detained in immigration custody in Arizona on any given day. As the only 501(c)(3) non-profit organization in Arizona dedicated to providing free legal and social services to people in immigration detention,

1

our vision is to ensure that every person in detention has access to counsel, understands their rights under the law, and is treated fairly and humanely.

4. The Florence Project provides high quality immigration legal services, education, and social services to thousands of adults detained in immigration custody in Arizona every year, focusing primarily on immigrants who are held in geographically isolated detention centers in Eloy and Florence, Arizona, at the Eloy Detention Center, Central Arizona Florence Correctional Complex, and Florence Detention Center.  The Florence Project also provides free legal and social services to thousands of unaccompanied minors held in shelters operated by the Office of Refugee Resettlement ("ORR") in Arizona.

5. The Florence Project is involved in various coalitions in support of immigrant rights, this includes our membership in the Arizona Border Communities Coalition and the Southern Border Communities Coalition.

6. As the only non-profit providing free legal and social services to children and adults in immigration custody, Florence Project staff routinely hear reports from clients about issues related to their custody that amount to potential violations of their civil rights.

7. Indeed, Florence Project has been filing complaints to CRCL for decades.  As early as 2009, we began issuing reports tracking troubling trends we had identified through the CRCL complaints our staff were filing.

8. Since 2022, Florence Project staff have filed over 400 complaints to CRCL, with approximately 100 of those complaints also being filed with OIDO, on behalf of clients we are working with.  At least 300 of those complaints were filed to CRCL on behalf of children, who reported abuses by Customs and Border Patrol and at least 100 were filed to CRCL and OIDO on behalf of adults detained in ICE detention centers.

9. The subject matter of the complaints that the Florence Project has filed run the gamut. They include verbal abuse, extreme cold, denial of medical care, and physical abuse reported by children in Border Patrol facilities, as well as unsanitary living conditions, denial of recreation time and showers, denial of medical care and dental care, denial of disability accommodations, legal access issues, inappropriate use of segregation, and substandard mental health care by adults in ICE immigration detention facilities.

10. Specific complaints that the Florence Project has filed on behalf of unaccompanied minors include a Border Patrol agent threatening a 14-year-old with a pistol, a Border Patrol agent punching a 15-year-old in the eye, a Border Patrol agent handcuffing and kicking a 17-year-old, Border Patrol agents threatening to take away medication from a 17-year-old with asthma, and children sleeping on floors of holding facilities with no jackets or blankets.

11. Florence Project staff have also filed complaints for adults in ICE detention facilities for a broad range of issues. This includes a complaint regarding substandard medical care for a man with Marfan Syndrome who is legally blind and had a heart aneurysm who was not taken for life-saving heart surgery after nine months of detention, despite his pleas and the risk of death without the surgery. It also includes a woman with significant mental health issues who was kept isolated in segregation for 9 months while she physically and mentally deteriorated, but who has never been seen in person or spoken to a psychiatrist or psychologist for mental health treatment. It also includes a woman who was forced to wear the same pair of contact lenses for nearly 4 months and was denied an optometrist appointment and glasses; even when her family and community support groups on the outside offered to send her the glasses she needed, ICE lacked a policy to allow for such necessary items to be provided to detained people by friends and family. Over the years, Florence Project staff have also seen repeated and numerous instances of

lack of appropriate medical care and diet for health for people living with diabetes. As such, in 2024 we prepared a comprehensive complaint which we sent to both CRCL and OIDO as well as to the United Nations regarding lack of appropriate medical care for the treatment of diabetes, including the example of one man whose symptoms of diabetes were ignored for a month and he was eventually sent to the Emergency Department when it was discovered he had a blood sugar reading of 500. That same report includes the story of another man whose type-2 diabetes was not being properly medicated, who medical staff ceased performing glucose checks on after a blood sugar reading of 306, and who eventually passed away due to complications from bacterial pneumonia that was likely worsened by his improperly treated type-2 diabetes. In that case, there was substantial evidence that facility staff entered false logs to try to cover-up their failure to properly observe and intervene to treat this very sick man, that this gentleman did not have proper interpretation or language access from his medical care-takers, and that ICE in their public facing detainee death report failed to mention findings from ICE's own internal investigation regarding facility staff's negligent care and falsification of records.

12. In the past, Florence Project has been able to engage directly with employees of CRCL and OIDO for some urgent complaints. For example, when the individual with Marfan Syndrome and a heart aneurysm no longer showed up on the detention facility roster, OIDO was able to quickly obtain information and inform Florence Project staff working with that man that he had been taken for heart surgery and was in stable condition, easing the significant panic and anxiety that his disappearance had caused his advocates and wife.

13. CRCL was also able to provide the Florence Project with a remedy for a violation of Section 504 of the Rehabilitation Act regarding the complaint from the individual who was forced to wear contacts for nearly 4 months and issued a recommendation that "ICE shall provide

training to appropriate IHSC personnel at Eloy on the criteria and procedure for assessing noncitizens with visual impairments for prescription glasses in a timely manner, including the procedure for assessing noncitizens with existing contact lenses."

14. Without offices like CRCL and OIDO, Florence Project staff are left only with the option to advocate directly with ICE officers. However, Florence Project has tried to engage ICE personnel directly to remedy complaints in the past, with little success. For example, in the case of the individual who was forced to wear their contacts for nearly 4 months, Florence Project staff emailed her Deportation Officer asking for the facility to provide her with a new pair of contacts or glasses and also asked for the facility policies related to mailing contacts to the individual for them to use. The Deportation Officer responded that an optometry appointment had been requested and was pending scheduling, with no further information about contacts or glasses, and stating only that ICE Health Service Corp did not have a policy for mailing in medical equipment. However, by that time, this individual had been wearing disposable daily contacts for over 3 months and the officer was unable to provide any specifics regarding the alleged optometry appointment that was pending. This individual did not receive information or help obtaining glasses until Florence Project helped the individual submit complaints to CRCL and OIDO.

15. With the closures of CRCL and OIDO, Florence Project is concerned about the worsening of abuses and violation of civil rights, medical care, disability rights, and more faced by children and adults in Border Patrol custody and adults in ICE custody. ICE particularly has been unwilling to engage in direct communication regarding complaints in order to remedy the issues. There is no agency who the Florence Project can contact for immediate matters, such as urgent medical and mental health care complaints.

PLFS-0192

16. While CRCL and OIDO did not have authority to enforce their recommendations or establish consequences for violations of civil rights, they were able to take complaints, document issues, and, in some cases, quickly provide as much information to Florence Project or our clients as possible. OIDO case managers were physically present in the ICE detention centers, which allowed Florence Project staff to ask them directly to visit or check on certain individuals with urgent needs. The shuttering of CRCL and OIDO has left a vacuum. Advocates and people detained in DHS custody do not know where complaints can even meaningfully be filed. Without CRCL and OIDO, ICE and CBP – agencies that already are rife with a great deal of impunity – will have even more freedom from oversight, with even fewer ways that organizations like ours can even document the abuses and violations that are inflicted upon people in their custody.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 1, 2025

_____
Laura St. John
Legal Director
Florence Immigrant & Refugee Rights Project