UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT F. KENNEDY HUMAN RIGHTS; SOUTHERN BORDER COMMUNITIES COALITION; URBAN JUSTICE CENTER,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of Homeland Security,<br><br>Defendants. | Civil Action No. 25-1270-ACR |

**DECLARATION OF ZAIN LAKHANI**

I, Zain Lakhani, declare as follows:

1. I am over the age of 18 and competent to testify to the matters described below. This declaration is based on my personal knowledge and information that has been shared with me through conversations with my colleagues.

2. I am the Director of the Migrant Rights and Justice program of the Women's Refugee Commission (WRC). In that capacity, I oversee our work on immigration detention, including the conditions of detention for migrant women and girls and incidence of sexual assault and abuse in detention.

3. WRC was founded in 1985 as a non-governmental, non-profit organization that works to identify gaps, research solutions, and advocate for change to improve the lives of migrant and displaced women and children. WRC is a leading expert on the needs of refugee women and children, and the policies that can protect and empower them. For more than two decades, WRC

1

has monitored immigration detention facilities and migrant children's facilities operated by Immigration and Customs Enforcement (ICE), Custom's and Border Protection (CBP), and the Office of Refugee Resettlement (ORR). It has interviewed facility staff, local service providers, detained migrants, asylum seekers, and migrant children about the policies, practices, and conditions of custody that relate to their ability to access protection. In that time, WRC has produced more than fifteen research reports detailing the conditions of women and children in detention, based on in-depth research, interviews, and site visits. It has also submitted Congressional testimony, filed complaints with various governmental bodies, submitted comments on regulations, and engaged in other forms of advocacy around the conditions of women and girls in detention.

      4.      Over our decades of research, WRC has documented the extent of sexual assault, abuse, and other maltreatment migrant women and girls experience in immigration detention. Official audits conducted by the Office for Civil Rights and Civil Liberties (CRCL), as required by the Prison Rape Elimination Act (PREA), litigation brought by detained migrants, as well as other reporting by other advocacy organizations and media outlets confirm these findings. *See* 42 U.S.C. Section 15601 et seq.

      5.      Our work at the Krome Service Processing Center (Krome) in Florida provides an illustrative example. Since 2000, WRC has documented extensive and systemic incidence of sexual assault and abuse of detained women at Krome.[1] Since that time, numerous governmental,

---

[1] *See e.g.* Women's Refugee Commission, *Behind Locked Doors: Abuse of Refugee Women at the Krome Detention Center,* 2000 https://www.womensrefugeecommission.org/research-resources/behind-locked-doors-abuse-of-refugee-women-at-the-krome-detention-center/; Women's Refugee Commission, *Innocents in Jail*, 2001 https://www.womensrefugeecommission.org/research-resources/us-tgk/; Women's Refugee Commission, *Sexual Abuse in Immigration Detention Facilities*, 2011;

2

media, and advocacy sources have documented persistent sexual abuse at the facility. A 2022 PREA audit reported 29 incidents of sexual abuse in the facility during the audit period.[2] The current administration's accelerated detention and deportation efforts have worsened conditions in the facility precipitously, as reports of overcrowding, appalling hygiene, and rampant violations of the Department of Homeland Security's own detention conditions have been reported. Detained women have reported being left in shackles and chains for up to 30 hours, without adequate food and water, and being forced to urinate on the floor.[3] On April 29, 2025, Haitian woman Marie Ange Blaise was reported dead after being detained for ten weeks in allegedly inhumane conditions at the facility.[4]

6. High incidence of sexual assault and abuse have been reported in numerous other detention facilities; indeed allegations have surfaced in nearly all states that have immigration detention facilities according to records obtained by the American Civil Liberties Union via the Freedom of Information Act (FOIA).[5] A FOIA request made by the media outlet The Intercept and the advocacy organization Freedom for Immigrants (formerly known as CIVIC) found that

---

https://www.womensrefugeecommission.org/research-resources/sexual-abuse-and-immigration-detention-facilities/; Women's Refugee Commission, *Prison for Survivors*, 2017 https://www.womensrefugeecommission.org/research-resources/prison-for-survivors-women-in-us-detention-oct2017/

[2] *See* Dep't of Homeland Sec., Immigration and Customs Enforcement., PREA Audit: SubPart A, DHS Immigration Detention Facilities Audit Report, 2021 (January 29, 2021). https://www.ice.gov/doclib/foia/prea_audit/kromeNorthSPC_Jan27-29_2021.pdf.

[3] *See e.g.* Veronica Egui Brito, Syra Ortiz Blanes and Clare Healy, "Inhumane: Overcrowding Strains Krome Detention Center Amid Trump's Immigrant Crackdown," Miami Herald, (March 28, 2025). https://www.miamiherald.com/news/local/immigration/article302968939.html; https://www.usatoday.com/story/news/nation/2025/03/23/immigrant-women-hell-on-earth-trump-ice-detention/82029368007/.

[4] Rachel Treisman "Lawmakers Demand Answers After Haitian Woman Dies At ICE Detention Center" NPR, May 1, 2025. https://www.npr.org/2025/05/01/nx-s1-5383108/haitian-woman-death-ice-detention

[5] *See* American Civil Liberties Union, *Sexual Abuse in Immigration Detention*, April 12 2024 https://www.aclu.org/sexual-abuse-in-immigration-detention.

3

detained women filed more than 1200 sexual assault and abuse complaints with DHS between 2010 and 2016. More than half of the complaints were against ICE officers.[6] Litigation brought on behalf of detained woman E.D. against the Berks County Residential Center in Pennsylvania, found pervasive sexual assault and abuse in that facility.[7] A 2024 case brought by the Department of Justice against Southwest Key Programs, a contractor that operated more than 29 custodial facilities for Unaccompanied Children, cited over 100 cases of documented sexual assault involving children as young as five.[8]

7. CRCL and OIDO play a vital and statutorily mandated role in preventing and addressing human rights violations in immigration enforcement, including sexual assault and abuse. CRCL and OIDO receive complaints from, *inter alia*, detained and recently released immigrants, who experience violations of their civil rights or civil liberties during immigration enforcement. This includes complaints of sexual assault and abuse, or other forms of gender-based violence, committed by immigration enforcement officials or their contractors. CRCL and OIDO, under their respective mandates, investigate and respond to these complaints. They also conduct routine investigations of detention facilities to ensure compliance with civil rights laws.

8. CRCL is further charged with implementing the Prison Rape Elimination Act (PREA) in immigration detention facilities. *See* 34 U.S.C. Section 3030. Under its implementing regulations, CRCL is required to set forth standards to prevent, detect, and respond to sexual abuse in DHS immigration and holding facilities. *See* 6. C.F.R. Part 115. As part of this work, CRCL conducts regular and public audits of facilities to ensure compliance with PREA standards

---

[6] Alice Speri, "Detained Then Violated: 1224 Complaints Reveal a Staggering Pattern of Sexual Abuse in Immigration Detention. Half of Those Accused Worked for ICE." The Intercept. (April 11, 2018). https://theintercept.com/2018/04/11/immigration-detention-sexual-abuse-ice-dhs/.
[7] *E.D. v Shakey et.al.*, No 18-1688 (3d Cir. 2019).
[8] *See United States vs Southwest Key Programs*, Case No. 1:24-CV-00798, (W.D. Tex. 2024)

4

of prevention and response and ensures that ICE and CBP implement DHS's PREA regulations and standards. *Id*. CRCL also makes policy recommendations to immigration enforcement agencies on how to prevent and respond to sexual abuse in detention facilities.

9. OIDO plays a similarly vital role in monitoring the conditions of immigration detention, ensuring compliance with civil rights laws and DHS's own standards, and receiving and responding to complaints. OIDO staff are largely based in the field and visit detention centers regularly. By maintaining a robust monitoring presence, OIDO is in a position to prevent harms to detained persons before they occur. They are best placed to notice systemic problems and work with facilities to implement solutions. OIDO's monitoring operations also allow them to ensure that recommendations made by CRCL in earlier investigations are being implemented.[9]

10. Like CRCL, OIDO' s statutory mandate also requires them to receive and respond to complaints about immigration detention personnel who engage in misconduct or otherwise violate the rights of immigrants in detention. 6 U.S.C. § 205(b)(1). As of 2022, OIDO received and reviewed more than 6000 complaints.[10]

11. WRC has met often with CRCL and OIDO to advocate for protections for migrant women and girls in detention. Based on our research, we craft policy recommendations for these oversight bodies on how they can better effectuate their statutory mission to prevent and respond to the abuse of women and girls in immigration enforcement. We also rely on the data and investigative reporting that CRCL and OIDO provide to monitor and track conditions for women and girls in detention.

---

[9] Office of the Immigr. Det. Ombudsman, *OIDO Annual Report*, 2023, at 4.
[10] Dep't of Homeland Sec., *About the Office of the Immigration Detention Ombudsman (OIDO)*, https://perma.cc/82DC-K8HG (archived Apr. 21, 2025).

5

12.     WRC also advocates with CRCL for policies and programs that will improve conditions for people seeking asylum and humanitarian protection more broadly, including case management and other Alternatives to Detention programs.  The Case Management Pilot Program (CMPP), which was chaired by CRCL, reveals why CRCL's involvement in these programs is so vital. CMPP provided support services to asylum seekers and people seeking other protections in removal proceedings. Extensive evidence has demonstrated that case management, when appropriately implemented, is highly successful at supporting people navigating the immigration process, while reducing reliance on detention (which is both costly and carries a high risk of harm to migrants).[11] CMPP was especially effective, in part because it was funded through CRCL and the Federal Emergency Management Agency (FEMA), as opposed to prior case management programs that had been funded through ICE. The emphasis on supportive services, including providing migrants with assistance in understanding their immigration obligations, increased compliance by helping them navigate a tricky and complex process. Administration by CRCL shifted the program from the surveillance-focused approach of ICE-contracted case management programs to one grounded in the support and assistance migrants need to understand and comply with their immigration obligations.

13.     WRC is gravely concerned that the effective closure of CRCL and OIDO will leave migrant women and their lawyers with no place to report violations of their civil rights, including sexual assault and abuse by immigration officers. Detained migrants and their lawyers rely on CRCL complaints to notify the government about abuses that occur during the immigration enforcement process, including incidence of sexual assault and abuse in detention.

---

[11] Women's Refugee Commission and American Immigration Lawyers Association, *The Case Management Pilot Program,* 2024. https://www.womensrefugeecommission.org/research-resources/the-case-management-pilot-program/

Migrants and their lawyers also rely on OIDO to monitor implementation of any recommendations that emerge from their complaints. Absent these oversight agencies, the government has no meaningful mechanisms for ensuring that immigration officers and their contractors do not violate immigrants' civil rights.

14. The absence of dedicated oversight agencies with the authority and resources to investigate and respond to complaints in these facilities is especially concerning given the known failure of facility administrators and contractors to prevent and address systemic sexual assault and abuse in their own facilities. *See e.g. E.D. v. Sharkey* (2019). Despite its obligation to investigate and respond to incidents of sexual abuse and assault in its facilities, the records obtained by Freedom for Immigrants and The Intercept indicated that ICE demonstrated a consistent pattern of failing to investigate allegations or prematurely close cases.[12] WRC is concerned that absent CRCL and OIDO's oversight, ICE and CBP will not sufficiently respond to allegations of abuse within its facilities or take the necessary steps to comply with DHS PREA regulations.

15. The administration's decision to shutter its oversight bodies is even more concerning given the administration's recission of access for legal service providers and other organizations who provide Know Your Rights and legal orientation information. On April 15, 2025, the government terminated the Counsel for Children's Initiative, Family Group Legal Orientation Program, Immigration Court Help Desk, and Legal Orientation Program. On March 21, 2025, HHS terminated nearly all representation for Unaccompanied Children. Other legal services programs have also been modified or limited. (On April 30th, as of this writing, Judge Martinez-Olguin issued a preliminary injunction requiring the administration to restart funding to

---

[12] *Supra* n. 6

legal services for Unaccompanied Children.[13]). The recission of these programs reduces advocates' ability to access and monitor the conditions of detention, further isolating migrants from critical means of reporting violations. Taken together, these actions create a black box of impunity for immigration enforcement that our research shows is likely to result in grave harm to detained women and girls.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 2, 2025

s/Zain Lakhani<br>
Zain Lakhani<br>
Women's Refugee Commission

---

[13] *Community Legal Services in East Palo Alto et.al., v United States Department of Health and Human Services*, Case No. 25-cv-0847-AMO, Order Granting Plaintiffs Motion for Preliminary Injunction (N.D. Cal. 2025).