UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT F. KENNEDY HUMAN RIGHTS; SOUTHERN BORDER COMMUNITIES COALITION; URBAN JUSTICE CENTER,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of Homeland Security,<br><br>Defendants. | Civil Action No. 25-1270-ACR |

**DECLARATION OF TIMOTHY FALLON**

I, Timothy Fallon, declare as follows:

1.      I am over the age of 18 and competent to testify to the matters described below. This declaration is based on my personal knowledge and information that has been shared with me through conversations with my colleagues.

2.      I have been employed by Her Justice, Inc. since 2015 and am currently a managing attorney in the immigration practice. I have been in this position for four months.

3.      I have been practicing immigration law for over eighteen years. From 2006 to 2007, while at Legal Services of Eastern Missouri, I represented victims of domestic violence, sexual assault and human trafficking in immigration proceedings before United States Citizenship and Immigration Services (USCIS). Prior to joining Her Justice, from 2007 to 2015, I represented victims of domestic violence, sexual assault and human trafficking in immigration proceedings before USCIS and the Executive Office for Immigration Review (EOIR) while working at My

1

Sisters' Place, Inc., a nonprofit social and legal services organization in Westchester County, New York, providing legal services to victims of domestic violence, sexual assault and human trafficking. I have been a speaker on national and local panels regarding immigration remedies under the Violence Against Women Act (VAWA) and the Trafficking Victims Protection Reauthorization Act (TVPRA). I have developed and presented Continuing Legal Education (CLE) trainings regarding VAWA Self-Petitions, I-751 Battered Spouse Waivers, Petitions for U Nonimmigrant Status, and Applications for T Nonimmigrant Status.

4.      During my eighteen years of practice as an immigration attorney, I have filed hundreds of applications for humanitarian benefits with USCIS. The applications have mainly been under VAWA and TVPRA; namely Forms I-360 VAWA Self-Petition, I-918 Petition for U Nonimmigrant Status, I-914 Application for T Nonimmigrant Status, and I-485 Application to Register Permanent Residence or Adjust Status

5.      Her Justice is a nonprofit organization founded in 1993 that takes a pro bono first approach to provide free legal services to women living in poverty in New York City. Her Justice trains and mentors volunteer lawyers from the City's premiere law firms who enable our clients to access the legal system and obtain the justice they deserve with a focus in the areas of family, matrimonial, and immigration law. Our immigration practice focuses on pursuing VAWA remedies including Self-Petitions for Battered Spouses and Petitions for U Nonimmigrant Status. We also provide representation to trafficking survivors under the TVPRA including Applications for T Nonimmigrant Status. From April 1, 2024 to March 31, 2025, we provided immigration legal services to 806 clients with approximately 2,059 distinct USCIS applications.

6.      My colleagues and I have found the CIS Ombudsman's Office to be extremely helpful on the many occasions when our clients' cases have gotten bogged down at USCIS. To

2

put it plainly, it is very hard for attorneys to get answers from USCIS. An example of the CIS Ombudsman's office providing invaluable assistance in a client's case is when consular processing, the process of applying for immigrant or nonimmigrant visas for derivative family members, is delayed. We have represented several clients who had their I-485 Application to Adjust Status approved based on an approved VAWA Self-Petition, and the next step was to begin the immigrant visa application process for derivative children living outside of the United States. The National Visa Center (NVC) should send the paperwork necessary to start the immigrant visa applications to applicants and their attorneys after the principal applicant's I-485 application and subsequent "take action" application, Form I-824, are both approved. In many cases either in-house at Her Justice or represented by pro bono law firm attorneys, the I-824 approval was severely delayed, or even if the I-824 was approved, the NVC paperwork did not arrive at all. We have notified USCIS and the NVC of this discrepancy, only to experience a tennis-like experience of USCIS telling us to check with NVC, and NVC telling us to check with USCIS. Cases like this are where the CIS Ombudsman has been vital – several times we made CIS Ombudsman assistance requests, and soon after the matter was remedied. As a result, our clients were reunited with their children.

7.      We did not know that the CIS Ombudsman's Office staff were placed on leave in March 2025 and no longer taking requests for case assistance until a colleague at an advocacy organization told us. The CIS Ombudsman website and online portal for requesting assistance continue to appear as if everything is normal and the office itself is still functional. Even after the CIS Ombudsman's office was made operationally ineffective, and before we learning that the office was functionally closed, we continued to advise pro bono attorneys to make case assistance requests to the CIS Ombudsman. It hurts our office's credibility as experts when we advise pro

3

bono attorneys to take steps that are no longer in existence to resolve immigration cases, and the case assistance requests waste the time of pro bono attorneys on a measure that is no longer effective. This serves to deprive clients and their attorneys of important time and routes to ameliorating issues in their cases.

8.      Alternative channels for requesting help from USCIS are slower and less efficient than contacting the CIS Ombudsman. For example, a phone hotline used to exist for USCIS's Vermont Service Center for attorneys representing VAWA Self-Petitioners, Petitioners for U Nonimmigrant Status, and Applicants for T Nonimmigrant Status to leave questions and inquiries about cases and receive calls in return from USCIS officers. But this phone hotline is no longer operational, and the first step for an attorney is to email a specific email address for the Vermont Service Center or Nebraska Service Center, depending on where the case is pending. When we send emails to the designated "hotline" addresses, we are told that we will receive a response in 120 days. The issues we are reaching out about are time-sensitive, and the client's petition or application could be denied before we get a response. In reality, it is very common for attorneys to not even receive a response to their hotline email. Also, sometimes the reason we are reaching out is because the USCIS Case Status Online portal (https://egov.uscis.gov/) shows that a notice was mailed but we never received that notice. This could be a Request for Evidence, approval notice, denial notice, Notice of Intent to Deny, or other vital correspondence. Without the actual notice, we have no way of knowing if a response is required or how time-sensitive the situation is. For example, a regular problem during the last few years is learning via the USCIS Case Status Online portal that a Request for Evidence was sent months ago, yet we never received it. Then we would scramble to try to get it sent again, advocating for a new respond-by date. More often than not, the application was ultimately denied because our client did not respond to the Request for

4

Evidence that we never received. These are the sorts of situations we would contact the CIS Ombudsman about in the past. and with that option gone. we must spend additional time pursuing inferior avenues in attempts to obtain the information we need to represent our clients.

9.       Besides the nonresponsive hotline email addresses, attorneys must turn to calling the USCIS Contact Center, making a Congressional case assistance request, asking a national nonprofit to contact USCIS directly, or resort to considering a mandamus or Administrative Procedure Act (APA) complaint filing in federal district court. In years past, Contact Center staff and officers would not speak to attorneys about VAWA Self-Petitions, Petitions for U Nonimmigrant Status, or Applications for T Nonimmigrant Status. Although Contact Center staff and officers will now allow attorneys to be on calls with clients who have VAWA, U or T cases, they will only speak to the client (applicant or petitioner). Coordinating a three-way call with the USCIS Contact Center is very difficult, especially if waiting on a call back from the Contact Center, and providing the client with the information they need to know to answer the Contact Center staff or officer questions is laborious. Congressional case assistance requests can be helpful, but with the CIS Ombudsman not an option, Congressional staff will be increasingly burdened by the resultant increase in requests for assistance in immigration cases. Thus Congressional case assistance response times will suffer, as will the applicants and petitioners themselves. While we have the option of asking a national nonprofit for case strategy assistance and then intervention or communication with USCIS, this option requires membership with the organization, scheduling of an appointment several weeks out, and then waiting at least a month after that call to request USCIS case intervention. This approach also assumes that USCIS will continue responding to the nonprofit. Lastly, federal litigation as an option is not realistic for many attorneys, including our own. Having to sue DHS each time they fail to send a notice, or delay

5

adjudication of a client's case, is not a viable option for our clients and the clients of our pro bono partners.

10.    I am very worried about what will happen to our clients now that the CIS Ombudsman is not able to act as an intermediary with USCIS. I fear that more of our clients' petitions and applications for legal status will be denied because of errors that the CIS Ombudsman could have helped us to correct.  Although USCIS has the discretion not to initiate removal proceedings through a Notice to Appear after a Petition for U Nonimmigrant Status, Application for T Nonimmigrant status or VAWA Self-Petition is denied, DHS gave recent notice that they intend to initiate removal proceedings immediately even for denied humanitarian applications such as these. Given that our clients have valid, legally recognized grounds for remaining in the United States based on their being victims of domestic violence, trafficking or other crimes, this seems to me to be a miscarriage of justice that a functioning CIS Ombudsman's office could help us to prevent.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 1st, 2025

Timothy Fallon

6