UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT F. KENNEDY HUMAN RIGHTS; SOUTHERN BORDER COMMUNITIES COALITION; URBAN JUSTICE CENTER,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of Homeland Security,<br><br>Defendants. | Civil Action No. 25-1270-ACR |

## DECLARATION OF JODI ZIESEMER

I, Jodi Ziesemer, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am an attorney admitted to practice in the state of New York and in the United States District Court for the Southern District of New York. I am the co-Director of the Immigrant Protection Unit at the New York Legal Assistance Group (NYLAG), located at 100 Pearl Street, 19th Floor, New York, NY 10004. NYLAG is a nonprofit legal service provider serving low-income residents of New York. I am over the age of 18 and competent to testify to the matters described below. This declaration is based on my personal knowledge and information that has been shared with me through conversations with my colleagues.

2. I am an immigration attorney and have been a practicing immigration attorney since 2014. Prior to my admission to the bar, I was an Accredited Representative with the Department of Justice, which authorized me to represent non-citizens before United States Immigration and

1

Citizenship Services (CIS) and the Executive Office of Immigration Review (EOIR). Among other services, my organization provides representation on thousands of family and humanitarian immigration matters for clients appearing before CIS.

3. NYLAG operates programming in Family Justice Centers throughout New York City to provide immigration legal services for survivors of intimate partner violence, who may be eligible for immigration benefits under the Violence Against Women Act (VAWA). The attorneys and paralegals at the Family Justice Center relied on the CIS Ombudsman's Office to address bureaucratic delays or errors in immigration filings. The Ombudsman's Office was crucial because other methods of contacting CIS were often stymied when officers invoked confidentiality protections to refuse to speak with our advocates, preventing us from addressing concerns through general CIS customer service channels. The Ombudsman's Office assisted NYLAG advocates at least two or three times per year to resolve delays or errors for victims of domestic violence who needed their documents to achieve financial security and escape abuse.

4. At one point in or around 2020, the VAWA email hotline for attorneys became almost non-functional and the Ombudsman's Office became the sole point of contact for sensitive cases. I will provide a few specific examples. A NYLAG representative sent five emails in attempt to prompt adjudication for an Employment Authorization Document that had been pending for longer than the normal processing times. The attorney requested supervisory review multiple times and never received a response from the CIS VAWA email. After she contacted the Ombudsman's Office, she received an approval for the Employment Authorization Document, and the client was able to obtain a measure of independence and security. In another case, a renewal of a Lawful Permanent Residency card had been pending longer than the normal processing times. The attorney made a case inquiry through a CIS online e-service request, but received an

unsatisfactory response. After the advocate raised the case to the attention of the Ombudsman's Office, the client received their Lawful Permanent Residency card.

5. The CIS Ombudsman's Office was especially important in cases concerning VAWA and U Visas (an immigration status for victims of certain serious crimes) and other cases for victims of violence, where confidentiality protections limit CIS general customer service from receiving and addressing regular inquiries.

6. Another NYLAG attorney relied on the Ombudsman's Office for a victim of human trafficking who had filed a T visa (an immigration status for victims of sex or labor trafficking). The advocate submitted two inquiries with the Ombudsman's Office after failing to resolve the issue directly with the CIS Service Center handling T visa cases. The Ombudsman's Office took immediate action and relayed the inquiry to CIS. Within two weeks of the intervention by the Ombudsman's Office, CIS resolved the issue and approved the T visa.

7. Generally, NYLAG advocates have had positive experiences with the Ombudsman's Office. Because the Ombudsman's Office is an independent agency, there is often some delay in relaying the issue to the appropriate agency, but they are promptly communicative and usually successfully resolve the issue. CIS customer service is often non-responsive and it is cumbersome and challenging, if not impossible for sensitive cases, to resolve any delays or errors.

8. With the closure of the CIS Ombudsman, some clients' cases will take longer to resolve or may not be resolved due to CIS error. Unfortunately, CIS errors are not uncommon. Without the Ombudsman's Office, litigation to correct legal errors will be the only option, which is cumbersome and expensive for NYLAG and our low-income clients. Litigation will be expensive and burdensome on CIS as well. Without access to the Ombudsman's Office, many of NYLAG's most sensitive cases and most vulnerable clients—victims of intimate partner violence,

victims of trafficking, and victims of child abuse—will be unable to timely resolve delays or correct errors to secure documents that are necessary for them to escape abuse and find safety and security.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 7, 2025

_____
Jodi Ziesemer, Esq.
Co-Director of the Immigrant Protection Unit at the New York Legal Assistance Group
(NYLAG)
