# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT F. KENNEDY HUMAN RIGHTS; SOUTHERN BORDER COMMUNITIES COALITION; URBAN JUSTICE CENTER,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of Homeland Security,<br><br>Defendants. | Civil Action No. 25-1270-ACR |

## MEMORANDUM IN SUPPORT OF
## PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER

Michael C. Martinez (DC Bar No. 1686872)
Christine L. Coogle (DC Bar No. 1738913)
Brian D. Netter (DC Bar No. 979362)
Skye L. Perryman (DC Bar No. 984573)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090

Karla Gilbride (DC Bar No. 1005586)
Adina H. Rosenbaum (DC Bar No. 490928)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
kgilbride@citizen.org

*Counsel for All Plaintiffs*

Anthony Enriquez (DDC Bar No. NY0626)
Sarah T. Gillman (DDC Bar No. NY0316)
Robert F. Kennedy Human Rights
88 Pine Street, Suite 801
New York, NY 10005
(917) 284-6355

Sarah E. Decker (DDC Bar No. NY0566)
Medha Raman (DC Bar No. 90027539)
Robert F. Kennedy Human Rights
1300 19th Street NW, Suite 750
Washington, DC 20036
(202) 559-4432

*Counsel for Plaintiff RFK*

May 23, 2025

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................... 2

LEGAL STANDARD........................................................................................................................... 5

ARGUMENT......................................................................................................................................... 5

    I.    Plaintiffs are likely to succeed on the merits. ................................................................... 5

        A.    Plaintiffs are likely to establish standing. ..................................................................... 6

        B.    Plaintiffs are likely to succeed on their ultra vires claim................................................ 7

        C.    Plaintiffs are likely to succeed on their Administrative Procedure Act claims. ............. 9

    II.    Plaintiffs are suffering and will suffer irreparable harm absent a TRO............................ 11

    III.    The balance of equities and public interest favor issuing a TRO. .................................... 13

CONCLUSION................................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Armstrong v. Exceptional Child Ctr.*, 575 U.S. 320 (2015)..................................................8

*C.G.B. v. Wolf*, 464 F. Supp. 3d 174 (D.D.C. 2020)..........................................................12

*Ctr. for Biological Diversity v. EPA*, 56 F.4th 55 (D.C. Cir. 2022) ....................................6

*Ctr. for Biological Diversity v. Regan*, 734 F. Supp. 3d 1 (D.D.C. 2024).........................6

*Ctr. for Sustainable Econ. v. Jewell*, 779 F.3d 588 (D.C. Cir. 2015) ..................................7

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006) ............4

*Clinton v. City of New York*, 524 U.S. 417 (1998)..............................................................7

*D.A.M. v. Barr*, 474 F. Supp. 3d 45 (D.D.C. 2020) ............................................................5

*DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1 (2020)...................................................11

*District 50, United Mine Workers of Am. v. Int'l Union, United Mine Workers of Am.*,
    412 F.2d 165 (D.C. Cir. 1969)........................................................................................2

*FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024) .....................................................5

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010).........................9

*Hall v. Johnson*, 599 F. Supp. 2d 1 (D.D.C. 2009).............................................................4

*Huisha-Huisha v. Mayorkas*, 27 F.4th 718 (D.C. Cir. 2022)..............................................2

*J. Does 1-26 v. Musk*, No. 25-1273, 2025 WL 1020995 (4th Cir. Mar. 28, 2025)..........7

*League of Women Voters of the U.S. v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) ..........11, 12

*Myers v. United States*, 272 U.S. 52 (1926).......................................................................7

*Nat'l Env't Dev. Ass'ns Clean Air Project v. EPA*, 752 F.3d 999 (D.C. Cir. 2014).........9

*Nat'l Treasury Emps. Union v. Vought* (*NTEU*),
    — F. Supp. 3d —, No. 1:25-cv-00381, 2025 WL 942772
    (D.D.C. Mar. 28, 2025), *stay denied in relevant part*, No. 25-5091
    (D.C. Cir. Apr. 11, 2025, as modified Apr. 28, 2025).................................................10

*New York v. McMahon*, 25-cv-10601 (D. Mass. May 22, 2025), ECF No. 45.........10, 12

*Open Cmtys. All. v. Carson*, 286 F. Supp. 3d 148 (D.D.C. 2017) ..................................12

*People for the Ethical Treatment of Animals v. USDA*, 797 F.3d 1087 (D.C. Cir. 2015) ............... 5

*Powder River Basin Res. Council v. U.S. Dep't of Interior*,
    749 F. Supp. 3d 151 (D.D.C. 2024) ........................................................................................ 7

*Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500 (D.C. Cir. 2016) ................................................. 5

*Rhode Island v. Trump*,
    — F. Supp. 3d —, No.1:25-cv-128, 2025 WL 1303868 (D.R.I. May 6, 2025) .................. 10

*Sackett v. EPA*, 566 U.S. 120 (2012) ............................................................................................. 9

*Util. Air Regul. Grp. v. EPA*, 573 U.S. 302 (2014) ........................................................................ 8

*Wiley v. Kennedy*, No. 2:25-CV-00227, 2025 WL 1384768 (S.D.W. Va. May 13, 2025) ............ 10

## U.S. Constitution

U.S. Const. art. I, § 1 .................................................................................................................... 7

## Statutes

5 U.S.C. § 706 ............................................................................................................................. 11

6 U.S.C. § 111 ............................................................................................................................... 8

6 U.S.C. § 205 ............................................................................................................................. 11

6 U.S.C. § 272 ............................................................................................................................. 10

6 U.S.C. § 345 ............................................................................................................................. 10

6 U.S.C. § 452 ......................................................................................................................... 8, 10

42 U.S.C. § 2000ee-1 .................................................................................................................. 10

## Other Authorities

Ximena Bustillo, *Homeland Security Makes Cuts to Civil Rights and Oversight Offices*,
    NPR (Mar. 21, 2025), https://perma.cc/B9HN-RWRC ................................................. 8, 12

## INTRODUCTION

In the Homeland Security Act of 2002 and in subsequent legislation, Congress created three Department of Homeland Security (DHS) Oversight Offices—the Office for Civil Rights and Civil Liberties (CRCL), the Citizenship and Immigration Services Ombudsman's Office (CISOM), and the Office of the Immigration Detention Ombudsman (OIDO)—to protect individuals' civil rights and civil liberties, to oversee immigration detention conditions, and to assist vulnerable immigrants navigating federal immigration processes.  Congress gave each of those offices numerous and extensive statutory duties to ensure that they fulfill their missions.  But since the reduction-in-force (RIF) and stop-work orders that Defendants issued on March 21, 2025, essentially no work has been performed pursuant to the DHS Oversight Offices' statutory mandates.  This deliberate failure to carry out congressional mandates, for more than two months now, is ultra vires, contrary to law, and arbitrary and capricious.  This unlawful government action is contrary to the public interest and has caused irreparable harm to Plaintiffs Robert F. Kennedy Human Rights (RFK), the Southern Border Communities Coalition (SBCC), and Urban Justice Center (UJC).

Starting later today, May 23, the DHS Oversight Offices' failure to carry out their required functions will become permanent: essentially all current employees of these three offices will be separated from their employment, and there will remain at most three government officials across those three offices.  No matter how earnest and hardworking those individuals may be, it is highly implausible that they would be able to carry out the statutory functions that Congress plainly intended to be handled by fully staffed offices.  The "plans" for these offices to be reconstituted sometime in the future that the government now submits to the Court lack approval, necessary detail, and any timeline whatsoever.  The government offers vague, hypothetical future action, but Plaintiffs—and the public—are suffering concrete harm today.  This Court should therefore issue

a temporary restraining order to preserve the status quo while Plaintiffs' motion for a preliminary injunction remains pending.

Plaintiffs respectfully request an order reversing the March 21 stop-work order and rescinding the March 21 RIF notices, which would return the parties to "the last uncontested status which preceded the pending controversy." *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 733 (D.C. Cir. 2022) (quoting *District 50, United Mine Workers of Am. v. Int'l Union, United Mine Workers of Am.*, 412 F.2d 165, 168 (D.C. Cir. 1969)). At a minimum and in the alternative, Plaintiffs seek an order preventing the March 21 RIFs from taking effect, so that the employees of the DHS Oversight Offices will remain available to perform those offices' statutory functions should that prove necessary as Defendants' plans for reconstituting the offices and resuming their functions are being put into effect.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs incorporate by reference the statutory and factual background sections of their Memorandum in Support of Plaintiffs' Motion for a Preliminary Injunction, ECF No. 15-1 (PI Mem.). They supplement those facts with the following summary of factual and procedural developments that have occurred since that motion was filed.

Plaintiffs filed their Motion for a Preliminary Injunction on May 8, 2025, ECF No. 15, and the parties agreed to a briefing schedule under which briefing was completed by May 16, ECF No. 17. Defendants filed their opposition on May 14, along with a declaration from Ronald Sartini, who had recently been appointed CIS Ombudsman. Mr. Sartini confirmed that the RIFs approved by Defendant Noem on March 20 included "the entire staff" of the three DHS Oversight Offices except for members of the Senior Executive Service. Sartini Decl. ¶ 6, ECF No. 19-1. He also referred to a "plan" by which the three offices would be reorganized in the future using contractors

2

and "software tools to more efficiently process complaints." *Id.* ¶ 9. Citing this declaration, Defendants took the position in their opposition that the offices had not been eliminated but were in the process of being reorganized. Defs.' Opp. at 28, ECF No. 19. Plaintiffs filed their reply on May 16, noting that Defendants' March 21 stop-work order was a final agency action whose legal consequences had affected many, including Plaintiffs themselves. Reply Mem. at 12, ECF No. 24.

On May 19, the Court held an evidentiary hearing at which Mr. Sartini testified. His testimony confirmed that the numerous statutory functions of the DHS Oversight Offices, such as the investigation of complaints, inspection of detention facilities, and review of DHS policies for compliance with civil rights laws, were not currently being performed and had not been performed since March 21. He also testified that since the issuance of the March 21 RIF notices (about which he had no personal knowledge) and placement of all employees subject to the RIFs on administrative leave, there were no employees working for CRCL or OIDO and only two employees, Mr. Sartini and a deputy, working for CISOM. Finally, he testified that since around March 21, he had been tasked with developing a plan for reorganizing the three offices and had developed a "notional" plan for doing so with a combination of detailees, newly hired staff, contractors, and software, but had not yet been given an opportunity to present the plan to anyone in the Secretary's office, and did not have authority to implement his own plan without approval from DHS leadership.

Following the May 19 hearing, it came to Plaintiffs' counsel's attention that the deputy CISOM Ombudsman, whom Mr. Sartini testified had been helping him to perform CISOM work, may have been reassigned to another component of DHS. Plaintiffs' counsel mentioned this development during oral argument before the Court on May 20, prompting the Court to issue a

3

minute order that the parties notify the Court within 24 hours of any personnel changes at CISOM. Pursuant to that minute order, Defendants notified the Court on May 21 that the deputy CIS Ombudsman had been reassigned to USCIS as of Sunday, May 18, the day before Mr. Sartini's testimony. Defs.' Notice, ECF No. 30; Sartini Decl. ¶ 4, ECF No. 30-1. With this reassignment, there remained only one employee—Mr. Sartini—assigned to any of the three DHS Oversight Offices.

Also on May 21, employees of the three offices whose separation dates were scheduled for May 23 received emails with information about their upcoming separation. One of the documents attached to those emails was a list of Frequently Asked Questions, which included the following response to a question about potential reassignment: "For the purposes of the RIF of CISOMB, CRCL and OIDO, there are no reassignment opportunities as the entirety of the offices were eliminated." B. Doe Decl. ¶ 4 & Ex. 1, ECF No. 31-1.

And on May 22, after the Court ordered Defendants to provide more information about Mr. Sartini's plans for the three offices, the most Defendants could offer is that a meeting regarding the plans occurred and certain parts of those vaguely described plans were discussed. Absent was any mention of high-level DHS approval for any parts of the plans, let alone timelines for their implementation. *See* Hemenway Decl., ECF No. 33-1. Defendants' latest declaration states that, the same day, the Secretary had designated an individual to serve as the OIDO Ombudsman. *Id.* ¶ 13. It further states that the declarant, who is already currently the DHS Principal Deputy Chief of Staff, has also been named Acting Officer for Civil Rights and Civil Liberties, as of an unspecified date. *Id.* ¶ 1.

**LEGAL STANDARD**

To obtain a temporary restraining order, "the moving party must show: (1) a substantial likelihood of success on the merits; (2) that it would suffer irreparable injury if the [temporary restraining order] were not granted; (3) that [such an order] would not substantially injure other interested parties; and (4) that the public interest would be furthered" by the order. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (citations omitted); *see also Hall v. Johnson*, 599 F. Supp. 2d 1, 3 n.2 (D.D.C. 2009) ("[T]he same standard applies to both temporary restraining orders and to preliminary injunctions." (citation omitted)). "When the movant seeks to enjoin the government, the final two TRO factors—balancing the equities and the public interest—merge." *D.A.M. v. Barr*, 474 F. Supp. 3d 45, 67 (D.D.C. 2020) (citing *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016)).

**ARGUMENT**

**I.     Plaintiffs are likely to succeed on the merits.**

Plaintiffs are likely to establish both organizational and associational standing to pursue their claims. Moreover, they are likely to succeed on their first cause of action because Defendants have failed for two months to perform statutory functions associated with the three DHS Oversight Offices, without any authority for neglecting those functions. Finally, Plaintiffs are likely to succeed on their Administrative Procedure Act (APA) claims because Defendants' March 21 stop-work order ceasing performance of CRCL's, CISOM's, and OIDO's statutory functions was a final agency action that exceeded Defendants' statutory authority, was contrary to law, and was arbitrary and capricious. The Court can issue interim relief to redress the ongoing harms being caused by Defendants' unlawful acts, regardless of whether Defendants later hire new staff to perform the offices' statutory functions through a (currently hypothetical) reorganization.

### A. Plaintiffs are likely to establish standing.

Plaintiffs incorporate the arguments made in their opening and reply memoranda on their pending motion for a preliminary injunction regarding organizational and associational standing, ECF Nos. 15-1 and 24. In short, Plaintiffs have introduced evidence through declarations establishing that Defendants' RIFs and stop-work order have perceptibly impaired their ability to perform their core activities. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024); *People for the Ethical Treatment of Animals v. USDA*, 797 F.3d 1087, 1094 (D.C. Cir. 2015).

Specifically, Plaintiff RFK Human Rights has spent time and money visiting detention facilities to prepare for litigation in cases that it would have in the past handled through complaints to CRCL and has diverted resources away from its criminal detention work because of the additional immigration detention work that the cessation of CRCL and OIDO operations has necessitated. Enriquez Decl. ¶ 15–16, ECF No. 15-3; Second Enriquez Decl. ¶ 6–7, ECF No. 25-1. Plaintiff SBCC has forgone filing CRCL complaints about potential detention of migrants at the Roosevelt Reservation, Serrano Decl. ¶ 13, ECF No. 15-5, and has instead focused its limited resources on direct engagement with CBP despite CBP's relative lack of responsiveness in the past, *id.* ¶ 14. Finally, Plaintiff UJC is limited to using the case information channels provided by CIS now that it can no longer rely on CISOM to assist when its clients' petitions for immigration relief have been pending with CIS for more than the standard processing time or when CIS has made errors affecting those petitions, Ziegeweid Decl. ¶ 7, ECF No. 15-4, even though relying on these inferior case assistance mechanisms will reduce the effectiveness of the services UJC can provide its clients, *id.* ¶¶ 10–11. All of these harms are directly traceable to Defendants' actions of stopping all the DHS Oversight Offices' work and would be redressed by an order from this Court requiring that work to resume, or by an order preventing further dismantling of the offices

6

by temporarily retaining staff in their positions.

Plaintiff SBCC can also establish associational standing on behalf of its members. A membership organization may assert associational standing if "(1) at least one member of the association has standing to sue in her own right (based on a showing of harm, causation, and redressability), (2) the interests the association seeks to protect by suing on its members' behalf are germane to its purpose, and (3) neither the asserted claim nor the relief requested requires individual members to participate in the litigation." *Ctr. for Biological Diversity v. Regan*, 734 F. Supp. 3d 1, 32 (D.D.C. 2024) (quoting *Ctr. for Biological Diversity v. EPA*, 56 F.4th 55, 66 (D.C. Cir. 2022)). Here, the declarations of Pedro Rios (ECF No. 15-6), Margaret Cargioli (ECF No. 15-7), Sister Tracy Horan (ECF No. 15-12), and Laura St. John (ECF No. 15-13) establish that at least four SBCC member organizations are suffering injuries in fact resulting from the suspension of the DHS Oversight Offices' statutory functions and would have standing to sue in their own right. Moreover, this action is germane to SBCC's mission of seeking to improve living conditions and prevent loss of life on and around the southern border. Serrano Decl. ¶ 7. And because the suit "turns entirely on whether [the agency] complied with its statutory obligations, and the relief [SBCC] seeks is invalidation of agency action," rather than damages for any individual SBCC member, individual member participation is not necessary. *Ctr. for Sustainable Econ. v. Jewell*, 779 F.3d 588, 597 (D.C. Cir. 2015); *see Powder River Basin Res. Council v. U.S. Dep't of Interior*, 749 F. Supp. 3d 151, 163 (D.D.C. 2024) (participation of individual members unnecessary where organization sought only prospective relief and not damages).

### B. Plaintiffs are likely to succeed on their ultra vires claim.

Under our constitutional system, the power to make laws rests exclusively with Congress. *See* U.S. Const. art. I, § 1. As part of that authority, the power to establish, reorganize, restructure,

7

and abolish agencies likewise rests squarely with Congress. *See Myers v. United States*, 272 U.S. 52, 129 (1926) ("To Congress under its legislative power is given the establishment of offices [and] the determination of their functions . . . .").

Conversely, the Constitution contains no provision authorizing the executive "to enact, to amend, or to repeal statutes." *Clinton v. City of New York*, 524 U.S. 417, 438 (1998); *see J. Does 1-26 v. Musk*, No. 25-1273, 2025 WL 1020995, at *7 (4th Cir. Mar. 28, 2025) (Gregory, J., concurring) ("[T]he Executive branch may not eliminate a congressionally created and funded agency without congressional authorization.").

Here, Defendants have flouted the careful balance of powers that the Framers designed by acting unilaterally to eliminate the three DHS Oversight Offices and to end performance of their statutorily required functions. This unilateral action also violates 6 U.S.C. § 452(b), which prohibits the Secretary of Homeland Security from "aboli[shing] any agency, entity, organizational unit, program, or function established or required to be maintained by" the Homeland Security Act or by any other statute.

Defendants' public statements explaining why they took the actions challenged here suggest that they disagree with the reasons Congress created these oversight offices, which they consider unnecessary.[1] But the mission of DHS, as established by Congress, includes "ensur[ing] that the civil rights and civil liberties of persons are not diminished by efforts, activities, and programs aimed at securing the homeland." 6 U.S.C. § 111(b)(1)(G). Moreover, Defendants' disagreement with Congress's judgment, as reflected in provisions establishing, funding, and

---

[1] *See* Ximena Bustillo, *Homeland Security Makes Cuts to Civil Rights and Oversight Offices*, NPR (Mar. 21, 2025), https://perma.cc/B9HN-RWRC (quoting DHS spokesperson stating that the offices were abolished because they "obstructed immigration enforcement" and "undermin[ed] DHS's mission").

assigning functions to the DHS Oversight Offices, does not permit Defendants to ignore or override those congressional directives. *Cf. Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 325 (2014) ("An agency has no power to 'tailor' legislation to bureaucratic policy goals by rewriting unambiguous statutory terms.").

Plaintiffs are thus likely to prevail on their claim that Defendants' actions usurped legislative authority conferred upon Congress by the Constitution. *See* Compl. ¶¶ 62–65, ECF No. 6; *see also Armstrong v. Exceptional Child Ctr.*, 575 U.S. 320, 327 (2015) ("The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England."); *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010) (recognizing a right of action under the Constitution to seek injunctive relief for a separation of powers violation).

### C.     Plaintiffs are likely to succeed on their Administrative Procedure Act claims.

As described at greater length in Plaintiffs' preliminary injunction and reply memoranda, and as incorporated by reference here, Plaintiffs are challenging a discrete, final agency action taken by Defendants on March 21. That final agency action to abolish the DHS Oversight Offices was reflected in the RIF notices sent to employees of those offices, which stated that the offices and all positions in those offices were being "abolished" and were subject to "dissolution." Enriquez Decl. ¶ 17; A. Doe Decl., ECF No. 15-9, Ex. D; Vitullo Decl., ECF No. 15-11, Ex. E. This action, also reflected in a stop-work order that remains in effect to this day, represented the consummation of the agency's decisionmaking, even if the agency later changes its mind and announces an intent to rebuild the offices. "The mere possibility that an agency might reconsider … does not suffice to make an otherwise final agency action nonfinal." *Sackett v. EPA*, 566 U.S. 120, 127 (2012); *see also Nat'l Env't Dev. Ass'ns Clean Air Project v. EPA*, 752 F.3d

999, 1006–07 (D.C. Cir. 2014) (stating that agency action may be final even if it is subject to change).

But here, the agency has not changed course. As recently as May 21, Defendants sent notices to employees of the three DHS Oversight Offices reiterating that their offices were being "eliminated" in their "entirety." B. Doe Decl., ECF No. 31-1, Ex. 1. Defendants have submitted nothing to the Court that changes the finality of the agency action challenged here: the stop-work order issued more than two months ago and the RIFs going into effect in mere hours. The government's aspirational plans for reorganization—plans with no clear approval, details, or timeline, as to any of the three offices, *see* Hemenway Decl. ¶¶ 3, 4, 13 (noting for all three offices that "staffing will take time")—do nothing to change the fact that the agency actions Plaintiffs challenge are both final and unlawful. *See, e.g.*, *New York v. McMahon*, 25-cv-10601 (D. Mass. May 22, 2025), ECF No. 45 (preliminarily enjoining RIFS of large percentage of Department of Education employees, which would cause "the effective incapacitation of the Department to carry out congressionally mandated functions through the guise of what Defendants argue is a 'reorganization'"). Where an agency professes an intent to reorganize but the actions it has taken to date point to the agency having been dissolved, or to its statutory functions being halted, courts have afforded preliminary injunctive relief to ensure that those functions are performed pending further clarity on the reorganization. *See, e.g.*, *Nat'l Treasury Emps. Union v. Vought* (*NTEU*), — F. Supp. 3d —, No. 1:25-cv-00381, 2025 WL 942772, at *46 (D.D.C. Mar. 28, 2025), *stay denied in relevant part*, No. 25-5091 (D.C. Cir. Apr. 11, 2025; as modified Apr. 28, 2025); *Rhode Island v. Trump*, — F. Supp. 3d —, No.1:25-cv-128, 2025 WL 1303868, at *11-12 (D.R.I. May 6, 2025); *Wiley v. Kennedy*, No. 2:25-cv-227, 2025 WL 1384768, at *13 (S.D.W. Va. May 13, 2025) (granting preliminary injunction to rescind RIF notices to employees of the Respiratory Health

10

Division of the National Institute for Occupational Safety and Health performing black lung tests for coal miners, and ordering that "in the event of reorganization, the Court ORDERS that there be no pause, stoppage or gap in the protections and services mandated by Congress in the Mine Act and the attendant regulations for the health and safety of miners").

The actions Defendants took on March 21 were unlawful and should be set aside. The actions exceeded Defendants' statutory authority under the Homeland Security Act, which allows only reallocation of functions that are not "established" or "required to be maintained" by statute. 6 U.S.C. § 452(b)(2). Here, all three offices perform functions that were established and required by statute—specifically, by 6 U.S.C. § 345 and 42 U.S.C. § 2000ee-1 (CRCL), 6 U.S.C. § 272 (CISOM), and 6 U.S.C. § 205 (OIDO). Thus, Defendants' actions of ordering the cessation of all work of those offices and ordering the termination of essentially all employees both exceed their statutory authority and are contrary to law. 5 U.S.C. § 706(2)(a), (c). Finally, those actions were arbitrary and capricious, as Defendants have offered no reasons for why all work was stopped and all employees subject to RIF, and have also failed to consider the reliance interests of the many people and organizations that rely on the DHS Oversight Offices, including Plaintiffs. *See DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 16 (2020).

II. **Plaintiffs are suffering and will suffer irreparable harm absent a TRO.**

Plaintiffs are suffering, and will continue to suffer, irreparable injury from Defendants' dissolution of the DHS Oversight Offices. *See* PI Mem. at 35. Since the DHS Oversight Offices effectively ceased all operations on March 21—including all statutorily mandated functions—Plaintiffs' core activities have been "perceptibly impaired," and it has become "more difficult" for them to carry out their missions. *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 8 (D.C. Cir. 2016) (internal quotation marks omitted). Plaintiffs have made these showings both in their previous filings, PI Mem. at 35–37; Reply Mem. at 21–22, and above, *supra* section I-A.

11

The harm to Plaintiffs is already occurring because no statutorily mandated work is being performed by OIDO or CRCL. Both of those offices have one or fewer employees, who were either just appointed to those roles, are performing additional functions within DHS simultaneously, or both. Hemenway Decl. ¶¶1, 13. Plaintiff RFK's mission of protecting detained individuals' human rights is more difficult in the absence of OIDO and CRCL because they must now spend time traveling to detention facilities and engaging in advocacy with ICE on behalf of detained people. Enriquez Decl. ¶ 15. SBCC's mission of promoting human rights and improving living conditions on the southern border is more difficult because it must now expend additional efforts seeking information and assistance from CBP directly regarding border conditions, including urgent and rapidly evolving issues, in the absence of CRCL. Serrano Decl. ¶¶ 13–14. And UJC's mission of serving the legal needs of domestic violence survivors is more difficult because UJC's lawyers have resorted to CIS customer service mechanisms that are less effective than CISOM in their efforts to get answers and resolutions for their clients. Ziegeweid Decl. ¶¶ 8–10. Although CISOM now has one employee handling a backlog of over 5000 complaints, he has expressed concern about how soon he will be able to line up any additional staff to help him to perform the tasks that he believes require around ten employees to perform adequately. Sartini Decl., ECF No. 30-1, ¶ 5; Hemenway Decl. ¶ 3.

The employees of all three offices will be separated from their employment *today*, which will make permanent the work stoppage giving rise to Plaintiffs' irreparable harm. In other words, these three statutorily mandated offices (aside from their newly appointed titular heads) will cease to exist within hours of this filing. However earnest Mr. Sartini's aspirations may be, it is implausible to suggest that those offices will promptly spring from nonexistent to functional, despite having essentially no employees to carry out those functions and DHS's repeated

representations that the offices will be abolished, at least in part, because they have "obstructed immigration enforcement" and "undermin[ed] DHS's mission."[2] A temporary restraining order requiring these offices to resume their functions—or, in the alternative, at least to prevent the official separation of all of their employees—is necessary to redress Plaintiffs' irreparable harm.

### III.     The balance of equities and public interest favor issuing a TRO.

The balance of the equities and public interest converge and strongly support granting Plaintiffs' requested emergency relief. "[T]here is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *New York*, No. 25-cv-10601 (D. Mass. May 22, 2025) (quoting *Newby*, 838 F.3d at 12). That is especially so here, where the number of individuals detained by DHS has increased precipitously and DHS has revoked legal status and ignored due process rights of various individuals, raising significant constitutional issues and increasing the importance of the work that the DHS Oversight Offices perform. *See* PI Mem. at 38–40 & nn.13–14.

As to the government's interest, "[i]t is well established that the Government 'cannot suffer harm from an injunction that merely ends an unlawful practice.'" *C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 218 (D.D.C. 2020) (quoting *Open Cmtys. All. v. Carson*, 286 F. Supp. 3d 148, 179 (D.D.C. 2017)); *see Rhode Island*, 2025 WL 1303868, at *17 (there is "no public interest in the perpetuation of unlawful agency action" (quoting Newby, 838 F.3d at 12)). Congress established these offices precisely because of the serious risk of civil and constitutional violations by DHS personnel. The President's authority is circumscribed by the Constitution and federal statutes, and the President's

---

[2] See Ximena Bustillo, *Homeland Security Makes Cuts to Civil Rights and Oversight Offices*, NPR (Mar. 21, 2025), https://perma.cc/B9HN-RWRC (quoting DHS spokesperson stating that the offices were abolished because they "obstructed immigration enforcement" and "undermin[ed] DHS's mission").

policy preferences cannot override these basic tenets of our constitutional form of government. Here, the public interest lies in preventing the unlawful elimination of statutory oversight until the Court has had a full opportunity to adjudicate the legal questions raised. Accordingly, the balance of the equities and the public interest strongly favor issuing a TRO.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' motion and order that Defendants reverse the March 21 stop-work order and rescind the March 21 RIF notices, which would return the parties to the last uncontested status which preceded the pending controversy. At a minimum and in the alternative, Plaintiffs respectfully request that the Court order that the RIFs set to take effect on May 23 be placed on hold until Defendants have hired sufficient staff to perform the statutory functions of CRCL, CISOM, and OIDO.

Dated: May 23, 2025

Respectfully submitted,

/s/ Karla Gilbride

| | |
|---|---|
| Michael C. Martinez (DC Bar No. 1686872) | Karla Gilbride (DC Bar No. 1005586) |
| Christine L. Coogle (DC Bar No. 1738913) | Adina H. Rosenbaum (DC Bar No. 490928) |
| Brian D. Netter (DC Bar No. 979362) | Public Citizen Litigation Group |
| Skye L. Perryman (DC Bar No. 984573) | 1600 20th Street NW |
| Democracy Forward Foundation | Washington, DC 20009 |
| P.O. Box 34553 | (202) 588-1000 |
| Washington, DC 20043 | kgilbride@citizen.org |
| (202) 448-9090 | |

*Counsel for All Plaintiffs*

| | |
|---|---|
| Anthony Enriquez (DDC Bar No. NY0626) | Sarah E. Decker (DDC Bar No. NY0566) |
| Sarah T. Gillman (DDC Bar No. NY0316) | Robert F. Kennedy Human Rights |
| Robert F. Kennedy Human Rights | 1300 19th Street NW, Suite 750 |
| 88 Pine Street, Suite 801 | Washington, DC 20036 |
| New York, NY 10005 | (202) 559-4432 |
| (917) 284- 6355 | |

*Counsel for Plaintiff RFK*

14