UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT F. KENNEDY HUMAN RIGHTS; SOUTHERN BORDER COMMUNITIES COALITION; URBAN JUSTICE CENTER,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of Homeland Security,<br><br>Defendants. | Civil Action No. 25-1270-ACR |

**DECLARATION OF JAVIER HIDALGO**

I, Javier Hidalgo, declare as follows:

1. I am over the age of 18 and competent to testify to the matters described below. This declaration is based on my personal knowledge and information that has been shared with me through conversations with my colleagues.

2. I am the legal director at RAICES, the largest immigration legal services organization in Texas. RAICES provides free and low-cost legal services in several areas, including asylum applications, removal defense, DACA renewals, and status changes.

3. Some of our clients are in immigration detention, and we have filed complaints with both CRCL and OIDO regarding their conditions of confinement. We tend to file individual complaints about medical neglect or unfair treatment with OIDO and reserve CRCL complaints for more widespread or systemic issues.

1

4. RAICES filed a complaint with CRCL on May 13 to document the fact that multiple children were being detained with their parents at the Dilley Detention Center for more than twenty days in violation of the Florence Settlement Agreement (FSA). A true and correct copy of this complaint is attached to this declaration as Exhibit 1.

5. To date, we have received no response to the CRCL complaint about children in detention. RAICES staff visit the Dilley facility in person approximately twice a week, and through remote visitation at least 4 days a week, and have observed that at least 50 children continue to be detained there, and some have been detained for as long as 53 days.

6. In the last three months, I have observed a difference in how ICE and contractor personnel in detention facilities act towards detained people. For example, families have reported threats of separation and potential retaliatory actions. I believe this change has happened because there are fewer channels for detained people to report abuses with CRCL being either nonexistent or reduced to a skeleton crew, and there is less of an oversight presence at the facilities with OIDO case managers no longer being there.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 6, 2025

_____
Javier Hidalgo

# EXHIBIT 1



FOUNDED IN 1986, RAICES IS THE LARGEST IMMIGRATION LEGAL SERVICES PROVIDER IN TEXAS

RAICESTEXAS.ORG

May 13, 2025

Via Electronic Mail

Office for Civil Rights and Civil Liberties
U.S. Department of Homeland Security
Compliance Branch, Mail Stop #0190
2707 Martin Luther King, Jr. Ave., SE
Washington, DC 20528-0190

RE: DHS's Failure to Comply with the Flores Settlement Agreement and Continued Violation of Rights of Detained Juveniles

Dear Sir/Madam:

The undersigned organization, Refugee and Immigrant Center for Education and Legal Services ("RAICES"), hereby files the present complaint on behalf of several children and their families who have been detained at the Dilley Immigration Processing Center in Dilley, Texas ("Dilley Detention Center"). The Department of Homeland Security (DHS) has detained these children and their parents in violation of the *Flores* Settlement Agreement ("FSA"). The FSA has been construed to permit DHS to detain immigrant children up to 20 days in some cases, at which point DHS is to release them to a sponsor in the United States.[1]

---

[1] RAICES does not concede that *Flores* allows DHS to detain children at the Dilley Detention Center for 20 days. Rather, RAICES uses 20 days as a benchmark because this is a timeframe Judge Gee found *may be* acceptable under *Flores*, specifically when DHS acts under extenuating circumstances, in good faith, and with due diligence. *See Flores v. Lynch*, Case No. CV 85-04544 DMG (Ex), 10-11 (C.D. Cal. Aug. 21, 2015) (Order re Response to Order to Show Cause) ("At a given time and under extenuating circumstances, if 20 days is as fast as Defendants, in good faith and in the exercise of due diligence, can possibly go in screening family members for reasonable or credible fear, then the recently-implemented DHS polic[i]es *may fall* within the parameters of Paragraph 12A of the Agreement.") (emphasis added), *available at* https://www.aila.org/File/Related/14111359p.pdf; *see also Flores v. Reno*, Case No. CV 85-4544-RJK (Px), Stipulated Settlement Agreement, January 17, 1997, *available at* https://cliniclegal.org/sites/default/files/attachments/flores_v._reno_settlement_agreement_1.pdf and *Flores v. Reno*, Case No. CV 85-4544-RJK (Px), Stipulation Extending Settlement Agreement and for Other Purposes; and Order Thereon, December 7, 2001 (providing guidance on the care and custody of minor non-citizens in government custody); *see also Flores v. Sessions*, No. 85-cv-04544-DMG-AGR, 2017 WL 6060252 (C.D. Cal. June 27, 2017) (Order Re Plaintiffs' Motion to Enforce and Appoint a Special

| **SAN ANTONIO** | **AUSTIN** | **CORPUS CHRISTI** | **DALLAS–FORT WORTH** | **HOUSTON** |
|---|---|---|---|---|
| P.O BOX 786100 | P.O. BOX 41359 | P.O. BOX 3926 | P.O. BOX 565928 | P.O. BOX 460769 |
| SAN ANTONIO, TX | AUSTIN, TX | CORPUS CHRISTI, TX | DALLAS, TX | HOUSTON, TX |
| 78278 | 78704 | 78463 | 75356 | 77056 |

RAICES

RAICES[2] has recently seen a disturbing trend in which DHS has detained children and their parents at the Dilley Detention Center far longer than the 20-day period contemplated by the FSA. RAICES alleges that, through these actions, multiple components of DHS, including Customs and Border Protection (CBP), Immigration and Customs Enforcement (ICE), and U.S. Citizenship and Immigration Services (USCIS), violate the civil rights and civil liberties of these children and their parents.

**Factual Background: There is a consensus that the detention of children is harmful to their well-being**

The detention of children is a globally-condemned issue. The United Nations Convention on the Rights of the Child is the international legal framework for the protection of children's basic rights and is "the most rapidly and widely ratified human rights treaty in history."[3] This defining legal framework for the treatment of children emphasizes "freedom from arbitrary arrest and detention (Article 37), the provision of special protection to children seeking asylum (Article 22), and humane and appropriate treatment of children in detention (Article 37)."[4] As of 2014, only Somalia, South Sudan, and the United States have not ratified the U.N. Convention on the Rights of the Child.[5] The United States has, however, ratified the American Convention on Human Rights, which contemplates a child's right to protection by his government (Article 19), a child's right to being treated in that child's best interest (Article 17), rights to personal liberty rights against unlawful detention (Article 7), and the right for non-criminals to avoid punishment (Article 5).[6]

Scientific evidence supports a legal framework for the protection of children, finding that the detention of children leads to negative health outcomes.[7] According to the American Academy of Pediatrics, "Expert consensus has concluded that even brief

---

Monitor), *available at* https://www.aila.org/File/Related/14111359v.pdf. Collectively, RAICES refers to these sources of law as the "FSA." It is not RAICES' position that the arrival of asylum-seeking families at the southern border is an "extenuating circumstance" that requires the detention of families.

[2] Since August 2014, RAICES has provided legal services and representation to thousands of families detained in ICE family detention centers.

[3] Human Rights Watch, 25th Anniversary of the Convention on the Rights of the Child, November 17, 2014, https://www.hrw.org/news/2014/11/17/25th-anniversary-convention-rights-child.

[4] United Nations General Assembly, Convention on the Rights of the Child, November 20, 1989 (enacted with force September 2, 1990), *available at* https://www.ohchr.org/Documents/ProfessionalInterest/crc.pdf.

[5] The Washington Post, *Why Won't the U.S. Ratify the U.N.'s Child Rights Treaty?*, November 21, 2014, https://www.washingtonpost.com/blogs/post-partisan/wp/2014/11/21/why-wont-the-u-s-ratify-the-u-n-s-child-rights-treaty/?utm_term=.2268d1d8bbf1.

[6] Inter-American Commission on Human Rights, American Convention on Human Rights, November 22, 1969 (enacted same date), *available at* https://www.cidh.oas.org/basicos/english/basic3.american%20convention.htm.

[7] *See generally* Physicians for Human Rights, the Impact of Immigration Detention on Migrant Health, PHR Issue Brief (October 2018), https://s3.amazonaws.com/PHR_other/factsheets/PHR_Asylum_Issue_Brief_Immigration_Detention_Impact_on_Mental_Health.pdf.

RAICES

detention can cause psychological trauma and induce long-term mental health risks for children … ***there is no evidence indicating that any time in detention is safe for children.***"[8] Clinical evidence from the study of detention of unaccompanied, asylum-seeking minors shows "forced detention is associated with a high risk of posttraumatic stress disorder, anxiety disorder, depression, aggression, psychosomatic complaints, and suicidal ideation."[9]

The medical and legal communities have called for the limited detention of children and the expansion of programs that provide alternatives to detention. A policy statement from the American Academy of Pediatrics called for "limited exposure of any child to current DHS facilities (i.e., Customs and Border Protection and Immigration and Customs Enforcement facilities)."[10] In their visits to family detention centers, pediatric and mental health advocates have found "discrepancies" between the services ICE claimed were offered and those actually offered, as have legal advocates.[11]

**Legal Background: Children are granted civil rights under *Flores***

The *Flores* Settlement Agreement "sets out [a] nationwide policy for the detention, release, and treatment of minors in the custody of the INS."[12] The FSA governs the release of children in DHS custody, is still in effect today, and applies to all immigrant children under the age of 18, with regard to those detained with their parents.[13] The FSA applies to minors in expedited removal proceedings.[14]

Regarding the release of a minor, the FSA provides that "[u]pon taking a minor[15]

---

[8] (emphasis added) American Academy of Pediatrics, Detention of Immigrant Children, Policy Statement (April 4, 2017), 6, *available at* https://pediatrics.aappublications.org/content/pediatrics/139/5/e20170483.full.pdf.

[9] Martin H. Teicher, Childhood trauma and the enduring consequences of forcibly separating children from parents at the United States border, BMC Medicine (August 22, 2018), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6103973/ (citing Baily CDR, Henderson SW, Taub AR, O'Shea G, Einhorn H, Verdeli H., The mental health needs of unaccompanied immigrant children: lawyers' role as a conduit to services, Grad Student J Psychol. (2014), 15:3–17).

[10] American Academy of Pediatrics, Detention of Immigrant Children, Policy Statement (April 4, 2017), 1, *available at* https://pediatrics.aappublications.org/content/pediatrics/139/5/e20170483.full.pdf.

[11] *Id.* at 5; *see also* American Immigration Lawyers Association, the American Immigration Council, and the Catholic Legal Immigration Network Inc., Complaint to CRCL and OIG regarding the detention of infants at the South Texas Family Residential Center*,* February 28, 2019, *available at* https://www.immigrationjustice.us/advocacy/how-we-advocate/complaint-urges-immediate-release-of-infants-from-detention.

[12] *See Flores v. Reno*, Case No. CV 85-4544-RJK (Px),    9, Stipulated Settlement Agreement, January 17, 1997, *available at* https://cliniclegal.org/sites/default/files/attachments/flores_v._reno_settlement_agreement_1.pdf.

[13] *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016); *see also Flores v. Lynch*, Case No. CV 85-04544 DMG (Ex), 6 (C.D. Cal. Aug. 21, 2015) (Order re Response to Order to Show Cause), *available at* https://www.aila.org/File/Related/14111359p.pdf.

[14] *Flores v. Sessions*, No. 85-cv-04544-DMG-AGR, 2017 WL 6060252, 17, 23 (C.D. Cal. June 27, 2017) (Order Re Plaintiffs' Motion to Enforce and Appoint a Special Monitor), *available at* https://www.aila.org/File/Related/14111359v.pdf.

[15] "The term 'minor' shall apply to any person under the age of eighteen (18) years who is detained in the legal custody of the INS." *See Flores v. Reno*, Case No. CV 85-4544-RJK (Px),    4, Stipulated Settlement Agreement, January 17, 1997.

RAICES

into custody, the INS, or the licensed program[16] in which the minor is placed, shall make and record the prompt and continuous efforts on its part toward family reunification and the release of the minor pursuant to Paragraph 14."[17] Regarding the specifics of releasing a child, the FSA states "where the INS determines that the detention of the minor is not required either to secure his or her timely appearance before the INS or the immigration court, or to ensure the minor's safety or that of others, the INS *shall* release a minor from its custody without unnecessary delay, in the following order of preference, to: A. a parent."[18]

Prolonged detention of children and their parents in DHS custody and specifically at Dilley Detention Center violates the FSA's overarching principles for the prompt release of children to a child's most favored custodial placement—the child's parent. The separation of a child from their parent instead of joint release also runs contrary to the purpose of the FSA.[19] Accordingly, compliance with the FSA's letter and spirit requires the prompt release of children and their parents from the Dilley Detention Center.

Regarding the detention of a minor, when ICE takes a minor into custody and does not release them pursuant to Paragraph 14 of the FSA, the minor "shall be placed temporarily in a *licensed* program until … release can be effected … or until the minor's immigration proceedings are concluded, whichever occurs earlier." *Id.* at 19. If there is no appropriate licensed program available, DHS may place minors in an unlicensed facility but DHS must ensure the minor's release without unnecessary delay, if the child is not dangerous or a flight risk. **The Dilley Detention Center is an unlicensed facility and the government does not dispute this**.[20] In interpreting what it means to release minors "without unnecessary delay," the federal judiciary has defined this to mean minor children in unlicensed facilities must be released within twenty days.[21]

---

[16] "The term 'licensed program' shall refer to any program, agency or organization that is licensed by an appropriate State agency to provide residential, group, or foster care services for dependent children… [It] must also meet those standards for licensed programs set forth in Exhibit 1 [of the *Flores* Settlement Agreement]." *Id.* at 8.
[17] *Id.* at 18.
[18] *Id.* at 14 (emphasis added).
[19] *Reno v. Flores*, 507 U.S. 292, 295 (1993) (noting that release of a child "is easily done when the juvenile's parents have also been detained and the family can be released together").
[20] *Flores v. Sessions*, No. 85-cv-04544-DMG-AGR, 2017 WL 6060252, 28-29 (C.D. Cal. June 27, 2017) (Order Re Plaintiffs' Motion to Enforce and Appoint a Special Monitor); *see also Grassroots Leadership Inc., v. Tx. Dep't of Family and Protective Svcs.*, No. D-1-GN-15-004336 (Travis Co. District Ct., Texas, Dec. 2, 2016).
[21] Per footnote 1, RAICES reiterates that it does not concede the 20-day period is *per se* valid under *Flores*. *See Flores v. Lynch*, Case No. CV 85-04544 DMG (Ex), 10-11 (C.D. Cal. Aug. 21, 2015) (Order re Response to Order to Show Cause) ("At a given time and under extenuating circumstances, if 20 days is as fast as Defendants, in good faith and in the exercise of due diligence, can possibly go in screening family members for reasonable or credible fear, then the recently-implemented DHS polic[i]es *may fall* within the parameters of Paragraph 12A of the Agreement.") (emphasis added), *available at* https://www.aila.org/File/Related/14111359p.pdf.

RAICES

***DHS provided the 20-day period as being an operable length of time for the release of minors in its custody,*** [22] ***and DHS has used it as a benchmark for years.*** [23] The federal court system has enforced this benchmark against DHS in the past.[24] DHS has the discretion to release children and parents in expedited removal, regardless of any child or parent's individual case posture.[25]

RAICES is aware of multiple families detained in Dilley Detention Center in excess of 20 days, and some in DHS custody in excess of 50 days. Prolonged detention of children at the unlicensed Dilley Detention Center violates the FSA. Children may only be detained in unlicensed facilities under limited circumstances—circumstances that do not apply to the children RAICES represents.

**Conclusion**

We ask your office to compel ICE to follow its obligations under *Flores* and release these children with their families expeditiously. We ask you to investigate other past and present violations of the *Flores* norm of releasing children and parents within twenty days at the Dilley Detention Center. Further, we ask that you review any written decisions by DHS to continue detention despite the existing *Flores* requirements and any records documenting changes in DHS policy in adhering to *Flores*.

Please let us know if you need additional information. Thank you in advance for your prompt attention to this urgent matter.

Respectfully submitted,

Javier O. Hidalgo, J.D.
Legal Director
RAICES

---

[22] *Id.*
[23] *See Flores v. Sessions*, No. 85-cv-04544-DMG-AGR, 2017 WL 6060252, 28-29 (C.D. Cal. June 27, 2017) (Order Re Plaintiffs' Motion to Enforce and Appoint a Special Monitor) ("Defendants emphasize that they released 95 percent of 48,940 detainees booked into the three ICE family residential centers (Berks, Karnes, and Dilley) from October 23, 2015 to November 19, 2016, within 20 days of detention.").
[24] *Id.* at 31.
[25] *See id.* at 22 (discussing parole of detainees in expedited removal under 8 C.F.R. § 235.3(b)(2)(iii)) and INA § 236.
.