UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT F. KENNEDY HUMAN RIGHTS; SOUTHERN BORDER COMMUNITIES COALITION; URBAN JUSTICE CENTER,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of Homeland Security,<br><br>Defendants. | Civil Action No. 25-1270-ACR |

**PLAINTIFFS' MOTION FOR PARTIAL RECONSIDERATION OF JULY 11 ORDER**

Pursuant to Federal Rule of Civil Procedure 54(b), Plaintiffs respectfully move for reconsideration of the portion of the Court's July 11, 2025 order that denied Plaintiffs' motion for a preliminary injunction as moot. That interlocutory ruling is subject to revision at the Court's discretion "as justice requires." *Capital Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011). Reconsideration is appropriate in light of newly discovered evidence, *see Davis v. Joseph J. Magnolia, Inc.*, 893 F. Supp.2d 165, 168 (D.D.C. 2012), or when the Court has "misunderstood the parties," *see Ali v. Carnegie Institution of Wash.*, 309 F.R.D. 77, 81 (D.D.C. 2015) (citations and internal quotations omitted).

Pursuant to Local Rule 7(m), Plaintiffs notified Defendants of their intent to file this motion on July 24, 2025, and exchanged several emails about the newly discovered evidence before meeting and conferring via videoconference on July 29. Defendants oppose the relief requested in this motion.

**ARGUMENT**

Reconsideration is appropriate here for two reasons. First, as newly discovered evidence demonstrates, Defendants are not performing statutory functions at the heart of this case, which is directly harming Plaintiffs by interfering with their core activities. Accordingly, Plaintiffs' preliminary injunction motion is not moot, and the Court retains authority to grant effectual relief. Second, Plaintiffs did not withdraw their motion, and any contrary inference reflects a misunderstanding warranting correction.

**I.** Plaintiffs' motion for preliminary injunction is not moot. Mootness occurs only when it is "impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013). Motions for preliminary injunctive relief have been found moot when the plaintiff sought changes to conditions of confinement at a particular facility but was released or moved while the preliminary injunction was pending, such that the plaintiff could no longer benefit from the relief requested. *See, e.g.*, *Pinson v. DOJ*, 177 F. Supp.3d 474, 477–78 (D.D.C. 2016) (denying prisoner's preliminary injunction motion as moot following his transfer out of facility where he was allegedly subject to unconstitutional conditions). That is not the case here. Plaintiffs can still benefit from the preliminary relief they request—an order requiring Defendants to resume performing the statutory functions of the Office for Civil Rights and Civil Liberties (CRCL), the Citizenship and Immigration Services Ombudsman's Office (CISOM), and the Office of the Immigration Detention Ombudsman (OIDO).

Indeed, since the Court issued its July 11 order, Plaintiff RFK Human Rights (RFKHR) has obtained new evidence confirming that OIDO is no longer performing key functions. This evidence was not previously available, and came to light through RFKHR's ongoing efforts to advocate for a detained client. Specifically, on July 16, 2025, an employee of RFKHR emailed

2

OIDO to request assistance with serious medical problems being experienced by one of its clients, a detained person who is HIV positive and has a medical history of AIDS and tuberculosis. Fourth Decl. of Anthony Enriquez ¶¶ 3–12. RFKHR reached out to OIDO after an earlier complaint to CRCL and multiple attempts to obtain assistance directly from ICE yielded no results, based in part on assurances provided in this case that OIDO was functioning and able to receive complaints. *Id.* ¶ 11.

In response to the July 16 email, the employee received an automated message stating that OIDO is "no longer able to receive and/or address complaints." *Id.* ¶ 13 and Ex. A. The automated response offered no alternative method through which a complaint to OIDO could be submitted, in violation of OIDO's statutory obligation to "receive, investigate, resolve, and provide redress" for complaints from individuals in immigration detention. 6 U.S.C. § 205(b)(1).

This new evidence demonstrates that the same violations of law that caused Plaintiffs to file suit in April and to seek injunctive relief in early May are still occurring, and are continuing to irreparably harm Plaintiffs. The week after receiving this email, RFKHR employees expended limited resources traveling to Louisiana to visit this client and detention center officials in person, because their written outreach to ICE had not yielded results and because they could no longer rely on the assistance that OIDO previously provided in urgent medical situations like this one. Fourth Enriquez Decl. ¶¶ 14–20. During this visit, the Regional Health Services Manager for Geo Group, who oversees medical services at several immigration detention centers, confirmed that, until a few months ago, OIDO had played an essential role in ensuring that the medical needs of detained individuals like RFKHR's client were promptly addressed, but that OIDO is no longer providing this assistance. *Id.* ¶¶ 18–19.

The representations made during the parties' meet and confer discussions regarding this motion have only confirmed the offices' ongoing failure to fulfill statutory functions. First, government counsel sought to reassure Plaintiff RFKHR that its complaint to OIDO was being addressed because both OIDO and CRCL had forwarded it to ICE. Fourth Enriquez Decl. ¶ 23. However, CRCL and OIDO have an obligation to investigate the complaints they receive, not merely to pass them along to ICE. And they must coordinate those investigations to avoid redundancy, *see* 6 U.S.C. § 205(b)(6) (ensuring that OIDO functions are "complementary to existing functions" within DHS). Moreover, RFKHR has been trying to obtain assistance for its client through ICE for months without success, including by copying ICE officials directly on the same complaint it sent to OIDO. Fourth Enriquez Decl. ¶ 24. It was this continued lack of success working with ICE, combined with assurances from Defendants that OIDO was operational, that led RFKHR to reach out to OIDO in July in hopes that OIDO could intercede directly with detention center personnel by fulfilling its function of being "independent of Department agencies" like ICE. 6 U.S.C. § 205(a); Fourth Enriquez Decl. ¶ 11. Simply forwarding the complaint to ICE, with whom RFKHR had already been corresponding about the same issue, is an abdication of OIDO's statutory responsibility to "administer an independent … and confidential process to … investigate … and provide redress." 6 U.S.C. § 205(b)(1). *See also* 6 U.S.C. § 345(a)(6) (imposing upon CRCL an obligation to "investigate complaints" involving alleged violations of civil rights or civil liberties unless the Office of Inspector General chooses to investigate the complaint).

Second, Defendants' counsel suggested that RFKHR should not have sent a complaint to OIDO via email but should have instead used OIDO's online portal. Fourth Enriquez Decl. ¶ 25. However, prior to March 2025, RFKHR was told that complaints could be submitted to OIDO

4

through multiple methods, including email. *Id.*  If the DHS Oversight Offices have changed their policy and are now only accepting complaints sent via their online portals, without notifying members of the public of that change, this is yet further evidence that these offices are not performing their statutory functions.  *See* 6 U.S.C. § 345(a)(2) (requiring CRCL to "make public … how to contact the Officer"); 6 U.S.C. § 205(b)(2) (requiring that OIDO establish an "accessible and standardized" complaint process); 6 U.S.C. § 272(d)(3) (requiring that CIS Ombudsman contact information be "published and made available to individuals and employers served by the office").  This new evidence of statutory noncompliance, and the ongoing irreparable harm it is causing to Plaintiffs who seek redress from these offices, justifies revisiting the prior interlocutory ruling.  At a minimum, Defendants should be required to clarify how complaints can be submitted to ensure that they will be received and investigated by the DHS Oversight Offices, and this information should be disseminated to the general public and to immigration detention centers.  *See* ECF 45 (recounting reports that as of June 2025, information about how to file complaints with CRCL and OIDO had been removed from detention center dormitories).

**II.**     Plaintiffs did not withdraw their preliminary injunction motion.  The Court's conclusion that the preliminary injunction motion was moot occurred simultaneously with its granting of the parties' jointly proposed scheduling order.  But while the Court may have interpreted the parties' proposed scheduling order as a withdrawal by Plaintiffs of their preliminary injunction motion, Plaintiffs intended no such withdrawal.  To the contrary, Plaintiffs maintained, and continue to maintain, that interim relief is essential to prevent ongoing irreparable harm.  To the extent that the Court's ruling that the preliminary injunction is moot reflects a misunderstanding that Plaintiffs had withdrawn their motion, such an interpretation would

constitute the kind of "patent misunderstanding" that warrants reconsideration. *Ali*, 309 F.R.D. at 81.

## CONCLUSION

In light of the foregoing, Plaintiffs respectfully request that the Court reconsider the portion of its July 11 order denying Plaintiffs' request for preliminary injunctive relief as moot. While discovery remains essential in this case to resolve factual disputes and determine the extent of declaratory and permanent injunctive relief Plaintiffs will seek, Plaintiffs respectfully request that the Court grant preliminary injunctive relief as outlined in the accompanying proposed order requiring Defendants to perform the statutory functions of CRCL, CISOM and OIDO during the pendency of the litigation.

Dated: August 1, 2025

Respectfully submitted,

/s/ Karla Gilbride

Michael C. Martinez (DC Bar No. 1686872)
Christine L. Coogle (DC Bar No. 1738913)
Brian D. Netter (DC Bar No. 979362)
Skye L. Perryman (DC Bar No. 984573)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448- 9090

Karla Gilbride (DC Bar No. 1005586)
Adina H. Rosenbaum (DC Bar No. 490928)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
kgilbride@citizen.org

*Counsel for All Plaintiffs*

Anthony Enriquez (DDC Bar No. NY0626)
Sarah T. Gillman (DDC Bar No. NY0316)
Robert F. Kennedy Human Rights
88 Pine Street, Suite 801
New York, NY 10005
(917) 284- 6355

Sarah E. Decker (DDC Bar No. NY0566)
Medha Raman (DC Bar No. 90027539)
Robert F. Kennedy Human Rights
1300 19th Street NW, Suite 750
Washington, DC 20036
(202) 559-4432

*Counsel for Plaintiff RFK*