UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT F. KENNEDY HUMAN RIGHTS; SOUTHERN BORDER COMMUNITIES COALITION; URBAN JUSTICE CENTER,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of Homeland Security,<br><br>Defendants. | Civil Action No. 25-1270 |

**FOURTH DECLARATION OF ANTHONY ENRIQUEZ**

I, Anthony Enriquez, declare as follows:

1. I am over the age of 18 and competent to testify to the matters described below. This declaration is based on my personal knowledge and information that has been shared with me through conversations with my colleagues.

2. I am the Vice President of U.S. Advocacy and Litigation at Robert F. Kennedy Human Rights (RFK), a co-plaintiff and co-counsel in this matter.

3. RFK currently represents a transgender woman held in immigration detention at the South Louisiana ICE Processing Center in Basile, Louisiana. She has been certified by the New Orleans Police Department to be a victim of sex and labor trafficking and has applied with U.S. Citizenship and Immigration Services for a T-visa, a form of immigration status for victims of human trafficking. She is also seeking withholding of removal and deferral of removal, forms of

protection from deportation under U.S. law for people who can prove that it is more likely than not that they will be persecuted or tortured if they are removed to their country of origin.

4. Our client was arrested by Immigration and Customs Enforcement (ICE) officers in March 2025 at an ICE check-in she attended that she had been falsely told by officials was for the purpose of reducing her level of supervision.

5. Our client is HIV-positive and transgender and has a medical history of AIDS and tuberculosis. Prior to detention, she had recently completed vaginoplasty with orchiectomy for gender-affirming surgery and currently requires ongoing gynecological care to prevent post-operative complications, including adhesions, fissures, and infection.

6. When our client entered detention, she was under the primary care of a family nurse practitioner, who monitored her HIV viral load with routine blood tests. Her primary care provider also administered biweekly injections of sex hormones to our client to support her metabolism and to prevent bone degeneration and fractures; her HIV treatment, also known as antiretroviral therapy, increases the risk of bone density issues.

7. When our client entered detention, her primary care provider had recently referred her to a colorectal surgeon for cancer screening and evaluation due to recent symptoms consistent with colon cancer and increased risk of cancer due to HIV infection. That screening had not been completed before our client was detained.

8. Since our client's detention in March 2025, her health has rapidly deteriorated. She has presented with persistent cough, chest tightening, and has suffered fevers on multiple occasions, symptoms consistent with recurring tuberculosis infection. She has received only interrupted access to HIV and hormone medications, putting her at risk for HIV-related health

complications, bone injuries, and AIDS. She has not received screening for colon cancer recommended by her primary care provider.

9. Detention center officials have also denied our client post-operative treatment for her gender reassignment surgery. In May 2025, when she reported significant pain and discharge at the surgical site, indications of possible infection, medical personnel at the facility told her that they were not equipped to treat her medical needs and have no understanding of post-operative care for gender reassignment surgery.

10. Since our client's detention in March 2025, RFK has alerted ICE officials of her medical needs multiple times. We have sent multiple emails to the ICE Assistant Field Office Director with oversight responsibility for South Louisiana ICE Processing Center. We have also taken three in-person trips to the detention center in Basile, Louisiana in which we spoke personally to our client about her medical needs and then to detention center officers and medical staff and to ICE personnel with oversight responsibility over detention center operations.

11. Because our direct contact with ICE officials had not resulted in provision of medical care for our client, and because we had been informed through our participation in this litigation that OIDO was performing statutory functions to receive, investigate, and resolve cases of violations of rights of people in detention, in July I instructed an attorney on my staff to send a complaint to OIDO for our client at the South Louisiana ICE Processing Center.

12. On July 16, 2025, RFK sent an email to OIDO at oido_outreach@hq.dhs.gov, titled "URGENT: Notification of Need to Accommodate complex Medical Needs of Transgender Trafficking Survivor," along with the name and A# of our client and a description of her issues with denial of access to medical treatment. We used this email address because addresses for direct contacts at OIDO that we had previously used were no longer functional.

13. In response, we received an automated email that stated, "Thank you for contacting the Office of the Immigration Detention Ombudsman (OIDO). We are no longer able to receive and/or address complaints." A true and correct copy of this email is attached as Exhibit A.

14. Without access to the Office of the Immigration Detention Ombudsman (OIDO), our consistent communications to ICE officers have been unable to remedy our client's denial of access to medical treatment. So we have been forced to make costly in-person visits to the detention center in Louisiana to attempt to remedy our client's denial of access to medical care.

15. On July 21, 2025, I flew from New York to Louisiana to visit our client at the South Louisiana ICE Processing Center. Detention officials had advance notice of my visit because I had presented a form seeking access to the facility alongside Kerry Kennedy, the President of RFK Human Rights. Ahead of our trip to Louisiana, we both presented ICE officials with our names, identification, and organizational affiliation, and both signed agreements to abide by a code of conduct.

16. I met with our client on July 22, 2025, where she told me she had received inconsistent access to her HIV medications. She had recently recovered from a bout of fever that had not been attended to by detention center medical staff. She still felt weak.

17. Our client also told me that on the morning of my scheduled visit on July 22, detention center officers had told her for the first time that she was scheduled that same day for a medical appointment with an off-site transgender care specialist. She was surprised because this request had been denied throughout the previous four months of her detention. My client knew that I was only able to meet with her on July 22. Because attending the off-site medical appointment would have prevented her from meeting with her legal counsel, she regretfully told

ICE officials that she would not be able to attend that day but wished for the appointment to be rescheduled as soon as possible.

18. After meeting with our client on July 22, the next day I met with the Regional Health Services Manager, an employee of the Geo Group, a private prison company contracted to operate immigration detention centers across the country. He explained to me that he oversees medical services at several Geo Group facilities, including the South Louisiana ICE Processing Center. I learned from him that his role sometimes requires him to fill in for medical staff vacancies at the detention center and that he was aware of my client.

19. I asked him what the quickest and most helpful way would be to raise my client's medical needs with detention center officials. He told me that officers from OIDO had previously been very helpful in efficiently resolving medical needs for detained people. Because OIDO had an on-site officer at facilities, OIDO could directly approach detention center staff without the need for filing a formal complaint and could seek quick resolution of issues with medical treatment. I asked him if officers were still receiving communications from OIDO about issues and he said they hadn't received them for months. He said that our only option was to speak directly to ICE because OIDO staff was no longer present in detention centers and was no longer sending communications to detention center staff.

20. By speaking directly to the Regional Health Services Manager, I learned that he mistakenly believed our client had refused care with the transgender care specialist because she did not wish to be accompanied by an ICE officer to her appointment. When I explained that she had been forced to choose a visit with her attorney over access to medical care, but still wished to receive that care at a later date, he assured me that it would be rescheduled. This is the type of misunderstanding that OIDO would have been able to efficiently resolve in the past. Now, without

5

access to OIDO's services, RFK has been forced to spend our limited funds on in-person visits to attempt to resolve access to medical services for our client, including airfare, local accommodations and transportation, and travel meals for staff.

21.     On July 29, 2025, I met with counsel for defendants in this matter alongside co-counsel for plaintiffs via videoconference. The parties met at the invitation of defendants' counsel, after plaintiffs' counsel had informed them about the July 16 email to RFK from the OIDO e-mail account stating that OIDO was no longer able to receive or address complaints.

22.     RFK also took the meeting to seek assistance from defendants' counsel with remedying our detained client's lack of access to medical care. I explained the steps we had taken, including emailing ICE officials directly and contacting both CRCL and OIDO. I then asked what additional steps defendants' counsel proposed.

23.     In response, defendants' counsel said that both OIDO and CRCL had already forwarded to ICE the complaint we submitted to OIDO.

24.     But this has not remedied our client's lack of access to medical care. Moreover, ICE had already received the complaint, because we copied officials and office email addresses for ICE, CRCL, and OIDO on the same complaint we sent on July 16.

25.     I also asked defendants' counsel how RFK should submit OIDO complaints moving forward. Defendents' counsel said that an online portal on the OIDO web site was the appropriate manner to send complaints. This was a change from guidance that RFK had received from OIDO officials prior to March 2025. We had previously been told that OIDO complaints could be submitted a number of ways, including direct email to an officer or the office, by mail to the office for those without computer access, and—most crucially for the people detained in

immigration detention centers whose rights it is our mission to protect—through direct conversation with an OIDO officer at a detention center.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 1, 2025

                                                       _/s/ Anthony Enriquez_____
                                                      Anthony Enriquez

# EXHIBIT A

7/24/25, 4:50 PM  Robert F. Kennedy Human Rights Mail - Fwd: Automatic reply: [EXTERNAL] FW: Subject: URGENT: Notification of Need to Accommodate C…

Case 1:25-cv-01270-ACR    Document 50-1    Filed 08/01/25    Page 9 of 9



Anthony Enriquez <enriquez@rfkhumanrights.org>

## Fwd: Automatic reply: [EXTERNAL] FW: Subject: URGENT: Notification of Need to Accommodate Complex Medical Needs of Transgender Trafficking Survivor, Re: ██████████████████████████████████ (A#: ██████████)

**Sarah Decker** <decker@rfkhumanrights.org>  Thu, Jul 24, 2025 at 3:49 PM
To: Anthony Enriquez <enriquez@rfkhumanrights.org>

**Sarah Decker (she/her)**
Staff Attorney
U.S. Advocacy & Litigation
Robert F. Kennedy Human Rights

T: 908-967-3245
E: decker@rfkhumanrights.org
W: rfkhumanrights.org
Twitter | Facebook | Instagram

**EXPOSE INJUSTICE.**
**TEACH CHANGE.**
**SHAPE HISTORY.**

---------- Forwarded message ---------
From: **OIDO_Outreach** <oido_outreach@hq.dhs.gov>
Date: Wed, Jul 16, 2025 at 8:17 AM
Subject: Automatic reply: [EXTERNAL] FW: Subject: URGENT: Notification of Need to Accommodate Complex Medical Needs of Transgender Trafficking Survivor, Re: ██████████████████████████ (A#: ██████)
To: Sarah Decker <decker@rfkhumanrights.org>

Thank you for contacting the Office of the Immigration Detention Ombudsman (OIDO). We are no longer able to receive and/or address complaints.

Thank you,
OIDO