```
 1                IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA
 2

 3    Robert F. Kennedy Human          )
      Rights, et al.,                  ) Civil Action
 4                                     ) No. 25-cv-1270
                    Plaintiffs,        )
 5                                     ) EVIDENTIARY HEARING
      vs.                              )
 6                                     ) Washington, DC
      U.S. Department of Homeland      ) May 19, 2025
 7    Security, et al.,                ) Time:  11:00 a.m.
                                       )
 8                  Defendants.        )
     _____
 9
                   TRANSCRIPT OF EVIDENTIARY HEARING
10                            HELD BEFORE
                 THE HONORABLE JUDGE ANA C. REYES
11                    UNITED STATES DISTRICT JUDGE

12   _____

                           A P P E A R A N C E S
13
     For Plaintiffs:          Karla Gilbride
14                            Public Justice, P.C.
                              1620 L Street, NW
15                            Suite 630
                              Washington, DC  20036
16                            (202) 797-8600
                              Email:  Kgilbride@citizen.org
17
                              Michael C. Martinez
18                            Democracy Forward Foundation
                              P.O. Box 34553
19                            Washington, DC  20043
                              (202) 894-6582
20                            Email:  Mmartinez@democracyforward.org

21                            Anthony Enriquez
                              Robert F. Kennedy Human Rights
22                            80 Pine Street
                              Suite 801
23                            New York, NY  10005
                              (917) 941-9141
24                            Email:  Enriquez@rfkhumanrights.org

25
```

1  OIDO primarily intakes complaints from individuals in
2  detention, either CBP, Customs and Border Protection, and then
3  ICE, Immigration and Customs Enforcement.  And then for those
4  individuals in detention, they can file complaints about civil
5  liberties being deprived, medical needs.  And they intake those
6  complaints, they look at them, they try to resolve them, or the
7  portion that they can.  There's also a reporting requirement
8  there to Congress.  And then they also -- the other big piece
9  of it is they inspect detention facilities.
10 Q.  How about the Office of Civil Rights and Civil Liberties,
11 what are their duties?
12 A.  Their duties are to intake complaints, either EEO
13 complaints or Rehabilitation Act Section 504 complaints.  So it
14 could be requests for a medical accommodation.  And, again,
15 civil rights deprivations for any individual in the public who
16 has interfaced with the Department of Homeland Security.  They
17 also have an annual reporting requirement.  That report is
18 required to be made public.  And, yeah, that's their primary
19 responsibilities.
20 Q.  And you mentioned for all these offices, that they handle
21 complaints.  How do they handle complaints in the normal
22 course?
23 A.  They intake them via a web form.  There are other intake
24 methods, but the primary method is through a web form.  And
25 then they look at the complaints in their system.  My

| | |
|---|---|
| 1 | understanding from the individuals who I've spoken to in those |
| 2 | offices is they have an approach to analyze them.  They will |
| 3 | look to see if they have merit, they'll triage them to see if |
| 4 | there are trends, and then they work the portion that they can. |
| 5 | Q.  And how would you describe the level of authority each |
| 6 | office has in resolving these complaints? |
| 7 | A.  It's relatively minimal.  So it's primarily a persuasive |
| 8 | influence.  They do not have the ability to compel a change. |
| 9 | There is one caveat where CRCL, for -- I believe it's Section |
| 10 | 504 complaints of the Rehabilitation Act, can require a change, |
| 11 | but they typically will recommend something to CBP or ICE or, |
| 12 | in CRCL's case, any component within DHS, and then that office |
| 13 | can decide to take action or not.  And that's where the |
| 14 | programmatic recommendations for the cases -- they're typically |
| 15 | referring cases to the primary component and just saying please |
| 16 | take a look at this, we recommend X.  But the component is not |
| 17 | typically obligated to act on that request. |
| 18 | Q.  So you said they refer them to the primary components. |
| 19 | What is the role of the primary components in this process? |
| 20 | A.  The primary components are not obligated to do anything. |
| 21 | They can take action or not.  So, for -- a good example is that |
| 22 | CISOMB, which I'll use as an abbreviation for Citizenship and |
| 23 | Immigration Services Ombudsman.  They'll refer cases back to |
| 24 | USCIS and they build up in a queue and it's another queue for |
| 25 | USCIS to work.  And they can work it, but they don't have to. |

1   receipt and a year before a paper recommendation was issued.
2           So these are not claims that -- these are not offices
3   that supplant 911 or officers on the ground.  They have an
4   important oversight function, but they are not quick.  And so
5   the two-month or so intervening period here, when -- six months
6   to acknowledge receipt, a year to issue recommendations, we
7   are -- like, the timeline is not substantially slowed, if we
8   could staff back up and work these cases efficiently.
9           THE COURT:  Okay.
10  BY MR. DAVIS:
11  Q.  How does the department handle, sort of, these immediate
12  urgent needs that are raised in complaints?
13  A.  Well, so the department generally -- I mean, the first
14  response should always be from the officers on the ground.
15  Right?  And so if a detainee has a complaint, the officers
16  there are the first individuals who can provide a remedy.
17          The department intakes through the Office of the
18  Inspector General and then the office intakes through the
19  offices that we're discussing here.  But typically the remedy
20  looks like a written recommendation to the primary component
21  that the primary component either accepts or did does not
22  accept.
23  Q.  How do these offices remedy individual issues or complaints
24  like some of the ones the judge was mentioning?
25  A.  Typically, a caseworker will ask -- and this is how it

1  always is -- a caseworker will ask ICE or CPB to provide the
2  remedy as appropriate, and then they take whatever action they
3  deem fit.
4  Q.  How often are these individualized, versus more systemic,
5  the recommendations?
6  A.  It depends on the office.  So CRCL almost entirely deals
7  with the higher-level programmatic.  Even where there are
8  allegations of individual rights deprivations, it's not an
9  immediate response.  I don't know what the mix is between
10 programmatic and casework and that's a hard comparison to do.
11 Yeah, I just don't know.
12 Q.  And so, going forward, how do you -- you mentioned a plan,
13 how do you plan on ensuring that these offices meet their
14 statutory duties?
15 A.  So, at a high level, the plan is to make sure we have the
16 right number and the right type of job, of federal civil
17 servant identified, and to begin priority hiring actions for
18 those individuals, contractors, get them spun up, if they need
19 to increase.
20         So as we look at the mix of staffing, contractors did
21 a lot of the work of these three offices.  Perhaps the right
22 mix going forward, a mix that's more efficient for the
23 government is more contracting.  And that is on the table and
24 one of the primary recommendations that I will be making, is to
25 scale up the amount of contractors.  And then something I've