## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT F. KENNEDY HUMAN RIGHTS; SOUTHERN BORDER COMMUNITIES COALITION; URBAN JUSTICE CENTER, <br><br> PLAINTIFFS, <br><br> V. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, IN HER OFFICIAL CAPACITY AS SECRETARY OF HOMELAND SECURITY, <br><br> DEFENDANTS. | CIVIL ACTION NO. 25-1270-ACR |

## DEFENDANTS' RESPONSES TO
## PLAINTIFFS' FIRST SET OF DISCOVERY REQUESTS

Pursuant to the Scheduling Order entered in this case on July 11, 2025 (ECF No. 49), Plaintiffs propounded upon Defendants the following Interrogatories, Requests for Production of Documents, and Requests for Admission. Defendant Department of Homeland Security ("DHS") responds as follows:

## PRELIMINARY STATEMENT

1.      By making the accompanying responses and objections to Plaintiffs' Interrogatories, Requests for Production of Documents, and Requests for Admission, Defendants do not waive, and hereby expressly reserves, its right to assert any and all objections as to the admissibility of such responses into evidence in this action, or in any other proceedings, on any and all grounds including, but not limited to, competency, relevancy, materiality, and privilege. Further, Defendants make the responses and objections herein without in any way implying that it

considers the requests and interrogatories, and responses to the requests and interrogatories, to be relevant or material to the subject matter of this action.

2.     A response to a document request or interrogatory stating objections and/or indicating that documents will be produced shall not be deemed or construed that there are, in fact, responsive documents, that Defendants performed any of the acts described in the document request, interrogatory, or definitions and/or instructions applicable to the document request or interrogatory, or that Defendants acquiesce in the characterization of the conduct or activities contained in the document request, interrogatory, or definitions and/or instructions applicable to the document request or interrogatory.

3.     Defendants expressly reserve the right to supplement, clarify, revise, or correct any or all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

## **GENERAL OBJECTIONS**

1.     The following General Objections are continuing in nature and apply to each request and interrogatory. Accordingly, they are hereby incorporated into each response provided, as if fully set forth therein, unless expressly waived with regard to a particular request or interrogatory.

2.     Defendants object to any definition or instruction in Plaintiffs' First Set of Discovery Requests, insofar as they purport to broaden Defendants' obligations under the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Columbia, any order of this court, or any agreements by the parties.

3.      Defendants object to these requests and interrogatories on the grounds that they are overbroad, unduly burdensome, disproportionate to the needs of the case, and seek information that is not relevant. Fed. R. Civ. P. 26(b)(1); Fed. R. Evid. 401.

4.      Defendants object to these requests and interrogatories insofar as they seek information more appropriately sought through other means.

5.      Defendants object to these requests and interrogatories to the extent they seek information that is unnecessarily cumulative or duplicative of information sought by other discovery requests.

6.      Defendants object to these requests and interrogatories to the extent they seek information already in the possession, custody, or control of Plaintiffs.

7.      Defendants object to these requests and interrogatories to the extent they seek information that is available from public sources or third parties.

8.      Defendants object to these requests and interrogatories to the extent they seek information that is not within the custody, control, or possession of DHS.

9.      Defendants object to these requests and interrogatories to the extent they seek information that is protected from disclosure by the attorney-client privilege, attorney-work-product doctrine, the deliberative process privilege, the law enforcement privilege, or any other applicable privilege, protection, immunity, law, or rule.

10.     The objections and responses to these requests and interrogatories are subject to, and without waiver of, any right of DHS revise, correct, supplement, or clarify the content of the responses in accordance with the Federal Rules; to provide additional responsive information or documents in the future; and to rely upon such information or documents in any hearing or

proceeding, including, without limitation, any hearing, proceeding, or trial in the above-captioned case or any other action or proceeding.

11.     The responses and objections to these requests and interrogatories are subject to, and without waiver of, any right of Defendants to raise objections, including objections to other discovery requests directed at the subject matter of the requests or to any other discovery request; to make additional or supplementary objections to the requests; to produce additional information that might be responsive to the requests or that otherwise might be relevant to the above-captioned case; or to produce and refer to, or submit as evidence at trial, or at any hearing or proceeding in the above-captioned case or any other action or proceeding, any evidence, facts, information and documents not yet discovered or produced by Defendants.

12.     By providing responses to specific requests and interrogatories, Defendants do not concede that the requests and interrogatories seek information that is relevant to a claim or defense in the above-captioned case, or that the requests and interrogatories seek information that is proportional to the needs of the case. Defendants expressly reserve all further objections as to the relevance and admissibility of the information provided, as well as the right to object to further discovery relating to the subject matter of any information provided.

13.     Except for explicit facts admitted herein, no general admission of any nature whatsoever is implied or should be inferred from Defendants' responses to these requests and interrogatories.

14.     Defendants object to Instruction No. 4 to the extent that it seeks to impose any obligation inconsistent with the Federal Rules of Civil Procedure in general and Rule 26(b)(5) in particular, and on the ground that it is unduly burdensome.  Defendants shall produce any privilege log in a format consistent with the Federal Rules of Civil Procedure. Defendants further object to

this instruction and anything else in these requests that may imply Defendants will complete any production of documents by the response date; in accordance with Rule 34(b)(2)(B), Defendants anticipate making rolling productions of responsive documents.

15.     Defendants object to these interrogatories to the extent that they are compound and contain multiple subparts that should count separately toward the total number of permitted interrogatories, in accordance with Federal Rule of Civil Procedure 33(a)(1).

16.     Defendants object to the requests to the extent they seek documents created by or sent to litigation counsel, agency counsel assigned to this litigation, or other legal staff assigned to any inquiry related to the topics of the requests either for the defense of this litigation or for purpose of responding to inquiries outside of this litigation (including, but not limited to Freedom of Information Act (FOIA) requests or congressional inquiries), which are protected against disclosure by the attorney-client privilege and the attorney work product doctrine. Documents created by or sent to litigation counsel, agency counsel assigned to this litigation, or other legal staff assigned to collateral FOIA requests will not be included on Defendants' privilege logs.

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

1.     Defendants object to Definition Nos. 1, 4, 6, 11 as overly broad and unduly burdensome.  Defendants object to these Definitions to the extent they include "attorneys" who are not also employees of each respective Office or Department referenced as overly broad and unduly burdensome. Defendants also object to the inclusion of "attorneys" to the extent that the Definition seeks information protected by the attorney-client privilege. Defendants also object to the inclusion of "any other person acting . . . indirectly" on behalf of each respective Office or Department referenced as overly broad and unduly burdensome. Defendants object to the extent they include other persons "acting directly or indirectly" on the offices' or agencies' behalf.

Defendants interpret each of these respective Definitions to include federal employees, including detailees, and contract employees for those respective offices and DHS.

2.    Defendants object to Definition No. 3 as overly broad and unduly burdensome. "Complaint" as used herein includes complaints filed by the public regarding DHS policies and activities but does not include Equal Employment Opportunity complaints filed by DHS employees, former employees, and applicants for employment who allege discrimination in violation of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, the Rehabilitation Act of 1973, the Pregnancy Workers Fairness Act, the Equal Pay Act of 1963, the Genetic Information Nondiscrimination Act of 2008, and Executive Order 13152 prohibiting discrimination on the basis of parental status.  Defendants also object to the definition of "Complaint" as vague and overbroad to the extent it includes submissions or referrals outside of the Offices' established protocols for complaint submission and tracking.

3.    Defendants object to Definition Nos. 2 and 8 to the extent that they purport to impose obligations greater than those set forth in the Federal Rules of Civil Procedure.

4.    Defendants object to Definition Nos. 13 and 16 and overly broad and vague. Defendants interpret each respective Definitions to include federal employees, including detailees, and contract employees for those respective Departments.

5.    Defendants object to Definition No. 15. regarding the definition of "RIF" to the extent that it exceeds the scope of the present litigation.  The scope of this litigation is solely limited to the RIF of employees for the oversight offices to include OIDO, CISOMB, and CRCL ("DHS Oversight Offices").  Accordingly, these discovery responses shall not apply to any other offices or employees of DHS that may be subject to a RIF.

6.      Defendants object to Instruction No. 3 as unduly burdensome and disproportionate to the needs of the case.  Defendants further object to Instruction No. 3 to the extent that it purports to impose obligations greater than those set forth in the Federal Rules of Civil Procedure.

7.      Defendants object to Instruction No. 4 to the extent that it purports to impose obligations greater than those set forth in the Federal Rules of Civil Procedure and to the extent that it seeks information protected by the attorney-client, deliberative process, or any other applicable privileges.

8.      Defendants object to Instruction Nos. 5 and 9 to the extent that they purport to impose obligations greater than those set forth in the Federal Rules of Civil Procedure.

## OBJECTIONS AND RESPONSES TO INTERROGATORIES

1.      For each Interrogatory, identify each person who provided information or otherwise assisted in preparing Your response.

**RESPONSE**: Defendants object to this request to the extent that it seeks information that is protected by the attorney client privilege, work product privilege, or any other applicable privileges or protections from disclosure.  Defendants further object to the phrase "otherwise assisted" as vague and ambiguous.

Subject to and without waiver or limitation of these objections, Defendants submit that the following persons assisted with the preparation of this response: Ronald J. Sartini, Rodolfo Gomes, Claire Schmitt, Samual Kahsay, Nicole Barksdale-Perry, Rebecca Freeman, Ryan Weisbrod, and Roland Edwards.

2.      Describe the consultation process that You engaged in before deciding to perform a RIF of nearly all employees at the DHS Oversight Offices, including the individuals consulted,

the factors considered, and the plans for transferring functions to other agency components or offices.

**RESPONSE**: Defendants object to this request to the extent that it seeks information that is protected by the attorney client privilege, work product privilege, or any other applicable privileges or protections from disclosure. Defendants further object to the undefined term "consultation process" as vague and ambiguous.

Subject to and without waiver or limitation of these objections, the decision to perform a RIF ultimately rested with the Secretary of the Department of Homeland Security and personnel acting on her behalf in an effort to comply with Executive Order 14210 (EO 14210), Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative. DHS initiated the RIF in order to immediately cease all discretionary activities in the DHS Oversight Offices. After making the initial decision to conduct a RIF, DHS assessed the number of government positions necessary to fulfill the statutory duties, assessed the type of positions best suited to perform the work, assessed which duties can be performed by existing contractors, and identified software tools and other efficiency mechanisms to triage complaints.

Subject to and without waiving the foregoing objections, the Department identifies the following individuals:

| **Name and Title** | **Office** |
|---|---|
| Roland Edwards, Chief Human Capital Officer | Office of the Chief Human Capital Officer |
| Jill DeMella, Executive Director, Human Capital Policy & Programs | Office of the Chief Human Capital Officer |
| Roger Brown, Deputy Chief Human Capital Officer, Policies, Programs, & Oversight | Office of the Chief Human Capital Officer |
| Nicole Barksdale-Perry, Executive Director, Human Resources Management & Services | Office of the Chief Human Capital Officer |
| Huy Le, Division Manager, Human Capital Data Analytics | Office of the Chief Human Capital Officer |

8

| Name and Title | Office |
|---|---|
| Donna "Mischell" Navarro, Deputy Chief Human Capital Officer, Strategic Operations | Office of the Chief Human Capital Officer |
| Joyce Blackwell, Executive Assistant | Office of the Chief Human Capital Officer |
| Ryan Weisbrod, Executive Officer | Office of the Chief Human Capital Officer |
| Maria "Ximena" Cordero, Workforce Relations Manager | Office of the Chief Human Capital Officer |
| Kayona Dade, Supervisory HR Specialist (ER/Performance Management) | Office of the Chief Human Capital Officer |
| Danielle Reed, Supervisory HR Specialist (Benefits/Retirement) | Office of the Chief Human Capital Officer |
| Bridget Bates, Supervisory Business Analytics Specialist | Office of the Chief Human Capital Officer |
| Gwendolyn Wooley, Supervisory HR Specialist (Accountability) | Office of the Chief Human Capital Officer |
| Jameera Hines, Senior HR Specialist (Accountability) | Office of the Chief Human Capital Officer |
| Reba Weaver, Supervisory HR Specialist (Payroll & Processing) | Office of the Chief Human Capital Officer |
| Debra Henderson, HR Programs & Processing Manager | Office of the Chief Human Capital Officer |
| Angela McMillan-Cooper, Supervisory HR Specialist (Payroll & Processing | Office of the Chief Human Capital Officer |
| Denascia Salley, Employment Services Manager | Office of the Chief Human Capital Officer |
| Ann Tipton, Director, Budget Division | Office of the Chief Financial Officer |
| Randolph "Tex" Alles, Under Secretary for Management | Office of the Deputy Under Secretary for Management |
| Adam Hoffman, Advisor to Chief Information Officer | Office of the Deputy Under Secretary for Management |
| Kristi Noem, Secretary | Immediate Office of the Secretary |
| Troy Edgar, Deputy Secretary | Immediate Office of the Secretary |
| Steven Munoz, Deputy Chief of Staff (Operations) | Immediate Office of the Secretary |
| Corey Lewandowski, Consultant (Chief Advisor to S1) | Immediate Office of the Secretary |
| Joseph Mazzara, General Counsel (Acting) | Office of the General Counsel |
| Neal Swartz, Associate General Counsel for General Law | Office of the General Counsel |
| John Koerner, Assistant General Counsel for Labor & Employment Law | Office of the General Counsel |
| Elizabeth Handelsman, Attorney-Advisor, Labor & Employment Law | Office of the General Counsel |

| Name and Title | Office |
|---|---|
| Okwede Okoh, Attorney-Advisor, Labor & Employment Law | Office of the General Counsel |
| Ryan Corle, Attorney-Advisor, Fiscal Law | Office of the General Counsel |
| Noah Peters | Office of Personnel Management |
| Jason Parman | Office of Personnel Management |
| Mike Mahoney | Office of Personnel Management |
| Anthony Armstrong | Office of Personnel Management |
| Kyle Schutt, on detail to DHS as Senior Advisor | General Services Administration |
| Jeremy Lewin | Department of Health & Human Services |

3.      Describe the consultation process that You engaged in before deciding to order all employees subject to the RIF at the DHS Oversight Offices to stop performing work as of March 21, 2025, including the individuals consulted, the factors considered, and the plans for completing or reassigning work in which those employees were engaged.

**RESPONSE**: Defendants object to this request to the extent that it seeks information that is protected by the attorney client privilege, work product privilege, or any other applicable privileges or protections from disclosure.  Defendants further object to the undefined term "consultation process" as vague and ambiguous.

Subject to and without waiver or limitation of these objections, the decision to perform a RIF ultimately rested with the Secretary of Homeland Security and personnel acting on her behalf. DHS initiated the RIF in order to immediately cease all discretionary activities in the DHS Oversight Offices.  DHS developed a plan to continue performing statutorily required functions of the DHS Oversight Offices while contemporaneously complying with Executive Order No. 14210, Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative, 90 Fed. Reg. 9669 (Feb. 14, 2025).   After making the initial decision to conduct a RIF, DHS assessed the number of government positions necessary to fulfill the statutory duties,

assessed the type of positions best suited to perform the work, reviewed the DHS Oversight Offices' existing contracts to determine which contracts were aligned to effectuate the statutory missions of the offices and assessed which duties could be performed by existing contractors, and identified software tools and other efficiency mechanisms to triage complaints. Defendants refer to the response to Interrogatory 1 for a list of individuals involved in the decision making to comply with EO 14210.

4.    How many complaints were pending with each of the DHS Oversight Offices on March 21, 2025? Of these, how many had resulted in open investigations or draft recommendation memos to DHS components as of March 21, 2025, and what is the current status of each of these open investigations and draft recommendation memos?

**RESPONSE**: Defendants object on the grounds that this request is overly broad and disproportionate to the needs of the case and seeks information that is not relevant to the allegations in Plaintiffs' complaint. Defendants further object to the term "complaint" and only respond as to complaints filed properly by the public regarding DHS policies and activities.  Defendants also object to the term "pending" as vague and ambiguous.

Subject to and without waiver or limitation of these objections, Defendants provide the following:

**CRCL**

CRCL had 778 complaints on March 21, 2025.  Forty-nine (49) have resulted in an open investigation, and one complaint resulted in a draft recommendation memorandum.  CRCL is currently reviewing its open investigations to determine whether recommendation memos will be issued. CRCL onboarded two full-time federal employees beginning August 11, 2025, who are

responsible for, *inter alia*, conducting investigations and technical assistance to federal and state law enforcement.

**OIDO**

OIDO had 388 complaints as of March 21, 2025, of which 375 resulted in an open investigation. Complaints are triaged by investigators, investigation commences on claims that contain actionable information, and then action is taken to remedy the complaint if warranted. Of the complaints with open investigations, 167 have been assigned to investigators, 22 are under review by investigators for triaging, 22 are awaiting component response, 10 are awaiting component action, 15 are awaiting an onsite visit from investigators, 48 are under extended review, and 91 are under supervisory review. No complaint has yet resulted in a draft recommendation memorandum, nor will likely result in a draft recommendation memorandum because OIDO does not typically issue such memorandum.

**CISOMB**

CISOMB had 4,489 inquiries under review by CISOMB staff on March 21, 2025. CISOMB does not open investigations or draft recommendation memos to USCIS. Rather, recommendations are made in an annual report and after analyzing the prior year's inquiries for trends and common pain points—they are not directly linked to any one inquiry or set of inquiries.

5.    Identify all complaints filed with each of the DHS Oversight Offices since March 21, 2025, including for each Complaint a) the complaint number; b) the complainant; c) the subject matter; d) the date received; and e) the current status of the complaint, including whether an investigation has been opened and whether any action has been taken or any informal advice provided or recommendations made based on the complaint.

12

**RESPONSE**: Defendants object to this request to the extent that it seeks information that is protected under the Privacy Act, 8 U.S.C. § 1367, 8 C.F.R. § 208.6, or any other applicable privileges or protections from disclosure. Defendants further object on the grounds that this request is overly broad and disproportionate to the needs of the case and seeks information that is not relevant to the allegations in Plaintiffs' complaint. Defendants further object to the term "complaint" and only respond as to complaints properly filed by the public regarding DHS policies and activities.

Subject to and without waiver or limitation of these objections, with respect to CRCL's response to Interrogatory No. 5, as of August 12, 2025, Defendants have identified 2,099 complaints. Defendants object to providing the requested information for such a large number of complaints as unduly burdensome and unreasonable. However, in effort to respond in good faith, Defendants include an attachment that summarizes the information sought in this Interrogatory. Additionally, Defendant has attached a summary chart of 3,864 inquiries for CISOMB from its Case Assistance Analytics and Data Integration (CAADI) database and 37 OIDO complaints from its Immigration Detention Case Management System.

6.      Identify all Complaints resolved, dismissed, or otherwise closed by each of the DHS Oversight Offices since January 20, 2025, including for each Complaint a) the complaint number; b) the complainant; c) the subject matter; d) the date received; e) the date of resolution/closure; and f) the manner of resolution/closure (e.g., dismissal, corrective action, referral).

**RESPONSE**: Defendants object to this request to the extent that it seeks information that is protected under the Privacy Act, 8 U.S.C. § 1367, 8 C.F.R. § 208.6, or any other applicable privileges or protections from disclosure. Defendants further object on the grounds that this

request is overly broad and disproportionate to the needs of the case and seeks information that is not relevant to the allegations in Plaintiffs' complaint. Defendants further object to the term "complaint" and only respond as to complaints properly filed by the public regarding DHS policies and activities.

Subject to and without waiver or limitation of these objections, Defendants refer Plaintiffs to their response for Interrogatory No. 5.

7.     Of the complaints pending with CISOMB on March 21, 2025 referenced in response to Interrogatory No. 4, how many of these complaints involved a) inquiries from or on behalf of alleged victims of human trafficking or other unlawful activity seeking T or U nonimmigrant status; b) inquiries from alleged victims of intimate partner or domestic violence seeking immigration protections under the Violence Against Women Act; and c) inquiries on behalf of employers regarding work visas? For each of these categories of complaints, how many have been resolved and are listed in the response to Interrogatory No. 6, and how many remain pending?

**RESPONSE**: Defendants object to this request to the extent that it seeks information that is protected under the Privacy Act, 8 U.S.C. § 1367, 8 C.F.R. § 208.6, or any other applicable privileges or protections from disclosure. Defendants further object on the grounds that this request is overly broad and disproportionate to the needs of the case and seeks information that is not relevant to the allegations in Plaintiffs' complaint. Defendants further object to the term "complaint" and only respond as to complaints properly filed by the public regarding DHS policies and activities.

Subject to and without waiver or limitation of these objections, CISOMB had 87 inquiries pending since March 21, 2025, from or on behalf of alleged victims of human trafficking or other

unlawful activity seeking T or U nonimmigrant status, 34 inquiries from alleged victims of intimate partner or domestic violence seeking immigration protections under the Violence Against Women Act, and 81 inquiries on behalf of employers regarding work visas. All remain pending review by CISOMB staff.

8.      Of the complaints pending with CRCL on March 21, 2025 referenced in response to Interrogatory No. 4, how many of these complaints involved a) allegations of sexual abuse or assault, regardless of whether or not the complaint mentioned the Prison Rape Elimination Act; b) allegations of disability discrimination, regardless of whether the complaint mentioned Section 504 of the Rehabilitation Act; c) allegations of violations of a constitutional provision; or d) allegations regarding the care and custody of pregnant, nursing or postpartum women in detention? For each of these categories of complaints, how many have been resolved and are listed in the response to Interrogatory No. 6, and how many remain pending?

**RESPONSE**: Defendants object to this request to the extent that it seeks information that is protected under the Privacy Act, 8 U.S.C. § 1367, 8 C.F.R. § 208.6, or any other applicable privileges or protections from disclosure.  Defendants further object on the grounds that this request is overly broad and disproportionate to the needs of the case and seeks information that is not relevant to the allegations in Plaintiffs' complaint.  Defendants further object to the term "complaint" and only respond as to complaints properly filed by the public regarding DHS policies and activities.  Defendants also object to this Interrogatory to the extent that it violates FRCP 33(d) and is duplicative of Interrogatory No. 4 and the response thereto. The information sought herein has already been provided in response to Interrogatory No. 4 and this request is therefore unnecessary and unduly burdensome.

Notwithstanding this objection, please see attached summary charts responsive to this request from CRCL.

9.      Of the complaints pending with OIDO on March 21, 2025 referenced in response to Interrogatory No. 4, how many involve a) allegations regarding inadequate medical care; b) allegations regarding inadequate food; c) allegations regarding overcrowding or other environmental problems, or d) allegations of abuse or mistreatment by detention facility personnel? For each of these categories of complaints, how many have been resolved and are listed in the response to Interrogatory No. 6, and how many remain pending?

**RESPONSE**: Defendants object to this request to the extent that it seeks information that is protected under the Privacy Act, 8 U.S.C. § 1367, 8 C.F.R. § 208.6, or any other applicable privileges or protections from disclosure.  Defendants further object on the grounds that this request is overly broad and disproportionate to the needs of the case and seeks information that is not relevant to the allegations in Plaintiffs' complaint.  Defendants further object to the term "complaint" and only respond as to complaints properly filed by the public regarding DHS policies and activities.

Subject to and without waiver or limitation of these objections, since March 21, 2025, OIDO had 38 complaints involving allegations regarding inadequate medical care, 15 allegations regarding inadequate food, 27 allegations regarding overcrowding or other environmental problems, and 23 allegations of abuse or mistreatment by detention facility personnel.

10.     Describe all inspections conducted by OIDO since March 21, 2025, including the facilities inspected, the findings of each inspection, any reports generated or actions taken as a result of each inspection, and the individuals who participated in the inspection(s).

**RESPONSE**: Defendants object to this request to the extent that it seeks information that is protected under the Privacy Act, 8 U.S.C. § 1367, 8 C.F.R. § 208.6, or any other applicable privileges or protections from disclosure. Defendants further object on the grounds that this request is overly broad and disproportionate to the needs of the case and seeks information that is not relevant to the allegations in Plaintiffs' complaint.

Subject to and without waiver or limitation of these objections, OIDO onboarded two detailees on August 11, 2025. In the last fiscal year for which such data are available, OIDO only inspected 22 detention facilities. OIDO has intended to resume inspections upon restaffing and is now making detailed preparations to begin inspections.

11. Describe all actions taken by CRCL since March 21, 2025, to review DHS policies to ensure that the protection of civil rights and civil liberties is appropriately incorporated into DHS programs and activities, including the policies on which CRCL provided advice and guidance and the identities of the individuals providing that advice.

**RESPONSE**: Defendants object on the grounds that this request is overly broad and disproportionate to the needs of the case and seeks information that is not relevant to the allegations in Plaintiffs' complaint. Defendants further object to this request to the extent that it seeks information that is protected by the deliberative process privilege or under the Privacy Act or any other applicable privileges or protections from disclosure. Defendants further object to the undefined term "all actions" as vague and ambiguous.

Subject to and without waiver or limitation of these objections, CRCL is in the process of onboarding additional staff to support performance of the office's statutory functions. Nonetheless, since March 21, 2025, CRCL has (1) participated in regular oversight reviews of certain CBP and TSA activities; (2) participated in regular meetings of the DHS Artificial

Intelligence (AI) Council to advise on CRCL equities for use of AI by DHS; (3) participated in regular meetings of the DHS Data Integrity Board; (4) participated in OIG conferences and reviews of DHS activities (e.g., ICE detention facility inspections, CBP tracking of unaccompanied alien children); (5) reviewed all DHS Management Directives and Instructions for CRCL equities; (6) reviewed all congressional correspondence with a CRCL nexus, particularly correspondence concerning the actions of ICE, FEMA, USCIS, and CBP; and (7) issued guidance on, and advised offices regarding, medical and religious reasonable accommodations.  CRCL is also scheduled to participate in CBP annual use of force review later in August.

12.    Describe the reasons for requesting a two-month extension to the congressional report required to be submitted by CISOMB, as described in ECF No. 46, and identify any previous occasions on which a request for an extension of the deadline for CISOM's congressional report has been requested.

**RESPONSE**: Defendants object on the grounds that this request seeks information that is not relevant to the allegations in Plaintiffs' complaint.

Subject to and without waiver or limitation of these objections, 6 U.S.C. § 272 requires USCIS's responses to CISOMB's recommendations to be included in the annual report and USCIS had not furnished responses yet.  Also, there was a change in presidential administrations and a change in CISOMB leadership, resulting in additional time needed for review of the annual report and its content.  Extensions are not uncommon.  Both the 2019 and 2021 annual reports were filed after receiving extensions.

13.    Identify a) all individuals who participated in the process of creating position descriptions, conducting interviews, and hiring new staff and detailees at the DHS Oversight Offices since May 23, 2025; and b) all detailees and permanent staff who have been hired at any

of the DHS Oversight Offices since May 23, 2025, and the position for which each such person was hired. If hiring is not yet complete, describe what steps remain to be completed for each DHS Oversight Office until each of the DHS Oversight Offices is fully staffed.

**RESPONSE**: Defendants object on the grounds that this request is overly broad and disproportionate to the needs of the case and seeks information that is not relevant to the allegations in Plaintiffs' complaint.  Defendants also object to this request to the extent that it seeks information that is protected under the Privacy Act or any other applicable privileges or protections from disclosure. Defendants further object to the undefined term "fully staffed" as vague and ambiguous.

Subject to and without waiver or limitation of these objections, the following individuals participated in the process of creating position descriptions, conducting interviews, and hiring new staff and detailees at the DHS Oversight Offices: Ronald J. Sartini.  James Allen and Lisa Taylor participated in interviews of candidates for CRCL positions.  Rodolfo Gomes participated in interviews of candidates for OIDO positions.  The following individuals have been hired at the DHS Oversight Offices:

| Name | Title | Office |
|------|-------|--------|
| Rodolfo Gomes | Deputy CIS Ombudsman | CISOMB |
| Brent Bice | Investigator | CRCL |
| Lachlan MacNeish | Investigator | CRCL |
| Frank Ghansah | Law Enforcement Specialist | OIDO |
| Deann Kostyak | Law Enforcement Specialist | OIDO |
| Gerardo Yzaguirre | Law Enforcement Specialist | OIDO |
| Adriana Salazar | Detailee | CISOMB |
| Juan Perez | Detailee | OIDO |
| Lidia Cruz | Detailee | OIDO |

Hiring is not yet complete, and this process will continue until the offices are adequately staffed or personnel budget is fully expended.

14.    Describe the amount of congressionally appropriated funds spent by each of the DHS Oversight Offices during this fiscal year and the purposes for which such funds were spent.

**RESPONSE**: Defendants object on the grounds that this request is overly broad and disproportionate to the needs of the case and seeks information that is not relevant to the allegations in Plaintiffs' complaint.

Subject to and without waiver or limitation of these objections, the congressionally appropriated funds have been used as follows: (1) there are approximately 8 open contracts for CRCL that continue to be funded; and (2) an inter-agency agreement (IAA) with HHS for OIDO that was funded for services prior to the RIF notice from the public health services professionals; and shared services for all three offices were funded. Also, payments to the employees who were subject to the RIF, as well as those who accepted any of the three offerings through the DHS Workforce Transition Program continue to be funded.

### FY25 Annual O&S

| Title | Category | Project Code | ObjectCode | Annual Allot | Commitments | Obligations | Expenditures | Available Balance | Execution Rate |
|---|---|---|---|---|---|---|---|---|---|
| ⊟1Q - CRCL Direct | ⊞Pay | | | 38,044,078.00 | - | - | 29,797,912.43 | 8,246,165.57 | 78.32% |
| | ⊞Non-pay | | | 6,215,922.00 | 3,159,837.00 | 393,361.56 | 547,780.07 | 2,114,943.37 | 15.14% |
| 1Q - CRCL Direct Total | | | | 44,260,000.00 | 3,159,837.00 | 393,361.56 | 30,345,692.50 | 10,361,108.94 | 69.45% |
| ⊟1S - CISO Direct | ⊞Pay | | | 9,706,560.00 | - | - | 8,053,642.07 | 1,652,917.93 | 82.97% |
| | ⊞Non-pay | | | 1,714,440.00 | 68,087.12 | 317,016.09 | 149,760.09 | 1,179,576.70 | 27.23% |
| 1S - CISO Direct Total | | | | 11,421,000.00 | 68,087.12 | 317,016.09 | 8,203,402.16 | 2,832,494.63 | 74.60% |
| ⊟1Z - OIDO Direct | ⊞Pay | | | 14,003,141.00 | - | - | 10,241,315.42 | 3,761,825.58 | 73.14% |
| | ⊞Non-pay | | | 2,858,858.00 | 5,823.29 | 590,344.35 | 510,481.10 | 1,752,209.26 | 38.51% |
| 1Z - OIDO Direct Total | | | | 16,861,999.00 | 5,823.29 | 590,344.35 | 10,751,796.52 | 5,514,034.84 | 67.26% |
| | | | | 72,542,999.00 | 3,233,747.41 | 1,300,722.00 | 49,300,891.18 | 18,707,638.41 | 69.75% |
| | | | | 72,542,999.00 | 3,233,747.41 | 1,300,722.00 | 49,300,891.18 | 18,707,638.41 | 69.75% |

### FY24/25 OIDO

| Title | Category | ObjectCode | Annual Allot | Commitments | Obligations | Expenditures | Available Balance | Execution Rate |
|---|---|---|---|---|---|---|---|---|
| ⊟5Z - IDO-IDOMB Direct 24/25 | ⊞Pay | | 3,959,000.00 | - | - | 3,954,655.07 | 4,344.93 | 99.89% |
| | ⊞Non-pay | | 1,000.00 | - | 615.66 | - | 384.34 | 61.57% |
| 5Z - IDO-IDOMB Direct 24/25 Total | | | 3,960,000.00 | - | 615.66 | 3,954,655.07 | 4,729.27 | 99.88% |
| | | | 3,960,000.00 | - | 615.66 | 3,954,655.07 | 4,729.27 | 99.88% |
| | | | 3,960,000.00 | - | 615.66 | 3,954,655.07 | 4,729.27 | 99.88% |

**FY25/26 OIDO**

| Title | Category | ObjectCode | Annual Allot | Commitments | Obligations | Expenditures | Available Balance | Execution Rate |
|---|---|---|---|---|---|---|---|---|
| ⊟9Z - OIDO Direct 25/26 | ⊞Pay | | 3,000,000.00 | - | - | 2,714,503.76 | 285,496.24 | 90.48% |
| | ⊞Non-pay | | 1,000,000.00 | - | - | - | 1,000,000.00 | 0.00% |
| 9Z - OIDO Direct 25/26 Total | | | 4,000,000.00 | - | - | 2,714,503.76 | 1,285,496.24 | 67.86% |
| | | | 4,000,000.00 | - | - | 2,714,503.76 | 1,285,496.24 | 67.86% |
| | | | 4,000,000.00 | - | - | 2,714,503.76 | 1,285,496.24 | 67.86% |

15.     Identify all individuals who played a role in the budget justification submitted to Congress for the DHS Offices on May 29, 2025, and describe the role played by each individual so identified.

**RESPONSE**: Defendants object on the grounds that this request is overly broad and disproportionate to the needs of the case and seeks information that is not relevant to the allegations in Plaintiffs' complaint. Defendants further object to this request to the extent that it seeks information that is protected under the Privacy Act or any other applicable privileges or protections from disclosure.

Subject to and without waiver or limitation of these objections, DHS identifies the following individuals who have had involvement in the FY26 Congressional Justification submission:

| **Name** | **Title** | **Office** |
|---|---|---|
| Gary Merson | Chief of Staff | CISOMB |
| Theresa Dixon | Budget Analyst | CISOMB |
| Luis Gonzalez | Budget Analyst | CISOMB |
| Deana Amendolia | Executive Officer, CRCL | CRCL |
| James Mason | Administrative Officer, CRCL | CRCL |
| Staci Johnson | Chief of Staff | OIDO |
| Shanna Morris | Budget Analyst | OIDO |
| Terry Cathopoulis | Acting Director Financial Operations | DHS Front Office |
| Jeff Lessord | Assistant Director, Budget Formulation MGMT and OSEM | DHS Front Office |
| Laura Forbes | Budget Analyst | DHS Front Office |

| **Name** | **Title** | **Office** |
|---|---|---|
| Ziyang Huang | Budget Analyst | DHS Front Office |
| Carrie Shekleton | Budget Analyst | DHS Front Office |
| Christal Brooks | Budget Analyst | DHS Front Office |
| Cierra Tucker | Assistant Director | DHS HQ Budget |
| Sarah Whitworth | Desk Officers | DHS HQ Budget |
| Casandra Johnson | Desk Officers | DHS HQ Budget |
| Brian Thai | Formulation Analyst | DHS HQ Budget |
| Ann Tipton | DHS Budget Division | DHS HQ Budget |
| Sara Lettie | MGMT and OSEM Examiner | OMB |

## DOCUMENT REQUESTS

1.    All Documents sent to or from OPM regarding the planned RIF at the DHS Oversight Offices.

**RESPONSE**:

Defendants object to this request to the extent that it seeks documents or communications that are outside of Defendants' possession, custody, or control, including information not sent to or from DHS. Defendants also object on the ground that this request is overly broad and disproportionate to the needs of the case to the extent it seeks documents that are unrelated to the allegations in Plaintiffs' complaint. Defendants further object to this request to the extent that it seeks documents or communications that are protected by the presidential communications privilege, deliberative process privilege, attorney client privilege, work product privileged, or any other applicable privileges or protections from disclosure.

Subject to and without waiver or limitation of these objections, Defendants agree to conduct a reasonable search for and produce responsive, non-privileged documents and/or communications that are in Defendants' possession, custody, or control related to the documents sent to or from OPM by DHS regarding the planned RIF at the DHS Oversight Offices.

2.     All Documents sent to or from OMB, USDS, or any other federal department or agency regarding plans for elimination or reorganization of the DHS Oversight Offices or the FY2026 budget requests for those offices.

**RESPONSE:**

Defendants object on the ground that this request is overly broad and disproportionate to the needs of the case to the extent it seeks documents regarding "any other federal department or agency" that may have communicated with Defendants. Defendants object to this request to the extent that it seeks documents or communications that are outside of Defendants' possession, custody, or control, including information not sent to or from DHS. Defendants also object on the ground that this request is overly broad and disproportionate to the needs of the case to the extent it seeks documents that are unrelated to the allegations in Plaintiffs' complaint. Defendants further object to this request to the extent that it seeks documents or communications that are protected by the presidential communications privilege, deliberative process privilege, attorney client privilege, work product privileged, or any other applicable privileges or protections from disclosure. Defendants further object to the use of the word "elimination" as there was no plan to eliminate the DHS Oversight Offices.

Subject to and without waiver or limitation of these objections, Defendants agree to conduct a reasonable search for and produce responsive, non-privileged documents and/or communications that are in Defendants' possession, custody, or control related to the documents sent to or from OMB or USDS by DHS regarding the planned RIF at the DHS Oversight Offices.

3.     All Documents created, sent, or received by former employees of the DHS Oversight Offices describing, discussing, or referencing the RIF, including correspondence regarding any requests for reassignment or rehiring.

**RESPONSE:**

Defendants object on the ground that this request is overly broad and disproportionate to the needs of the case to the extent it seeks documents that are unrelated to the allegations in Plaintiffs' complaint. Defendants further object to this request to the extent that it seeks documents or communications that are protected by the deliberative process privilege, attorney client privilege, work product privileged, or any other applicable privileges or protections from disclosure.

Subject to and without waiver or limitation of these objections, Defendants agree to conduct a reasonable search for and produce responsive, non-privileged documents and/or communications that are in Defendants' possession, custody, or control sent to former employees of the DHS Oversight Offices regarding the RIF.

4.      All Documents concerning the staffing of the DHS Oversight Offices, including, but not limited to, the decision to complete the RIF and hire new staff instead of using existing employees of the DHS Oversight Offices to perform those offices' statutory functions.

**RESPONSE:**

Defendants object to this request to the extent that it seeks documents or communications that are outside of Defendants' possession, custody, or control, including information not sent to or from DHS. Defendants also object on the ground that this request is overly broad and disproportionate to the needs of the case to the extent it seeks documents that are unrelated to the allegations in Plaintiffs' complaint, including, but not limited to, plans regarding EEO staffing. Defendants further object to this request to the extent that it seeks documents or communications that are protected by the presidential communications privilege, deliberative process privilege,

attorney client privilege, work product privileged, or any other applicable privileges or protections from disclosure.

Subject to and without waiver or limitation of these objections, Defendants agree to conduct a reasonable search for and produce responsive, non-privileged documents and/or communications that are in Defendants' possession, custody, or control related to the decision to complete the RIF at the DHS Oversight Offices and the plans to hire new staff.

5.     All Documents concerning or referencing any plans prepared by Ronald Sartini for reorganization of any of the DHS Oversight Offices.

**RESPONSE:**

Defendants object to this request to the extent that it seeks documents or communications that are outside of Defendants' possession, custody, or control, including information not sent to or from DHS. Defendants also object on the ground that this request is overly broad and disproportionate to the needs of the case to the extent it seeks documents that are unrelated to the allegations in Plaintiffs' complaint, including, but not limited to, plans regarding EEO staffing. Defendants further object to this request to the extent that it seeks documents or communications that are protected by the deliberative process privilege, attorney client privilege, work product privileged, or any other applicable privileges or protections from disclosure.

Subject to and without waiver or limitation of these objections, Defendants agree to conduct a reasonable search for and produce responsive, non-privileged documents and/or communications that are in Defendants' possession, custody, or control related to plans prepared by Ronald Sartini for reorganization of any of the DHS Oversight Offices.

6. All Documents concerning stop-work orders to employees of the DHS Oversight Offices on or after March 21, 2025, including documents describing limitations on those employees' communications with others.

**RESPONSE:**

Defendants object to this request to the extent that it seeks documents or communications that are outside of Defendants' possession, custody, or control, including information not sent to or from DHS. Defendants also object on the ground that this request is overly broad and disproportionate to the needs of the case to the extent it seeks documents that are unrelated to the allegations in Plaintiffs' complaint. Defendants further object to this request to the extent that it seeks documents or communications that are protected by the deliberative process privilege, attorney client privilege, work product privileged, or any other applicable privileges or protections from disclosure.

Subject to and without waiver or limitation of these objections, Defendants agree to conduct a reasonable search for and produce responsive, non-privileged documents and/or communications that are in Defendants' possession, custody, or control related to stop-work orders to employees of the DHS Oversight Offices.

7. All Documents concerning transfer of functions from any of the DHS Oversight Offices to other components of DHS.

**RESPONSE:**

Defendants object to this request to the extent that it seeks documents or communications that are outside of Defendants' possession, custody, or control, including information not sent to or from DHS. Defendants also object on the ground that this request is overly broad and disproportionate to the needs of the case to the extent it seeks documents that are unrelated to the

allegations in Plaintiffs' complaint. Defendants further object to this request to the extent that it seeks documents or communications that are protected by the deliberative process privilege, attorney client privilege, work product privileged, or any other applicable privileges or protections from disclosure.

Subject to and without waiver or limitation of these objections, Defendants agree to conduct a reasonable search for and produce responsive, non-privileged documents and/or communications that are in Defendants' possession, custody, or control related to the plans to transfer of functions from any of the DHS Oversight Offices to other components of DHS.

8.    All calendars or lists of meeting attendees reflecting attendance of CRCL employees at meetings where DHS policies, programs or activities were discussed.

**RESPONSE:**

Defendants object to this request to the extent that it seeks documents or communications that are outside of Defendants' possession, custody, or control, including information not sent to or from DHS. Defendants also object on the ground that this request is overly broad and disproportionate to the needs of the case to the extent it seeks documents that are unrelated to the allegations in Plaintiffs' complaint. Defendants further object to this request to the extent that it seeks documents or communications that are protected by the deliberative process privilege, attorney client privilege, work product privileged, or any other applicable privileges or protections from disclosure. Moreover, the burden of any production in response to this request far outweighs its likely benefit due to its lack of relevance and because the documents requested do not relate to the RIF of the DHS Oversight Offices or any plans thereafter but to unrelated DHS policies that the DHS Oversight Offices could potentially discuss. To the extent Plaintiffs narrow this request

in a manner that is more reasonable and less burdensome, Defendants are open to considering production if any such documents are relevant and not subject to other objections asserted herein.

9.      All calendars or lists of meeting attendees for meetings occurring after March 21, 2025 at which DHS policies, programs or activities were discussed.

**RESPONSE:**

Defendants object to this request to the extent that it seeks documents or communications that are outside of Defendants' possession, custody, or control, including information not sent to or from DHS. Defendants also object on the ground that this request is overly broad and disproportionate to the needs of the case to the extent it seeks documents that are unrelated to the allegations in Plaintiffs' complaint. Defendants further object to this request to the extent that it seeks documents or communications that are protected by the deliberative process privilege, attorney client privilege, work product privileged, or any other applicable privileges or protections from disclosure. Moreover, the burden of any production in response to this request far outweighs its likely benefit due to its lack of relevance and because the documents requested do not relate to the RIF of the DHS Oversight Offices or any plans thereafter but to unrelated DHS policies. To the extent Plaintiffs narrow this request in a manner that is more reasonable and less burdensome, Defendants are open to considering production if any such documents are relevant and not subject to other objections asserted herein.

10.     All Executive Secretary Logs or other documents reflecting the individuals or offices who reviewed DHS draft policy documents before they were finalized.

**RESPONSE:**

Defendants object to this request to the extent that it seeks documents or communications that are outside of Defendants' possession, custody, or control, including information not sent to

or from DHS. Defendants also object on the ground that this request is overly broad and disproportionate to the needs of the case to the extent it seeks documents that are unrelated to the allegations in Plaintiffs' complaint. Defendants further object to this request to the extent that it seeks documents or communications that are protected by the deliberative process privilege, attorney client privilege, work product privileged, or any other applicable privileges or protections from disclosure. Moreover, the burden of any production in response to this request far outweighs its likely benefit due to its lack of relevance and because the documents requested do not relate to the RIF of the DHS Oversight Offices or any plans thereafter but to any unrelated DHS policies that the DHS Oversight Offices or any other DHS offices or components could potentially review. To the extent Plaintiffs narrow this request in a manner that is more reasonable and less burdensome, Defendants are open to considering production if any such documents are relevant and not subject to other objections asserted herein.

11. All documents concerning use of force incidents involving Customs and Border Protection (CBP) or Immigration and Customs Enforcement (ICE), including any informal advice or incident reports prepared by any of the DHS Oversight Offices regarding use of force.

**RESPONSE:**

Defendants object to this request to the extent that it seeks documents or communications that are outside of Defendants' possession, custody, or control, including information not sent to or from DHS. Defendants also object on the ground that this request is overly broad and disproportionate to the needs of the case to the extent it seeks documents that are unrelated to the allegations in Plaintiffs' complaint. Defendants further object to this request to the extent that it seeks documents or communications that are protected by the deliberative process privilege, attorney client privilege, work product privileged, or any other applicable privileges or protections

from disclosure. Moreover, the burden of any production in response to this request far outweighs its likely benefit due to its lack of relevance and because the documents requested do not relate to the RIF of the DHS Oversight Offices or any plans thereafter but to unrelated DHS information or policies that the DHS Oversight Offices could potentially review.  To the extent Plaintiffs narrow this request in a manner that is more reasonable and less burdensome, Defendants are open to considering production if any such documents are relevant and not subject to other objections asserted herein.

      12.    All documents concerning National Defense Areas and use of the military for immigration enforcement activities, including calendars or lists of attendees for meetings at which NDAs were discussed.

**RESPONSE:**

      Defendants object to this request to the extent that it seeks documents or communications that are outside of Defendants' possession, custody, or control, including information not sent to or from DHS. Defendants also object on the ground that this request is overly broad and disproportionate to the needs of the case to the extent it seeks documents that are unrelated to the allegations in Plaintiffs' complaint. Defendants further object to this request to the extent that it seeks documents or communications that are protected by the deliberative process privilege, attorney client privilege, work product privileged, or any other applicable privileges or protections from disclosure. Moreover, the burden of any production in response to this request far outweighs its likely benefit due to its lack of relevance and because the documents requested do not relate to the RIF of the DHS Oversight Offices or any plans thereafter but to unrelated DHS information or policies.  To the extent Plaintiffs narrow this request in a manner that is more reasonable and less

burdensome, Defendants are open to considering production if any such documents are relevant and not subject to other objections asserted herein.

13.    All Documents concerning the policy change reflected in the May 5 memo described in the news article published by Wired on May 8, 2025 and available at https://www.wired.com/story/cbp-rescinds-policies-on-care-of-pregnant-women-infants/, including communications about the memo and calendars or lists of attendees for meetings at which it was discussed.

**RESPONSE:**

Defendants object to this request to the extent that it seeks documents or communications that are outside of Defendants' possession, custody, or control, including information not sent to or from DHS. Defendants also object on the ground that this request is overly broad and disproportionate to the needs of the case to the extent it seeks documents that are unrelated to the allegations in Plaintiffs' complaint. Defendants further object to this request to the extent that it seeks documents or communications that are protected by the deliberative process privilege, attorney client privilege, work product privileged, or any other applicable privileges or protections from disclosure. Moreover, the burden of any production in response to this request far outweighs its likely benefit due to its lack of relevance and because the documents requested do not relate to the RIF of the DHS Oversight Offices or any plans thereafter but to unrelated DHS policies.  To the extent Plaintiffs narrow this request in a manner that is more reasonable and less burdensome, Defendants are open to considering production if any such documents are relevant and not subject to other objections asserted herein.

31

14.     All Documents reflecting communications with Congress or any Congressional committees regarding potential reorganization of any of the DHS Oversight Offices on or before March 21, 2025.

**RESPONSE:**

Defendants object to this request to the extent that it seeks documents or communications that are outside of Defendants' possession, custody, or control, including information not sent to or from DHS. Defendants also object on the ground that this request is overly broad and disproportionate to the needs of the case to the extent it seeks documents that are unrelated to the allegations in Plaintiffs' complaint. Defendants further object to this request to the extent that it seeks documents or communications that are protected by the deliberative process privilege, attorney client privilege, work product privileged, or any other applicable privileges or protections from disclosure. Moreover, the burden of any production in response to this request far outweighs its likely benefit due to its lack of relevance and because the documents it seeks simply summarize and repeat the reorganization plans Defendants have agreed to produce.  To the extent Plaintiffs narrow this request in a manner that is more reasonable and less burdensome, Defendants are open to considering production if any such documents are relevant and not subject to other objections asserted herein.

15.     All Documents reflecting or describing how the statutory functions of each of the DHS Oversight Offices have been performed since March 21, 2025, including documents referenced in responses to Interrogatories 4 through 12.

**RESPONSE:**

Defendants object to this request to the extent that it seeks documents or communications that are outside of Defendants' possession, custody, or control, including information not sent to

or from DHS. Defendants also object on the ground that this request is overly broad and disproportionate to the needs of the case to the extent it seeks documents that are unrelated to the allegations in Plaintiffs' complaint. Defendants further object to this request to the extent that it seeks documents or communications that are protected by the deliberative process privilege, attorney client privilege, work product privileged, or any other applicable privileges or protections from disclosure. Moreover, the burden of any production in response to this request far outweighs its likely benefit due to its lack of relevance and because the documents requested do not relate to the RIF of the DHS Oversight Offices or any plans thereafter but to the ongoing day-to-day work performed by the DHS Oversight Offices.  To the extent Plaintiffs narrow this request in a manner that is more reasonable and less burdensome, Defendants are open to considering production if any such documents are relevant and not subject to other objections asserted herein.

## REQUESTS FOR ADMISSION

1.      Admit that, prior to March 21, 2025, You intended to eliminate CISOM in its entirety.

**RESPONSE**: Denied. Defendants did not intend to eliminate CISOMB.  All legally statutorily required functions of CISOMB continue to be carried out in a manner that is both efficient and cost-effective, without compromising DHS's mission to secure the homeland.

2.      Admit that You communicated your intention to eliminate CISOM in its entirety to other government agencies, their employees, their contract employees, their attorneys, or any other person acting directly or indirectly on their behalf.

**RESPONSE**: Denied. Defendants did not communicate an intention to eliminate CISOMB.  All legally statutorily required functions of CISOMB continue to be carried out in a

manner that is both efficient and cost-effective, without compromising DHS's mission to secure the homeland.

3.      Admit that You communicated your intention to eliminate CISOM in its entirety to CISOM employees.

**RESPONSE**: Denied. Defendants did not communicate an intention to eliminate CISOMB.  All legally statutorily required functions of CISOMB continue to be carried out in a manner that is both efficient and cost-effective, without compromising the DHS's mission to secure the homeland.

4.      Admit that prior to March 21, 2025, You intended to eliminate CRCL in its entirety.

**RESPONSE**: Denied. Defendants did not intend to eliminate CRCL.  All legally statutorily required functions of CRCL continue to be carried out in a manner that is both efficient and cost-effective, without compromising DHS's mission to secure the homeland.

5.      Admit that You communicated your intention to eliminate CRCL in its entirety to other government agencies, their employees, their contract employees, their attorneys, or any other person acting directly or indirectly on their behalf.

**RESPONSE**: Denied. Defendants did not communicate an intention to eliminate CRCL. All legally statutorily required functions of CRCL continue to be carried out in a manner that is both efficient and cost-effective, without compromising DHS's mission to secure the homeland.

6.      Admit that You communicated your intention to eliminate CRCL in its entirety to CRCL employees.

**RESPONSE**: Denied. Defendants did not communicate an intention to eliminate CRCL. All legally statutorily required functions of CRCL continue to be carried out in a manner that is

both efficient and cost-effective, without compromising the DHS's mission to secure the homeland.

7.    Admit that prior to March 21, 2025, You intended to eliminate OIDO in its entirety.

**RESPONSE**: Denied. Defendants did not intend to eliminate OIDO.  All legally statutorily required functions of OIDO continue to be carried out in a manner that is both efficient and cost-effective, without compromising the Department's mission to secure the homeland.

8.    Admit that You communicated your intention to eliminate OIDO in its entirety to other government agencies, their employees, their contract employees, their attorneys, or any other person acting directly or indirectly on their behalf.

**RESPONSE**: Denied. Defendants did not communicate an intention to eliminate OIDO. All legally statutorily required functions of OIDO continue to be carried out in a manner that is both efficient and cost-effective, without compromising the Department's mission to secure the homeland.

9.    Admit that You communicated your intention to eliminate OIDO in its entirety to OIDO employees.

**RESPONSE**: Denied. Defendants did not communicate an intention to eliminate OIDO. All legally statutorily required functions of OIDO continue to be carried out in a manner that is both efficient and cost-effective, without compromising DHS's mission to secure the homeland.

10.    Admit that since March 21, 2025, one or more of the statutory functions identified in Plaintiffs' Reply Brief, ECF No. 24, at 16-18, has not been performed.

**RESPONSE**: Denied. All legally statutorily required functions of the DHS Oversight Offices continue to be carried out in a manner that is both efficient and cost-effective, without

compromising DHS's mission to secure the homeland.  Staffing for the additional positions will take time, detail announcements have been posted and detailees have been brought in.

Dated: August 13, 2025                    On the objections,

**Brett A. Shumate**
Assistant Attorney General
Civil Division

**Yaakov M. Roth**
Principal Deputy Assistant Attorney
General

**Eric Hamilton**
Deputy Assistant Attorney General
Federal Programs

**Christopher R. Hall**
Assistant Branch Director
Federal Programs

*/s/ M. Jared Littman*
**M. Jared Littman**
Trial Attorney
United States Department of Justice
Civil Div., Federal Programs Branch
1100 L Street NW
Washington, DC 20005
(202) 514-5578
Jared.Littman2@usdoj.gov

*Counsel for Defendants*