# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ROBERT F. KENNEDY HUMAN RIGHTS; SOUTHERN BORDER COMMUNITIES COALITION; URBAN JUSTICE CENTER, | |
| Plaintiffs, | |
| v. | Civil Action No. 25-1270 |
| U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of Homeland Security, | |
| Defendants. | |

## FIFTH DECLARATION OF ANTHONY ENRIQUEZ

I, Anthony Enriquez, declare as follows:

1.      I am over the age of 18 and competent to testify to the matters described below.

2.      I am the Vice President of U.S. Advocacy and Litigation at the Robert & Ethel Kennedy Human Rights Center (KHRC), formerly Robert F. Kennedy Human Rights (RFK). I submit this declaration based on my personal knowledge, information obtained in the ordinary course of my work, and my review of organizational records.

**Reliance on DHS Oversight Offices Prior to March 21, 2025**

3.      Prior to March 21, 2025, KHRC regularly relied on the DHS Office for Civil Rights and Civil Liberties (CRCL) and the Office of the Immigration Detention Ombudsman (OIDO) to investigate complaints of civil and human rights abuses in immigration detention facilities.

4.      KHRC attorneys filed complaints with CRCL and OIDO both on behalf of individual clients and regarding systemic conditions affecting large numbers of detained people.

5.     In addition, during detention center visits and legal rights presentations, KHRC staff routinely educated detained people about their ability to file complaints directly with CRCL and OIDO and how to do so.

6.     Before March 21, 2025, CRCL and OIDO complaints filed by KHRC frequently resulted in meaningful engagement, including requests for documentation, follow-up questions, onsite inspections, and remedial actions by ICE or detention facility operators.

7.     CRCL or OIDO intervention secured accommodations or corrective action for KHRC clients, reducing or eliminating the need for time-consuming and expensive litigation.

8.     Beyond individual case relief, CRCL and OIDO investigations played an important deterrent function by signaling to ICE and facility operators that abusive practices were subject to independent scrutiny.

9.     Before March 21, 2025, KHRC had distinguished itself from other non-profit human rights organizations as national leaders in effectively using CRCL and OIDO as tools for accountability for detention center abuses and reform to end them.

10.     As one example, in advocacy in 2023 and 2024 at United Nations human rights treaty reviews concerning the United States' human rights records, KHRC assembled and led national coalitions to report on human rights abuses of non-citizens in U.S. immigration detention. Representatives of CRCL and OIDO were present at those reviews and discussed with KHRC attorneys how to engage oversight offices to ensure that Customs and Border Protection (CBP) supervisors were properly trained on protecting unaccompanied children in CBP custody from abuse and coercion by line officers.

**Winn Detention Center Pepper-Spraying Incident**

11.    In March 2024, KHRC filed a complaint with CRCL regarding a mass pepper-spraying incident at the Winn Correctional Center in Louisiana.

12.    During that incident, guards sprayed approximately 200 people in a housing unit directly in their faces in retaliation for participation in a hunger strike protesting conditions of confinement.

13.    After deploying pepper spray, guards locked doors and windows and cut off power and water, preventing people from washing their eyes, throats, or skin. A true and correct copy of KHRC's complaint about this incident is attached to this declaration as Exhibit A.

14.    CRCL requested documents and video footage from ICE regarding this incident in early 2024 and later opened a multidisciplinary onsite investigation in or around September 2024. True and correct copies of documents obtained in discovery about CRCL's request for documents, requests for video footage, and opening of an onsite investigation, respectively, are attached to this declaration as Exhibits B through D.

15.    During discovery in this case, we sought all documents related to CRCL's investigation of the Winn pepper-spraying incident, referencing the complaint number assigned by CRCL and provided to us back in 2024. Based on the documents we received, which show no correspondence between CRCL and ICE after 2024, and the absence of any follow-up communication between CRCL and KHRC since 2024, the CRCL investigation into the Winn incident was effectively abandoned after March 21, 2025, following the work stoppage and staffing elimination affecting the Oversight Offices.

**South Louisiana ICE Processing Center (Basile)**

16.     In or around December 2024, KHRC joined other organizations in filing a complaint with CRCL regarding conditions at the South Louisiana ICE Processing Center in Basile, Louisiana. A true and correct copy of this complaint is attached to this declaration as Exhibit E.

17.     CRCL opened an investigation into conditions at the Basile facility and requested documents from ICE in or around February 2025. A true and correct copy of this internal correspondence, which was obtained through discovery in this litigation, is attached to this declaration as Exhibit F.

18.     Our colleagues at ACLU of Louisiana received a letter acknowledging receipt of the complaint and assigning it a complaint number in early February of 2025, a true and correct copy of which is attached to this declaration as Exhibit G. Since March 21, 2025, no substantive investigative activity has occurred on that complaint to my knowledge, and the lack of any documents on that complaint number since February of 2025 produced in response to our discovery request in this litigation supports that conclusion.

**Operational and Resource Impacts on KHRC**

19.     As a result of the March 21, 2025 work stoppage and effective dismantling of CRCL and OIDO, KHRC has lost an essential tool for addressing detention abuses short of litigation.

20.     KHRC now must engage more frequently in direct advocacy with ICE and detention facility operators, which is significantly less effective than prior engagement through CRCL or OIDO.

21.     Effective direct advocacy often requires in-person detention facility visits, but KHRC's limited staff capacity and budget constrain the number of such visits it can conduct.

22.     Consequently, KHRC must devote additional staff time and financial resources to matters that were previously addressed through complaints to CRCL and OIDO, including increased litigation for individual clients.

23.     These additional resource expenditures have impaired KHRC's ability to serve existing clients and reduced the number of new clients KHRC is able to represent.

24.     Prior to the March 21, 2025 dismantling of CRCL and OIDO, KHRC's success in strategically using CRCL and OIDO to remedy human rights abuses and push for systemic reform had attracted funder support, based in part on our record of leading national coalitions in CRCL and OIDO engagement. Reports on these successes to funders was an essential element of proving measurable impact of KHRC's work.

25.      In June 2025, after the dismantling of CRCL and OIDO, one of KHRC's funders communicated to us in a meeting that it would not renew its grant to KHRC at the end of the grant period in December 2025, based on a reassessment of strategic impact of its grants.

**Continuing Injury**

26.     KHRC continues to have complaints and requests for assistance pending with CRCL and OIDO that have received no response or only generic, non-substantive form communications.

27.     Even where KHRC can technically still submit complaints, the lack of staffing and non-performance of statutory functions by CRCL and OIDO has rendered those complaint mechanisms unreliable and ineffective.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 15, 2026

/s/ Anthony Enriquez

# Exhibit A

| From: | |
|---|---|
| **To:** | DHS-OIG Office of Public Affairs; CRCLCompliance; [redacted] Outreach, New Orleans |
| **Cc:** | |
| **Subject:** | Re: Use of Force, Medical Neglect, Verbal Abuse, Retaliation, and Violations of First Amendment Rights of Individuals Detained at the Winn Correctional Center on January 26, 2024 |
| **Date:** | Wednesday, March 27, 2024 11:28:11 AM |
| **Attachments:** | Pepper-spray Incident CRCL Complaint Winn 3.27.24.pdf |

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. Contact your component SOC with questions or concerns.

Dear Officer for Civil Rights and Civil Liberties Wadhia,

The Southeast Dignity Not Detention Coalition ("SDND Coalition"), Robert F. Kennedy Human Rights ("RFK Human Rights"), Immigration Services and Legal Advocacy ("ISLA"), Southern Poverty Law Center ("SPLC"), the ACLU of Louisiana ("ACLU-LA"), and the National Immigration Project of the National Lawyers' Guild ("NIPNLG") submit this complaint on behalf of individuals detained at the Winn Correctional Center ("Winn") in Winnfield, Louisiana. On January 26, 2024, Immigration and Customs Enforcement ("ICE") and its contractors at Winn violently attacked a dorm of approximately 200 people with pepper-spray.

Individuals in immigration detention have the right to freedom from First Amendment retaliation, adequate medical care, and non-punitive and safe living conditions. This unjustified use of force was a form of collective punishment and unlawful retaliation in response to detained people's participation in a peaceful demonstration and hunger strike protesting their conditions of confinement. These individuals wish to remain anonymous due to fear of retaliation and have reported violations of their civil and human rights, including use of force, verbal abuse, medical neglect, retaliation, and violations of their First Amendment rights by ICE and officers at Winn.

The decades of reports of neglect, violence, and retaliation against immigrants detained at Winn indicate that the violations raised in this complaint are part of a systemic pattern of abuse that cannot be corrected by the responsible parties. These long-standing issues at Winn can only be remedied by the facility's closure and demands to hold those in authority accountable.

We raise serious concerns about the continued operation of Winn and request an immediate investigation into the January 26, 2024, incident and the abuses described herein by OIG and/or CRCL.

We urge the DHS Office for Civil Rights and Civil Liberties (CRCL), pursuant to its authority under 6 U.S.C. § 345, to immediately recommend:

1. Release of all individuals currently detained at Winn to their communities;
2. Termination of ICE's Intergovernmental Services Agreement (IGSA) with Winn, which is set to expire on May 15, 2024;

CONFIDENTIAL

3. Pending release and termination of the IGSA, investigation of the violations described herein, including the use of force, retaliatory physical violence, verbal abuse, medical neglect, and violations of First Amendment rights.

*We request a response in writing within one week, by April 2, 2024, detailing your agencies' plan of action to remedy the civil and human rights violations described herein.*

We appreciate your prompt attention to this matter.

Sincerely,

Sarah Decker

--



Twitter | Facebook | Instagram

**EXPOSE INJUSTICE.**
**TEACH CHANGE.**
**SHAPE HISTORY.**

     

## VIA ELECTRONIC MAIL

███████████████

Office of the Inspector General
Department of Homeland Security
DHS-OIG.OfficePublicAffairs@oig.dhs.gov

████████████████

Office of Civil Rights and Civil Liberties
Department of Homeland Security
CRCLCompliance@hq.dhs.gov

████████

Office of Immigration Detention Ombudsman
Department of Homeland Security
████████████████████

██████████

New Orleans Field Office Director
U.S. Immigration and Customs Enforcement (ICE)
                        NewOrleans.Outreach@ice.dhs.gov
████████████████████

March 27, 2024

**RE:    Use of Force, Medical Neglect, Verbal Abuse, Retaliation, and Violations of First**
**Amendment Rights of Individuals Detained at the Winn Correctional Center on**
**January 26, 2024**

> *"I was thinking America is the country that protects people.*
> *America is a country that celebrates free speech and protestors.*
> *But just like in my home country, when I protest my rights,*
> *I am attacked and pushed down."*[1]

Dear Officer for Civil Rights and Civil Liberties █████████ Inspector General ████████
Ombudsman █████, and Field Office Director █████████

The Southeast Dignity Not Detention Coalition ("SDND Coalition"), Robert F. Kennedy Human
Rights ("RFK Human Rights"), Immigration Services and Legal Advocacy ("ISLA"), Southern
Poverty Law Center ("SPLC"), the ACLU of Louisiana ("ACLU-LA"), and the National

---

[1] Interview with Detained Person at Winn Correction Center, February 2024.

1

Immigration Project of the National Lawyers' Guild ("NIPNLG") submit this complaint on behalf of individuals detained at the Winn Correctional Center ("Winn") in Winnfield, Louisiana.[2] On January 26, 2024, Immigration and Customs Enforcement ("ICE") and its contractors at Winn violently attacked a dorm of approximately 200 people with pepper-spray.

Individuals in immigration detention have the right to freedom from First Amendment retaliation, adequate medical care, and non-punitive and safe living conditions.[3] This unjustified use of force was a form of collective punishment and unlawful retaliation in response to detained people's participation in a peaceful demonstration and hunger strike protesting their conditions of confinement. These individuals wish to remain anonymous due to fear of retaliation and have reported violations of their civil and human rights, including use of force, verbal abuse, medical neglect, retaliation, and violations of their First Amendment rights by ICE and officers at Winn.

ICE operates Winn, a 1,500-bed facility, pursuant to a contract with for-profit prison company, LaSalle Corrections. ICE and LaSalle are contractually obligated to maintain the minimum standards and abide by policies outlined in ICE's 2011 Performance Based National Detention Standards ("PBNDS 2011") at Winn.[4] The PBNDS prohibit excessive use of force, medical neglect, and retaliation and mandate safe and sanitary living conditions in immigration detention.[5] As outlined below, ICE and its contractors at Winn have repeatedly violated the civil and human rights of detained people.

This egregious suppression of First Amendment protected activity is only the latest example of the documented history of abuse at Winn.[6] For example, in August 2020, officers at Winn pepper-sprayed, deployed tear gas bombs, and trapped detained immigrants in dorms at Winn in response to protests.[7] In December 2019, officers at Winn pepper-sprayed 50 people who were protesting

---

[2] The names and identifying information of detained people have been anonymized to protect them from potential retaliation by ICE.

[3] *See Zadvydas v. Davis*, 533 U.S. 678, 694 (2001) (asserting that "punitive measures could not be imposed upon [noncitizens] ordered removed because 'all persons within the territory of the United States are entitled to the protection' of the Constitution" (quoting *Wong Wing v. United States*, 163 U.S. 228, 238 (1896)); *see also Cruz v. Beto*, 405 U.S. 319, 321 (1972) (establishing that people in prison, "like other individuals, have the right to petition the Government for redress of grievances"); *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983) (extending constitutional protections available to imprisoned people to civilly-detained people).

[4] ICE, *Performance-Based National Detention Standards, 2011,* (Revised Dec. 2016) (hereafter "PBNDS 2011").

[5] PBNDS 2011, Section 1.2.I, Environmental Health and Safety (Revised Dec. 2016) ("This detention standard protects detainees, staff, volunteers and contractors from injury and illness by maintaining high facility standards of cleanliness and sanitation, safe work practices and control of hazardous substances and equipment.").

[6] *See* Detention Watch Network, *et al,* "Anthology of Abuse: Violence and Neglect at the Winn Correctional Center (December 6, 2023), https://www.detentionwatchnetwork.org/sites/default/files/reports/Winn%20Anthology%20of%20Abuse_w%20Letter_.pdf.

[7] SPLC Letter to Office of Inspector General (OIG) about Reports of Violent Abuse of Authority at Winn. August 7, 2020. https://drive.google.com/file/d/14sISYXnj8ADrVYboowXEIbWTmg6axyrm/view; Miller, Hayley. "ICE Detention Center Officials Indiscriminately Tear Gassed Asylum Seekers,

2

                                                                                      DHS-00023835

the conditions of their detention and writing "Libertad" on bedsheets and towels.[8] Over the past several years, Winn's appalling conditions, including racist abuse, repeated use of excessive force, and life-threatening medical neglect, have been the subject of multiple complaints and media reports.[9] These complaints have exposed officers' frequent retaliation against people exercising their rights or for any perceived "insubordination" with pepper-spray and prolonged solitary confinement.[10]

In fact, in August 2021, your office, the Office of Civil Rights and Civil Liberties ("CRCL"), issued a scathing report, decrying a "culture and conditions that can lead to abuse."[11] In this report, CRCL advocated for the immediate cessation of any transfers or new bookings into Winn and recommended that ICE decrease the population of Winn to *zero* until conditions were improved. The Biden Administration then slated Winn for a serious reduction in population in early 2022,[12] yet, today, Winn remains open and at full capacity.[13]

Three years later, people detained at Winn *continue* to report that officers engage in a culture of discriminatory and retaliatory abuse, violence, and medical neglect. As part of the notoriously abusive New Orleans ICE Field Office ("NOLA ICE"), the actions of ICE and its contractors at Winn operate with systemic impunity.[14] We urge the DHS Office for Civil Rights and Civil Liberties (CRCL), pursuant to its authority under 6 U.S.C. § 345, to immediately recommend:

---

Complaints Say." HuffPost. August 16, 2020, https://www.huffpost.com/entry/ice-tear-gas-detainees-winn-correctional-center_n_5f35305ec5b6fc009a625a85.

[8] Nomaan Merchant, *Associated Press News*, "ICE: Protest at Louisiana jail ends after pepper spray used" (December 4, 2019), https://apnews.com/article/immigration-us-news-la-state-wire-louisiana-ap-top-news-bfa6c15ca5c533999ebb53da6b020ad8.

[9] *See* Detention Watch Network, *et al,* "Anthology of Abuse: Violence and Neglect at the Winn Correctional Center (December 6, 2023), https://www.detentionwatchnetwork.org/sites/default/files/reports/Winn%20Anthology%20of%20Abuse_w%20Letter_.pdf.

[10] American Civil Liberties Union (ACLU), Human Rights First, and NIJC. "Justice-Free Zones: U.S. Immigration Detention Under the Trump Administration." 2020. https://www.aclu.org/sites/default/files/field_document/justice-free_zones_immigrant_detention_report_aclu_hrw_nijc_0.pdf.

[11] Office of Civil Rights and Civil Liberties, Retention Memo, Re: Winn Correctional Center (May 4, 2021), https://www.dhs.gov/sites/default/files/2022-09/05.04.2021%20CRCL%20Retention%20Memo%20to%20ICE%20-%20Winn%20Correctional_Redacted_508.pdf; Aleaziz, Hamed. "Internal Investigators Told ICE To Stop Sending Immigrants To A Prison In Louisiana Because Of A Culture That Can Lead To Abuse." Buzzfeed News. Dec. 15, 2021. https://www.buzzfeednews.com/article/hamedaleaziz/ice-private-prison-louisiana-conditions.

[12] American Immigration Council. "ICE to Close or Scale Back Use of Four Immigration Detention Facilities, Citing Concerns over Conditions, Treatment of Detained Individuals." Mar. 25, 2022, https://www.americanimmigrationcouncil.org/news/us-immigration-and-customs-enforcement-close-or-scale-back-use-four-immigration-detention.

[13] Silva, Daniella. "Detainees and advocates decry 'horrific' conditions at Louisiana ICE detention center." NBCNews. Jul. 17, 2023, https://www.nbcnews.com/news/detainees-advocates-decry-horrific-conditions-louisiana-ice-detention-rcna92339.

[14] Office of Civil Rights and Civil Liberties, Retention Memo, Re: ICE's Oversight of the New Orleans Field Office (December 7, 2021), https://www.dhs.gov/sites/default/files/2022-

3

1) Release of all individuals currently detained at Winn to their communities;
2) Termination of ICE's Intergovernmental Services Agreement (IGSA) with Winn, which is set to expire on May 15, 2024;
3) Pending release and termination of the IGSA, investigation of the violations described herein, including the use of force, retaliatory physical violence, verbal abuse, medical neglect, and violations of First Amendment rights.

*We request a response in writing within one week detailing your agencies' plan of action to remedy the civil and human rights violations described herein.*

## I.    Factual Background

On January 26, 2024, individuals detained at Winn Correctional Center declared a mass hunger strike to protest their conditions of confinement and ICE's blanket denials of release requests. The individuals, the majority seeking asylum from Russia, Tajikistan, and Uzbekistan, were protesting their prolonged detention by ICE and inhumane treatment. As one hunger striker described:

> "We are here for over six months and mentally we cannot stand it anymore. I have had heart issues twice here, I have swelling in my legs, I have sciatica. All of these things I have acquired here. I told them I want to be deported. I am fed up with being here, I just want to be free. We are here detained for so long for no reason, just for crossing the border to find protection. We are tired of having to demand everything, having to fight for things that should be our right like medical care and basic things."

One hunger striker stated: "The ICE officers are rude to us. They swear at us and don't treat us like humans. Whatever we request, they refuse. No one takes care of us. Our lives don't matter here." Another man reported:

> "They have been keeping me here for six months, caging me like an animal. Am I an animal? People are more kind to dogs. We have to fight for everything here, things that are our rights. My son is just one years old. He has severe health issues and needed a surgery. I don't have any money here in my commissary. The officers would not let me have a video call with my son before his surgery. Even a simple act of humanity—they refuse."

In particular, individuals in the Dogwood unit were protesting a recent incident where water had flooded their unit, soaking peoples' bedding and clothing. Despite numerous complaints to Winn officers and ICE, detained individuals were forced to remain in their flooded dorm, without access to dry or sanitary bedding and clothing, for approximately ten days. ICE was well aware of these conditions issues at Winn. On January 12, 2024, and February 9, 2024, legal services providers who had met with people detained at Winn sent emails to the New Orleans ICE Field Office. In those emails, the legal services providers documented multiple conditions issues, including unaddressed water leaks in dorms, near freezing temperatures in the units, stagnant water in the

---

08/2021.12.07%20CRCL%20Retention%20Memo%20to%20ICE%20-%20Oversight%20of%20New%20Orleans%20AOR%20-%20Redacted_508.pdf.

CONFIDENTIAL                                                                      DHS-00023837

kitchen, insufficient food portions, serious delays in receiving medical treatment, among other forms of neglect and abuse. ICE acknowledged receipt of the emails, but took no further action.

On January 26, 2024, individuals refused their lunchtime meal and declared a mass hunger strike. The group began to repeatedly chant: *"Mr. Biden, help us! Give us freedom! Winn Correctional is no good! Louisiana is racist!"* Approximately 200 people participated in the protest. In response, approximately 20 officers entered the unit, wearing black riot gear and gas masks. An officer in a blue uniform employed by LaSalle Corrections, upon information and belief, Colonel Vernon (full name unknown) directed the officers in riot gear and began to scream "Shut up motherfuckers!" The officers then mobilized five canisters of oleoresin capsicum (OC) spray ("pepper-spray") and unprovoked and without issuing a verbal warning, began to spray the unit.

The officers walked around the unit with the five cannisters of pepper-spray, dousing the area for approximately five minutes. They first entered unit A-1 before moving through C-2, D-1, and D-2. The officers sprayed individuals directly in their faces and on their bodies, some from less than an arm's length away. People began to scream and run away from the officers. Many fell to the ground and were trampled by others fleeing. Some attempted to hide behind beds and tried to use their clothing to shield their eyes and faces. The officers pepper-sprayed individuals indiscriminately, even those who were fleeing and attempting to hide. They also sprayed individuals with chronic medical conditions that make them particularly vulnerable to the deployment of OC spray, such as asthma and heart conditions.

After spraying the unit, the officers exited and locked the doors and windows. They cut the power and water to the unit, leaving the individuals without the ability to rinse their eyes, throats, or skin. Individuals also witnessed officers turn off the cameras in the unit. For a period of approximately three hours, detained individuals remained locked in the dorm without access to medical care. A few individuals who had lost consciousness due to medical emergencies were taken out of the dorm, but even those individuals were denied sufficient medical treatment.

As one Uzbek man described:

> "I was sitting in my bed, about 200 meters from the door when it started happening. I myself was not even participating in the hunger strike, I was just sitting quietly in the dorm. The officers started spraying gas and locking the doors. They sprayed the whole room. It became very difficult to breathe. I felt like I was choking, just trying to get air. I tried to use my clothes to cover my face, but it didn't help. I couldn't rinse my eyes or skin for hours because they shut off the water in the dorm. They left us in there for hours, coughing and choking, with no medical help."

Another man described:

> "I was just one meter away from the officer when he sprayed me. There was no warning, he didn't say anything. I was just standing there, chanting with the group, and he sprayed me. Immediately, I struggled to breathe. They shut the water from the sink off. I tried to use some drinking water I had in a cup to rinse my face, but it wasn't enough. We couldn't

CONFIDENTIAL

get medical care because we were not allowed out of the unit. My throat burned for two days."

One man stated:

> "My breathing became very hard. I couldn't see. My eyes were on fire. I tried to step back after they sprayed me, to get away, and I fell on my back to the ground. It was chaos. Everyone started running and screaming, trying to get away from the spray. They trapped us, closed the doors and the windows, so we couldn't get any fresh air. The water was shut off for hours until later that evening."

Individuals reported that multiple detained people had life-threatening medical complications as a result of officers' indiscriminate use of pepper-spray and lost consciousness after being pepper-sprayed. For example, one 37-year-old Uzbek man reported that he has a heart condition that has resulted in high blood pressure and an irregular heartbeat. He had a cardiac stent surgically placed in 2022 and currently takes eight different medications at Winn for his heart condition and suspected arrhythmia. His heart condition is well documented and known by ICE and its contractors at Winn. As the man reported:

> "I was standing with the others when the officer came towards me. He came very close, so close I was less than an arm's length away. He said nothing. There was no warning. I was about 20 centimeters away from the officer when he sprayed me in the face. I started to have difficulty breathing and my chest was aching. I lost my vision and couldn't open my eyes. It was so difficult to breathe and my chest was so tight. I couldn't get any air in. I was prepared to die."

The man collapsed to the ground and lost consciousness. Two individuals next to him picked him up and dragged him towards the door of the unit. They screamed and banged on the doors, begging the officers to let the man out and pleading for emergency medical care. After approximately ten minutes of pleading, an officer opened the door and allowed the man to exit the dorm. The man was dragged into the hallway, where he began to regain consciousness and officers then took his vitals. Despite the fact that his blood pressure was high and his vitals were irregular, the officers failed to take him to the medical unit and he was left in the hallway until he regained the ability to walk, at which point he was taken back to the unit, where the water and power remained cut off. He was never taken to the medical unit for any assessment or medical care. The man reported that he continued to have chest pain for three days following this attack. After escaping persecution in Uzbekistan on the basis of his Jewish identity, the man is currently pursuing his asylum claim before the immigration court:

> "I suffered so much in Uzbekistan. I was beaten by law enforcement officers for being a Jew and I thought here in the United States, it would be different. I thought I would be safe and protected. But here, it is the same. Again, I am beaten by law enforcement officers, just for looking for safety and protection."

CONFIDENTIAL

DHS-00023839

Others also reported experiencing severe medical consequences after officers pepper-sprayed them. One man from Uzbekistan described how after he was pepper-sprayed, his hair started falling out in clumps:

> "Before I was detained here, I had no health problems. The officers sprayed me from only an arm's length away. I didn't even have a warning so I could turn away. In the days after the officers sprayed me, my hair started falling out in clumps. I had a severe rash all over my hands and arms. I was having really bad chest pain and nosebleeds too, so I requested a sick call. The medical staff told me 'We can't help you and we can't give you any medication.' When I told them I was having these medical issues after being pepper-sprayed they said, 'If you have complaints, hire an attorney.' I just wanted something to help with the pain. Why am I losing my hair? I'm only 27-years-old."

After this incident, this man, who was seeking asylum from Uzbekistan, accepted voluntary departure before the immigration court:

> "I participated in political protests in my home country, Uzbekistan. My uncle was killed for standing up for our political rights. The secret military service threatened me and I was forced to come here to seek help because I was thinking America is the country that protects people. America is a country that celebrates free speech and protestors. But just like in my home country, when I protest my rights, I am attacked and pushed down. After five months of waiting, I had my immigration court hearing the week after I was pepper-sprayed. I decided to give up my case and ask for deportation. I am so afraid to go back but I am equally afraid that I will die here."

## II.  **Legal Violations**

Officers' indiscriminate use of pepper-spray against the 200 hunger strikers, protestors, and others detained at Winn on January 26, 2024, is a violation of individuals' rights under the U.S. constitution, federal and state law, and ICE's own legal standards and directives.

All immigrants in detention are afforded protection under the U.S. constitution regardless of whether they are being held on criminal or civil grounds.[15] Immigrants detained at Winn have a First Amendment right to protest against the conditions of the confinement and hunger striking is a protected activity.[16] In addition, Winn officers' use of excessive force may qualify as assault and battery under Louisiana penal code sections regarding assault, battery, and battery with serious bodily injury. This conduct also may violate the federal prohibition on assault, 18 U.S. Code §

---

[15] *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *see, e.g., Lynch v. Cannatella*, 810 F.2d 1363, 1375 (5th Cir. 1987) ("[W]hatever due process rights excludable [noncitizens] may be denied by virtue of their status, they are entitled under the Due Process Clauses of the Fifth and Fourteenth Amendments to be free of gross physical abuse at the hands of state or federal officials.")

[16] *See Stefanoff v. Hays Cnty.*, 154 F.3d 523, 527 (5th Cir. 1998) (finding that "a hunger strike may be protected by the First Amendment if it was intended to convey a particularized message."); *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003)) (finding that the First Amendment prohibits retaliation for speaking out about conditions of confinement).

7

113, as well as 18 U.S.C. § 242, which makes it unlawful for federal officers to willfully deprive an individual of rights under color of law.

This attack on detained individuals at Winn was unlawful and unjustified, as recognized by ICE's own policies on the use of force. The PBNDS 2011 prohibit the use of force "to punish a detainee" and "using force against a detainee offering no resistance."[17] The officers' attacks on detained individuals at Winn were intended to indiscriminately punish them for their participation in the mass hunger strike.

ICE's Use of Force Policy (the "Force Policy"), issued as part of the PBNDS, states that immediate use of force is only permitted when "a detainee's behavior constitutes a serious and immediate threat to self, staff, another detainee, property, or the security and orderly operation of the facility."[18] The individuals protesting at Winn had not displayed any behavior that constituted a threat to themselves or the officers. These individuals were exercising their legal right to participate in a hunger strike, a First Amendment protected activity, and the officers' attack was unprovoked and against the Force Policy.

Pepper-spray is an authorized "immediate force device" under the Force Policy. However, the use of non-lethal weapons on detained people is only authorized by the Force Policy in situations in which a detained person is armed and barricaded or cannot be approached without danger to the ICE agent or detained person *and* "a delay in controlling the situation would seriously endanger the detainee or others, or would result in a major disturbance or serious property damage."[19] None of those conditions were met during this incident at Winn, making the use of pepper-spray unauthorized by the Force Policy.

Furthermore, the Force Policy states that "staff shall consult medical staff before using oleoresin capsicum ("OC") spray [also known as pepper-spray] or other non-lethal weapon(s) unless escalating tension make such action unavoidable. When possible, medical staff will review the detainee's medical file for any disease or condition that a non-lethal weapon could seriously exacerbate, including, but not limited to, asthma, emphysema, bronchitis, tuberculosis, obstructive pulmonary disease, angina pectoris, cardiac myopathy, or congestive heart failure."[20] Officers did not consult medical staff before deploying pepper-spray against detained individuals at Winn, many of whom had conditions that make them particularly vulnerable to severe medical consequences from the deployment of pepper-spray.

People exposed to pepper-spray should remove contaminated clothing as quickly as possible, wash their body with water and soap, and seek medical care immediately.[21] After deploying pepper-

---

[17] PBNDS 2011, Sections 2.15(V)(B)(2) and 2.15(V)(E).

[18] U.S. Immigration and Customs Enforcement, *2.15 Use of Force and Restraints*, Performance-Based National Detention Standards, 206 (Dec. 2016), https://www.ice.gov/doclib/detention-standards/2011/pbnds2011r2016.pdf.

[19] *Id.* at 205.

[20] *Id.*

[21] *Facts About Riot Control Agents Interim Document*, Centers for Disease Control and Prevention (Apr. 4, 2018), https://emergency.cdc.gov/agent/riotcontrol/factsheet.asp; M.F. Yeung et al.,

CONFIDENTIAL

DHS-00023841

spray against individuals at Winn in circumstances not authorized by the Force Policy, officers compounded this improper conduct by denying these individuals access to critical medical care and basic human necessities such as soap and water, which would have mitigated the effects of the pepper-spray. Further, the Force Policy requires an examination of a detained person immediately following any use of force incident to assess any medical needs and document any injuries sustained. No medical examination was given to individuals following the use of force against them, nor was any report made related to the injuries they sustained.

## III.    Conclusion

The indiscriminate use of pepper-spray to punish hunger strikers and protestors at Winn on January 26, 2024, was an unlawful use of force that violated the civil and human rights of at least 200 people currently detained at Winn. The decades of reports of neglect, violence, and retaliation against immigrants detained at Winn indicate that the violations raised in this complaint are part of a systemic pattern of abuse that cannot be corrected by the responsible parties. These long-standing issues at Winn can only be remedied by the facility's closure and demands to hold those in authority accountable.

We raise serious concerns about the continued operation of Winn and request an immediate investigation into the January 26, 2024, incident and the abuses described herein by OIG and/or CRCL. *The undersigned organizations look forward to your response in writing regarding the status of this matter by April 2, 2024.*

Sincerely,

ACLU of Louisiana
Immigration Services and Legal Advocacy (ISLA)
National Immigration Project of the National Lawyers Guild
Robert F. Kennedy Human Rights
Southeast Dignity Not Detention Coalition
Southern Poverty Law Center

---

*Clinicopathological effects of pepper (oleoresin capsicum) spray*, 21 Hong Kong Med. J. 542, 547-48 (Dec. 2015), https://www.hkmj.org/system/files/hkmj154691.pdf.

CONFIDENTIAL                                                                                   DHS-00023842

# Exhibit B

**From:**
**To:** EROCRCL@ice.dhs.gov
**Cc:**
**Subject:** CR-010301 I Short Form Due May 2, 2024
**Date:** Thursday, April 18, 2024 2:38:25 PM

Dear ICE Colleagues,

The Office for Civil Rights and Civil Liberties (CRCL) received a complaint alleging that U.S. Immigration and Customs Enforcement (ICE) violated the rights of several individuals in its custody. The purpose of this email is to notify you of the complaint and describe those allegations, inform you that CRCL will investigate this complaint as a short-form, and request documents and information from ICE relating to the allegations.

On January 26, 2024, it is alleged pepper spray was unnecessarily used against approximately 200 detainees held at the Winn Correctional Center, Winnfield, Louisiana, who were participating in a hunger strike to protest conditions and treatment at Winn.

The purpose of our review is to investigate the complaint and information to determine whether ICE's actions in this instance complied with civil rights and civil liberties requirements and ICE's policies.

As part of our review, we request the following documents and information:



We would appreciate receiving the documents and information by COB on May 2, 2024. Please let us know if any documents or information does not exist or are not available.

Under 6 U.S.C. § 345 and 42 U.S.C. § 2000ee-1, CRCL is charged with investigating and assessing complaints against DHS employees and officials for abuses of civil rights, civil liberties, and profiling on the basis of race, ethnicity, or religion. The procedures for our investigations and the recommendations they may generate are outlined in DHS Management

Directive 3500. More particularly, 42 U.S.C. § 2000ee-1(d) grants this Office access to the "information, material, and resources necessary to fulfill the functions" of the office, including the complaint investigation function. Management Directive 3500 further authorizes CRCL to "[i]nterview[] persons and obtain[] other information deemed by CRCL to be relevant and require[] cooperation by all agency employees" and to "[a]ccess[] documents and files that may have information deemed by CRCL to be relevant." All communications and information submitted to CRCL are protected to the maximum extent possible by the attorney-client and deliberative process privileges. However, CRCL is required, under 6 U.S.C. § 345(b), to submit an annual report to Congress—also posted on CRCL's Web site—that is required to detail "any allegations of [civil rights] abuses . . . and any actions taken by the Department in response to such allegations." Finally, 42 U.S.C. § 2000ee-1(e) prohibits reprisals or threats of reprisal by a federal employee for making complaints to CRCL or for disclosing information to CRCL in the course of its investigations. The request for information above is done in accordance with these authorities.

Thank you for your assistance with this request. Please let me know if you have any questions.

Office for Civil Rights and Civil Liberties
U.S. Department of Homeland Security

This message may contain information that is confidential, deliberative, law enforcement sensitive and/or otherwise protected from public disclosure. If it has been sent to you in error, please reply immediately to advise the sender of the error and then destroy this message, any copies of this message and any printout of this message. If you are not the intended recipient of the message, any unauthorized dissemination, distribution or copying of the material in this message, and any attachments to the message, is strictly forbidden. This document is for INTERNAL GOVERNMENT USE ONLY and may be exempt from disclosure under the Freedom of Information Act, 5 U.S.C. §§ 552(b)(5),(b)(6), and/or (b)(7).

| From: | ERO CRCL |
| --- | --- |
| To: | |
| Cc: | ERO CRCL |
| Subject: | 24-CRCL-11146_DHS CRCL Short Form CR-010301 (WCC) (NOL) |
| Date: | Monday, April 29, 2024 12:04:03 PM |
| Attachments: | image001.png |

Good afternoon,

Regards,

CPD/CM/ERO

**From** 

**Sent:** Thursday, April 18, 2024 4:38 PM

**To:** ERO CRCL <EROCRCL@ice.dhs.gov>

**Cc:** 

**Subject:** CR-010301 I Short Form Due May 2, 2024

Dear ICE Colleagues,

The Office for Civil Rights and Civil Liberties (CRCL) received a complaint alleging that U.S. Immigration and Customs Enforcement (ICE) violated the rights of several individuals in its custody. The purpose of this email is to notify you of the complaint and describe those allegations, inform you that CRCL will investigate this complaint as a short-form, and request documents and information from ICE relating to the allegations.

On January 26, 2024, it is alleged pepper spray was unnecessarily used against approximately 200 detainees held at the Winn Correctional Center, Winnfield, Louisiana, who were participating in a hunger strike to protest conditions and treatment at Winn.

The purpose of our review is to investigate the complaint and information to determine whether ICE's actions in this instance complied with civil rights and civil liberties requirements and ICE's policies.

As part of our review, we request the following documents and information:



Under 6 U.S.C. § 345 and 42 U.S.C. § 2000ee-1, CRCL is charged with investigating and assessing complaints against DHS employees and officials for abuses of civil rights, civil liberties, and profiling on the basis of race, ethnicity, or religion. The procedures for our investigations and the recommendations they may generate are outlined in DHS Management Directive 3500. More particularly, 42 U.S.C. § 2000ee-1(d) grants this Office access to the "information, material, and resources necessary to fulfill the functions" of the office, including the complaint investigation function. Management Directive 3500 further authorizes CRCL to "[i]nterview[] persons and obtain[] other information deemed by CRCL to be relevant and require[] cooperation by all agency employees" and to "[a]ccess[] documents and files that may have information deemed by CRCL to be relevant." All communications and information submitted to CRCL are protected to the maximum extent possible by the attorney-client and deliberative process privileges. However, CRCL is required, under 6 U.S.C. § 345(b), to submit an annual report to Congress—also posted on CRCL's Web site—that is required to detail "any allegations of [civil rights] abuses . . . and any actions taken by the Department in response to such allegations." Finally, 42 U.S.C. § 2000ee-1(e) prohibits reprisals or threats of reprisal by a federal employee for making complaints to CRCL or for disclosing information to CRCL in the course of its investigations. The request for information above is done in accordance with these authorities.

Thank you for your assistance with this request. Please let me know if you have any questions.

▮▮▮▮
Office for Civil Rights and Civil Liberties
U.S. Department of Homeland Security

▮▮▮▮▮▮▮▮

This message may contain information that is confidential, deliberative, law enforcement sensitive and/or otherwise protected from public disclosure. If it has been sent to you in error, please reply immediately to advise the sender of the error and then destroy this message, any copies of this message and any printout of this message. If you are not the intended recipient of the message, any unauthorized dissemination, distribution or copying of the material in this message, and any attachments to the message, is strictly forbidden. This document is for INTERNAL GOVERNMENT USE ONLY and may be exempt from disclosure under the Freedom of Information Act, 5 U.S.C. §§ 552(b)(5),(b)(6), and/or (b)(7).

CONFIDENTIAL

# Exhibit C

| | |
|---|---|
| **From:** | ▮▮▮▮▮▮ |
| **To:** | EROCRCL@ice.dhs.gov |
| **Cc:** | |
| **Subject:** | CR-010301 - Video Preservation Request |
| **Date:** | Thursday, April 18, 2024 10:38:13 AM |
| **Attachments:** | CR-010301 - Incoming Correspondence.pdf |

Dear ICE Colleagues,



In the attached letter, allegations were made that pepper spray was used on approximately 200 detainees involved in a hunger strike to protest their treatment and conditions at Winn.

Thank you,

Office for Civil Rights and Civil Liberties
U.S. Department of Homeland Security

This message may contain information that is confidential, deliberative, law enforcement sensitive and/or otherwise protected from public disclosure. If it has been sent to you in error, please reply immediately to advise the sender of the error and then destroy this message, any copies of this message and any printout of this message. If you are not the intended recipient of the message, any unauthorized dissemination, distribution or copying of the material in this message, and any attachments to the message, is strictly forbidden. This document is for INTERNAL GOVERNMENT USE ONLY and may be exempt from disclosure under the Freedom of Information Act, 5 U.S.C. §§ 552(b)(5),(b)(6), and/or (b)(7).

DHS-00023880

**From:** /O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=1A431DAECAC34D0CAAB489C1388E45EE-A28CDBA5-CD]
**Sent:** Thur 2/27/2025 12:20:59 PM Eastern Standard Time
**To:** OPR_ICC_CRCL-OIDO_Intake[OPR_ICC_CRCL-OIDO_Intake@ice.dhs.gov]
**Cc:** CRCL.Compliance/ICC[CRCLCompliance-ICC@hq.dhs.gov]
**Subject:** CRCL Complaint Investigation CR-018797 - ERO Short Form Request for Information Due by March 13, 2025
**Attachment:** 2024.12.20 ACLU of Louisiana (1).pdf

Dear ICE Colleagues:

The Office for Civil Rights and Civil Liberties (CRCL) received a complaint involving aliens in ICE custody. The purpose of this email is to initiate the investigation and request information relevant to the allegation.

On December 19, 2024, CRCL received information from Andrew Perry with the ACLU of Louisiana (Complainant), alleging that South Louisiana ICE Processing Center (SLIPC) hired a detained alien to help care for another detained individual with a disability who uses a wheelchair.

The purpose of our review is to determine whether ICE's actions complied with civil rights and civil liberties requirements and ICE policies. CRCL also recognizes benefits from SLIPC's voluntary work program (VWP) and will further review how it assists detainees with disabilities.

CRCL currently has the following policies and procedures related to the VWP and detainees with disabilities:

1. *PBNDS* (2011) 4.8, Disability Identification, Assessment, and Accommodation
2. *PBNDS* (2011) 5.8, Voluntary Work Program
3. *Geo Group Corporate Procedural Manual*, Correctional Health Services, Inmate/Detainee/Resident Workers, Number: 404-A
4. *Geo Group Corporate Procedural Manual*, Correctional Health Services, Aids to Impairment, Number: 901-A
5. *Geo Group Corporate Procedural Manual*, Correctional Health Services, Special Needs Inmates/Detainees/Residents, Number: 906-A
6. *Geo Group Corporate Procedural Manual*, South Louisiana ICE Processing Center, Special Needs, Number: 906-B
7. *South Louisiana ICE Processing Center Policy and Procedure Manual*, ICE Detainee Voluntary Facility Activities Program, Number 8.1.1
8. *South Louisiana ICE Processing Center Policy and Procedure Manual*, Disability Identification, Assessment, and Accommodation, Number 9.1.7

To assist us in this investigation, please provide any documents (records, files, correspondence, etc.) that address the following requests. Please let us know if no such documents exist. If ICE is aware of relevant information not documented, please provide a written response.



Under 6 U.S.C. § 345 and 42 U.S.C. § 2000ee-1, CRCL is charged with investigating and assessing complaints against DHS employees and officials for abuses of civil rights, civil liberties, and profiling on the basis of race, ethnicity, or religion. The procedures for our investigations and the recommendations they may generate are outlined in DHS Management Directive 3500. More particularly, 42 U.S.C. § 2000ee-1(d) grants this Office access to the "information, material, and resources necessary to fulfill the functions" of the office, including the complaint investigation function; Management Directive 3500 further authorizes CRCL to "[i]nterview[] persons and obtain[] other information deemed by CRCL to be relevant and require[] cooperation by all agency employees" and to "[a]ccess[] documents and files that may have information deemed by CRCL to be relevant." All communications and information submitted to CRCL are protected to the maximum extent possible by the attorney-client and deliberative process privileges. However, CRCL is required, under 6 U.S.C. § 345(b), to submit an annual report to Congress—also posted on CRCL's Web site—that is required to detail "any allegations of [civil rights] abuses . . . and any actions taken by the Department in response to such allegations." Finally, 42 U.S.C. § 2000ee-1(e) prohibits reprisals or threats of reprisal by a federal employee for making complaints to CRCL or for disclosing information to CRCL in the course of its investigations. The request for information above is done in accordance with these authorities.

Thank you for your assistance with this request, and please let me know if you have any questions.

Policy Advisor
Office for Civil Rights and Civil Liberties
U.S. Department of Homeland Security

This message may contain information that is confidential, deliberative, law enforcement sensitive and/or otherwise protected from public disclosure. If it has been sent to you in error, please reply immediately to advise the sender of the error and then destroy this message, any copies of this message and any printout of this message. If you are not the intended recipient of the message, any unauthorized dissemination, distribution or copying of the material in this message, and any attachments to the message, is strictly forbidden. This document is for INTERNAL GOVERNMENT USE ONLY and may be exempt from disclosure under the Freedom of Information Act, 5 U.S.C. §§ 552(b)(5),(b)(6), and/or (b)(7).

CONFIDENTIAL

# Exhibit D

**From:** CRCLCompliance[/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=1DA71B1F2BCD4D86815B9979F71EFCA6-CRCLCOMPLIA]
**Sent:** Tue 9/10/2024 10:42:34 AM Eastern Daylight Time
**To:**
**Subject:** CRCL Complaint No. CR-010301
**Attachment:** CR-010301_Retention Letter_DHS CRCL Letter_2024.09.10.pdf

Dear Sarah Decker,

Attached, please find correspondence from the DHS Office for Civil Rights and Civil Liberties related to your complaint. Thank you, and if you have any questions, please let us know.

Sincerely,

Office for Civil Rights and Civil Liberties
U.S. Department of Homeland Security



*This message may contain information that is confidential, deliberative, law enforcement sensitive and/or otherwise protected from public disclosure. If it has been sent to you in error, please reply immediately to advise the sender of the error and then destroy this message, any copies of this message and any printout of this message. If you are not the intended recipient of the message, any unauthorized dissemination, distribution or copying of the material in this message, and any attachments to the message, is strictly forbidden.*

*Office for Civil Rights and Civil Liberties*
**U.S. Department of Homeland Security**
Washington, DC 20528

 **Homeland Security**

September 10, 2024

*Via Electronic Mail*

Sarah Decker
Staff Attorney



Re: Complaint No. CR-010301

Dear Sarah Decker:

The U.S. Department of Homeland Security (DHS), Office for Civil Rights and Civil Liberties
(CRCL) received correspondence from you on March 27, 2024 on behalf of individuals in
U.S. Immigration and Customs Enforcement (ICE) custody at Winn Correctional Center in
Winnfield, Louisiana. Specifically, you alleged that on January 26, 2024, ICE and its contractors at
Winn "violently attacked a dorm of approximately 200 people with pepper-spray."

Under 6 U.S.C. § 345 and 42 U.S.C. § 2000ee-1, CRCL has the responsibility to review and assess
complaints against DHS employees and officials concerning violations of civil rights, civil liberties,
and profiling on the basis of race, ethnicity, or religion. We will conduct an investigation into the
concerns you have raised.

CRCL takes allegations of violations of civil rights and civil liberties very seriously. The purpose of
our review is to assess if your complaint implicates issues that should be addressed by DHS
management. Under 6 U.S.C. § 345 and 42 U.S.C. § 2000ee-1, our complaint process does not
provide individuals with legal or procedural rights or remedies. Accordingly, CRCL is not able to
obtain any legal remedies or damages on your behalf. Instead, we use complaints like yours to find
and address problems in DHS policy and its implementation. If you believe your rights have been
violated, you may wish to consult an attorney. There may be time limitations that govern how
quickly you need to act to protect your legal interests.

Please note that Federal law forbids retaliation or reprisal by any Federal employee against a person
who makes a complaint or discloses information to this Office. 42 U.S.C. § 2000ee-1(e). If you
believe that you or someone else is a victim of such a reprisal, please contact us immediately.

As we conduct our investigation into the allegations raised in your complaint, a representative from
CRCL may contact you for additional information. If you have any questions concerning this
complaint, you may contact CRCL by email at CRCLCompliance@hq.dhs.gov. When you

communicate with us, please include the complaint number. In addition, it is very important to notify us of any changes in your address or telephone number.

Thank you for your complaint. Inquiries like yours help DHS meet its obligation to protect civil rights and civil liberties. You can expect to receive a letter from us informing you how we have concluded this matter.

Sincerely,

Executive Director, Compliance Branch
Office for Civil Rights and Civil Liberties
U.S. Department of Homeland Security

2

**From:** CRCL Compliance Executive Director[/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP
(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=B5F31D04D0834298AE7824F188552241-CRCL COMPLI]
**Sent:** Thur 9/5/2024 5:14:04 PM Eastern Daylight Time



**Subject:** CRCL Retention Documents for Multidisciplinary Onsite Investigation of Winn Correctional Center
**Attachment:** Winn Correctional Center Retention Memo signed DSD.pdf
**Attachment:** Winn Correctional Center Request for Information.pdf

Mr.

Attached, please find the retention documents for CRCL's multidisciplinary onsite investigation of Winn Correctional Center. Thank you and please let us know if you have any questions.

Regards,

Office for Civil Rights and Civil Liberties
U.S. Department of Homeland Security



# Exhibit E

**From:** ████████ /O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=1A431DAECAC34D0CAAB489C1388E45EE-A28CDBA5-CD]
**Sent:** Fri 2/28/2025 3:01:08 PM Eastern Standard Time
**To:** ████████
**Subject:** RE: CRCL Complaint Investigation CR-018797 - ERO Short Form Request for Information Due by March 13, 2025

████████████████████████████████████████

**From:** ████████
**Sent:** Friday, February 28, 2025 2:55 PM
**To:** ████████
**Subject:** RE: CRCL Complaint Investigation CR-018797 - ERO Short Form Request for Information Due by March 13, 2025

████████████████████████████████████████

**From:** ████████
**Sent:** Friday, February 28, 2025 2:54 PM
**To:** ████████
**Subject:** RE: CRCL Complaint Investigation CR-018797 - ERO Short Form Request for Information Due by March 13, 2025

████████████████████████████████████████

**From:** ████████
**Sent:** Friday, February 28, 2025 2:50 PM
**To:** ████████
**Subject:** RE: CRCL Complaint Investigation CR-018797 - ERO Short Form Request for Information Due by March 13, 2025

████████████████████████████████████████

**From:** ████████
**Sent:** Friday, February 28, 2025 2:31 PM
**To:** ████████
**Subject:** RE: CRCL Complaint Investigation CR-018797 - ERO Short Form Request for Information Due by March 13, 2025

████████████████████████████████████████

**From:** ████████
**Sent:** Friday, February 28, 2025 9:58 AM
**To:** ████████
**Subject:** RE: CRCL Complaint Investigation CR-018797 - ERO Short Form Request for Information Due by March 13, 2025

████████████████████████████████████████

**From:** ████████
**Sent:** Friday, February 28, 2025 8:36 AM
**To:** ████████
**Cc:** ERO CRCL <EROCRCL@ice.dhs.gov>; ████████
**Subject:** FW: CRCL Complaint Investigation CR-018797 - ERO Short Form Request for Information Due by March 13, 2025

Good Morning Zach and Kana –

████████████████████████████████████████

Sahar

**Ms. ████████**
*MPA/ERO Disability Access Coordinator/ERO National Religious Services Coordinator/ ERO Human Trafficking Liaison to DHS CCHT*
*Special Populations and Programs Unit*
*Custody Management Division - Custody Programs Division*
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement

████████████████████████████████████████

**From:** ████████
**Sent:** Thursday, February 27, 2025 12:21 PM

DHS-00024072

**To:** OPR_ICC_CRCL-OIDO_Intake <OPR_ICC_CRCL-OIDO_Intake@ice.dhs.gov>
**Cc:** CRCL Compliance/ICC <CRCLCompliance-ICC@hq.dhs.gov>
**Subject:** CRCL Complaint Investigation CR-018797 - ERO Short Form Request for Information Due by March 13, 2025

Dear ICE Colleagues:

The Office for Civil Rights and Civil Liberties (CRCL) received a complaint involving aliens in ICE custody. The purpose of this email is to initiate the investigation and request information relevant to the allegation.

On December 19, 2024, CRCL received information from Andrew Perry with the ACLU of Louisiana (Complainant), alleging that South Louisiana ICE Processing Center (SLIPC) hired a detained alien to help care for another detained individual with a disability who uses a wheelchair.

The purpose of our review is to determine whether ICE's actions complied with civil rights and civil liberties requirements and ICE policies. CRCL also recognizes benefits from SLIPC's voluntary work program (VWP) and will further review how it assists detainees with disabilities.

CRCL currently has the following policies and procedures related to the VWP and detainees with disabilities:

1. *PBNDS* (2011) 4.8, Disability Identification, Assessment, and Accommodation
2. *PBNDS* (2011) 5.8, Voluntary Work Program
3. *Geo Group Corporate Procedural Manual*, Correctional Health Services, Inmate/Detainee/Resident Workers, Number: 404-A
4. *Geo Group Corporate Procedural Manual*, Correctional Health Services, Aids to Impairment, Number: 901-A
5. *Geo Group Corporate Procedural Manual*, Correctional Health Services, Special Needs Inmates/Detainees/Residents, Number: 906-A
6. *Geo Group Corporate Procedural Manual*, South Louisiana ICE Processing Center, Special Needs, Number: 906-B
7. *South Louisiana ICE Processing Center Policy and Procedure Manual*, ICE Detainee Voluntary Facility Activities Program, Number 8.1.1
8. *South Louisiana ICE Processing Center Policy and Procedure Manual*, Disability Identification, Assessment, and Accommodation, Number 9.1.7

To assist us in this investigation, please provide any documents (records, files, correspondence, etc.) that address the following requests. Please let us know if no such documents exist. If ICE is aware of relevant information not documented, please provide a written response.



Under 6 U.S.C. § 345 and 42 U.S.C. § 2000ee-1, CRCL is charged with investigating and assessing complaints against DHS employees and officials for abuses of civil rights, civil liberties, and profiling on the basis of race, ethnicity, or religion. The procedures for our investigations and the recommendations they may generate are outlined in DHS Management Directive 3500. More particularly, 42 U.S.C. § 2000ee-1(d) grants this Office access to the "information, material, and resources necessary to fulfill the functions" of the office, including the complaint investigation function; Management Directive 3500 further authorizes CRCL to "[i]nterview[] persons and obtain[] other information deemed by CRCL to be relevant and require[] cooperation by all agency employees" and to "[a]ccess[] documents and files that may have information deemed by CRCL to be relevant." All communications and information submitted to CRCL are protected to the maximum extent possible by the attorney-client and deliberative process privileges. However, CRCL is required, under 6 U.S.C. § 345(b), to submit an annual report to Congress—also posted on CRCL's Web site—that is required to detail "any allegations of [civil rights] abuses . . . and any actions taken by the Department in response to such allegations." Finally, 42 U.S.C. § 2000ee-1(e) prohibits reprisals or threats of reprisal by a federal employee for making complaints to CRCL or for disclosing information to CRCL in the course of its investigations. The request for information above is done in accordance with these authorities.

Thank you for your assistance with this request, and please let me know if you have any questions.

Policy Advisor
Office for Civil Rights and Civil Liberties
U.S. Department of Homeland Security

This message may contain information that is confidential, deliberative, law enforcement sensitive and/or otherwise protected from public disclosure. If it has been sent to you in error, please reply immediately to advise the sender of the error and then destroy this message, any copies of this message and any printout of this message. If you are not the intended recipient of the message, any unauthorized dissemination, distribution or copying of the material in this message, and any attachments to the message, is strictly forbidden. This document is for INTERNAL GOVERNMENT USE ONLY

and may be exempt from disclosure under the Freedom of Information Act, 5 U.S.C. §§ 552(b)(5),(b)(6), and/or (b)(7).

CONFIDENTIAL

DHS-00024074

# Exhibit F

**From:** /O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=1A431DAECAC34D0CAAB489C1388E45EE-A28CDBA5-CD]
**Sent:** Thur 2/27/2025 12:20:59 PM Eastern Standard Time
**To:** OPR_ICC_CRCL-OIDO_Intake[OPR_ICC_CRCL-OIDO_Intake@ice.dhs.gov]
**Cc:** CRCL Compliance/ICC[CRCLCompliance-ICC@hq.dhs.gov]
**Subject:** CRCL Complaint Investigation CR-018797 - ERO Short Form Request for Information Due by March 13, 2025
**Attachment:** 2024.12.20 ACLU of Louisiana (1).pdf

Dear ICE Colleagues:

The Office for Civil Rights and Civil Liberties (CRCL) received a complaint involving aliens in ICE custody. The purpose of this email is to initiate the investigation and request information relevant to the allegation.

On December 19, 2024, CRCL received information from Andrew Perry with the ACLU of Louisiana (Complainant), alleging that South Louisiana ICE Processing Center (SLIPC) hired a detained alien to help care for another detained individual with a disability who uses a wheelchair.

The purpose of our review is to determine whether ICE's actions complied with civil rights and civil liberties requirements and ICE policies. CRCL also recognizes benefits from SLIPC's voluntary work program (VWP) and will further review how it assists detainees with disabilities.

CRCL currently has the following policies and procedures related to the VWP and detainees with disabilities:

1. *PBNDS* (2011) 4.8, Disability Identification, Assessment, and Accommodation
2. *PBNDS* (2011) 5.8, Voluntary Work Program
3. *Geo Group Corporate Procedural Manual*, Correctional Health Services, Inmate/Detainee/Resident Workers, Number: 404-A
4. *Geo Group Corporate Procedural Manual*, Correctional Health Services, Aids to Impairment, Number: 901-A
5. *Geo Group Corporate Procedural Manual*, Correctional Health Services, Special Needs Inmates/Detainees/Residents, Number: 906-A
6. *Geo Group Corporate Procedural Manual*, South Louisiana ICE Processing Center, Special Needs, Number: 906-B
7. *South Louisiana ICE Processing Center Policy and Procedure Manual*, ICE Detainee Voluntary Facility Activities Program, Number 8.1.1
8. *South Louisiana ICE Processing Center Policy and Procedure Manual*, Disability Identification, Assessment, and Accommodation, Number 9.1.7

To assist us in this investigation, please provide any documents (records, files, correspondence, etc.) that address the following requests. Please let us know if no such documents exist. If ICE is aware of relevant information not documented, please provide a written response.



Under 6 U.S.C. § 345 and 42 U.S.C. § 2000ee-1, CRCL is charged with investigating and assessing complaints against DHS employees and officials for abuses of civil rights, civil liberties, and profiling on the basis of race, ethnicity, or religion. The procedures for our investigations and the recommendations they may generate are outlined in DHS Management Directive 3500. More particularly, 42 U.S.C. § 2000ee-1(d) grants this Office access to the "information, material, and resources necessary to fulfill the functions" of the office, including the complaint investigation function; Management Directive 3500 further authorizes CRCL to "[i]nterview[] persons and obtain[] other information deemed by CRCL to be relevant and require[] cooperation by all agency employees" and to "[a]ccess[] documents and files that may have information deemed by CRCL to be relevant." All communications and information submitted to CRCL are protected to the maximum extent possible by the attorney-client and deliberative process privileges. However, CRCL is required, under 6 U.S.C. § 345(b), to submit an annual report to Congress—also posted on CRCL's Web site—that is required to detail "any allegations of [civil rights] abuses . . . and any actions taken by the Department in response to such allegations." Finally, 42 U.S.C. § 2000ee-1(e) prohibits reprisals or threats of reprisal by a federal employee for making complaints to CRCL or for disclosing information to CRCL in the course of its investigations. The request for information above is done in accordance with these authorities.

Thank you for your assistance with this request, and please let me know if you have any questions.

Policy Advisor
Office for Civil Rights and Civil Liberties
U.S. Department of Homeland Security

This message may contain information that is confidential, deliberative, law enforcement sensitive and/or otherwise protected from public disclosure. If it has been sent to you in error, please reply immediately to advise the sender of the error and then destroy this message, any copies of this message and any printout of this message. If you are not the intended recipient of the message, any unauthorized dissemination, distribution or copying of the material in this message, and any attachments to the message, is strictly forbidden. This document is for INTERNAL GOVERNMENT USE ONLY and may be exempt from disclosure under the Freedom of Information Act, 5 U.S.C. §§ 552(b)(5),(b)(6), and/or (b)(7).

**From:** ██████ /O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=1A431DAECAC34D0CAAB489C1388E45EE-A28CDBA5-CD]
**Sent:** Fri 2/28/2025 3:01:08 PM Eastern Standard Time
**To:** ████
**Subject:** RE: CRCL Complaint Investigation CR-018797 - ERO Short Form Request for Information Due by March 13, 2025

████████████████████████████████████

**From:** ████████████
**Sent:** Friday, February 28, 2025 2:55 PM
**To:** ████
**Subject:** RE: CRCL Complaint Investigation CR-018797 - ERO Short Form Request for Information Due by March 13, 2025

████████████████████████████████████

**From:** ████████
**Sent:** Friday, February 28, 2025 2:54 PM
**To:** ████████
**Subject:** RE: CRCL Complaint Investigation CR-018797 - ERO Short Form Request for Information Due by March 13, 2025

████████████████████████████████████

**From:** ████████████
**Sent:** Friday, February 28, 2025 2:50 PM
**To:** ████████████
**Subject:** RE: CRCL Complaint Investigation CR-018797 - ERO Short Form Request for Information Due by March 13, 2025

████████████████████████████████████

**From:** ████████████
**Sent:** Friday, February 28, 2025 2:31 PM
**To:** ████████████
**Subject:** RE: CRCL Complaint Investigation CR-018797 - ERO Short Form Request for Information Due by March 13, 2025

████████████████████████████████████

**From:** ████████████
**Sent:** Friday, February 28, 2025 9:58 AM
**To:** ████
**Subject:** RE: CRCL Complaint Investigation CR-018797 - ERO Short Form Request for Information Due by March 13, 2025

████████████████████████████████████

**From:** ████████████
**Sent:** Friday, February 28, 2025 8:36 AM
**To:** ████
**Cc:** ERO CRCL <EROCRCL@ice.dhs.gov>; ████████████
**Subject:** FW: CRCL Complaint Investigation CR-018797 - ERO Short Form Request for Information Due by March 13, 2025

Good Morning Zach and Kana –

████████████████████████████████████

Sahar

**Ms.** ████████
*MPA/ERO Disability Access Coordinator/ERO National Religious Services Coordinator/ ERO Human Trafficking Liaison to DHS CCHT*
*Special Populations and Programs Unit*
*Custody Management Division - Custody Programs Division*
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement

████████████████████████████████████

**From:** ████████████
**Sent:** Thursday, February 27, 2025 12:21 PM

**To:** OPR_ICC_CRCL-OIDO_Intake <OPR_ICC_CRCL-OIDO_Intake@ice.dhs.gov>
**Cc:** CRCL Compliance/ICC <CRCLCompliance-ICC@hq.dhs.gov>
**Subject:** CRCL Complaint Investigation CR-018797 - ERO Short Form Request for Information Due by March 13, 2025

Dear ICE Colleagues:

The Office for Civil Rights and Civil Liberties (CRCL) received a complaint involving aliens in ICE custody. The purpose of this email is to initiate the investigation and request information relevant to the allegation.

On December 19, 2024, CRCL received information from Andrew Perry with the ACLU of Louisiana (Complainant), alleging that South Louisiana ICE Processing Center (SLIPC) hired a detained alien to help care for another detained individual with a disability who uses a wheelchair.

The purpose of our review is to determine whether ICE's actions complied with civil rights and civil liberties requirements and ICE policies. CRCL also recognizes benefits from SLIPC's voluntary work program (VWP) and will further review how it assists detainees with disabilities.

CRCL currently has the following policies and procedures related to the VWP and detainees with disabilities:

1. *PBNDS* (2011) 4.8, Disability Identification, Assessment, and Accommodation
2. *PBNDS* (2011) 5.8, Voluntary Work Program
3. *Geo Group Corporate Procedural Manual*, Correctional Health Services, Inmate/Detainee/Resident Workers, Number: 404-A
4. *Geo Group Corporate Procedural Manual*, Correctional Health Services, Aids to Impairment, Number: 901-A
5. *Geo Group Corporate Procedural Manual*, Correctional Health Services, Special Needs Inmates/Detainees/Residents, Number: 906-A
6. *Geo Group Corporate Procedural Manual*, South Louisiana ICE Processing Center, Special Needs, Number: 906-B
7. *South Louisiana ICE Processing Center Policy and Procedure Manual*, ICE Detainee Voluntary Facility Activities Program, Number 8.1.1
8. *South Louisiana ICE Processing Center Policy and Procedure Manual*, Disability Identification, Assessment, and Accommodation, Number 9.1.7

To assist us in this investigation, please provide any documents (records, files, correspondence, etc.) that address the following requests. Please let us know if no such documents exist. If ICE is aware of relevant information not documented, please provide a written response.



Under 6 U.S.C. § 345 and 42 U.S.C. § 2000ee-1, CRCL is charged with investigating and assessing complaints against DHS employees and officials for abuses of civil rights, civil liberties, and profiling on the basis of race, ethnicity, or religion. The procedures for our investigations and the recommendations they may generate are outlined in DHS Management Directive 3500. More particularly, 42 U.S.C. § 2000ee-1(d) grants this Office access to the "information, material, and resources necessary to fulfill the functions" of the office, including the complaint investigation function; Management Directive 3500 further authorizes CRCL to "[i]nterview[] persons and obtain[] other information deemed by CRCL to be relevant and require[] cooperation by all agency employees" and to "[a]ccess[] documents and files that may have information deemed by CRCL to be relevant." All communications and information submitted to CRCL are protected to the maximum extent possible by the attorney-client and deliberative process privileges. However, CRCL is required, under 6 U.S.C. § 345(b), to submit an annual report to Congress—also posted on CRCL's Web site—that is required to detail "any allegations of [civil rights] abuses . . . and any actions taken by the Department in response to such allegations." Finally, 42 U.S.C. § 2000ee-1(e) prohibits reprisals or threats of reprisal by a federal employee for making complaints to CRCL or for disclosing information to CRCL in the course of its investigations. The request for information above is done in accordance with these authorities.

Thank you for your assistance with this request, and please let me know if you have any questions.

Policy Advisor
Office for Civil Rights and Civil Liberties
U.S. Department of Homeland Security

This message may contain information that is confidential, deliberative, law enforcement sensitive and/or otherwise protected from public disclosure. If it has been sent to you in error, please reply immediately to advise the sender of the error and then destroy this message, any copies of this message and any printout of this message. If you are not the intended recipient of the message, any unauthorized dissemination, distribution or copying of the material in this message, and any attachments to the message, is strictly forbidden. This document is for INTERNAL GOVERNMENT USE ONLY

and may be exempt from disclosure under the Freedom of Information Act, 5 U.S.C. §§ 552(b)(5),(b)(6), and/or (b)(7).

CONFIDENTIAL

From: OPR_ICC_CRCL-OIDO_Intake[OPR_ICC_CRCL-OIDO_Intake@ice.dhs.gov]
Sent: Tue 3/11/2025 11:17:51 AM Eastern Standard Time
To: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮OPR_ICC_CRCL-OIDO_Intake[OPR_ICC_CRCL-OIDO_Intake@ice.dhs.gov]
Cc: CRCL Compliance/ICC[CRCLCompliance-ICC@hq.dhs.gov]
Subject: RE: CRCL Complaint Investigation CR-018797 - ERO Short Form Request for Information Due by March 13, 2025

Good Morning,
In response to below, please see ERO CRCL's response:



Integrity Coordination Center
U.S. Immigration and Customs Enforcement
Office of Professional Responsibility
email: opr_icc_crcl-oido_intake@ice.dhs.gov

---

From: ▮▮▮▮▮▮▮▮▮▮▮▮▮
Sent: Friday, February 28, 2025 3:06 PM
To: OPR_ICC_CRCL-OIDO_Intake <OPR_ICC_CRCL-OIDO_Intake@ice.dhs.gov>
Cc: CRCL Compliance/ICC <CRCLCompliance-ICC@hq.dhs.gov>
Subject: RE: CRCL Complaint Investigation CR-018797 - ERO Short Form Request for Information Due by March 13, 2025

Dear ICE Colleagues:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮

---

From: ▮▮▮▮▮▮
Sent: Thursday, February 27, 2025 12:21 PM
To: OPR_ICC_CRCL-OIDO_Intake <OPR_ICC_CRCL-OIDO_Intake@ice.dhs.gov>
Cc: CRCL Compliance/ICC <CRCLCompliance-ICC@hq.dhs.gov>
Subject: CRCL Complaint Investigation CR-018797 - ERO Short Form Request for Information Due by March 13, 2025

Dear ICE Colleagues:

The Office for Civil Rights and Civil Liberties (CRCL) received a complaint involving aliens in ICE custody. The purpose of this email is to initiate the investigation and request information relevant to the allegation.

On December 19, 2024, CRCL received information from Andrew Perry with the ACLU of Louisiana (Complainant), alleging that South Louisiana ICE Processing Center (SLIPC) hired a detained alien to help care for another detained individual with a disability who uses a wheelchair.

The purpose of our review is to determine whether ICE's actions complied with civil rights and civil liberties requirements and ICE policies. CRCL also recognizes benefits from SLIPC's voluntary work program (VWP) and will further review how it assists detainees with disabilities.

CRCL currently has the following policies and procedures related to the VWP and detainees with disabilities:

1. *PBNDS* (2011) 4.8, Disability Identification, Assessment, and Accommodation
2. *PBNDS* (2011) 5.8, Voluntary Work Program

3. *Geo Group Corporate Procedural Manual*, Correctional Health Services, Inmate/Detainee/Resident Workers, Number: 404-A

4. *Geo Group Corporate Procedural Manual*, Correctional Health Services, Aids to Impairment, Number: 901-A

5. *Geo Group Corporate Procedural Manual*, Correctional Health Services, Special Needs Inmates/Detainees/Residents, Number: 906-A

6. *Geo Group Corporate Procedural Manual*, South Louisiana ICE Processing Center, Special Needs, Number: 906-B

7. *South Louisiana ICE Processing Center Policy and Procedure Manual*, ICE Detainee Voluntary Facility Activities Program, Number 8.1.1

8. *South Louisiana ICE Processing Center Policy and Procedure Manual*, Disability Identification, Assessment, and Accommodation, Number 9.1.7

To assist us in this investigation, please provide any documents (records, files, correspondence, etc.) that address the following requests. Please let us know if no such documents exist. If ICE is aware of relevant information not documented, please provide a written response.

Under 6 U.S.C. § 345 and 42 U.S.C. § 2000ee-1, CRCL is charged with investigating and assessing complaints against DHS employees and officials for abuses of civil rights, civil liberties, and profiling on the basis of race, ethnicity, or religion. The procedures for our investigations and the recommendations they may generate are outlined in DHS Management Directive 3500. More particularly, 42 U.S.C. § 2000ee-1(d) grants this Office access to the "information, material, and resources necessary to fulfill the functions" of the office, including the complaint investigation function; Management Directive 3500 further authorizes CRCL to "[i]nterview[] persons and obtain[] other information deemed by CRCL to be relevant and require[] cooperation by all agency employees" and to "[a]ccess[] documents and files that may have information deemed by CRCL to be relevant." All communications and information submitted to CRCL are protected to the maximum extent possible by the attorney-client and deliberative process privileges. However, CRCL is required, under 6 U.S.C. § 345(b), to submit an annual report to Congress—also posted on CRCL's Web site—that is required to detail "any allegations of [civil rights] abuses . . . and any actions taken by the Department in response to such allegations." Finally, 42 U.S.C. § 2000ee-1(e) prohibits reprisals or threats of reprisal by a federal employee for making complaints to CRCL or for disclosing information to CRCL in the course of its investigations. The request for information above is done in accordance with these authorities.

Thank you for your assistance with this request, and please let me know if you have any questions.

Policy Advisor
Office for Civil Rights and Civil Liberties
U.S. Department of Homeland Security

This message may contain information that is confidential, deliberative, law enforcement sensitive and/or otherwise protected from public disclosure. If it has been sent to you in error, please reply immediately to advise the sender of the error and then destroy this message, any copies of this message and any printout of this message. If you are not the intended recipient of the message, any unauthorized dissemination, distribution or copying of the material in this message, and any attachments to the message, is strictly forbidden. This document is for INTERNAL GOVERNMENT USE ONLY and may be exempt from disclosure under the Freedom of Information Act, 5 U.S.C. §§ 552(b)(5),(b)(6), and/or (b)(7).

DHS-00024076

# Exhibit G

| | |
|---|---|
| **From:** | CRCLCompliance |
| **To:** | |
| **Bcc:** | CRCLCompliance |
| **Subject:** | Regarding Complaint No. CR-018797 |
| **Date:** | Thursday, February 6, 2025 2:32:21 PM |
| **Attachments:** | CR-018797_DHS_CRCL_Letter_2025.02.06.pdf |
| | image001.png |

Dear Andrew Perry,

Please see the attached correspondence from the U.S. Department of Homeland Security Office for Civil Rights and Civil Liberties. Thank you.

Sincerely,

Office for Civil Rights and Civil Liberties
U.S. Department of Homeland Security



*This message may contain information that is confidential, deliberative, law enforcement sensitive and/or otherwise protected from public disclosure. If it has been sent to you in error, please reply immediately to advise the sender of the error and then destroy this message, any copies of this message and any printout of this message. If you are not the intended recipient of the message, any unauthorized dissemination, distribution or copying of the material in this message, and any attachments to the message, is strictly forbidden. This document is for INTERNAL GOVERNMENT USE ONLY and may be exempt from disclosure under the Freedom of Information Act, 5 U.S.C. §§ 552(b)(5),(b)(6), and/or (b)(7).*

DHS-00024077

*Office for Civil Rights and Civil Liberties*
**U.S. Department of Homeland Security**
Washington, DC 20528

 **Homeland Security**

February 6, 2025

*Via electronic mail*

Andrew Perry, Esq.



Re: Complaint No. CR-018797

Dear Andrew Perry:

On December 20, 2024, the U.S. Department of Homeland Security (DHS) Office for Civil Rights and Civil Liberties (CRCL) received information from you. Thank you for contacting us with your concerns. Under 6 U.S.C. § 345 and 42 U.S.C. § 2000ee-1, CRCL reviews and assesses information concerning abuses of civil rights, civil liberties, and profiling on the basis of race, ethnicity, or religion, by employees and officials of DHS. CRCL also reviews allegations that DHS employees, programs, or activities discriminated on the basis of disability under Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 ("Section 504").

The issues you raise are important to us, and we would like to inform you how your submission will be processed by CRCL. Initially, we sent your allegations to the DHS Office of Inspector General (OIG) for review because the OIG has the right of first refusal to investigate allegations of civil rights and civil liberties violations involving DHS. The OIG has declined to investigate the matter. CRCL is conducting an investigation. Please be aware that CRCL may not investigate all issues that you raise in your correspondence. CRCL may contact you during the course of investigation of your complaint. We will notify you of the outcome of the investigation.

Please be advised that our complaint process does not provide individuals with legal rights or remedies. Accordingly, CRCL is not able to obtain any legal remedies or damages on anyone's behalf. Instead, we use complaints like yours to find and address problems in DHS policy and its implementation. If you or anyone else believes their rights have been violated, you may wish to consult an attorney. There may be time limitations that govern how quickly you need to act to protect your interests.

If you have not already done so, please provide CRCL with your complete contact information, including a phone number, email address, and mailing address if available, and your A-Number if applicable. You may contact CRCL by email at crclcompliance@hq.dhs.gov, by facsimile at 202-401-4708, or by mail at the following address:

> Department of Homeland Security
> Office for Civil Rights and Civil Liberties
> Compliance Branch, Mail Stop 0190
> 2707 Martin Luther King Jr Ave SE
> Washington, DC 20528-0190

For additional information about CRCL's roles and responsibilities, please visit our website at www.dhs.gov/crcl.

If you are filing a complaint on behalf of someone else, please provide CRCL with the express written consent of the individual if you would like to be informed about the resolution of this complaint, if you have not already done so.

When communicating with CRCL about this matter, please include the complaint number noted at the top of this letter.

Please note that Federal law forbids retaliation or reprisal by any Federal employee against a person who makes a complaint or discloses information to CRCL. 42 U.S.C. § 2000ee-1(e). If you believe that you or someone else is a victim of such a reprisal, please contact us immediately.

Thank you again for contacting CRCL. Communications like yours are essential to our ability to carry out our role of supporting the DHS's mission to secure the nation while preserving individual liberty, fairness, and equality under the law. We look forward to working with you to address your concerns. If you have questions, please contact us either in writing or by phone at 866-644-8360, 866-644-8361 (TTY).

> Sincerely,
>
> Office for Civil Rights and Civil Liberties
> U.S. Department of Homeland Security

2

DHS-00024079

## Privacy Act Statement

**Authority:** 6 U.S.C. § 345 and 42 U.S.C. § 2000ee-1 authorizes the collection of this information.

**Purpose:** The Department of Homeland Security (DHS) will use this information to review and investigate complaints and information from the public about possible violations of civil rights and/or civil liberties relating to DHS employees, programs, or activities.

**Routine Uses:** This information may be disclosed to and used by personnel and contractors within DHS who have a need to know the information in order to review your complaint. The DHS Office for Civil Rights and Civil Liberties (CRCL) may also share your information, as necessary, with appropriate government agencies outside of DHS or with non-government entities to address your complaint, or pursuant to its published Department of Homeland Security/ ALL-029 Civil Rights and Civil Liberties Records System of Records.

**Disclosure:** Furnishing this information to CRCL is voluntary; however, failure to furnish the requested information may delay or prevent CRCL from adequately reviewing and investigating your complaint. If necessary, CRCL may also request additional information from you in order to determine the appropriate manner to address your concerns.

To learn more about the Privacy Act, go to www.dhs.gov/privacy.

3

CONFIDENTIAL

DHS-00024080