UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT F. KENNEDY HUMAN RIGHTS; SOUTHERN BORDER COMMUNITIES COALITION; and URBAN JUSTICE CENTER,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; and KRISTI NOEM, in her official capacity as Secretary of Homeland Security,<br><br>Defendants. | Civil Action No. 25-1270-ACR |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

Defendants respectfully submit this Statement of Material Facts Not in Dispute in support of Defendants' cross-motion for summary judgment (ECF 66), in accordance with Local Civil Rule 7(h) and this Court's Standing Order.

| | |
|---|---|
| 1. Consistent with Executive Order 14210, DHS began preparing RIFs for CLCR, OIDO, and CISOMB because they had substantial workforces not performing statutory duties.  Ex.1 (Sartini Decl. May 18) ¶ 5. | |
| 2. Though not always clearly messaged, the Offices' positions were being eliminated so new ones could be made; the Offices were never being eliminated.  Ex.3 (Barksdale-Perry Decl.) ¶¶ 3, 6; Ex.4 (Hearing May 23) at 8:20-9:22, 28:24-29:10. | |
| 3. The RIF notices stated that, under Order 14210, the Department "must prioritize the *reduction of positions* performing functions | |

| | |
|---|---|
| *not explicitly mandated* by statute or regulation" and conducted "a comprehensive statute-by-statute analysis" to identify those positions. Ex. 5 (RIF Notices) (emphasis added). | |
| 4. The Department recognized that the Offices had necessary statutory functions. Ex. 6 (Hearing Tr., May 19) at 77:18-78:1; Ex. 7 (Statutory Authorities). It thus sought to realign the Offices to focus on those statutory functions, not eliminate or restructure them. Ex. 1 (Sartini Decl. May 18) ¶¶ 9-10, 13-14; *see also* Ex. 8 (Hemenway Dep.) at 28:18-29:1 (Principal Deputy Chief of Staff testifying that his "only goal was to maintain statutory compliance"). | |
| 5. Around March 21, Department leadership tasked Ronald Sartini—who has extensive experience in the immigration space—to study the Offices and propose a plan to refocus the Offices. Ex.6 (Hearing Tr., May 19) at 77:18-78:1; Ex.9 (Sartini Dep.) at 12:20-19:12. | |
| 6. Sartini spent over a month reviewing data, contracts, previous practices, policies, and collaborating with employees to understand their functions and what staff would be necessary. Ex.6 (Hearing Tr., May 19) at 15:25-16:17, 19:2-20:3, 25:3-26:11, 46:22-48:25, 117:17-118:4. | |
| 7. As Sartini described, "[t]he Offices have been engaged in unnecessary and sometimes duplicative discretionary oversight and public engagement activities," Ex. 1 (Sartini Decl. May 18) ¶ 10, such as foreign travel and "expensive marketing," Ex. 6 (Hearing May 19) at 17:5-19:1, 92:18-93:12. *See also* Ex. 4 (Hearing May 23) at 95:14-96:16. | |
| 8. Sartini also explained that OIDO and CRCL often received the same complaints and there was no mechanism "to ensure | |

| | |
|---|---|
| they weren't doing the same work." Ex. 6 (Hearing May 19) at 70:5-9. | |
| 9. Additionally, other offices in the Department, such as the Inspector General, Office of Partnership and Engagement, and Office of Public Affairs, were performing tasks similar to "many of the discretionary matters" the Offices were doing. Ex. 1 (Sartini Decl. May 18) ¶ 11. | |
| 10. Given this, DHS "assessed the number of government positions necessary to fulfill the statutory duties, assessed the type of positions best suited to perform the work, [and] assessed which duties can be performed by existing contractors." Ex. 10 (Defs. Resp. to Pls. Disc. Req.) at 8. | |
| 11. The Department gave Sartini the authority to hire through "an expedited pipeline" "to staff these offices up," Ex.6 (Hearing May 19) at 109:12-110:5, and he received authorization for the hiring to be exempt from the hiring freeze, Ex.4 (Hearing May 23) at 78:21-79:1. | |
| 12. As Sartini warned at the start, allocations and appropriations "always control." Ex. 6 (Hearing May 19) at 46:7-10. | |
| 13. Sartini had an initial estimate as to the number of employees he would seek to hire, but that number shifted after Sartini assumed his position and saw that the Offices "can accomplish the statutory functions" with a "mix of employees, detai[l]ees, and contractors, and OGC support." Ex. 9 (Sartini Dep.) at 91:9-21. | |
| 14. The hiring was much faster than the 6 to 12 months it can take, but security vetting and employee requests to start in August to relocate delayed start dates to August. Ex. 9 (Sartini Depo.) at 85:14-89:16; Ex.22 (Fourth Sartini Decl.) ¶ 10. | |

| | |
|---|---|
| 15. The Offices also had dozens of employees to handle their own administrative functions like Human Resources, IT, budget, contracting, and support. Ex. 9 (Sartini Depo.) at 26:7-18. Now this is being handled by the general Management Directive. *Id.* | |
| 16. They also get legal help from the Office of General Counsel for legal review and input and FOIA is handled by the Privacy Office, which was done historically. Ex. 6 (Hearing May 19) at 102:19-103:8, 119:8-18; Ex. 9 (Sartini Dep.) at 25:14-26:6, 44:21-46:10. | |
| 17. For many years, CRCL had between 100 to 110 and even as low as 9 to 20 positions, which ballooned to 147 at the time of the RIF despite only about 20 fulltime caseworkers. Ex.6 (Hearing May 19) at 29:16-30:20; Ex.22 (Sartini Decl., Feb. 6, 2025) ¶ 3. | |
| 18. OGC lawyers provide legal advice, especially for EEO complaints, but CRCL signs off on all agency decisions based on its "independent judgment" as has always been the case. Ex.22 (Fourth Sartini Declaration) ¶ 15; Ex.9 (Sartini Depo.) at 44:21-46:10, 140:16-143:3, 216:7-19, 265:4-266:6. | |
| 19. As of December 2025, CRCL had four full-time employees (the maximum under the President's budget): Mr. Hemenway, Mr. Sartini, and two investigators who oversee about twenty contract investigators and between 25 and 30 full time equivalent contractors working on complaints and other needs, which can be increased further. Ex. 9 (Sartini Dep.) at 50:6-51:3-50, 85; Ex. 8 (Hemenway Dep.) at 43:16-44:4. | |
| 20. OIDO started off with 3 employees when created in 2019 and "ballooned to 118 in | |

|    |    |    |
|----|----|----|
|    | the last year or two," with only around 38 case managers. Ex. 6 (Hearing May 19) at 29:16-30:20. |    |
| 21. | The Department filled three OIDO law enforcement specialist positions (two of them with previous OIDO employees, all with experience inspecting facilities) and also has two detailees performing that role, contractors, and 2 attorneys for legal advice. Ex.13 (Guy Dep.) at 78:6-19, 84:4-10; Ex.9 (Sartini Depo.) at 58:8-8, 202:11-204:06; Ex.22 (Fourth Sartini Decl.) ¶¶ 5-6. |    |
| 22. | OIDO also pulls from the Management Directorate to perform administrative functions so, in total, it is "closer to about 25 to 30 people who do OIDO work." Ex. 13 (Guy Dep.) at 79:13-18; *see also* Ex. 9 (Sartini Dep.) at 26:7-18. |    |
| 23. | CISOMB had 20 positions for most of its history but "doubled in size in the last two to three years" to 40, with only 10 to 12 handling cases. Ex. 6 (Hearing May 19) at 29:13-30:20. |    |
| 24. | As of December 2025, CISOMB had two full-time employees, Sartini and the deputy, as well as a detailee. Ex. 9 (Sartini Dep.) at 57:6-10, 95:3-10, 225:6-10. |    |
| 25. | There has never been a budget for 50 local ombudsmen and the 4 "regional" ombudsmen were first hired in 2023. Ex.9 (Sartini Dep.) at 99:2-100:15; Ex.6 (Hearing May 19) at 30:23-31:6; Pls. Attach. 19, ECF 64-19 (Tacey Decl.) ¶¶ 2-5. |    |
| 26. | Hiring additional employees is under discussion, but no decisions have been reached because Budget has advised that there should be no additional hiring until a year-long appropriation is in place. Ex. 9 (Sartini Dep.) at 78:11-79:20. |    |

| | |
|---|---|
| 27. Since March 21, the Offices have been shutdown twice, including the longest government shutdown in history and a recent shutdown, with funding only until February 13. Ex.22 (Fourth Sartini Decl.) ¶ 10. | |
| 28. The shutdowns disrupted hiring and the statutory duties for the Offices. Ex.9 (Sartini Depo.) at 78:11-79:20; Ex.22 (Fourth Sartini Decl.) ¶ 10. | |
| 29. The Offices cannot provide "direct" assistance, meaning they cannot "directly remedy complaints." Ex. 9 (Sartini Dep.) at 266:13-267:13. Instead, the component agencies, namely CBP, ICE, and USCIS, are the ones "able to directly assist." Ex. 13 (Guy Dep.) at 169:15-22. | |
| 30. Even recommendations have no "enforcement mechanisms," the component agency is free to accept or reject the recommendation except for EEO decisions, as has always been the case. Ex. 9 (Sartini Depo.) at 267:1-18; Ex.6 (Hearing May 19) at 9:5-10:12, 38:11-39:3.  This has always been the case.  Ex.9 at 267:1-9. | |
| 31. The Offices have always referred complaints back to component agencies, especially for emergencies, as the component agencies must address them in the first instance.  Ex.9 (Sartini Depo.) at 107:13-109:3, 266:7-12. | |
| 32. The Offices retain the right to keep the complaints open, follow up, reopen them, and they always keep the data for long-term trends and recommendations.  Ex.9 (Sartini Depo.) at 106:19-110:7. | |
| 33. The Offices have also moved to easily accessible web-based filing portals that have "optimiz[ed]" the complaint submission process so the Offices "can | |

| # | Statement | Response |
|---|---|---|
|  | more effectively congregate and analyze data." Ex.8 (Hemenway Dep.) at 55:1-8; Ex.13 (Guy Depo.) at 100:13-17; Ex.22 (Fourth Sartini Decl.) ¶ 11. |  |
| 34. | Detainees generally have access to tablets with internet access to file complaints and the ability to call family members or others for help.  Ex. 9 (Sartini Depo.) at 186:11-188:8; Ex.22 (Fourth Sartini Decl.) ¶ 13. |  |
| 35. | Family members, organizations, and lawyers can file on behalf of individuals as long by filling out forms with basic information and consent.  Ex. 9 (Sartini Depo.) at 123:6-126:7, 188:9-19; Ex.22 (Fourth Sartini Decl.) ¶ 13. |  |
| 36. | Even so, complaints by mail and email are still accepted, processed, and reviewed. Ex.9 (Sartini Depo.) at 126:8-27:2. |  |
| 37. | CRCL continues to open investigations and draft recommendation memoranda when appropriate. Ex. 10 (Defs. Resp. to Pls. Disc. Req.) at 11. |  |
| 38. | CRCL intakes, triages, and reviews every complaint from detainees, the public, and employees for civil rights and civil liberties issues, discrimination, Section 504, and internal EEO complaints. Ex. 9 (Sartini Dep.) at 66:17-70:4. |  |
| 39. | In recent years CRCL has received around 3,000 complaints and has only opened investigations into about 20-25%, with fewer receiving recommendations.  Ex.6 (Hearing May 19) at 11:17-12:7; Ex.9 (Sartini Dep.) at 137:17-22 |  |
| 40. | From March 21 to December 12, CRCL complaints have increased to 5,989, Ex. 15 (Defs. Suppl. Resp. to Pls. Disc. Req.), many coming from detainees using the web portal, Ex. 9 (Sartini Dep.) at 261:20-262:8. |  |

| | |
|---|---|
| 41. In that time, CRCL has received 70 Section 504 complaints, opened investigations into 2, is processing 54, and closed 11. Ex. 15 (Defs. Suppl. Resp. to Pls. Disc. Req.). For Section 345, CRCL has 74 open investigations, has investigated 554 with 183 done directly, has referred 409 urgent medical complaints, and has otherwise referred 490 complaints to components. *Id.* For internal EEO complaints, CRCL has issued final agency decision on 177, issued 21 reports, is counseling in 59, investigating another 39, and adjudicated 9 requests for amendments. *Id.* | |
| 42. OIDO continues to open investigations and refer complaints to the proper Department component on detention complaints. Ex. 10 (Defs. Resp. to Pls. Disc. Req.) at 12. | |
| 43. In recent years, OIDO received around 12,000 complaints but only redressed around 800. Ex.6 (Hearing May 19) at 12:12-15. | |
| 44. From March 21 through December 21, new complaints are down to 280 with 14 being investigated and 15 referred. Ex.15 (Defs. Suppl. Resp. to Pls. Disc. Req.). | |
| 45. The OIDO employees stationed inside detention facilities were never at ever facility all the time, as there are between 250 and 300 facilities. Ex.4 (Hearing May 23) at 100:21-22. | |
| 46. There were serious issues of abuse, exploitation, and even sexual assault resulting in criminal conviction with some of the OIDO employees stationed inside of facilities. Ex.4 (Hearing May 23) at 89:13-24; Ex.6 (Hearing Tr., May 19) at 45:11-25; Ex.9 (Sartini Depo) at 269:3-270:3. | |

| | |
|---|---|
| 47. There is evidence that the OIDO employees within facilities generated and resolved substantial complaints that were not within the core functions of OIDO. Ex.9 (Sartini Depo.) at 269:3-270:3. | |
| 48. The OIDO employees within facilities still had to interact with facility employees to remedy any problem and could not redress complaints on their own. Ex.9 (Sartini Depo.) at 267:1-9 | |
| 49. In recent years CISOMB received about 25,000 inquiries closing 40%, the vast majority of which were forwarded to USCIS for an answer while taking no action on 60%. Ex.4 (Hearing May 23) at 93:8-23; Ex. 6 (Hearing Tr., May 19) at 11:8-12:11; Ex. 9 (Sartini Depo) at 247:3-21. | |
| 50. From March 21 through December 12, CISOMB received over 8,000 case requests, referring 113 to USCIS and taking "no further action" on 7,914, which includes directly answering the request or determining no answer is likely to be given. Ex. 9 (Sartini Dep.) at 222:9-22; Ex. 15 (Defs. Suppl. Resp. to Pls. Disc. Req.). | |
| 51. The majority of the time, CISOMB assesses the requests and decides to take no further action if, for example, "the handling of those application types is in flux or outright paused . . . [which] make up a significant portion of the requests." Ex.9 at 220:15-221:14; *see also id.* at 244:3-247:2. This is because the programs administered by USCIS, like visas and humanitarian relief, are in considerable flux, thus answers are constantly changing. *Id.* at 220:15-221:14. | |
| 52. "[C]onsistent with past practice," the majority of the requests are not referred to | |

| | | |
|---|---|---|
| | USCIS. *Id.* at 222:17-223:3. Other times, when appropriate, CISOMB referred matters to USCIS for review and possible action, generally for benefits that USCIS is still processing regularly, such as green cards. Ex. 9 (Sartini Dep.) at 224:2-225:5, 241:7-21. | |
| 53. | Despite the shutdown and realignment, from March 21 through December 12 OIDO inspected 27 facilities out of 250 or so, *more* than the previous years. Ex. 9 (Sartini Dep.) at 75:11-76:1; Ex. 15 (Defs. Suppl. Resp. to Pls. Disc. Req.). | |
| 54. | While OIDO provides a couple days notice before arriving at a facility due to safety concerns, that has always been the case and OIDO will go even over the objection of the facility. Ex. 9 (Sartini Depo.) at 207:11-208:08. | |
| 55. | Reports are currently being drafted with some recommendations, which typically take several months. Ex.9 (Sartini Depo.) at 212:2-15; Ex. 6 (Hearing Tr., May 19) at 13:13-19. | |
| 56. | CRCL has been consulting with other Department components about their policies and providing feedback. Ex. 9 (Sartini Dep.) at 135:2-136:2, 157:18-158:3, 165:16-178:10. | |
| 57. | CRCL reviews all death in custody cases and one is being investigated based on a medical examiner's report. Ex. 9 (Sartini Depo.) at 117:2-120:8; Ex.22 (Fourth Sartini Decl.) ¶ 8. | |
| 58. | Recommendations from the Offices and even responses have historically taken anywhere from 6 to 18 months. Ex.6 (Hearing Tr., May 19) at 11:17-12:7, 37:19-38:8; Ex.9 (Sartini Depo.) at 121:13-122:6, 137:17-22. | |

| | |
|---|---|
| 59. The CISOMB and CRCL Congressional reports have been submitted and are public.  Ex.22 (Fourth Sartini Decl.) ¶ 14. | |
| 60. The OIDO report will be submitted in February given the shutdowns.  Ex. 9 (Sartini Depo.) at 214:5-12. | |
| 61. Plaintiffs are not employees challenging the abolishment of their positions nor detainees challenging the conditions of their confinement. Rather, Plaintiffs are a group of immigration organizations who have filed complaints and case assistance requests with the Offices and "have matters they would currently be raising with one or more of these offices if they were still functioning." Compl. ¶ 7. | |
| 62. Plaintiffs "continue to advocate for their clients and, when resources allow, to litigate on behalf of their clients… and to advocate on behalf of border residents and immigrants." Ex. 20 (Pls. Adm. Resp.) at 7. | |
| 63. Plaintiffs still "file complaints and requests for assistance with other components of DHS such as U.S. Customs and Border Protection [(CBP)], U.S. Immigration and Customs Enforcement [(ICE)], and U.S. Citizenship and Immigration Services [(USCIS)]," but believe that these "alternative methods" are "inferior" are "less effective and more difficult, time-consuming and expensive forms of advocacy and litigation." *Id.* at 6. | |
| 64. Plaintiffs have continued to file civil rights complaints with CRCL regarding detainees' medical treatment and other incidents at detention centers. *Id.* at 8. | |
| 65. Even before the reorganization, complaints did not necessarily result in investigations, *id.* at 9, or even "prompt[]" a response, Ex. 19 (Pls. Interr. Resp.) at 7. | |

Dated: February 6, 2026

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC HAMILTON
Deputy Assistant Attorney General
Federal Programs Branch

CHRISTOPHER R. HALL
Assistant Branch Director

M. JARED LITTMAN
Trial Attorney


/s/     *Tiberius Davis*
TIBERIUS DAVIS
Counsel to the Assistant Attorney General
Civil Division
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202)-514-4357*
Tiberius.Davis@usdoj.gov

*Counsel for Defendants*