EXHIBIT 2

U.S. Department of Homeland Security
Washington, DC 20528



March 17, 2025

MEMORANDUM FOR THE SECRETARY

FROM:        R.D. Alles    RANDOLPH D ALLES  *Digitally signed by RANDOLPH D ALLES Date: 2025.03.17 16:42:24 -04'00'*
             Deputy Under Secretary for Management

SUBJECT:     **For Approval: Reduction in Force for Office of the Immigration Detention Ombudsman, Office for Civil Rights and Civil Liberties, and Office of the Citizenship and Immigration Services Ombudsman**

---

**Purpose**: To seek your approval to begin a Reduction in Force (RIF) process within the Office of the Citizenship and Immigration Services Ombudsman (CISOMB), Office for Civil Rights and Civil Liberties (CRCL), and Office of the Immigration Detention Ombudsman (OIDO).

**Background**: The DHS Office of the Chief Human Capital Officer was advised to prepare for a RIF for CISOMB, CRCL, and OIDO in accordance with the Executive Order 14210, *Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative*, and the follow-on guidance issued by the Office of Personnel Management and the Office of Management and Budget. DHS will further comply with Title 5, Code of Federal Regulations, Part 351 regarding a RIF. A recommended timeline for conducting the RIF is included in Attachment A and statutory authorities for each of the impacted Offices are outlined in Attachment B.

| Office | All Employees | (- minus) Employees in Deferred Resignation Program | Employees Subject to RIF Sub Total | SES Subject to RIF | General Schedule Employees Subject to RIF |
|---|---|---|---|---|---|
| **CISOMB** | 48 | 2 | 46 | 1 | 45 |
| **CRCL** | 154 | 3 | 151 | 4 | 147 |
| **OIDO** | 133 | 15 | 118 | 2 | 116 |
| **Total** | 335 | 20 | 315 | 7 | 308 |

**Office of Immigration Detention Ombudsman**
- OIDO is an independent office within DHS, established by statute to establish and administer an independent process with complaints about the potential violation of immigration detention standards, detainee rights, or misconduct by DHS (or contract) personnel; provide independent oversight of immigration detention facilities, including

PRE-DECISIONAL/DELIBERATIVE

000001

**For Approval:  Reduction in Force: Office of the Immigration Detention Ombudsman, Office for Civil Rights and Civil Liberties, and Office of the Citizenship and Immigration Services Ombudsman**
Page 2

conducting announced and unannounced inspections, of immigration detention facilities and services, including state, local, and privately-owned facilities; review and make recommendations to address contract violations regarding immigration detention facilities and services; and serve as an independent office to review and resolve problems stemming from the same.

- Organizational Details and Considerations:
  - o  Onboard: 118 (plus 15 employees who participated in DRP).
  - o  Competitive area: Office of the Immigration Detention Ombudsman
  - o  Unique Employee Considerations
    - ▪  USERRA Requirements – 1 employee on military leave.
    - ▪  FMLA/PPL – 6 employees on FMLA/PPL.
    - ▪  Employees on military leave or FMLA/PPL would not receive RIF notice until return to work from leave.
- Likely operational impacts because of RIF:
  - o  Reduction of OIDO case managers in nearly 100 immigration detention centers across the United States.
  - o  Reduction of detention oversight staff currently located in Washington, DC; Newark, NJ; Atlanta, GA; Phoenix, AZ; El Paso, TX; and San Antonio, TX.
  - o  Reduction of policy staff who analyze systemic trends in detention standards, facility contracts, training, and technical support.
  - o  Reduction of external relations staff who engage directly with the public to promote OIDO's mission and activities.
  - o  Reduction in operations and program integration staff who oversee administrative, financial, contract, and human resource needs for OIDO, as well as the flow of information between OIDO division.
  - o  All positions will be abolished except for those required by statue.

**Office of the Citizenship and Immigration Services Ombudsman**
- CISOMB is an independent office reporting directly to the Deputy Secretary, established by Congress under Section 452 of the Homeland Security Act of 2002. As mandated by Section 452 of the Homeland Security Act, CISOMB is required submit an annual report to the House and Senate Judiciary Committees by June 30 each year, detailing recommendations for improving USCIS services, summarizing pervasive issues, and providing inventories of actions taken or pending.
- Organizational Details and Considerations:
  - o  Onboard: 46 (plus 2 employees who participated in DRP)
  - o  Competitive area: Office of the Citizenship and Immigration Services Ombudsman
  - o  Unique Employee Considerations
    - ▪  USERRA Requirements – No employees on military leave.
    - ▪  FMLA/PPL – 1 employee on FMLA/PPL.
    - ▪  Employees on military leave or FMLA/PPL would not receive RIF notice until return to work from leave.
- Likely operational impacts because of RIF:

PRE-DECISIONAL/DELIBERATIVE

Case 1:25-cv-01270-ACR    Document 66-6    Filed 02/06/26    Page 4 of 39

**For Approval: Reduction in Force: Office of the Immigration Detention Ombudsman, Office for Civil Rights and Civil Liberties, and Office of the Citizenship and Immigration Services Ombudsman**
Page 3

- o Processing Delays: Fewer staff members could lead to increased backlogs in processing individual complaints and requests for assistance, prolonging the waiting period for applicants seeking resolution to their concerns.
- o Increased Workloads: Remaining staff may face heavier workloads, potentially affecting the quality and thoroughness of complaint investigations and adjudications.
- o Formal Recommendation and Reporting Impacts: With reduced personnel, statutorily required reports to Congress, as well as formal and informal recommendations submitted to USCIS may impacted or delayed.

**Office for Civil Rights and Civil Liberties**
- CRCL ensures that the Department's activities respect individual rights and liberties. Guided by *6 U.S.C 345: Establishment of the Officer for Civil Rights and Civil Liberties*, CRCL investigates complaints, provides policy advice to Department leadership and Components on civil rights and civil liberties issues, and communicates with the public about CRCL and its activities. The statute also requires coordination with the Privacy Office and Office of Inspector General and directs CRCL to submit an annual report to Congress.
- Organizational Details and Considerations:
  - o Onboard: 151 (plus 3 employees who participated in DRP)
  - o Competitive area: Office for Civil Rights and Civil Liberties
  - o Unique Employee Considerations
    - USERRA Requirements – 1 employee on military leave.
    - FMLA/PPL – 5 employees on FMLA/PPL.
    - Employees on military leave or FMLA/PPL would not receive RIF notice until return to work from leave.
- Likely operational impacts because of RIF:
  - o Processing Delays: Fewer staff members could lead to increased backlogs in processing Reasonable Accommodation and EEO requests, prolonging the waiting period for employees and applicants seeking resolution to their concerns.
  - o Increased Workloads: Remaining staff may face heavier workloads, potentially affecting the quality and thoroughness of case reviews and applications.
  - o Formal Recommendation and Reporting Impacts: With reduced personnel, statutorily required reports to Congress, as well as formal and informal recommendations may impacted or delayed.

**Signature Level Justification**: As the Secretary, you are the appropriate approval authority for this matter.

**Timeliness**: The Office of the Chief Human Capital Officer requests at least two business days to prepare to initiate this RIF to ensure seamless implementation.

PRE-DECISIONAL/DELIBERATIVE

000003

**For Approval: Reduction in Force: Office of the Immigration Detention Ombudsman, Office for Civil Rights and Civil Liberties, and Office of the Citizenship and Immigration Services Ombudsman**

Page 4

**Recommendation**: I recommend you approve initiation of a RIF for the Office of the Immigration Detention Ombudsman, Office for Civil Rights and Civil Liberties, and Office of the Citizenship and Immigration Services Ombudsman.

Approve/date _____ 3-20-25

Disapprove/date _____

Modify/date _____

Needs discussion/date _____

Attachments:
A. Reduction in Force Timeline
B. Statutory Authorities

PRE-DECISIONAL/DELIBERATIVE

000004

**Notional: Timelines - HQ Reduction in Force**

The following timeline is recommended to initiate the Headquarters Reduction in Force (RIF) of the Office of the Citizenship and Immigration Services Ombudsman (CISOMB), Office for Civil Rights and Civil Liberties (CRCL) and the Office of the Immigration Detention Ombudsman (OIDO). The RIF will include all positions in the office and the competitive area for placement of individuals subject to RIF will be that office only. The RIF plan for general schedule (GS) employees has been approved by OPM as has DHS authority to offer those employees voluntary early retirement authority (VERA).

**Timeline for RIF (GS-only)**

- **RIF Notification**
  - Day 1: OCHCO briefs Office leaders on the RIF process and requirements.
  - Day 1: Office leaders are requested to convene a meeting with all employees along with OCHCO to brief them about the RIF.
    - Days 1–3: Additional employee meetings held to provide information to employees unable to attend the initial session and answer human capital questions.
- **RIF Notice Period**
  - Day 1: RIF Notices issued to impacted personnel.
  - 30-day notice period begins.
  - Severance pay calculations provided to impacted personnel.
  - Job placement (Federal and private sector) seminars offered to employees.
- **Separation Date**: After 30 calendar days from notice issuance.
- **Post-RIF**
  - Impacted personnel placed on the Career Transition Assistance Plan (CTAP) to support finding available positions for which they are qualified.
- **For Situational Awareness**
  - Employees on military leave or FMLA (13 total) will receive RIF notices upon return from leave and will be afforded the full 30-day notice period.
  - Candidates in the hiring pipeline (e.g., 3 for CRCL) will receive notifications that their job offers are rescinded.
  - Discussions are needed regarding two employees who will be reassigned during the RIF process.

**Timeline for RIF (SES)**

- Initial notification for SES employees will follow the GS employee notification.
- **SES RIF Rules:**
  - Agencies must seek suitable reassignments to other available positions.
  - Competitive area may be limited to the three HQ offices affected, but post-probationary SES employees are entitled to placement in any vacant SES position within the agency for which they are qualified.
  - Voluntary reassignments must occur within 120 days (approximately four months) in accordance with the moratorium on involuntary reassignments.

000005

- o **OPM Placement Assistance:**
  - ▪ Begins when the agency head certifies no available SES vacancies and continues for 45 calendar days or until the employee is appointed to another SES position, declines a reasonable offer, leaves the Government, or fails to request assistance.
- **Placement Outside the SES:**
  - o SES members removed by RIF are guaranteed placement in non-SES positions at or above GS-15, per applicable regulations. Placement outside the SES will occur if an SES member is not placed within the agency or through the OPM process.

**Statutory Authorities for Office of the Immigration Detention Ombudsman, Office for Civil Rights and Civil Liberties, and Office of the Citizenship and Immigration Services Ombudsman**

**Office of the Immigration Detention Ombudsman (OIDO)**
- OIDO is codified in *6 USC 205: Ombudsman for Immigration Detention.*

**Office for Civil Rights and Civil Liberties (CRCL)**
- The authority under which CRCL operates comes from a number of legal sources to include Statutes, Regulations, Executive Orders and Departmental Delegations and Directives.
- Major statutory duties in 6 U.S.C. 345:
  o "review and assess information concerning abuses of civil rights [and] civil liberties. . . by employees and officials of the Department";
  o "oversee compliance with constitutional, statutory, regulatory, policy, and other requirements relating to the civil rights and civil liberties of individuals affected by the programs and activities of the Department"; and
  o "investigate complaints and information indicating possible abuses of civil rights or civil liberties, unless the Inspector General of the Department determines that any such complaint or information should be investigated by the Inspector General."
- CRCL carries out DHS's legal obligations to establish an "equal opportunity program," and to comply with the EEOC's rules, regulations, and orders relating to that program. 42 U.S.C. 2000e-16(b).
- Specifically, EEOC regulations at 29 C.F.R. 1614.102 require the following from an Agency's equal opportunity program:
  o Provide sufficient resources to its equal employment opportunity program to ensure efficient and successful operation;
  o Provide for the prompt, fair and impartial processing of EEO complaints;
  o Make reasonable accommodations for employees and applicants with needs related to pregnancy, disabilities, or religious beliefs; and
  o Provide an alternative dispute resolution procedure for EEO complaints.
- CRCL also has responsibilities with respect to other civil rights and civil liberties statutes, including:
  o Title VI of the Civil Rights Act (prohibiting discrimination in contracting activities);
  o Section 803 of the 9/11 Commission Act (requires complaint and investigation procedures to address civil liberty complaints); and
  o The Prison Rape Elimination Act (requires measures to prevent sexual abuse in confinement facilities).

**Office of the Citizenship and Immigration Services Ombudsman (CISOMB)**
- Pursuant to 6 U.S.C. 272, CISOMB is responsible for:

000007

- o   Assisting individuals and employers in resolving problems with the Bureau of Citizenship and Immigration Services (the Bureau);
- o   Identifying areas in which individuals and employers have problems in dealing with the Bureau; and
- o   Proposing changes in the administrative practices of the Bureau of Citizenship and Immigration Services to mitigate the problems described above.
- CISOMB is also responsible for appointing local ombudsmen and making available "at least 1 . . . ombudsman for each state." The statute does not necessarily require one ombudsman *per* state; a single local ombudsman could serve several states within a local area (*e.g.,* NY/NJ/CT).



U.S. Office of
Management and Budget

U.S. Office of
Personnel Management



# MEMORANDUM

**TO:**          Heads of Executive Departments and Agencies

**FROM:**      Russell T. Vought, Director, Office of Management and Budget;
               Charles Ezell, Acting Director, Office of Personnel Management.

**DATE**:       February 26, 2025

**RE**:          Guidance on Agency RIF and Reorganization Plans Requested by
               *Implementing The President's "Department of Government
               Efficiency" Workforce Optimization Initiative*

---

## I.     Background

The federal government is costly, inefficient, and deeply in debt. At the same time, it is not producing results for the American public. Instead, tax dollars are being siphoned off to fund unproductive and unnecessary programs that benefit radical interest groups while hurting hard-working American citizens.

The American people registered their verdict on the bloated, corrupt federal bureaucracy on November 5, 2024 by voting for President Trump and his promises to sweepingly reform the federal government.

On February 11, 2025, President Trump's Executive Order *Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative* (*Workforce Optimization*) "commence[d] a critical transformation of the Federal bureaucracy." It directed agencies to "eliminat[e] waste, bloat, and insularity" in order to "empower American families, workers, taxpayers, and our system of Government itself."

President Trump required that "Agency Heads shall promptly undertake preparations to initiate large-scale reductions in force (RIFs), consistent with applicable law." President Trump also directed that, **no later than March 13, 2025**, agencies develop Agency Reorganization Plans.

The U.S. Office of Management and Budget ("OMB") and the U.S. Office of Personnel Management ("OPM") now submit guidance on these Agency RIF and Reorganization Plans ("ARRP"), along with the instruction that such plans be submitted to OMB and OPM.

## II.     Principles to Inform ARRPs

ARRPs should seek to achieve the following:

1.  Better service for the American people;

2. Increased productivity;

3. A significant reduction in the number of full-time equivalent (FTE) positions by eliminating positions that are not required;

4. A reduced real property footprint; and

5. Reduced budget topline.

Pursuant to the President's direction, agencies should focus on the maximum elimination of functions that are not statutorily mandated while driving the highest-quality, most efficient delivery of their statutorily-required functions.

Agencies should also seek to consolidate areas of the agency organization chart that are duplicative; consolidate management layers where unnecessary layers exist; seek reductions in components and positions that are non-critical; implement technological solutions that automate routine tasks while enabling staff to focus on higher-value activities; close and/or consolidate regional field offices to the extent consistent with efficient service delivery; and maximally reduce the use of outside consultants and contractors. When taking these actions, agencies should align closures and/or relocation of bureaus and offices with agency return-to-office actions to avoid multiple relocation benefit costs for individual employees.

Agencies should review their statutory authority and ensure that their plans and actions are consistent with such authority.

Agency heads should collaborate with their Department of Government Efficiency ("DOGE") team leads within the agency in developing competitive areas for ARRPs. In addition, the agency should specifically identify competitive areas that include positions not typically designated as essential during a lapse in appropriations. When making this determination, agencies should refer to the functions that are excepted from the Antideficiency Act (ADA) in the Agency Contingency Plans submitted to OMB in 2019 as the starting point for making this determination.

## III.    Available Tools

In their ARRPs, agencies should employ all available tools to effectuate the President's directive for a more effective and efficient government and describe how they will use each. Such tools include:

1. Continuing to comply with the hiring freeze outlined in the January 20, 2025 Presidential Memorandum *Hiring Freeze* or (with approval of OPM and OMB) implementing the general principle that, subject to appropriate exemptions, no more than one employee should be hired for every four employees that depart;

2. Establishing internal processes that ensure agency leadership has visibility and/or direct sign-off on all potential job offers and candidates prior to extending offers;

000010

3. Eliminating non-statutorily mandated functions through RIFs (Appendix 1 contains a sample timeline);

4. Removing underperforming employees or employees engaged in misconduct, and continuing to evaluate probationary employees;

5. Reducing headcount through attrition and allowing term or temporary positions to expire without renewal;

6. Separating reemployed annuitants in areas likely subject to RIFs; and

7. Renegotiating provisions of collective bargaining agreements (CBAs) that would inhibit enhanced government efficiency and employee accountability.

ARRPs should also list the competitive areas for large-scale reductions in force, the RIF effective dates (which may be a date prior to when the plan is submitted), the expected conclusion of the RIFs, the number of FTEs reduced, and additional impact of RIFs such as cancellation of related contracts, leases or overhead.

Agencies should also closely consider changes to regulations and agency policies, including changes that must be pursued through notice-and-comment rulemaking, that would lead to the reduction or elimination of agency subcomponents or speed up the implementation of ARRPs.

## IV.    Phase 1 ARRPs

Each agency will submit a Phase 1 ARRPs to OMB and OPM for review and approval **no later than March 13, 2025**. Phase 1 ARRPs shall focus on initial agency cuts and reductions. Each Phase 1 ARRP should identify:

1. A list of agency subcomponents or offices that provide direct services to citizens. Such subcomponents or offices should be included in ARRPs to improve services to citizens while eliminating costs and reducing the size of the federal government. But for service delivery subcomponents or offices, implementation shall not begin until certified by OMB and OPM as resulting in a positive effect on the delivery of such services.

2. Any statutes that establish the agency, or subcomponents of the agency, as statutorily required entities. Agency leadership must confirm statutes have not been interpreted in a way that expands requirements beyond what the statute actually requires. Instead, statutes should be interpreted to cover only what functions they explicitly require.

3. All agency components and employees performing functions not mandated by statute or regulation who are not typically designated as essential during a lapse in appropriations (because the functions performed by such employees do not fall under an exception to the ADA) using the Agency Contingency Plans submitted to OMB in 2019 referenced above.

000011

4. Whether the agency or any of its subcomponents should be eliminated or consolidated; and which specific subcomponents or functions, if any, should be expanded to deliver on the President's priorities.

5. The specific tools the agency intends to use to achieve efficiencies, including, as to each, the number of FTEs reduced and any potential savings or costs associated with such actions in Fiscal Years 2025, 2026 and 2027:

    a. Continuation of the current hiring freeze;
    b. Regular attrition (e.g., retirement, movement between agencies and the private sector);
    c. Attrition through enhanced policies governing employee performance and conduct;
    d. Attrition through the termination or non-renewal of term or limited positions or reemployed annuitants;
    e. Attrition achieved by RIFs. Please refer to Appendix 1 for specific steps and timing. For purposes of the Phase 1 ARRP, the agency should include the following information:

        i. The competitive areas and organizational components that the agency has targeted or will target for initial RIFs, and
        ii. The agency's target for reductions in FTE positions via RIFs.

6. A list by job position of all positions categorized as essential for purposes of exclusion from large-scale RIFs, including the number per each job position and total by agency and subcomponent.

7. The agency's suggested plan for congressional engagement to gather input and agreement on major restructuring efforts and the movement of fundings between accounts, as applicable, including compliance with any congressional notification requirements.

8. The agency's timetable and plan for implementing each part of its Phase 1 ARRP.

### V.   Phase 2 ARRPs

Agencies should then submit a Phase 2 ARRP to OMB and OPM for review and approval **no later than April 14, 2025**. Phase 2 plans shall outline a positive vision for more productive, efficient agency operations going forward. Phase 2 plans should be planned for implementation by September 30, 2025. The Phase 2 plan should include the following additional information:

1. The agency's proposed future-state organizational chart with its functional areas, consolidated management hierarchy, and position titles and counts clearly depicted.

2. Confirmation that the agency has reviewed all personnel data, including each employee's official position description, four most recent performance ratings of record, retention service computation date, and veterans' preference status.

4

000012

3. The agency's plan to ensure that employees are grouped, to the greatest extent possible, based on like duties and job functions to promote effective collaboration and management, and that the agency's real estate footprint is aligned with cross-agency efforts coordinated by GSA to establish regional federal office hubs.

4. Any proposed relocations of agency bureaus and offices from Washington, D.C. and the National Capital Region to less-costly parts of the country.

5. The competitive areas for subsequent large-scale RIFs.

6. All reductions, including FTE positions, term and temporary positions, reemployed annuitants, real estate footprint, and contracts that will occur in relation to the RIFs.

7. Any components absorbing functions, including how this will be achieved in terms of FTE positions, funding, and space.

8. The agency's internal processes that ensure agency leadership has visibility and/or direct sign-off on all potential job offers and candidates prior to extending offers.

9. The agency's data-driven plan to ensure new career appointment hires are in highest-need areas and adhere to the general principle that, subject to appropriate exemptions, no more than one employee should be hired for every four employees that depart. Until the agency has finalized its post-hiring-freeze plan, agencies should continue to adhere to the current hiring freeze.

10. Any provisions of collective bargaining agreements that would inhibit government efficiency and cost-savings, and agency plans to renegotiate such provisions.

11. An explanation of how the ARRPs will improve services for Americans and advance the President's policy priorities.

12. The framework and criteria the agency has used to define and determine efficient use of existing personnel and funds to improve services and the delivery of these services.

13. For agencies that provide direct services to citizens (such as Social Security, Medicare, and veterans' health care), the agency's certification that implementation of the ARRPs will have a positive effect on the delivery of such services. The certification should include a written explanation from the Agency Head and, where appropriate, the agency's CIO and any relevant program manager.

14. The programs and agency components not impacted by the ARRP, and the justification for any exclusion.

15. Plans to reduce costs and promote efficiencies through improved technology, including through the adoption of new software or systems, and elimination of duplicative systems.

16. Any changes to regulations and agency policies, including changes that must be pursued through notice-and-comment rulemaking, that would lead to the reduction or elimination of agency subcomponents, or speed up implementation of ARRPs.

17. The agency's timetable and plan for implementing each part of its Phase 2 ARRP, and its plan for monitoring and accountability in implementing its ARRPs.

Agencies should continue sending monthly progress reports each month on May 14, 2025, June 16, 2025, and July 16, 2025. All plans and reports requested by this memorandum should be submitted to OPM at tracking@opm.gov and OMB at workforce@omb.eop.gov; when submitting plans and reports, please ensure both OPM and OMB addresses are included on the message.

## VI.    Exclusions

Nothing in this memorandum shall have any application to:

1. Positions that are necessary to meet law enforcement, border security, national security, immigration enforcement, or public safety responsibilities;

2. Military personnel in the armed forces and all Federal uniformed personnel, including the U.S. Coast Guard, the Commissioned Corps of the U.S. Public Health Service, and the Commissioned Officer Corps of the National Oceanic and Atmospheric Administration;

3. Officials nominated and appointed to positions requiring Presidential appointment or Senate confirmation, non-career positions in the Senior Executive Service or Schedule C positions in the excepted service, officials appointed through temporary organization hiring authority pursuant to 5 U.S.C. § 3161, or the appointment of any other non-career employees or officials, if approved by agency leadership appointed by the President;

4. The Executive Office of the President; or

5. The U.S. Postal Service.

Finally, agencies or components that provide direct services to citizens (such as Social Security, Medicare, and veterans' health care) shall not implement any proposed ARRPs until OMB and OPM certify that the plans will have a positive effect on the delivery of such services.

cc: Chief Human Capital Officers ("*CHCOs*"), Deputy CHCOs, Human Resources Directors, Chiefs of Staff, and DOGE team leads.

000014

**Appendix 1- Sample RIF Timeline**

This sample timeline is prepared in accordance with the U.S. Office of Personnel Management **Workforce Reshaping Operations Handbook.** RIF timing may vary based on agency-specific requirements, collective bargaining agreements, and workforce considerations. Agencies can accelerate these timelines through parallel processing, securing OPM waivers to policy, expediting process steps, and streamlining stakeholder coordination.

**Step 1: Identification of Competitive Areas and Levels (by March 13, 2025 for Phase 1 ARRPs)**

1. Identify competitive areas and levels and determine which positions may be affected. If applicable, seek OPM waiver approval to adjust competitive areas within 90 days of the RIF effective date.
2. For Phase 1 ARRPs, this step should be completed no later than March 13, 2025.

**Step 2: Planning, Preparation & Analysis (up to 30 days)**

1. Explore use of VSIP/VERA.
2. Conduct an impact assessment.
3. Review position descriptions for accuracy, validate competitive levels, and verify employee retention data (e.g., veteran preference, service computation dates).
4. Develop retention register.
5. Draft RIF notices and seek OPM waiver approval for a 30-day notification period.
6. Develop transition materials.
7. Notify unions (if required).
8. Prepare congressional notification (if required).

**Step 3: Formal RIF Notice Period (60 days, shortened to 30 days with an OPM waiver)**

1. Issue official RIF notices.
2. Provide employees with appeal rights, career transition assistance, and priority placement options.
3. Execute any required congressional notification and notice to the Department of Labor, state, and local officials, if applicable.

**Step 4: RIF Implementation & Separation (Final Step)**

1. Officially implement separations, reassignments, or downgrades.
2. Provide final benefits counseling, exit processing, and documentation.
3. Update HR systems and notify OPM of personnel actions.



*Secretary*

**U.S. Department of Homeland Security**
Washington, DC 20528

March 18, 2025

The Honorable Russell Vought
Director
Office of Management and Budget
725 17th Street, NW
Washington, DC 20503

Mr. Charles Ezell
Acting Director
Office of Personnel Management
1900 E Street, NW
Washington, DC 20415

Dear Director Vought and Acting Director Ezell,

The U.S. Department of Homeland Security (DHS) has been taking action that aligns with President Trump's Executive Order 14210, *Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative*, and is in receipt of the Office of Management and Budget (OMB) and the Office of Personnel Management's (OPM) implementation memorandum, dated February 26, 2025. Given DHS's critical mission to protect the Homeland, I am seeking your support for my intent to conduct an in-depth 60-Day review of the Department prior to submitting a more comprehensive Agency RIF and Reorganization Plan (ARRP) for your consideration. I have enclosed a copy of my initial plan for your review.

During my confirmation, I set a clear tone that I am committed to ensuring that the Department remains focused on its statutorily required mission while working toward enhancing the way DHS conducts business more quickly, effectively, and efficiently. To that end, DHS has already made significant strides in optimizing our operations and improving our efficiency, including:

1. **Operational Streamlining:** We are working to consolidate overlapping functions within DHS to eliminate redundancies and improve coordination across our various agencies.

2. **Technology Modernization:** Through targeted investments in modern technology, I intend to enhance our cybersecurity capabilities, streamline our operational systems, eliminate dependence on contractor support, and improve our ability to respond to emerging threats.

3. **Workforce Optimization:** We implemented the deferred resignation program within select programs, scrutinized probationary programs to remove underperforming employees, and will continue to scrutinize hiring practices to prioritize merit and efficiency to ensure that we attract and retain the best talent to serve our nation.

4. **Enhanced Border Security:** We will continue the expansive steps to strengthen our border security measures, resulting in a significant reduction in illegal crossings and improved safety for American citizens. We will also seek to work with you to expand the resources necessary to achieve President Trump's goal for 100k detention beds and the deportation of one million illegal aliens.

Page 2

Given the criticality of DHS's mission and its alignment with the President's priorities, a 60-day review provides me the time necessary to evaluate options for reorganization in a way that reduces the risk of unintended consequences to mission effectiveness. This plan may require adjustments during execution; however, I look forward to sharing the results with you as I believe it will position DHS for long-term success.

In the interim, I will direct my team to provide you with a report next week on the Department's efforts to meet the intent of the Executive Order aligned with the categories for the Phase 1 ARRP as directed in your joint memorandum.

Thank you for your continued support and collaboration.

Sincerely,

Kristi Noem
Secretary of Homeland Security

Enclosure

000017

**Homeland
Security**

DATE: March 6, 2025

TO:        Michael J. Mahoney
           Workforce Policy and Innovation
           U.S. Office of Personnel Management
           1900 E Street, NW Room 6500 Washington, DC 20415

FROM:      Roland Edwards
           Chief Human Capital Officer
           United States Department of Homeland Security

SUBJECT:   RIF – Request for Establishment of Competitive Areas

This memorandum serves as the Department of Homeland Security's ("DHS") request for an exception to the competitive area 90-day rule. Please find the DHS responses below with respect to our competitive areas.

1. **Identification of the proposed competitive areas, including the organizational segment, geographic location, and limits of the local commuting area;**

**Answer:** Below are the divisions, offices and units that will be immediately impacted by a potential reduction-in-force. Additional competitive areas may be identified at a later time.

• Office of the Immigration Detention Ombudsman [46 positions]
• Office of the Citizenship and Immigration Services Ombudsman [118 positions]
• Office of Civil Rights and Civil Liberties [147 positions]

2. **A description of how the proposed areas differs from the one previously established for the same unit and geographic area;**

**Answer:** No competitive areas were established for the groups above. The groups listed above include entire divisions, offices, and/or units.

3. **An organizational chart of the agency showing the relationship between the organizational components within the competitive area and other components in the commuting area;**

**Answer:** Organizational charts are attached to this correspondence.

4. **The number of competing employees in the proposed competitive areas;**

**Answer:** Approximately 315 positions.

5. **A description of the operation, work function, staff, and personnel administration of the proposed area and, where appropriate, a description of how the area is distinguished from others in these respects; and**

**Answer:** All functions are unique to the specific division, office and/or unit and support that unit's mission.

**6.  A discussion of the circumstances that led to the proposed changes less than 90 days before a proposed reduction.**

**Answer:** This action will be a first step that DHS is taking to follow the direction set by President Trump's February 11th Executive Order ("Implementing the President's 'Department of Government Efficiency' Workforce Optimization Initiative") to reduce the federal workforce and enhance the efficiency of federal operations. Accordingly, the Secretary has determined that the above referenced functions, programs, and capabilities of the Department do not advance the national security mission of DHS and can properly be eliminated to enhance the coherence, effectiveness, and efficiency of the Department as a whole.

**Homeland Security**

DATE: March 6, 2025


TO:          Michael J. Mahoney
                 Workforce Policy and Innovation
                 U.S. Office of Personnel Management
                 1900 E Street, NW Room 6500 Washington, DC 20415

FROM:       Roland Edwards
                 Chief Human Capital Officer
                 United States Department of Homeland Security

SUBJECT: Request for Exception to 60-Day RIF Notice Requirement

This memorandum serves as the Department of Homeland Security's ("DHS") request for a Reduction in Force ("RIF") employee notice period of less than 60 days.

DHS has an immediate need for an exception to the 60-day notice period as it implements several Presidential and Agency directives. First and foremost, DHS is responding to determinations made by the President, and the Secretary of the Department of Homeland Security, that certain functions, programs, and capabilities of DHS do not advance mission of the Department to protect our homeland. Moreover, DHS is acting on the President's Executive Order Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative – The White House dated February 11, 2025, and other Presidential and Secretarial determinations that the scope of DHS's existing workforce and footprint is inefficient and inconsistent with the national interest.

1. **Please see below for the offices proposed for 100% RIF:**

•     Office of the Immigration Detention Ombudsman
•     Office of the Citizenship and Immigration Services Ombudsman
•     Office of Civil Rights and Civil Liberties

2. **The effective date of the RIF:** Tuesday, March 11, 2025.

3. **The number of employees who will be issued RIF notices:** Approximately 315 positions.

4. **The RIF notice period being requested:** 30 Days.

5. **The reasons why a shorter RIF notice period is needed:** DHS is responding to Executive Order Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative – The White House dated February 11, 2025 and independent Presidential and Secretarial determinations that the size and scope of DHS's current operations are inconsistent with U.S. national interests.

6. **The name, telephone number, and title of an agency contact person in the event OPM needs additional information about the request:**



Name: Roland Edwards
Email/telephone: ████ ████ @hq.dhs.gov / ██ ██ ██
Requesting Official's Name: Chief Human Capital Officer, DHS

# DHS Headquarters





# Leadership



**Legend (All OIDO)**

| Onboard Total: 116 | Vacant Total: 10 |
|---|---|
| *Detailees/Unpaid Volunteer/ Interns Total: 10 | *Reemployed Annuitants Total: 1 |

Total FTP Authorized: 126
*Detailees includes: Reimbursable, CDP, HSRP, JDAs etc.
*Not included in the FTP Count

**Vacant**
Vice: Brane
Immigration Detention Ombudsman
ES-0301-00
PD# 090262

Washington, DC

**Christopher Brundage**
Senior Advisor
ES-0301-00
PD# 088054

Newark, NJ

**Acting Deputy Ombudsman**
David Gersten
Deputy Ombudsman
ES-0301-00
PD# 087635

Washington, DC

**John Hill**
Chief of Staff
GS-0301-15
PD# 091312

Washington, DC
Retirement 03/31/2025

**Deputy Chief of Staff**
GS-0301-15
PD# 099515

Washington, DC

**Allison Posner**
Chief of External Relations
GS-0301-15
PD# 083216

Washington, DC

**Vacant**
Vice: Lilly
Chief of Policy & Standards
GS-301-15
PD# 090873

Washington, DC

**Carla Fall**
Chief of Case Management
GS-0301-15
PD# 083218

Philadelphia, PA

**Maryellen Meymarian**
Chief of Detention Oversight
GS-301-15
PD# 082914

Washington, DC

**Sara Lilly**
Senior Policy Advisor to the Ombudsman
GS-301-15
PD# 099939

Sea Ranch, CA

**Wayne McMillan**
Chief of Program Integration
Program Manager
GS-340-15
PD# 090516

Houston, TX

**Dawn Johnson**
Chief of Operations and Resources Management
Chief of Operations
GS-0301-15
PD# 082687

Washington, DC

Homeland Security

000024

**Legend**

| Onboard (FO)<br>Total: 7 | Vacant (FO)<br>Total: 1 |
|---|---|
| *Detailees/Unpaid Volunteer/<br>Interns<br>Total: 2 | *Reemployed Annuitants<br>Total: 0 |

**Total FTP Authorized: 8**
*Detailees includes: Reimbursable, CDP, HSRP, JDAs etc.
*Not included in the FTP Count

**Vacant**
Vice: Brane
Immigration Detention
Ombudsman

ES-0301-00
PD# 090262

Washington, DC

---

**Attorney Advisor**

GS-0905-15

Washington, DC

**Attorney Advisor**

GS-0905-15

Washington, DC

---

**Acting Deputy Ombudsman**
David Gersten
Deputy Ombudsman

ES-0301-00
PD# 087635

Washington, DC

**Administrative Specialist**

GS-0301-13
PD# 083302

Washington, DC

---

**Christopher Brundage**
Senior Advisor
Limited Term
ES-0301-00
PD# 088054

Newark, NJ
**End of term: 05/31/25**

---

**John Hill**
Chief of Staff

GS-0301-15
PD# 091312

Washington, DC
**Retiring: 03/31/2025**

**Acting Chief of Staff**
Deputy Chief of Staff

GS-0301-15
PD# 099515

Washington, DC

**Current: Supervisory Budget Analyst**
**Budget Analyst**
GS-0560-14
PD# 095527
**PD# 098222**
Washington, DC

**Sara Lilly**
Senior Policy Advisor to the Ombudsman

GS-301-15
PD# 099939

The Sea Ranch, CA

---



000025

# Operations & Resource Management

**legend**

| | |
|---|---|
| Onboard (ORMD)<br>Total: 6 | Vacant (ORMD)<br>Total: 0 |
| *Detailees/Unpaid Volunteer/<br>Interns<br>Total: 0 | *Reemployed Annuitants<br>Total: 0 |

**Total FTP Authorized: 7**
*Detailees includes: Reimbursable, CDP, HSRP, JDAs etc.
*Not included in the FTP Count

---

**Dawn Johnson**
**Chief of Operations and**
**Resource Management**
**Chief of Operations**
GS-0301-15
PD# 082687

Washington, DC

---

### Administrative Services

**Management and Program**
**Analyst**
**HR**
GS-0343-14
PD# 081895

Washington, DC

**Program Analyst**
**HR**
GS-0343-13
PD# 082397

Jacksonville, FL

### Financial Management

**Program Manager**
**Contracts**
GS-0340-14
PD# 084447

MT Pleasant, SC

### Asset, Logistics, and Fleet Management

**Critical Asset Mobility**
**Specialist**
**Fleet Management**
GS-0301-14
PD# 083220

Washington, DC

**Administrative Specialist**
**P-Card/Onboarding**
GS-0301-13
PD# 083302

Washington, DC



000026



# Detention Oversight (DO)



**Legend**

| Onboard (DO) Total: 34 | Vacant (O) Total: 2 |
| *Detailees/Unpaid Volunteer/ Interns Total: 6 | *Reemployed Annuitants Total: 1 |

Total FTP Authorized: 36
*Detailees includes: Reimbursable, CDP, HSRP, JDAs etc.
*Not included in the FTP Count

---

Maryellen Maymaran
Chief of Detention Oversight
GS-301-15
PD# 082914
Washington, DC
Detailed to Policy

Policy Analyst
GS-0301-14
PD# 083989
Washington, DC

Senior Policy Analyst
GS-0301-14
PD# 086046
Clovis, CA

Deputy Chief of Detention Oversight
GS-0301-15
PD# 084853
San Antonio, TX

Deputy Chief of Detention Oversight
GS-0301-15
PD# 084853
Washington, DC

Investigator
GS-1810-13
PD# 084167
Atlanta, GA
Remote

Deputy Chief of Detention Oversight
GS-0301-15
PD# 084853
Atlanta, GA

Vacant
Management and Program Analyst
GS-0343-9
PD# 083869
Washington, DC

Writer-Editor
GS-1082-12 (FPL-13)
PD# 093035
Washington, DC

Management and Program Analyst
GS-0343--13
PD# 086192
Washington, DC

Writer-Editor
GS-1082-13
PD# 093036
Washington, DC

Writer-Editor
GS-1082-12(FPL-13)
PD# 093035
Dothan, AL

Management and Program Analyst
GS-0343-09
PD# 083869
Atlanta, GA

Detention Oversight Manager
GS-0301-14
PD# 097945
San Antonio, TX

Detention Oversight Manager
GS-0301-14
PD# 097945
Washington, DC

Detention Oversight Manager
GS-0301-14
PD# 097945
Washington, DC

Lead Investigator
GS-1810-14
PD# 084115
San Antonio, TX

General Investigator
GS-1810-13
PD# 084167
San Antonio, TX

Lead Investigator
GS-1810-14
PD# 084115
East Newark, NJ

Lead Investigator
GS-1810-14
PD# 084115
Phoenix, AZ

Program Management Officer
Medical Advisor
El Paso, TX

General Investigator
GS-1810-12 (FPL-13)
PD# 084169
Phoenix, AZ

General Investigator
GS-1810-12 (FPL-13)
PD# 084169
Phoenix, AZ

Investigator
GS-1810-13
PD# 084167
Washington, DC

Investigator
GS-1810-13
PD# 084169
Washington, DC

Investigator
GS-1810-13
PD# 084167
Atlanta, GA

Investigator
GS-1810-13
PD# 084167
Atlanta, GA

Program Management Officer
Medical Advisor
Parlin, New Jersey

Program Management Officer
Medical Advisor
El Paso, TX

Investigator
GS-1810-12 (FPL-13)
PD# 084169
San Antonio, TX

Immigration Detention Specialist
GS-0301-12
PD# 089105
Phoenix, AZ

Investigator
GS-1810-13
PD# 081467
Washington, DC

Investigator
GS-1810-13
PD# 084167
Phoenix, AZ

Investigator
GS-1810-13
PD# 084167
Atlanta, GA

General Investigator
GS-1810-13 (FPL-13)
PD# 084169
Atlanta, GA

Program Management Officer
Medical Advisor
Washington, DC

Lead Investigator
GS-1810-14
PD# 084115
San Antonio, TX
Reports to Angel for EPM

Environmental Protection Specialist
GS-0028-12
PD# 089886
San Antonio, TX

Auditor
GS-0511-13
PD# 085260
Washington, DC

Vacant
Vice:
Environmental Protection Specialist
GS-0028-12
PD# 089886
Phoenix, AZ

Vacant
Vice:
Auditor
GS-0511-13
PD# 085260
Washington, DC

Homeland Security

000028

# Policy & Standards (POSTA)

**Legend**

| | |
|---|---|
| Onboard (POSTA) Total: 2 | Vacant (POSTA) Total: 2 |
| *Detailees/Unpaid Volunteer/ Interns Total: 3 | *Reemployed Annuitants Total: 0 |

**Total FTP Authorized: 4**
**\*Detailees includes: Reimbursable, CDP, HSRP, JDAs etc.**
**\*Not included in the FTP Count**

Chief of Policy & Standards
GS-301-15
PD# 090873
**Position being changed to GS-301-14 Senior Policy Analyst**
TBD

---

Senior Policy Analyst
GS-0301-14
PD# 086046

Jeffersonton, VA

---

Vacant
Vice:
Policy Analyst
GS-0301-13
PD# 086022

TBD

---

Senior Policy Analyst
GS-0301-14
PD# 086046

Seattle, WA

---

Policy Analyst
GS-0301-14
Washington, DC

**Rotation Program**

---

Policy Analyst
GS-0301-14
Washington, DC

**Internal Detail**

---

Senior Policy Analyst
GS-0301-14
Washington, DC

**Rotation Program**



000029

**Legend**

| Onboard (EXTRA)<br>Total: 6 | Vacant (EXTRA)<br>Total: 0 |
|---|---|
| *Detailees/Unpaid Volunteer/<br>Interns<br>Total: 0 | *Reemployed Annuitants<br>Total: 0 |

**Total FTP Authorized: 6**
*Detailees includes: Reimbursable, CDP, HSRP, JDAs etc.
*Not included in the FTP Count



**Allison Posner**
**Chief of External Relations**
**GS-0301-15**
**PD# 083216**

**Washington, DC**

---

**Writer/Editor**
**GS-1082-13**
**PD# 093036**

**Washington, DC**

---

**Assistant Chief of External Relations**
**GS-0301-14**
**PD# 084716**

**Washington, DC**

---

**Digital Communications Specialist**
**GS-0301-11 (FPL-13)**
**PD# 091571**

**Washington, DC**

---

**Public Engagement Specialist**
**GS-0301-13**
**PD# 085585**

**Hagerstown, MD**

---

**Public Relations Specialist**
**GS-1035-11 (FPL-13)**
**PD# 092893**

**San Antonio, TX**

**Homeland Security**

000030

# Program Integration (PID)

**Legend**

| Onboard (PID) Total: 5 | Vacant (PID) Total: 0 |
|---|---|
| *Detailees/Unpaid Volunteer/ Interns Total: 0 | *Reemployed Annuitants Total: 0 |

**Total FTP Authorized: 5**
*Detailees includes: Reimbursable, CDP, HSRP, JDAs etc.
*Not included in the FTP Count



**Wayne McMillan**
**Chief of Program Integration**
**Program Manager**
**GS-340-15**
**PD# 090516**

**Houston, TX**

---

**Program Analyst**
**GS-0343-14**
**PD# 088911**

**Houston, TX**

---

**Supervisory Immigration Detention Analyst**
**GS-0301-14**
**PD# 085553**
**Dallas, TX**
<span style="color:red">Requires a PD change</span>

---

**Program Analyst**
**GS-0343-13**
**PD# 084266**

**Washington, DC**

---

**Management and Program Analyst**
**FOIA - GAO**
**GS-0343-13**
**PD# 088638**

**Washington, DC**





**UNITED STATES OFFICE OF PERSONNEL MANAGEMENT**
Washington, DC 20415

The Director

# MEMORANDUM

| | |
|---|---|
| **TO:** | Heads and Acting Heads of Departments and Agencies |
| **FROM:** | Charles Ezell, Acting Director, U.S. Office of Personnel Management |
| **DATE**: | January 21, 2025 |
| **RE**: | Initial Guidance Regarding DEIA Executive Orders |

---

Pursuant to its authority under 5 U.S.C. § 1103(a)(1) and (a)(5), the U.S. Office of Personnel Management ("***OPM***") is providing the following initial guidance to agencies regarding the President's executive orders titled *Ending Radical and Wasteful Government DEI Programs and Preferencing* and *Initial Rescissions of Harmful Executive Orders and Actions*, which repeals Executive Order 14035, *Diversity, Equity, Inclusion and Accessibility in the Federal Workforce*.

**Steps to Close Agency DEIA Offices**: In light of the above Executive Orders, each should take prompt actions regarding the offices and agency sub-units focusing exclusively on DEIA initiatives and programs (the "***DEIA offices***"). Specifically, agency heads should take the following steps:

1. No later than **5:00 pm EST on Wednesday, January 22, 2025**

    a. Send an agency-wide notice to employees informing them of the closure and asking employees if they know of any efforts to disguise these programs by using coded or imprecise language a template agency-wide notice is attached as <u>Appendix 1</u>.

    b. Send a notification to all employees of DEIA offices that they are being placed on paid administrative leave effective immediately as the agency takes steps to close/end all DEIA initiatives, offices and programs.[1] A template employee letter is attached as <u>Appendix 2</u>.

    c. Take down all outward facing media (websites, social media accounts, etc.) of DEIA offices.

---

[1] The authority for placing these employees on paid administrative leave is set forth in the OPM memorandum entitled "Guidance on Probationary Periods, Administrative Leave and Details" issued January 20, 2025.

    d.  Withdraw any final or pending documents, directives, orders, materials, and equity plans issued by the agency in response to now-repealed Executive Order 14035, *Diversity, Equity, Inclusion and Accessibility (DEIA) in the Federal Workforce* (June 25, 2021).

    e.  Cancel any DEIA-related trainings, and terminate any DEIA-related contractors.

2.  No later than **12:00 pm EST on Thursday, January 23, 2025**, report to OPM on all steps taken to implement this memorandum, including:

    a.  a complete list of DEIA offices and any employees who in those offices **as of November 5, 2024**,

    b.  a complete list of all DEIA-related agency contracts **as of November 5, 2024**, and

    c.  any agency plans to fully comply with the above Executive Orders and this memorandum.

3.  No later than **5:00 pm EST on Friday, January 31, 2025**, submit to OPM:

    a.  a written plan for executing a reduction-in-force action regarding the employees who work in a DEIA office. Agencies should coordinate with OPM in preparing these plans,

    b.  a list of all contract descriptions or personnel position descriptions that were changed since November 5, 2024 to obscure their connection to DEIA programs.

    Please contact Amanda Scales at amanda.scales@opm.gov if you have any questions regarding this memorandum. Please send any reports requested by this guidance memo to DEIAreports@opm.gov, with a copy to amanda.scales@opm.gov.

cc: Chief Human Capital Officers (CHCOs), Deputy CHCOs, Human Resources Directors, and Chiefs of Staff

### **Appendix 1**
Template Email - Agency Head to Employees

Dear agency employees,

We are taking steps to close all agency DEIA offices and end all DEIA-related contracts in accordance with President Trump's executive orders titled *Ending Radical and Wasteful Government DEI Programs and Preferencing* and *Initial Rescissions of Harmful Executive Orders and Actions*.

These programs divided Americans by race, wasted taxpayer dollars, and resulted in shameful discrimination.

We are aware of efforts by some in government to disguise these programs by using coded or imprecise language. If you are aware of a change in any contract description or personnel position description since November 5, 2024 to obscure the connection between the contract and DEIA or similar ideologies, please report all facts and circumstances to DEIAtruth@opm.gov within 10 days.

There will be no adverse consequences for timely reporting this information. However, failure to report this information within 10 days may result in adverse consequences.

Thank you for your attention to this important matter.

000034

**<u>Appendix 2</u>**
Template Email - Administrative Leave Notice (Sent to Employees)

Dear [Employee],

This email provides important information regarding your employment status. Effective January 2[_], 2025 at [___] [_]m EST, all employees within [ODEIA] will be placed on administrative leave with full pay and benefits. This administrative leave is not being done for any disciplinary purpose.

Please note the following:

- **Pay and Benefits:** You will continue to receive your full salary and benefits during the entirety of this administrative leave period.

- **Work Responsibilities:** You are not required or expected to perform any work-related tasks during this period of administrative leave.

- **Office Attendance:** You are not required or expected to come to the office during this time.

- **Email Access:** Your email access will be suspended. Please make sure that your address of record and contact information are current with your agency.

We will provide you with updates as soon as they are available. We appreciate your patience and cooperation.

If you have any concerns or questions, please contact [Designated Contact Person] at [Email].

Respectfully,

[Name/Title of Authorizing Official]

[Office/Agency]

000035



**UNITED STATES OFFICE OF PERSONNEL MANAGEMENT**

Washington, DC 20415

The Director

# MEMORANDUM

| | |
|---|---|
| **TO:** | Heads and Acting Heads of Departments and Agencies |
| **FROM:** | Charles Ezell, Acting Director, U.S. Office of Personnel Management |
| **DATE**: | January 20, 2025 |
| **RE**: | Guidance on Probationary Periods, Administrative Leave and Details |

---

The U.S. Office of Personnel Management (OPM) is providing the following guidance to agencies regarding critical potential personnel actions.  Specifically, this memorandum deals with 1) probationary periods, and 2) administrative leave and details.

## I.    Probationary Periods

Probationary periods are an essential tool for agencies to assess employee performance and manage staffing levels.[1] Employees on probationary periods can be terminated during that period without triggering appeal rights to the Merit Systems Protection Board (MSPB).[2]

Generally, employees in the competitive service with less than one year of service, and in the excepted service with less than two years of service, can be terminated without triggering MSPB appeal rights.[3]  This applies to temporary employees on appointments "not to exceed" a date certain.[4]

No later than January 24, 2025, agencies should identify all employees on probationary periods, who have served less than a year in a competitive service appointment, or who have served less than two years in an excepted service appointment, and send a report to OPM listing all such employees to employeeaccountability@opm.gov, with a copy to Amanda Scales at amanda.scales@opm.gov. In addition, agencies should promptly determine whether those employees should be retained at the agency.

## II.    Administrative Leave and Details

---

[1] *See* U.S. Merit Systems Protection Board Report to the President and Congress,  *The Probationary Period: A Critical Assessment Opportunity* (August 2005), https://www.mspb.gov/studies/studies/The_Probationary_Period_A_Critical_Assessment_Opportunity_224555.pdf .

[2] *Starkey v. Dep't of Hous. and Urban Dev.*, 2024 MSPB 6, ¶ 16; *Marynowski v. Dep't of the Navy*, 2012 MSPB 82, ¶ 4 (2012).

[3] *Forest v. Merit Sys. Prot. Bd,* 47 F.3d 409, 412 (Fed. Cir. 1995); *Holmes v. Merit Sys. Prot. Bd* ., 655 F. App'x 816, 818 (Fed. Cir. 2016); see also 5 U.S.C. §§ 7511(a)(1)(A), (C).

[4] *See Forest,* 47 F.3d at 410*; Holmes,* 655 F. App'x at 816.

"Federal agencies have the discretion to grant paid administrative leave to employees to help manage their workforces when it is in their best interest to do so."[5] The flexibility given to agencies in using paid administrative leave reflects the fact that "heads of Executive agencies have broad authority to manage their organizations, including the authority to grant administrative leave, unless prohibited by law."[6]

OPM regulations note four pertinent areas where paid administrative leave is appropriate: (1) "the absence is directly related to the agency's mission," (2) "the absence is officially sponsored or sanctioned by the agency," or (3) "the absence will clearly enhance the professional development or skills of the employee in the employee's current position," or (4) "the absence is in the interest of the agency or of the Government as a whole."[7] "An agency must retain the discretion to grant or not grant administrative leave in any circumstance based on agency judgments regarding mission needs."[8]

Placing an employee on paid administrative leave may be an appropriate action where the agency component in which the employee works is being eliminated or restructured, or where the agency weighs changes to the individual's role at the agency as part of a workforce realignment. It also may be appropriate when a new agency manager determines that the absence of the employee from the office "is in the interest of the agency or of the Government as a whole."[9] Agencies are encouraged to use flexibilities associated with paid administrative leave as they implement agency restructuring initiatives or determine the best ways to manage agency components going forward.

In addition, agency heads have broad discretion to detail employees "among the bureaus and offices of [their] department[s]" for up to 120 days by written order.[10] An agency may temporarily detail an employee to "unclassified duties."[11] Such details may provide additional

---

[5] *Administrative Leave, Investigative Leave, and Notice Leave*, 89 Fed. Reg. 10,2256-01 (Dec. 17, 2024).

[6] U.S. Office of Personnel Management, *Fact Sheet: Administrative Leave*, https://www.opm.gov/policy-data-oversight/pay-leave/leave-administration/fact-sheets/administrative-leave/ .

[7] 5 C.F.R. § 630.1403(a)(1).

[8] 5 C.F.R. § 630.1403(a)(4). OPM reiterates that while "[t]he effective date for these regulations addressing administrative leave (subpart N) and investigative and notice leave (subpart O) is 30 days after the date of publication," nonetheless "the compliance date is set as 270 days after the date of publication." 89 Fed. Reg. at 10,2257. That is, agencies must " revise and implement their internal policies consistent with the Act within 270 calendar days from the date OPM prescribes the regulations," and "[a]gencies are responsible for compliance with time limits provided for in the Act, these OPM regulations, and any related guidance." *Id.* OPM thus believes that agencies are not required to comply with the administrative leave rule and new regulations until September 13, 2025, the deadline for agencies to issue their own implementing regulations. **OPM requests that agencies not issue any agency-specific rules until such rules have been reviewed and approved by OPM.**

[9] 5 C.F.R. § 630.1403(a)(1).

[10] 5 U.S.C. § 3341.

[11] *Frankel v. Dep't of Educ.*, 17 M.S.P.R. 453, 455–56 (1983).

flexibilities to agencies during the transition period and as agencies undertake reorganization efforts and close offices.

Please do not hesitate to contact OPM if you have any questions regarding these matters at employeeaccountability@opm.gov, with a copy to Amanda Scales at amanda.scales@opm.gov.

cc: Chief Human Capital Officers (CHCOs), Deputy CHCOs, and Human Resources Directors