# EXHIBIT 8

# Transcript of the Testimony of **Troup Hemenway**

**Date:** December 2, 2025

**Case:** Robert F. Kennedy Human Rights, et al. v. U.S. Department of Homeland Secuirty; Kristi Noem, in her official capacity as Secretary of Homeland Security

**THIS DOCUMENT CONTAINS CONFIDENTIAL INFORMATION**



ACE·FEDERAL

Ace-Federal Reporters, Inc.
Phone: 202-347-3700
Fax: 202-737-3638
Email: info@acefederal.com
Internet: www.acefederal.com

Page 1

```
1    IN THE UNITED STATES DISTRICT COURT
2    FOR THE DISTRICT OF COLUMBIA
3    - - - - - - - - - - - - - - - - x
4    ROBERT F. KENNEDY HUMAN           :
5    RIGHTS; SOUTHERN BORDER           :
6    COMMUNITIES COALITION;            :
7    URBAN JUSTICE CENTER              :  Civil Action No.
8              Plaintiffs,             :  25-1270-ACR
9         v.                           :
10   U.S. DEPARTMENT OF HOMELAND       :
11   SECURITY; KRISTI NOEM, in her     :
12   official capacity as Secretary    :
13   of Homeland Security,             :
14            Defendants.              :
15   - - - - - - - - - - - - - - - - x
16         CONFIDENTIAL DEPOSITION OF TROUP HEMENWAY
17                Tuesday, December 2, 2025
18                     10:17 a.m.
19                    Public Citizen
20                 1600 20th St., NW
21              Washington, D.C. 20009
22   REPORTED BY:  JEMIMA BRENNAN
```

THIS DOCUMENT CONTAINS CONFIDENTIAL INFORMATION

Page 2

1        Deposition of TROUP HEMENWAY, called for
2   examination pursuant to notice of deposition on
3   Tuesday, December 2, 2025 at 10:17 a.m., before
4   JEMIMA BRENNAN, a Notary Public in the State of
5   Maryland, when were present on behalf of the
6   respective parties;
7            KARLA GILBRIDE, ESQ.
8            Public Citizen Litigation Group
9            1600 20th Street, N.W.
10           Washington, D.C. 20009
11           kgilbride@citizen.org.
12
13           SARAH DECKER, ESQ.
14           Robert F. Kennedy Human Rights
15           1300 19th Street, NW, Suite 750
16            Washington, D.C. 20036
17           202.463.7575
18
19
20
21
22                              -- continued --

Page 3

1   APPEARANCES (Continued):
2           CHRISTINE L. COOGLE, ESQ
3           Democracy Forward Foundation
4           P.O. Box 34553
5           Washington, DC  20043
6           202-448-9090
7           On behalf of the Plaintiff
8
9           TIBERIUS DAVIS, ESQ.
10          U.S. Department of Justice
11          950 Pennsylvania Avenue, NW
12          Washington, D.C.
13
14          RENE BROWNE, ESQ.
15          MATTHEW FLEISCHMAN, ESQ.
16          U.S. Department of Homeland Security
17          Washington, D.C. 20528
18          202.447.3891
19          rene.browne@hq.dhs.gov
20          On behalf of the Defendant
21
22

Page 28

1  maintain statutory compliance for our officers, which

2  leads us to say, officer for CRCL, existence statute,

3  back to the Homeland Security Act. And that alone

4  would have been one position that had to have been

5  sustained, which was contrary to what was pointed out

6  as the 100% RIF request. But I'm still not recalling

7  what were the contents of this email.

8      Q.   So, if, as you just testified, the intent

9  was to keep four employees at CRCL following the RIF,

10 wouldn't DHS have been required to use a different

11 competitive area so that existing employees could

12 compete for those remaining positions?

13          MR. DAVIS:  Objection; lack of

14 foundation.

15          BY MS. GILBRIDE:

16     Q.   You can answer if you are able to.

17     A.   I'm not an expert on those different areas.

18     Q.   At the time that you became aware of this

19 proposed RIF in March of 2025, did you have any

20 reservations about the proposed staffing levels for

21 CRCL?

22     A.   My only goal was to maintain statutory

Page 29

1  compliance.

2      Q.   And did you believe that a 100% RIF would

3  allow maintenance of statutory compliance?

4           MR. DAVIS:  Objection, calls for legal

5  conclusion.

6           THE WITNESS:  Ultimately, we didn't

7  conduct 100% RIF.

8           BY MS. GILBRIDE:

9      Q.   So, directing your attention to item 5 on

10 the same page 10361 that we were looking at before,

11 which is reasons for a shorter notice period, there's

12 a reference there to the size and scope of DHS's

13 current operations.  Do you see that phrase?

14     A.   I do.

15     Q.   So, what is your understanding of the

16 statement that the size and scope of DHS's current

17 operations are not consistent with the U.S. national

18 interest?

19          MR. DAVIS:  Objection; speculation.

20          THE WITNESS:   I couldn't say.  I wasn't

21 the director of this email.

22          BY MS. GILBRIDE:

Page 43

1    "surprised."

2        Q.    Had anything happened between March and
3    May 22nd to change your own views about how CRCL
4    should be staffed?

5        A.    In that time frame, I wasn't the acting
6    officer.

7        Q.    So you hadn't spent much time thinking
8    about CRCL before you were appointed acting officer?

9        A.    Not particularly.

10       Q.    Do you still believe the staffing plan
11   presented by Mr. Sartini is correct for CRCL now that
12   you've had more time there?

13       A.    I think for the most part we've implemented
14   it, though those 20-some employees that were
15   referenced are in a contract function.

16       Q.    How many full-time staff members does CRCL
17   currently have?

18       A.    Four, including myself.

19       Q.    Who are the other three?

20       A.    We're primarily following the guidance of
21   the President's budget in that it only allows for
22   about four employees.  Those other three are Mr.

Page 44

1  Sartini as the deputy, and then two GS-13
2  investigators who oversee those 20-some contract
3  staff that considering our contractors, we can bulk
4  up where they're needed.
5       Q.   So paragraph 4 of your declaration also
6  refers to temporary employees being detailed to CRCL
7  for six months- to one-year increments.  Are there
8  any detailees currently working at CRCL?
9       A.   I can't recall the status of those two
10 investigators.  They're full-time government
11 employees, but whether they're CRCL employees or
12 detailed from another component, I'm not remembering
13 it.
14      Q.   So there are no detailees in addition to
15 those two investigators; is that right?
16      A.   Not that I'm aware of.
17      Q.   Have there previously been detailees
18 between May 22nd and today?
19      A.   Going back to the status of those
20 investigators, I'm not sure if they were detailed,
21 whether or not they converted to full-time CRCL
22 employees, or if they stayed in a detailed

Page 50

1  that paragraph, it says, "Moreover, in the interim,
2  CRCL has a number of active contracts;"  The time you
3  wrote this, was your intention to rely less on
4  contractors and more on full-time staff over time?
5      A.  The benefit of contracts is it's a lot
6  easier to bring people on where you need them.  So
7  where and if the need arises, we can use those
8  contract vehicles to, again, bulk up staff.
9      Q.  So has your plan for staffing the office
10 changed from what is described in this declaration to
11 now rely more heavily on contractors?
12     MR. DAVIS:  Objection; deliberative
13 process privilege.  The witness can answer to the
14 extent it's not privileged information.
15     THE WITNESS:  I think our staff plan
16 has been informed by the President's budget, which,
17 as we covered, only allows for four full-time
18 government employees.  And though we're in a CR, we
19 may still enact the President's budget, if Congress
20 does so, in a couple months' time.  So the most
21 practical and prudent manner for us to keep
22 approaching the question of personnel is still

Page 55

1    A.    We have a web-based -- web-based model for
2  complaint submissions, which I think has done a
3  decent job of optimizing the process in which those
4  are received by us.  We receive them immediately.  We
5  can more effectively congregate and analyze data.  I
6  do think we have been involved to a certain extent
7  with the management directorate and our chief
8  information officer at headquarters.
9    Q.    We'll talk more about the processing of
10  complaints in a little bit.  Are there any other
11  technology-based tools beyond the web portal that
12  you're utilizing to streamline the functioning of
13  the office?
14    A.    That's the primary one that I'm aware of.
15    Q.    Okay.  One of the functions that CRCL had
16  been performing was the investigation and
17  adjudication of discrimination complaints filed by
18  DHS employees. Is that correct?
19    A.    Correct.
20    Q.    And CRCL was also responsible for handling
21  and processing requests for disability accommodations
22  by DHS employees.  Is that right?

Page 130

1        BY MS. GILBRIDE:
2    Q.   So I believe this document was provided in
3 early September.
4    A.   Okay.
5    Q.   And you'll see underneath there's a
6 supplemental response.
7    A.   Let me read.
8    Q.   Okay.
9    A.   All right.
10   Q.   All right.  So I'm going to return your
11 attention to the list of individuals that are in the
12 supplemental response.  We've already discussed you
13 and Mr. Sartini.  Can you tell us who Rodolfo Gomes
14 is?
15   A.   I believe he is one of our government
16 staff.
17   Q.   So you believe he's employed by CRCL?
18   A.   Yes.
19   Q.   How about Brent Brice?
20   A.   His name doesn't ring a bell.
21   Q.   Do you know, for Mr. Gomes, or do you
22 recall what his background is or what his

Page 131

1  qualifications are?

2     A.  He is a former investigator.

3     Q.  Okay. Also in that answer, it says that
4  since the date of the response, additional staff have
5  been onboarded and are being trained. Can you tell
6  us who those additional staff are?

7     A.  I'm not sure, and I'm wondering if it's
8  conflicting new staff with new contract staff, or it
9  doesn't delineate that.

10    Q.  Okay. So you're not aware of any new staff
11 that were onboarded after August 13th?

12    A.  Full-time government employees, I'm not.

13    Q.  Are you aware of additional contractors
14 that were onboarded after August 13th?

15    A.  I believe there were more. How many? I'm
16 not sure.

17    Q.  All right. So, returning to some of the
18 specific tasks or items that are listed in the
19 original response to Interrogatory 11, the first item
20 listed there is CBP and TSA activities. Can you
21 specify what CBP and TSA activities CRCL advised on?

22        MR. DAVIS: Objection; deliberative

Page 163

1   When are you anticipating publishing the report for
2   fiscal year 2024?
3        A.   We anticipate delivering it on time.
4   I'm not sure what the shutdown deadlines we're told.
5   So 43 days from the end of the calendar year would be
6   our deadline for submission of it.
7        Q.   So, in other words, by February 13th?
8        A.   I'm sure you're getting math right.
9        Q.   Who is working on drafting that report?
10       A.   Some of the contractors are running point
11  on it and go through a review process with civilian
12  leadership.
13       Q.   You can either pull back up the exhibit if
14  you want or just take my word for this, but in your
15  declaration in May, in this case, you stated that the
16  plan for fully staffing CRCL included hiring another
17  employee to work on report writing.  Have you
18  subsequently changed your plan for hiring that
19  additional employee?
20       A.   I believe we can compensate for it with
21  contractor staff.  I don't expect it to become
22  necessary in the same case too, in trying to align