# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT F. KENNEDY HUMAN RIGHTS; SOUTHERN BORDER COMMUNITIES COALITION; URBAN JUSTICE CENTER,<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of Homeland Security,<br><br>*Defendants*. | CASE NO. 1:25-cv-01270-ACR<br><br>**DECLARATION OF RONALD J. SARTINI** |

**DECLARATION OF RONALD J. SARTINI**

I, Ronald J. Sartini, based upon my personal knowledge and information made known to me in the course of my official employment hereby declare, to the best of my knowledge, information, and belief, as follows relating to the above-captioned matter:

1. I am the Citizenship and Immigration Services (CIS) Ombudsman at the U.S. Department of Homeland Security (DHS). Established by section 452 of the Homeland Security Act of 2002, the CIS Ombudsman is an independent, impartial, and confidential office. It is part of DHS headquarters and not a part of U.S. Citizenship and Immigration Services (USCIS). Prior to becoming the CIS Ombudsman, I was the Acting Chief of Staff for the Office of the General Counsel (OGC). Before joining DHS OGC, I was employed at USCIS as the Acting Chief of Staff of the Identity and Information Management Division, Immigration Records and Identity Services Directorate. I have personal knowledge regarding the reductions in force at the Office of the CIS

Ombudsman (CISOMB), the DHS Office for Civil Rights and Civil Liberties (CRCL), and the DHS Office of the Immigration Detention Ombudsman (OIDO, and together, the Offices). Like the CIS Ombudsman, the Immigration Detention Ombudsman is a position within DHS Headquarters, established by Congress (Sec. 106 of the Consolidated Appropriations Act, 2020, Public Law 116-93). It is not part of U.S. Immigration and Customs Enforcement (ICE) or U.S. Customs and Border Protection (CBP). The Officer for Civil Rights and Civil Liberties, established pursuant to 6 U.S.C. § 345, Sec. 705 of the Homeland Security Act, as amended, reports to the Secretary and is authorized to, among other things, investigate complaints regarding civil rights and civil liberties issues. I am familiar with the objectives for execution of the statutory functions of these offices following the reductions in force and going forward in the current Administration.

## Executive Order 14210

2. On February 11, 2025, President Trump issued the Workforce Executive Order, "Implementing the President's 'Department of Government Efficiency' Workforce Optimization Initiative." Exec. Order No. 14210, 90 Fed. Reg. 9669 (Feb. 11, 2025). As relevant to this motion, subpart c of Section 3—"*Reductions in Force*"—directs "Agency Heads [to] promptly undertake preparations to initiate large-scale reductions in force (RIFs), consistent with applicable law, and to separate from Federal service temporary employees and reemployed annuitants working in areas that will likely be subject to the RIFs." *Id*. § 3(c). Further, it directs that "[a]ll offices that perform functions not mandated by statute or other law shall be prioritized in the RIFs, including all agency diversity, equity, and inclusion initiatives; all agency initiatives, components, or operations that my Administration suspends or closes; and all components and employees performing functions not mandated by statute or other law who are not typically designated as essential during a lapse

in appropriations as provided in the Agency Contingency Plans on the Office of Management and Budget website." *Id*. Finally, it directs that "[t]his subsection shall not apply to functions related to public safety, immigration enforcement, or law enforcement." *Id*.

3. The Workforce Executive Order further provides that, within 30 days of its issuance (i.e., by March 13, 2025), "Agency Heads shall submit to" OMB "a report that identifies any statutes that establish the agency, or subcomponents of the agency, as statutorily required entities." *Id*. § 3(e). That report "shall discuss whether the agency or any of its subcomponents should be eliminated or consolidated." *Id.*

4. The Executive Order further provides that agency heads "may exempt from this order any position they deem necessary to meet national security, homeland security, or public safety responsibilities[,]" *id*. § 4(b), and that it "shall be implemented consistent with applicable law and subject to the availability of appropriations." *Id*. § 5(b).

## DHS Workforce Restructuring

5. Consistent with the Executive Order, DHS began preparing for large-scale reductions in force (RIFs) of OIDO, CRCL, and CISOMB. On March 7, 2025, DHS sent a memorandum to OPM seeking approval of competitive areas that would be subject to the RIFs, since they would be in effect for less than 90 days prior to the RIF effective date. *See* 5 C.F.R. § 351.402(c) (" When a competitive area will be in effect less than 90 days prior to the effective date of a reduction in force, a description of the competitive area shall be submitted to the OPM for approval in advance of the reduction in force. Descriptions of all competitive areas must be made readily available for review.")

6. In the memorandum, DHS asked OPM to approve competitive areas consisting of OIDO, CISOMB, and CRCL. DHS proposed eliminating 118 positions in OIDO, 46 positions in

CISOMB, and 147 positions in CRCL. These figures represented the entire staff of these Components, excluding employees in the Senior Executive Service. OPM granted approval for these competitive areas on March 7, 2025. On March 20, 2025, Secretary Noem gave final approval for the RIFs.

7. On March 21, 2025, DHS delivered RIF notices to the majority of the workforce in CISOMB, OIDO, and CRCL. Pursuant to 5 C.F.R. § 315.801, these employees were given a 60-day notice period, with a separation date of May 23, 2025. Although the majority of employees received notice on March 21, delivery was delayed in a small number of cases. For example, DHS delayed delivering notice to employees on approved leave pursuant to the Family and Medical Leave Act or Uniform Services Employment and Reemployment Rights Act. To the extent that employees received notice after March 21, their separation date was extended past May 23 to provide a full 60-day notice period.

8. On April 7, 2025, DHS announced that qualifying employees would be allowed to participate in a Workforce Transition Program (WTP). The WTP offered employees financial incentives in exchange for a release of claims and a commitment to resign from the agency. Employees from CRCL, OIDO, and CISOMB were allowed to participate, and more than 100 employees from these Components expressed interest in signing a WTP agreement. To date, 47 employees have signed WTP agreements and agreed to resign. The RIF notices of employees who participate in a WTP will be rescinded.

### Plans for the DHS Workforce

9. The plan for CRCL, OIDO, and CISOMB is to immediately cease all discretionary activities, assess the necessary number of government positions necessary to fulfill the statutory duties, assess the type of positions best suited to perform the work, assess which duties can be

performed by existing contractors, identify software tools and other efficiency mechanisms to triage complaints, and compare requirements for the aforementioned against available funds. Once available funding is determined, the offices will begin hiring government staff, properly scoping existing contracts, and working with the Office of the Chief Information Officer to leverage software tools to more efficiently process complaints. The Offices will also rely on contractors to carry out some of the offices' statutorily mandated functions. The Offices are still providing information that is required to be public. Required congressional reports are presently being drafted.

10. The Offices have been engaged in unnecessary and sometimes duplicative discretionary oversight and public engagement activities. The purpose of this transition is to refocus the Offices on their core statutory duties and create more efficient processes.

11. As I understand it, the Inspector General, Office of Partnership and Engagement, and Office of Public Affairs are offices within the Department that perform some tasks related to many of the discretionary matters that the Offices have recently been handling.

12. Going forward, including after May 23, the Department will be assessing the best allocation of resources to the Offices.

13. The Offices will continue to perform their statutorily mandated duties after the RIF takes place.

14. I understand that Plaintiffs in this case received an email message stating that OIDO was "no longer operational" and had "been abolished." Horan Decl. ¶ 6 & Ex. G. That message is false, was not authorized by the Department, and has been removed. All of the Offices continue to receive complaints and will process them consistent with statutory requirements.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 18th day of May, 2025.

/s/_____
Ronald J. Sartini
Office of Citizenship and Immigration Services (CIS) Ombudsman
U.S. Department of Homeland Security