# EXHIBIT 10

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT F. KENNEDY HUMAN RIGHTS; SOUTHERN BORDER COMMUNITIES COALITION; URBAN JUSTICE CENTER,<br><br>PLAINTIFFS,<br><br>V.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, IN HER OFFICIAL CAPACITY AS SECRETARY OF HOMELAND SECURITY,<br><br>DEFENDANTS. | CIVIL ACTION NO. 25-1270-ACR |

**DEFENDANTS' RESPONSES TO
PLAINTIFFS' FIRST SET OF DISCOVERY REQUESTS**

Pursuant to the Scheduling Order entered in this case on July 11, 2025 (ECF No. 49), Plaintiffs propounded upon Defendants the following Interrogatories, Requests for Production of Documents, and Requests for Admission. Defendant Department of Homeland Security ("DHS") responds as follows:

**PRELIMINARY STATEMENT**

1. By making the accompanying responses and objections to Plaintiffs' Interrogatories, Requests for Production of Documents, and Requests for Admission, Defendants do not waive, and hereby expressly reserves, its right to assert any and all objections as to the admissibility of such responses into evidence in this action, or in any other proceedings, on any and all grounds including, but not limited to, competency, relevancy, materiality, and privilege. Further, Defendants make the responses and objections herein without in any way implying that it

the factors considered, and the plans for transferring functions to other agency components or offices.

**RESPONSE**: Defendants object to this request to the extent that it seeks information that is protected by the attorney client privilege, work product privilege, or any other applicable privileges or protections from disclosure. Defendants further object to the undefined term "consultation process" as vague and ambiguous.

Subject to and without waiver or limitation of these objections, the decision to perform a RIF ultimately rested with the Secretary of the Department of Homeland Security and personnel acting on her behalf in an effort to comply with Executive Order 14210 (EO 14210), Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative. DHS initiated the RIF in order to immediately cease all discretionary activities in the DHS Oversight Offices. After making the initial decision to conduct a RIF, DHS assessed the number of government positions necessary to fulfill the statutory duties, assessed the type of positions best suited to perform the work, assessed which duties can be performed by existing contractors, and identified software tools and other efficiency mechanisms to triage complaints.

Subject to and without waiving the foregoing objections, the Department identifies the following individuals:

| Name and Title | Office |
|---|---|
| Roland Edwards, Chief Human Capital Officer | Office of the Chief Human Capital Officer |
| Jill DeMella, Executive Director, Human Capital Policy & Programs | Office of the Chief Human Capital Officer |
| Roger Brown, Deputy Chief Human Capital Officer, Policies, Programs, & Oversight | Office of the Chief Human Capital Officer |
| Nicole Barksdale-Perry, Executive Director, Human Resources Management & Services | Office of the Chief Human Capital Officer |
| Huy Le, Division Manager, Human Capital Data Analytics | Office of the Chief Human Capital Officer |

assessed the type of positions best suited to perform the work, reviewed the DHS Oversight Offices' existing contracts to determine which contracts were aligned to effectuate the statutory missions of the offices and assessed which duties could be performed by existing contractors, and identified software tools and other efficiency mechanisms to triage complaints. Defendants refer to the response to Interrogatory 1 for a list of individuals involved in the decision making to comply with EO 14210.

4. How many complaints were pending with each of the DHS Oversight Offices on March 21, 2025? Of these, how many had resulted in open investigations or draft recommendation memos to DHS components as of March 21, 2025, and what is the current status of each of these open investigations and draft recommendation memos?

**RESPONSE**: Defendants object on the grounds that this request is overly broad and disproportionate to the needs of the case and seeks information that is not relevant to the allegations in Plaintiffs' complaint. Defendants further object to the term "complaint" and only respond as to complaints filed properly by the public regarding DHS policies and activities. Defendants also object to the term "pending" as vague and ambiguous.

Subject to and without waiver or limitation of these objections, Defendants provide the following:

**CRCL**

CRCL had 778 complaints on March 21, 2025. Forty-nine (49) have resulted in an open investigation, and one complaint resulted in a draft recommendation memorandum. CRCL is currently reviewing its open investigations to determine whether recommendation memos will be issued. CRCL onboarded two full-time federal employees beginning August 11, 2025, who are

responsible for, *inter alia*, conducting investigations and technical assistance to federal and state law enforcement.

### **OIDO**

OIDO had 388 complaints as of March 21, 2025, of which 375 resulted in an open investigation. Complaints are triaged by investigators, investigation commences on claims that contain actionable information, and then action is taken to remedy the complaint if warranted. Of the complaints with open investigations, 167 have been assigned to investigators, 22 are under review by investigators for triaging, 22 are awaiting component response, 10 are awaiting component action, 15 are awaiting an onsite visit from investigators, 48 are under extended review, and 91 are under supervisory review. No complaint has yet resulted in a draft recommendation memorandum, nor will likely result in a draft recommendation memorandum because OIDO does not typically issue such memorandum.

### **CISOMB**

CISOMB had 4,489 inquiries under review by CISOMB staff on March 21, 2025. CISOMB does not open investigations or draft recommendation memos to USCIS. Rather, recommendations are made in an annual report and after analyzing the prior year's inquiries for trends and common pain points—they are not directly linked to any one inquiry or set of inquiries.

5. Identify all complaints filed with each of the DHS Oversight Offices since March 21, 2025, including for each Complaint a) the complaint number; b) the complainant; c) the subject matter; d) the date received; and e) the current status of the complaint, including whether an investigation has been opened and whether any action has been taken or any informal advice provided or recommendations made based on the complaint.

**RESPONSE**: Defendants object to this request to the extent that it seeks information that is protected under the Privacy Act, 8 U.S.C. § 1367, 8 C.F.R. § 208.6, or any other applicable privileges or protections from disclosure. Defendants further object on the grounds that this request is overly broad and disproportionate to the needs of the case and seeks information that is not relevant to the allegations in Plaintiffs' complaint.

Subject to and without waiver or limitation of these objections, OIDO onboarded two detailees on August 11, 2025. In the last fiscal year for which such data are available, OIDO only inspected 22 detention facilities. OIDO has intended to resume inspections upon restaffing and is now making detailed preparations to begin inspections.

11. Describe all actions taken by CRCL since March 21, 2025, to review DHS policies to ensure that the protection of civil rights and civil liberties is appropriately incorporated into DHS programs and activities, including the policies on which CRCL provided advice and guidance and the identities of the individuals providing that advice.

**RESPONSE**: Defendants object on the grounds that this request is overly broad and disproportionate to the needs of the case and seeks information that is not relevant to the allegations in Plaintiffs' complaint. Defendants further object to this request to the extent that it seeks information that is protected by the deliberative process privilege or under the Privacy Act or any other applicable privileges or protections from disclosure. Defendants further object to the undefined term "all actions" as vague and ambiguous.

Subject to and without waiver or limitation of these objections, CRCL is in the process of onboarding additional staff to support performance of the office's statutory functions. Nonetheless, since March 21, 2025, CRCL has (1) participated in regular oversight reviews of certain CBP and TSA activities; (2) participated in regular meetings of the DHS Artificial

17

Intelligence (AI) Council to advise on CRCL equities for use of AI by DHS; (3) participated in regular meetings of the DHS Data Integrity Board; (4) participated in OIG conferences and reviews of DHS activities (e.g., ICE detention facility inspections, CBP tracking of unaccompanied alien children); (5) reviewed all DHS Management Directives and Instructions for CRCL equities; (6) reviewed all congressional correspondence with a CRCL nexus, particularly correspondence concerning the actions of ICE, FEMA, USCIS, and CBP; and (7) issued guidance on, and advised offices regarding, medical and religious reasonable accommodations. CRCL is also scheduled to participate in CBP annual use of force review later in August.

12.   Describe the reasons for requesting a two-month extension to the congressional report required to be submitted by CISOMB, as described in ECF No. 46, and identify any previous occasions on which a request for an extension of the deadline for CISOM's congressional report has been requested.

**RESPONSE**: Defendants object on the grounds that this request seeks information that is not relevant to the allegations in Plaintiffs' complaint.

Subject to and without waiver or limitation of these objections, 6 U.S.C. § 272 requires USCIS's responses to CISOMB's recommendations to be included in the annual report and USCIS had not furnished responses yet. Also, there was a change in presidential administrations and a change in CISOMB leadership, resulting in additional time needed for review of the annual report and its content. Extensions are not uncommon. Both the 2019 and 2021 annual reports were filed after receiving extensions.

13.   Identify a) all individuals who participated in the process of creating position descriptions, conducting interviews, and hiring new staff and detailees at the DHS Oversight Offices since May 23, 2025; and b) all detailees and permanent staff who have been hired at any

or from DHS. Defendants also object on the ground that this request is overly broad and disproportionate to the needs of the case to the extent it seeks documents that are unrelated to the allegations in Plaintiffs' complaint. Defendants further object to this request to the extent that it seeks documents or communications that are protected by the deliberative process privilege, attorney client privilege, work product privileged, or any other applicable privileges or protections from disclosure. Moreover, the burden of any production in response to this request far outweighs its likely benefit due to its lack of relevance and because the documents requested do not relate to the RIF of the DHS Oversight Offices or any plans thereafter but to the ongoing day-to-day work performed by the DHS Oversight Offices. To the extent Plaintiffs narrow this request in a manner that is more reasonable and less burdensome, Defendants are open to considering production if any such documents are relevant and not subject to other objections asserted herein.

## REQUESTS FOR ADMISSION

1. Admit that, prior to March 21, 2025, You intended to eliminate CISOM in its entirety.

**RESPONSE**: Denied. Defendants did not intend to eliminate CISOMB. All legally statutorily required functions of CISOMB continue to be carried out in a manner that is both efficient and cost-effective, without compromising DHS's mission to secure the homeland.

2. Admit that You communicated your intention to eliminate CISOM in its entirety to other government agencies, their employees, their contract employees, their attorneys, or any other person acting directly or indirectly on their behalf.

**RESPONSE**: Denied. Defendants did not communicate an intention to eliminate CISOMB. All legally statutorily required functions of CISOMB continue to be carried out in a

manner that is both efficient and cost-effective, without compromising DHS's mission to secure the homeland.

3. Admit that You communicated your intention to eliminate CISOM in its entirety to CISOM employees.

**RESPONSE**: Denied. Defendants did not communicate an intention to eliminate CISOMB. All legally statutorily required functions of CISOMB continue to be carried out in a manner that is both efficient and cost-effective, without compromising the DHS's mission to secure the homeland.

4. Admit that prior to March 21, 2025, You intended to eliminate CRCL in its entirety.

**RESPONSE**: Denied. Defendants did not intend to eliminate CRCL. All legally statutorily required functions of CRCL continue to be carried out in a manner that is both efficient and cost-effective, without compromising DHS's mission to secure the homeland.

5. Admit that You communicated your intention to eliminate CRCL in its entirety to other government agencies, their employees, their contract employees, their attorneys, or any other person acting directly or indirectly on their behalf.

**RESPONSE**: Denied. Defendants did not communicate an intention to eliminate CRCL. All legally statutorily required functions of CRCL continue to be carried out in a manner that is both efficient and cost-effective, without compromising DHS's mission to secure the homeland.

6. Admit that You communicated your intention to eliminate CRCL in its entirety to CRCL employees.

**RESPONSE**: Denied. Defendants did not communicate an intention to eliminate CRCL. All legally statutorily required functions of CRCL continue to be carried out in a manner that is

both efficient and cost-effective, without compromising the DHS's mission to secure the homeland.

7. Admit that prior to March 21, 2025, You intended to eliminate OIDO in its entirety.

**RESPONSE**: Denied. Defendants did not intend to eliminate OIDO. All legally statutorily required functions of OIDO continue to be carried out in a manner that is both efficient and cost-effective, without compromising the Department's mission to secure the homeland.

8. Admit that You communicated your intention to eliminate OIDO in its entirety to other government agencies, their employees, their contract employees, their attorneys, or any other person acting directly or indirectly on their behalf.

**RESPONSE**: Denied. Defendants did not communicate an intention to eliminate OIDO. All legally statutorily required functions of OIDO continue to be carried out in a manner that is both efficient and cost-effective, without compromising the Department's mission to secure the homeland.

9. Admit that You communicated your intention to eliminate OIDO in its entirety to OIDO employees.

**RESPONSE**: Denied. Defendants did not communicate an intention to eliminate OIDO. All legally statutorily required functions of OIDO continue to be carried out in a manner that is both efficient and cost-effective, without compromising DHS's mission to secure the homeland.

10. Admit that since March 21, 2025, one or more of the statutory functions identified in Plaintiffs' Reply Brief, ECF No. 24, at 16-18, has not been performed.

**RESPONSE**: Denied. All legally statutorily required functions of the DHS Oversight Offices continue to be carried out in a manner that is both efficient and cost-effective, without