UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT F. KENNEDY HUMAN RIGHTS; SOUTHERN BORDER COMMUNITIES COALITION; URBAN JUSTICE CENTER,<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of Homeland Security,<br><br>*Defendants*. | CASE NO. 1:25-cv-01270-ACR<br><br>**REVISED**<br>**FOURTH DECLARATION OF**<br>**RONALD J. SARTINI** |

I, Ronald J. Sartini, based upon my personal knowledge and information made known to me in the course of my official employment hereby declare, to the best of my knowledge, information, and belief, as follows relating to the above-captioned matter:

1. I am the Citizenship and Immigration Services (CIS) Ombudsman at the U.S. Department of Homeland Security (DHS) Office of the CIS Ombudsman (CISOMB), Acting Deputy Officer for the DHS Office for Civil Rights and Civil Liberties (CRCL), and the Acting Deputy Immigration Detention Ombudsman for the DHS Office of the Immigration Detention Ombudsman (OIDO), and together, the Offices.

2. This declaration supplements my previous three declarations dated May 21, 2025, June 2, 2025, and August 15, 2025.

1

## **Staffing**

3.      The Offices have been realigned[1] to include enough employees to perform their statutory functions. CRCL leadership includes the Acting CRCL Officer, myself and my Chief of Staff. CRCL has twenty-five (25) to thirty (30) contractors. These contractors provide full-time support to CRCL by conducting investigations, responding to complainants, tracking/inputting complaints into CRCL's Case Management System (CMS), assisting with FOIA requests, referring complaints to other DHS agencies, writing assessments of whether civil rights or civil liberties violations exist, and conducting EEO counseling and investigations. Additionally, CRCL employs two (2) full-time federal employees, both of whom were previously employed by DHS and returned following the reduction in force. I hired these employees because they had the expertise needed to ensure continuity in work and to support the work of the contractors. Administrative functions (e.g., human resources, contracting, finance and budget, information technology, etc.) have been realigned to their respective offices in the Management Directorate (MGMT). A traditional Full-Time Equivalent (FTE) headcount is not appropriate for measuring the output of these employees, but several employees spend most or all of their time on the work of the Offices. Finally, there are (3) three CRCL attorneys and one (1) attorney assigned to CRCL on a detail who regularly provide legal advice to CRCL and ensure that it is performing its required statutory duties.

4.      Thus, the total number of employees working for CRCL is at a minimum of thirty-three (33) and a maximum of thirty-eight (38) employees, not including MGMT employees performing administrative functions. While this staffing differs from the staffing on or about March 21, 2025, and the numbers that I projected in the May hearing, it is not the lowest staffing for

---

[1] The Offices realignment was performed to comply with Executive Order "Implementing the President's Department of Government Efficiency" Workforce Optimization Initiative.

CRCL. CRCL has had as few as nine (9) employees since its inception. In 2004, CRCL had twenty (20) federal staff and twenty-three (23) contract staff with a budget of $13,000,000.[2] Most importantly, I am confident that the current staffing level is appropriate for CRCL to protect our homeland while preserving individual liberties, fairness and equality under the law.

5.  Similarly, I hired three (3) employees for OIDO, two (2) of whom were previously employed by DHS and returned following the reduction in force. I hired these employees because they had the expertise needed to ensure continuity in work. OIDO leadership includes the Acting Immigration Detention Ombudsman, myself and my Chief of Staff. Administrative functions (e.g., human resources, contracting, finance and budget, information technology, etc.) have been realigned to their respective offices in MGMT. A traditional FTE headcount is not appropriate for measuring the output of these employees, but several spend most or all of their time on the work of the Offices. Finally, there are (2) two OIDO attorneys who regularly provide legal advice to OIDO and ensure that it is performing its required statutory duties.

6.  While this staffing differs from the staffing on or about March 21, 2025, and the numbers that I projected in the May hearing, OIDO previously has had as few as three (3) employees for much of its existence. Only in the last three years or so did OIDO grow to over three (3) employees. Most importantly, I am confident that the current staffing level is appropriate for OIDO to perform its statutory duties.

7.  CISOMB leadership includes myself and the Deputy Ombudsman. Additionally, CISOMB has one (1) full-time detailee. Administrative functions (e.g., human resources, contracting, finance and budget, information technology, etc.) have been realigned to their respective offices in MGMT. A traditional FTE headcount is not appropriate for measuring the

---

[2] *See* 2009 Annual Report to Congress at 10 (available at https://www.dhs.gov/publication/crcl-annual-reports).

output of these employees, but several spend most or all of their time on the work of the Offices. I am confident that the current staffing level is appropriate for CISOMB to perform its statutory duties.

**Open for Business**

8. The Offices are actively working to perform their statutory functions with the above-referenced staff. While CRCL has not issued recommendation memos, it regularly meets (both at the leadership and staff level) with DHS agencies to provide recommendations, as needed, related to conditions in confinement, disability modifications, enforcement of the Prison Rape Elimination Act (PREA), and other types of complaints the Offices receive. CRCL and OIDO review every death in custody report and has initiated one investigation after reviewing the medical examiner's report. CRCL investigators review and process each complaint submitted via the portal and participate in weekly team meetings to discuss which matters warrant an investigation. Further, CRCL and OIDO regularly inspect detention facilities and issue findings and recommendations to U.S. Immigration and Customs Enforcement (ICE) and U.S. Customs and Border Protection (CBP). CISOMB has sent United States Citizenship and Immigration Services (USCIS) hundreds of requests for case assistance and received USCIS' responses to dozens of those requests, which are now being returned to the requestors, issued an annual report, provided in-depth assistance and conducted inquiries to assist requestors, and meets with USCIS leadership multiple times per month. It is evident there is much work being done and to argue otherwise ignores reality.

9. To be more efficient, the Offices have implemented a new practice pertaining to detention. Specifically, if the alien is no longer in ICE custody, the Offices enter the complaint into the system but generally do not open an investigation.[3] This decision was made because of the

---

[3] While this is the new practice, leadership of the Offices has the authority to waive the in custody requirement for any of the complaints that it receives.

challenges associated with collecting information from released aliens and seeking relief that is no longer needed. However, this practice does not prevent the Offices from identifying the issues and conducting a review with cumulative complaints. In fact, the Offices use the information when it conducts reviews of the detention facilities. Prior to the March 2025 realignment, CRCL did not open an investigation into every complaint, so a cumulative review is not a new approach.

10. To the extent that there has been a delay in processing complaints, the delay exists for two reasons: (1) with onboarding federal staff – all of whom had to complete a background check; and (2) the 2025 government shutdown. Despite the Offices' best efforts to hire employees expeditiously, there was a delay with onboarding staff, which is a common challenge with government hiring, but the Offices still managed to onboard the employees six (6) to nine (9) months faster than is typical.

11. Additionally, the Offices suffered some delays associated with the government shutdowns, which lasted forty-five (45) days. During the 2025 government shutdown, no employees were permitted to work, and I was only allowed to work on limited matters. This also applies for the two subsequent shutdowns. Specifically, the Offices endured another shutdown on February 2-3, 2026 which, while a slight delay, impeded the Offices' ability to continue their operations. Finally, a third shutdown is imminent today with no clear end date, which will require another pause in the Offices' work and disrupt investigations, communications to the public, policy development, report writing, and recommendation memorandum drafting. Because Congress has not funded the Offices consistently, which is evident by multiple shutdowns in 2025 and 2026 and a continuing resolution until mid-February, it is difficult to plan for future work.

**<u>Access</u>**

12.     In an effort to comply with the President's directive for the government, including the Offices, to operate more efficiently, I reviewed the Offices' operational needs and determined that a phone number for CISOMB and CRCL was not a good use of government resources. While there is no longer a phone line available, there is an online portal that provides complainants with an opportunity to submit their complaints to the Offices. This is more efficient because it eliminates the need for staffing but also ensures quality control of the complaint process by ensuring that every complaint is entered into a case management system and tracked properly in our complaint databases. The movement away from telephonic complaint systems is a government-wide initiative.

13.     Additionally, receipt of complaints in only English ensures maximum efficiency with complaint processing and is consistent with the President's Executive Order on "Designating English as the Official Language of the United States." Since the President's directive, and this policy change, the Offices have not seen a significant decline in substantive complaints being filed.[4] For example, CRCL has received 14,225 complaints since March 1, 2025, the date of the aforementioned Executive Order.  Further, there are a number of free online tools that allow for non-English speaking individuals to translate their complaints into English.  Finally, a large number of the complaints CRCL receives are submitted in English because they are from counsel such as Plaintiffs, advocacy groups, and family members. Thus, there is no barrier to submitting a complaint to the Offices.

14.     Finally, there are no barriers for complainants related to internet access.  As indicated above, the Offices continue to receive a robust number of complaints.  Everyone has access to the internet – whether they are in detention or not.  Internet is available on most cell

---

[4] OIDO's complaint numbers have declined because OIDO no longer actively solicits complaints in detention facilities, nor is it required by statute to do so.

phones and in public libraries across this country. Additionally, for those in detention, ICE ensures that individuals have access through computers or tablets made available to them. Similarly, as explained above, legal counsel, advocates, and family members also have internet access and can and have filed complaints on behalf of their client and family members.[5]

## Transparency

15. The Offices continue to operate in a transparent manner. For example, CRCL publishes its information in the FOIA reading room[6]. Additionally, the Offices regularly engage with Congress regarding the Offices' budgets and complaints that Congress shared from its constituents. The Offices have also worked to update their websites for accuracy and accessibility. Finally, the Offices are actively engaged in writing their annual reports – with CRCL's and CISOMB's reports recently posted to the DHS website – providing further transparency of the work being done.

## Independence

16. The Offices are not under the control, structurally, practically, or in any other sense, of the DHS Office of the General Counsel. Although attorneys from the DHS Office of the General Counsel (OGC) provide legal assistance and support to the Offices at my request, all final decisions are mine, in consultation with the Acting CRCL Officer and the Acting Immigration Detention Ombudsman, and reflect our own independent judgment. The leadership of the Offices reports directly to the Secretary of Homeland Security, not OGC. With respect to CRCL's Equal Employment Opportunity (EEO) program in particular, as part of their legal assistance and support,

---

[5] The Offices require a privacy waiver to be submitted with a complaint to protect the privacy of the alleged victim of a civil rights or civil liberties violation. Often complaints involve the Offices reviewing medical data, immigration records, and other sensitive information the Offices are required by law to protect. The waiver can either be a G-28 form, available at https://www.uscis.gov/g-28, or a written document that provides consent for another individual to discuss the alleged victim's complaint.
[6] *See* CRCL FOIA Reading Room, https://www.dhs.gov/publication/crcl-foia-logs.

OGC attorneys draft final agency decisions in EEO complaints for my review. However, the final decisions are mine alone and reflect my own independent judgment. OGC attorneys provided this same type of support at the request of previous CRCL leadership.

17. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 13th day of February, 2026.

_____
Ronald J. Sartini
Citizenship and Immigration Services Ombudsman
U.S. Department of Homeland Security