UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT F. KENNEDY HUMAN RIGHTS; SOUTHERN BORDER COMMUNITIES COALITION; and URBAN JUSTICE CENTER,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; and KRISTI NOEM, in her official capacity as Secretary of Homeland Security,<br><br>Defendants. | Civil Action No. 25-1270-ACR |

## PLAINTIFFS' COUNTER-STATEMENT OF DISPUTED FACTS

Plaintiffs respectfully submit this Counter-Statement of Disputed Facts in opposition to Defendants' Statement of Material Facts Not in Dispute, ECF 69-2, pursuant to Local Rule 7(h) and Judge Reyes's standing order. Plaintiffs object to Defendants' inclusion of many compound assertions in their Statement of Material Facts Not in Dispute that did not consist of "one undisputed factual assertion per numbered row," as Judge Reyes's standing order requires.

| | |
|---|---|
| 1. Consistent with Executive Order 14210, DHS began preparing RIFs for CRCL, OIDO, and CISOMB because they had substantial workforces not performing statutory duties. Ex.1 (Sartini Decl. May 18) ¶ 5. | Deny that the reason for the RIF was that the offices' employees were not performing statutory functions. Instead, contemporaneous memoranda discussing the RIF and public statements by a DHS spokesperson when the RIF was announced focused on lack of alignment between the offices and DHS's law enforcement mission, with the offices even being described as "internal adversaries" that "obstructed immigration enforcement" by "adding |

|   |   |   |
|---|---|---|
|   |   | bureaucratic hurdles" and "slow[ing] down operations." OPM Memoranda, ECF 70-2; Ellen M. Gilmer, Trump Aides Shutter Homeland Security Civil Rights Office, Bloomberg Gov't (Mar. 21, 2025), https://perma.cc/P88P-SEZP. |
| 2. | Though not always clearly messaged, the Offices' positions were being eliminated so new ones could be made; the Offices were never being eliminated. Ex.3 (Barksdale-Perry Decl.) ¶¶ 3, 6; Ex.4 (Hearing May 23) at 8:20-9:22, 28:24-29:10. | Deny as inconsistent with the memoranda sent to OPM and to Secretary Noem for approval, as well as the RIF notices themselves, all of which referred to a "100% RIF," eliminating all positions in the competitive area so that no reassignment was possible, and eliminating all employees from all three offices except for those choosing to take deferred resignation. OPM Memoranda, ECF 70-2; Memorandum for the Secretary, ECF 70-3; Gilbride Decl;, ECF 64-6, Exs. C–E. |
| 3. | The RIF notices stated that, under Order 14210, the Department "must prioritize the *reduction of positions* performing functions *not explicitly mandated* by statute or regulation" and conducted "a comprehensive statute-by-statute analysis" to identify those positions. Ex. 5 (RIF Notices) (emphasis added). | Admit |
| 4. | The Department recognized that the Offices had necessary statutory functions. Ex. 6 (Hearing Tr., May 19) at 77:18-78:1; Ex. 7 (Statutory Authorities). It thus sought to realign the Offices to focus on those statutory functions, not eliminate or restructure them. Ex. 1 (Sartini Decl. May 18) ¶¶ 9-10, 13-14; *see also* Ex. 8 (Hemenway Dep.) at 28:18-29:1 (Principal Deputy Chief of Staff testifying that his "only goal was to maintain statutory compliance"). | Admit as to first sentence, although the cited testimony from the May 19 hearing does not support it. Supportive evidence can be found at ECF 64-8 (May 19 Hearing Transcript) 80:13-20. Deny as to second sentence because on March 21, 2025, when the offices were eliminated through the RIF and stop-work order, no plan was in place for how the statutory functions of the offices would be performed. May 19 Hearing Transcript, ECF 64-8, 90:4-16. |
| 5. | Around March 21, Department | Admit |

| | |
|---|---|
| leadership tasked Ronald Sartini—who has extensive experience in the immigration space—to study the Offices and propose a plan to refocus the Offices. Ex.6 (Hearing Tr., May 19) at 77:18-78:1; Ex.9 (Sartini Dep.) at 12:20-19:12. | |
| 6. Sartini spent over a month reviewing data, contracts, previous practices, policies, and collaborating with employees to understand their functions and what staff would be necessary. Ex.6 (Hearing Tr., May 19) at 15:25-16:17, 19:2-20:3, 25:3-26:11, 46:22-48:25, 117:17-118:4. | Admit that this process occurred after the March 21, 2025, stop-work order and RIF. |
| 7. As Sartini described, "[t]he Offices have been engaged in unnecessary and sometimes duplicative discretionary oversight and public engagement activities," Ex. 1 (Sartini Decl. May 18) ¶ 10, such as foreign travel and "expensive marketing," Ex. 6 (Hearing May 19) at 17:5-19:1, 92:18-93:12. *See also* Ex. 4 (Hearing May 23) at 95:14-96:16. | Deny that public engagement is not within the offices' statutory functions. 6 U.S.C. § 345(a)(2); 42 U.S.C. § 2000ee-1(g); 6 U.S.C. §§ 272(b)(1), (g)(1)(C). |
| 8. Sartini also explained that OIDO and CRCL often received the same complaints and there was no mechanism "to ensure they weren't doing the same work." Ex. 6 (Hearing May 19) at 70:5-9. | Deny as an MOU was in place between CRCL and OIDO to avoid duplication of work, and OIDO implemented a deconfliction mechanism with CRCL and other DHS oversight components. Office of the Immigr. Det. Ombudsman, OIDO Annual Report 2023 at 38–40, 42 (Mar. 29, 2024), https://perma.cc/C5RF-U4RT. |
| 9. Additionally, other offices in the Department, such as the Inspector General, Office of Partnership and Engagement, and Office of Public Affairs, were performing tasks similar to "many of the discretionary matters" the Offices were doing. Ex. 1 (Sartini Decl. | Deny that these other offices performed the same functions required of CRCL, OIDO, and CISOM by statute; any discussion of discretionary functions is immaterial because Plaintiffs' claims and the relief they seek focus on the offices' statutorily required functions. Statutory Authorities, ECF 69-11. |

| | |
|---|---|
| May 18) ¶ 11. | |
| 10. Given this, DHS "assessed the number of government positions necessary to fulfill the statutory duties, assessed the type of positions best suited to perform the work, [and] assessed which duties can be performed by existing contractors." Ex. 10 (Defs. Resp. to Pls. Disc. Req.) at 8. | Deny that any such plan has governed staffing of the offices. Instead, DHS's own budget proposal sent to Congress on May 30, 2025, ECF 64-13, has created self-imposed hiring caps and thus resulted in staffing far below the levels recommended by Mr. Sartini to Mr. Hemenway in their May 22 meeting and described in Mr. Hemenway's May 22 declaration, ECF 33-1. |
| 11. The Department gave Sartini the authority to hire through "an expedited pipeline" "to staff these offices up," Ex.6 (Hearing May 19) at 109:12-110:5, and he received authorization for the hiring to be exempt from the hiring freeze, Ex.4 (Hearing May 23) at 78:21-79:1. | Admit, although Mr. Sartini expressed confidence that hiring would be complete within one month of his May 23 testimony, and no personnel were hired until three months later, or five months after the offices were shut down through the March 21 RIF and stop-work order. |
| 12. As Sartini warned at the start, allocations and appropriations "always control." Ex. 6 (Hearing May 19) at 46:7-10. | Admit that Mr. Sartini gave this testimony. Deny that such allocations must "always control" or leave DHS without flexibility to perform statutory requirements given the transfer and repurposing authority to which DHS Budget Director Ann Tipton testified, ECF 43-1 ¶ 3. |
| 13. Sartini had an initial estimate as to the number of employees he would seek to hire, but that number shifted after Sartini assumed his position and saw that the Offices "can accomplish the statutory functions" with a "mix of employees, detai[l]ees, and contractors, and OGC support." Ex. 9 (Sartini Dep.) at 91:9-21. | Deny, as Mr. Sartini's stated reasons for not hiring more people were projected budgetary constraints and uncertainty. Plaintiffs' Sartini Depo. Excerpts, ECF 64-10, 94:21-95:10. |
| 14. The hiring was much faster than the 6 to 12 months it can take, but security vetting and employee requests to start in August to relocate delayed start dates to August. Ex. 9 (Sartini Depo.) at | Admit |

| | | |
|---|---|---|
| | 85:14-89:16; Ex.22 (Fourth Sartini Decl.) ¶ 10. | |
| 15. | The Offices also had dozens of employees to handle their own administrative functions like Human Resources, IT, budget, contracting, and support. Ex. 9 (Sartini Depo.) at 26:7-18. Now this is being handled by the general Management Directorate. *Id.* | Admit |
| 16. | They also get legal help from the Office of General Counsel for legal review and FOIA is handled by the Privacy Office, which was done historically. Ex. 6 (Hearing May 19) at 102:19-103:8, 119:8-18; Ex. 9 (Sartini Dep.) at 25:14-26:6, 44:21-46:10. | Admit that there has always been some consultation between OGC and CRCL, but deny that CRCL is in a position to exercise independent legal judgment given that the current Acting CRCL Officer is not an attorney and neither is his deputy. |
| 17. | For many years, CRCL had between 100 to 110 and even as low as 9 to 20 positions, which ballooned to 147 at the time of the RIF despite only about 20 fulltime caseworkers. Ex.6 (Hearing May 19) at 29:16-30:20; Ex.22 (Sartini Decl., Feb. 6, 2025) ¶ 3. | Admit that staffing levels have changed over time. |
| 18. | OGC lawyers provide legal advice, including for EEO complaints, but CRCL signs off on all agency decisions based on Deny that Mr. Hemenway or Mr. Sartini should be considered full-time employees of CRCL given that both have other full-time positions within DHS. Otherwise admit.its "independent judgment" as has always been the case. Ex.22 (Fourth Sartini Declaration) ¶ 16; Ex.9 (Sartini Depo.) at 44:21-46:10, 140:16-143:3, 216:7-19, 265:4-266:6. | Deny that OGC's role is limited to providing legal advice given Mr. Sartini's testimony that OGC lawyers write most final agency decisions on EEO complaints. Plaintiffs' Sartini Depo. Excerpts, ECF 64-10, 48:14-50:5, 92:15-21. |

| | | |
|---|---|---|
| 19. | As of December 2025, CRCL had four full-time employees (the maximum under the President's budget): Mr. Hemenway, Mr. Sartini, and two investigators who oversee about twenty contract investigators and between 25 and 30 full time equivalent contractors working on complaints and other needs, which can be increased further. Ex. 9 (Sartini Dep.) at 50:6-51:3-50, 85; Ex. 8 (Hemenway Dep.) at 43:16-44:4. | Deny that Mr. Hemenway or Mr. Sartini should be considered full-time employees of CRCL given that both have other full-time positions within DHS. Further deny that there are both "20 contract investigators" and "25 or 30 full-time employee equivalent contractors" as Mr. Sartini's testimony was that there are a total of 25 to 30 contractors across all CRCL contracts, including seven or eight who handle investigations from members of the public and the rest who focus on EEO matters. Plaintiffs' Further Sartini Depo. Excerpts, ECF 70-5, 39:15-51:3. Otherwise admit. |
| 20. | OIDO started off with 3 employees when created in 2019 and "ballooned to 118 in the last year or two," with only around 38 case managers. Ex. 6 (Hearing May 19) at 29:16-30:20. | Admit that OIDO's staffing levels increased after it was created in 2019. |
| 21. | The Department filled three OIDO law enforcement specialist positions (two of them with previous OIDO employees, all with experience inspecting facilities) and also has two detailees performing that role, contractors, and 2 attorneys for legal advice. Ex.13 (Guy Dep.) at 78:6-19, 84:4-10; Ex.9 (Sartini Depo.) at 58:8-8, 202:11-204:06; Ex.22 (Fourth Sartini Decl.) ¶¶ 5-6. | Deny that any contractors perform work for OIDO. Plaintiffs' Further Sartini Depo. Excerpts, ECF 70-5, 38:5-19. Also deny that OIDO "has" two dedicated attorneys providing legal advice, as no such attorneys were listed in Defendants' discovery responses discussing OIDO hires, and Mr. Sartini only referred to OGC attorneys reviewing work product for OIDO without attributing any particular number of OGC employees to that role. Discovery Responses, ECF 64-3, Response to Interrogatory 13; Plaintiffs' Further Sartini Depo. Excerpts, ECF 70-5, 93:1-9. Otherwise admit. |
| 22. | OIDO also pulls from the Management Directorate to perform administrative functions so, in total, it is "closer to about 25 to 30 people who do OIDO work." Ex. 13 (Guy Dep.) at 79:13-18; *see also* Ex. 9 (Sartini Dep.) at 26:7- | Admit that the management directorate assists with travel planning, IT, HR, and other administrative tasks, though those employees do not perform OIDO's statutory functions. Deny that Mr. Guy's estimate of "25 to 30 people who do OIDO work" is an appropriate figure to cite for OIDO's staffing level because it includes employees |

| | | |
|---|---|---|
| 18. | | from the management directorate, who Mr. Sartini testified would not be appropriate to include in OIDO's headcount. Feb. 13, 2026 Sartini Decl., ECF 69-26, ¶ 5. |
| 23. | CISOMB had 20 positions for most of its history but "doubled in size in the last two to three years" to 40, with only 10 to 12 handling cases. Ex. 6 (Hearing May 19) at 29:13-30:20. | Admit that staffing levels have changed over time. |
| 24. | As of December 2025, CISOMB had two full-time employees, Sartini and the deputy, as well as a detailee. Ex. 9 (Sartini Dep.) at 57:6-10, 95:3-10, 225:6-10. | Deny that the deputy should be considered a full-time employee of CISOM given that he also serves as Mr. Sartini's chief of staff in his roles with CRCL and OIDO. Plaintiffs' Sartini Depo. Excerpts, ECF 64-10, 57:6-18. Also deny that Mr. Sartini works full-time for CISOM given that he testified to spending 30% of his time on that role, Plaintiffs' Sartini Depo. Excerpts, ECF 64-10, 24:2-20. If 30% of Mr. Sartini's time were 40 hours per week, he would be working 133.3 hours per week, or 19 hours per day, seven days per week. |
| 25. | There has never been a budget for 50 local ombudsmen and the 4 "regional" ombudsmen were first hired in 2023. Ex.9 (Sartini Dep.) at 99:2-100:15; Ex.6 (Hearing May 19) at 30:23-31:6; Pls. Attach. 19, ECF 64-19 (Tacey Decl.) ¶¶ 2-5. | Admit that the four regional ombudsmen were hired in FY2023. Deny that Congress was required to appropriate funds specifically for local ombudsmen based on how Ann Tipton described the DHS budget, including the ability to transfer funds between PPAs as necessary. Tipton Decl., ECF 43-1, ¶ 3. |
| 26. | Hiring additional employees is under discussion, but no decisions have been reached because Budget has advised that there should be no additional hiring until a year-long appropriation is in place. Ex. 9 (Sartini Dep.) at 78:11-79:20. | Admit |
| 27. | Since March 21, the Offices have been shutdown twice, including the longest government shutdown in | Admit |

| | | |
|---|---|---|
| | history and a recent shutdown, with funding only until February 13 that will likely result in another long shutdown of the Offices. Ex.22 (Fourth Sartini Decl.) ¶ 11. | |
| 28. | The shutdowns disrupted hiring and the statutory duties for the Offices. Ex.9 (Sartini Depo.) at 78:11-79:20; Ex.22 (Fourth Sartini Decl.) ¶ 11. | Deny that the shutdowns had any effect on hiring, because employees were onboarded in August and there are no plans to hire additional staff because of the limited funds included in the budget proposals for these offices submitted to Congress on May 30, 2025. Plaintiffs' Sartini Depo. Excerpts, ECF 64-10, 55:2-13, 58:3-12, 94:21-95:10; Plaintiffs' Hemenway Depo. Excerpts, ECF 64-11, 50:1-51:2, 162:3-11. |
| 29. | The Offices cannot provide "direct" assistance, meaning they cannot "directly remedy complaints." Ex. 9 (Sartini Dep.) at 266:13-267:13. Instead, the component agencies, namely CBP, ICE, and USCIS, are the ones "able to directly assist." Ex. 13 (Guy Dep.) at 169:15-22. | Deny in that CRCL can mandate remedies in Section 504 letters when a violation is found. 6 C.F.R. § 15.70(g)(1)(ii). Further deny in that OIDO case managers and employees of CISOM could provide direct assistance by explaining processes to individuals and answering their questions. Vitullo Decl., ECF 15-11, ¶ 10; Plaintiffs' Sartini Depo. Excerpts, ECF 64-10, 220:11-14, 221:15-22; Tacey Decl., ECF 64-19, ¶¶ 9–13. |
| 30. | Even recommendations have no "enforcement mechanisms," the component agency is free to accept or reject the recommendation except for EEO decisions, as has always been the case. Ex. 9 (Sartini Depo.) at 267:1-18; Ex.6 (Hearing May 19) at 9:5-10:12, 38:11-39:3. | Deny as to Section 504 remedies, which are mandatory when a violation of the statute is found. 6 C.F.R. § 15.70(g)(1)(ii). |
| 31. | The Offices have always referred complaints back to component agencies, especially for emergencies, as the component agencies must address them in the first instance. Ex.9 (Sartini Depo.) | Admit that all three offices previously referred matters to other components of DHS. Deny that current referrals are equivalent to prior referrals, because in the past CRCL required a report when it referred an investigation to a component, and now the complaint is simply closed with follow- |

|   |   |   |
|---|---|---|
|   | at 107:13-109:3, 266:7-12. | up from the component entirely optional. CRCL Annual Report to Congress, FY2023 (Nov. 2024), at 46–47, https://perma.cc/3SWH-KEGX; Plaintiffs' Sartini Depo. Excerpts, ECF 64-10, 115:3-18; Second Plavsic Decl., ECF 70-6, ¶ 3. Further deny that the offices lacked the capacity to respond to emergencies themselves, as CRCL maintained a Rapid Response Team (RRT) for handling emergent situations. CRCL FY2023 Report at 41–42. |
| 32. | The Offices retain the right to keep the complaints open, follow up, reopen them, and they always keep the data for long-term trends and recommendations. Ex.9 (Sartini Depo.) at 106:19-110:7. | Deny in that the reference to "keep[ing] the data" is misleading. The only data CRCL would have for a complaint it refers to another component is the complaint itself and any data the complainant provided, because CRCL will only request information from other components of DHS for complaints it is actively investigating. Plaintiffs' Sartini Depo. Excerpts, ECF 64-10, 138:13-18. Otherwise admit. |
| 33. | The Offices have also moved to easily accessible web-based filing portals that have "optimiz[ed]" the complaint submission process so the Offices "can more effectively congregate and analyze data." Ex.8 (Hemenway Dep.) at 55:1-8; Ex.13 (Guy Depo.) at 100:13-17; Ex.22 (Fourth Sartini Decl.) ¶ 12. | Deny that these portals are "easily accessible" to those without internet access and those who do not speak English. Brundage Decl., ECF 64-20, ¶ 4; OIDO INSPECTION: Critical Issues Concerning Electronic Tablet Administration, Oversight, and Use in ICE Detention Facilities (June 13, 2004), at 16 (OIDO Tablet Report), https://www.dhs.gov/sites/default/files/2024-07/24_0613_oido_final-inspection-report-critical-issues-concerning-electronic-tablet-administration-oversight-and-use-in-ice-detention-facilities-508_3.pdf. |
| 34. | Detainees generally have access to tablets with internet access to file complaints and the ability to call family members or others for help. Ex. 9 (Sartini Depo.) at 186:11-188:8; Ex.22 (Fourth Sartini Decl.) ¶ 14. | Deny that detainees "generally" have access to tablets. Brundage Decl., ECF 64-20, ¶ 4; OIDO Tablet Report at 4 (describing a contract with Talton through which tablets were provided at 39 ICE detention facilities as of 2024); ICE, *Tablets at ICE Facilities* (updated Jan. 23, 2026), https://www.ice.gov/detain/detention- |

| | | |
|---|---|---|
| | | facilities/tablets (listing 47 facilities with Talton tablets, along with 42 additional facilities where tablets are offered by other contractors, making tablets available at fewer than half of the 250 to 300 detention facilities identified by Defendants' witnesses). |
| 35. | Family members, organizations, and lawyers can file on behalf of individuals as long by filling out forms with basic information and consent.  Ex. 9 (Sartini Depo.) at 123:6-126:7, 188:9-19; Ex.22 (Fourth Sartini Decl.) ¶ 14. | Deny that family members and NGOs understand that they can file complaints without a G-28 form, which can only be used by lawyers or other legal representatives authorized to represent people before the Executive Office of Immigration Review.  As of February 26, 2026, the CRCL web portal still stated that a G-28 form is required to submit a complaint, despite Mr. Sartini's statement that other types of consent for third-party submissions will be accepted. Gilbride Decl., ECF 70-7, Exhibit A (CRCL web portal page as of February 26, 2026). |
| 36. | CRCL continues to open investigations and draft recommendation memoranda when appropriate. Ex. 10 (Defs. Resp. to Pls. Disc. Req.) at 11. | Deny because as of August 13, 2025, when Defendants provided these discovery responses, no new investigations had been opened since March 21 and only one recommendation memorandum was in draft form due to the lack of employees working for CRCL since March 21. Discovery Responses, ECF 64-3, Responses to Interrogatories 4 and 5. |
| 37. | CRCL intakes, triages, and reviews every complaint from detainees, the public, and employees for civil rights and civil liberties issues, discrimination, Section 504, and internal EEO complaints. Ex. 9 (Sartini Dep.) at 66:17-70:4. | Admit |
| 38. | In recent years CRCL has received around 3,000 complaints and has only opened investigations into about 20-25%, with fewer | Deny that these statistics are for "recent years" as they seem to be drawn from a single report for Fiscal Year 2023. CRCL FY2023 Report at 45. |

| | | |
|---|---|---|
| | receiving recommendations. Ex.6 (Hearing May 19) at 11:17-12:7; Ex.9 (Sartini Dep.) at 137:17-22 | |
| 39. | From March 21 to December 12, CRCL complaints have increased to 5,989, Ex. 15 (Defs. Suppl. Resp. to Pls. Disc. Req.), many coming from detainees using the web portal, Ex. 9 (Sartini Dep.) at 261:20-262:8. | Admit |
| 40. | In that time, CRCL has received 70 Section 504 complaints, opened investigations into 2, is processing 54, and closed 11. Ex. 15 (Defs. Suppl. Resp. to Pls. Disc. Req.). For Section 345, CRCL has 74 open investigations, has investigated 554 with 183 done directly, has referred 409 urgent medical complaints, and has otherwise referred 490 complaints to components. *Id.* For internal EEO complaints, CRCL has issued final agency decision on 177, issued 21 reports, is counseling in 59, investigating another 39, and adjudicated 9 requests for amendments. *Id.* | Admit |
| 41. | OIDO continues to open investigations and refer complaints to the proper Department component on detention complaints. Ex. 10 (Defs. Resp. to Pls. Disc. Req.) at 12. | Admit that OIDO is continuing to open a small number of investigations and to make referrals. Lack knowledge about whether those referrals are to the "proper" components. |
| 42. | In recent years, OIDO received around 12,000 complaints but only redressed around 800. Ex.6 (Hearing May 19) at 12:12-15. | Deny because the use of "redress" here is misleading. OIDO used the term "redress" to refer to instances where a violation was found. OIDO 2023 Report at 21. OIDO provided assistance in response to many other complaints without finding a violation. Second Brundage Decl., ECF 70-8, ¶ 3–4. |

| | | |
|---|---|---|
| 43. | From March 21 through December 21, new complaints are down to 280 with 14 being investigated and 15 referred. Ex.15 (Defs. Suppl. Resp. to Pls. Disc. Req.). | Admit |
| 44. | The OIDO employees stationed inside detention facilities were never at every facility all the time, as there are between 250 and 300 facilities. Ex.4 (Hearing May 23) at 100:21-22. | Admit that case managers were not in every facility all the time prior to the RIF. Deny that there were 250 to 300 detention facilities prior to the RIF, as the number of detention facilities has increased dramatically throughout 2025 and into 2026 due to the increase in the number of people being detained. Plaintiffs' Further Sartini Depo. Excerpts, ECF 70-5, 91:1-8. |
| 45. | There were serious issues of abuse, exploitation, and even sexual assault resulting in criminal conviction with some of the OIDO employees stationed inside of facilities. Ex.4 (Hearing May 23) at 89:13-24; Ex.6 (Hearing Tr., May 19) at 45:11-25; Ex.9 (Sartini Depo) at 269:3-270:3. | Deny that such abuse was widespread or occurred in more than a single facility. Second Brundage Decl., ECF 70-8, ¶ 5. |
| 46. | There is evidence that the OIDO employees within facilities generated and resolved a substantial number of complaints that were not within the core functions of OIDO and could be characterized as 'make work.' Ex.9 (Sartini Depo.) at 269:3-270:3. | Deny that Mr. Sartini has any evidence for this conjecture about OIDO complaint numbers being inflated. Second Brundage Decl., ECF 70-8, ¶ 6. |
| 47. | The OIDO employees within facilities still had to interact with facility employees to remedy any problem and could not redress complaints on their own. Ex.9 (Sartini Depo.) at 267:1-9 | Deny that case managers could not provide direct assistance, as they were able to answer questions and explain processes to detained individuals, and were otherwise very effective in getting detained individuals' medical and other concerns addressed quickly. Vitullo Decl., ECF 15-11, ¶ 10; Fourth Enriquez Decl., ECF 50-1, ¶¶ 18–19; Second Brundage Decl. ¶ 3. |

| | |
|---|---|
| 48. In recent years CISOMB received about 25,000 inquiries closing 40%, the vast majority of which were forwarded to USCIS for an answer while taking no action on 60%. Ex.4 (Hearing May 23) at 93:8-23; Ex. 6 (Hearing Tr., May 19) at 11:8-12:11; Ex. 9 (Sartini Depo) at 247:3-21. | Admit |
| 49. From March 21 through December 12, CISOMB received over 8,000 case requests, referring 113 to USCIS and taking "no further action" on 7,914, which includes directly answering the request or determining no answer is likely to be given. Ex. 9 (Sartini Dep.) at 222:9-22; Ex. 15 (Defs. Suppl. Resp. to Pls. Disc. Req.). | Admit |
| 50. The majority of the time, CISOMB assesses the requests and decides to take no further action if, for example, "the handling of those application types is in flux or outright paused . . . [which] make up a significant portion of the requests." Ex.9 at 220:15-221:14; *see also id.* at 244:3-247:2. This is because the programs administered by USCIS, like visas and humanitarian relief, are in considerable flux, thus answers are constantly changing. *Id.* at 220:15-221:14. | Admit |
| 51. "[C]onsistent with past practice," the majority of the requests are not referred to USCIS. *Id.* at 222:17-223:3. Other times, when appropriate, CISOMB referred matters to USCIS for review and possible action, generally for benefits that USCIS is still processing regularly, such as green | Deny as the use of the term "majority" is misleading here. Previously, around 40% of requests were referred to USCIS. May 19 Hearing Transcript, ECF 64-8, 12:8-11. Since March 21, 2025, 0.9% of requests have been referred to USCIS. Discovery Responses, ECF 64-3, Response to Interrogatory 4; Defendants' 12/12/2025 Supplemental Discovery Responses, ECF |

| | | |
|---|---|---|
| | cards. Ex. 9 (Sartini Dep.) at 224:2-225:5, 241:7-21. | 64-5. |
| 52. | USCIS has sent dozens of responses to CISOMB inquiries recently. Ex. 22 (Sartini Fourth Decl.) ¶ 8. | Lack knowledge. However, if dozens of responses were sent from USCIS to CISOM, this likely occurred between February 6 and February 13, because the February 6 declaration from Mr. Sartini, ECF 66-26, did not reference such responses, and the February 6 version of Defendants' Counter-Statement of Facts, ECF 66-3, admitted Plaintiffs' Fact 192. |
| 53. | Despite the shutdown and realignment, from March 21 through December 12 OIDO inspected 27 facilities out of 250 or so, *more* than the previous years. Ex. 9 (Sartini Dep.) at 75:11-76:1; Ex. 15 (Defs. Suppl. Resp. to Pls. Disc. Req.). | Admit. However, these were all announced inspections conducted by one or two employees, without the medical and environmental experts that previously participated in OIDO inspections. |
| 54. | While OIDO provides a couple days notice before arriving at a facility due to safety concerns, that has always been the case and OIDO will go even over the objection of the facility.  Ex. 9 (Sartini Depo.) at 207:11-208:08. | Deny as OIDO's prior practice for unannounced inspections was to provide a heads-up on the morning of the inspection, not before. Brundage Decl., ECF 64-20, ¶ 3. |
| 55. | Reports are currently being drafted with some recommendations, which typically take several months.  Ex.9 (Sartini Depo.) at 212:2-15; Ex. 6 (Hearing Tr., May 19) at 13:13-19. | Lack knowledge |
| 56. | CRCL has been consulting with other Department components about their policies and providing feedback. Ex. 9 (Sartini Dep.) at 135:2-136:2, 157:18-158:3, 165:16-178:10. | Admit |
| 57. | CRCL reviews all death in custody cases and one is being investigated | Lack knowledge |

| | | |
|---|---|---|
| | based on a medical examiner's report. Ex. 9 (Sartini Depo.) at 117:2-120:8; Ex.22 (Fourth Sartini Decl.) ¶ 8. | |
| 58. | Recommendations from the Offices and even responses have historically taken anywhere from 6 to 18 months. Ex.6 (Hearing Tr., May 19) at 11:17-12:7, 37:19-38:8; Ex.9 (Sartini Depo.) at 121:13-122:6, 137:17-22. | Admit that response times from the offices could vary, but historically interim communication went on between the offices and complainants and other stakeholders prior to recommendations being issued to apprise them of developments. |
| 59. | The CISOMB and CRCL Congressional reports have been submitted and are public. Ex.22 (Fourth Sartini Decl.) ¶ 14. | Admit |
| 60. | The OIDO report will be submitted in February given the shutdowns. Ex. 9 (Sartini Depo.) at 214:5-12. | Lack knowledge |
| 61. | Plaintiffs are not employees challenging the abolishment of their positions nor detainees challenging the conditions of their confinement. Rather, Plaintiffs are a group of immigration organizations who have filed complaints and case assistance requests with the Offices and "have matters they would currently be raising with one or more of these offices if they were still functioning." Compl. ¶ 7. | Admit |
| 62. | Plaintiffs "continue to advocate for their clients and, when resources allow, to litigate on behalf of their clients… and to advocate on behalf of border residents and immigrants." Ex. 20 (Pls. Adm. Resp.) at 7. | Admit |
| 63. | Plaintiffs still "file complaints and requests for assistance with other | Admit |

| | |
|---|---|
| components of DHS such as U.S. Customs and Border Protection [(CBP)], U.S. Immigration and Customs Enforcement [(ICE)], and U.S. Citizenship and Immigration Services [(USCIS)]," but believe that these "alternative methods" are "inferior" are "less effective and more difficult, time-consuming and expensive forms of advocacy and litigation." Ex. 20 (Pls. Adm. Resp.) at 6. | |
| 64. Plaintiffs have continued to file civil rights complaints with CRCL regarding detainees' medical treatment and other incidents at detention centers. Ex. 20 (Pls. Adm. Resp.) at 8. | Admit that each of the three plaintiffs has filed complaints with CRCL, although the cited page of Plaintiffs' Responses to Requests for Admission does not provide evidence to support that proposition. |
| 65. Even before the reorganization, complaints did not necessarily result in investigations, *id.* at 9, or even "prompt[]" a response, Ex. 19 (Pls. Interr. Resp.) at 7. | Admit |

Dated: February 27, 2026                                             Respectfully submitted,

/s/ Karla Gilbride

Christine L. Coogle (DC Bar No. 1738913)   Karla Gilbride (DC Bar No. 1005586)
Brian D. Netter (DC Bar No. 979362)        Adina H. Rosenbaum (DC Bar No. 490928)
Skye L. Perryman (DC Bar No. 984573)       Public Citizen Litigation Group
Democracy Forward Foundation               1600 20th Street NW
P.O. Box 34553                             Washington, DC 20009
Washington, DC 20043                       (202) 588-1000
(202) 448-9090                             kgilbride@citizen.org

*Counsel for All Plaintiffs*


Anthony Enriquez (DDC Bar No. NY0626)      Sarah E. Decker (DDC Bar No. NY0566)
Sarah T. Gillman (DDC Bar No. NY0316)      Robert & Ethel Kennedy Human Rights
Robert & Ethel Kennedy Human Rights        Center
Center                                     1300 19th Street NW, Suite 750
88 Pine Street, Suite 801                  Washington, DC 20036
New York, NY 10005                         (202) 559-4432
(917) 284-6355

*Counsel for Plaintiff KHRC*