**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KENNEDY HUMAN RIGHTS CENTER; SOUTHERN BORDER COMMUNITIES COALITION; and URBAN JUSTICE CENTER,<br><br>        Plaintiffs,<br><br>                v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; and MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security,<br><br>        Defendants. | Civil Action No. 25-1270-ACR |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICE OF LEGAL DEVELOPMENT**

Pursuant to the Court's minute order of May 13, Plaintiffs file this response to Defendants' Notice of Legal Development, ECF 83, regarding the recently enacted Fiscal Year (FY) 2026 Department of Homeland Security (DHS) appropriations law.

Defendants argue that the lack of new congressional appropriations for the Office of the Immigration Detention Ombudsman (OIDO) renders Plaintiffs' claims effectively moot. But the party asserting mootness has the burden of proving it, *Maldonado v. Dist. of Columbia*, 61 F.4th 1004, 1006 (D.C. Cir. 2023), and Defendants make no effort to satisfy that burden by explaining why it would be impossible for them to continue performing OIDO's statutory functions if this Court ordered them to do so. Defendants instead seem to suggest that the lack of new congressional appropriations for OIDO is tantamount to an implied repeal of the statute creating OIDO and requiring it to perform certain functions. But judicial findings of implied repeal are particularly disfavored in the context of appropriations statutes, *see TVA v. Hill*, 437 U.S. 153, 190

(1978), and Defendants offer no explanation of how the presumption against implied repeal can be overcome here.  Rather than evidencing mootness or implied repeal, the lack of specific FY 2026 funding for OIDO, and the reduced funding for the Office for Civil Rights and Civil Liberties (CRCL) and Office of the Citizenship and Immigration Ombudsman (CISOM), evidence Defendants' own funding requests coming to fruition.  These appropriations levels are consistent with the amount of funding that DHS requested for those offices in its budget justification submitted to Congress last year.  If it turns out that DHS needs more money than requested to perform the offices' statutory functions, that is a problem of Defendants' own making, and one that they will need to solve by shifting money from one part of DHS to another using their reprogramming authority, or using such other funding and management tools available to them.[1]

Defendants' Notice of Legal Development is strikingly thin on facts.  While it mentions that the FY 2026 DHS appropriations bill signed into law on April 30, 2026, "completely defunds OIDO," it omits the fact that such complete defunding is precisely what DHS sought in its congressional budget justification nearly a year ago, *see* ECF 41, and not some intervening development thrust upon Defendants by Congress.  Nor do Defendants explain whether any money remains in OIDO's budget from prior years' appropriations from which the office's activities could be funded, or whether money is available to be moved from other programs, projects, or activities of DHS to OIDO, as DHS did to supplement the budget of CRCL during FY 2025.  *See* ECF 43-1, Decl. of Ann Tipton, ¶¶ 2–3; ECF 69-3, Defendants' Counterstatement of Facts, ¶¶ 70–73 (admitting to these statements regarding DHS's FY 2025 reprogramming of funds in Plaintiffs'

---

[1] *See*, *e.g.*, Taylor N. Riccard & Dominick A. Fiorentino, Cong. Res. Serv., R47600, *Transfer and Reprogramming of Appropriations: An Overview* (2023), https://www.congress.gov/crs-product/R47600.

Statement of Undisputed Material Facts).  Indeed, Defendants' notice says nothing whatsoever about OIDO's available financial resources.  It simply states in conclusory fashion that "Mr. Sartini is thus working on winding down the office as a result of Congress's choice to defund OIDO." ECF 83 at 1.

Congress's choice to provide the precise amount of money that Defendants requested for OIDO, however, does not give Defendants license to "wind down" its operations.  Congress created OIDO in 2019,[2] and required it to perform specific functions regarding people in immigration detention facilities operated by DHS as well as by states, localities, and private contractors, 6 U.S.C. § 205.  Without actually using the term, Defendants seem to suggest that the absence of new funding to OIDO for FY 2026 constitutes an implied repeal of the statute creating OIDO and establishing its functions.  But implied repeals are a "rarity," *J.E.M. Ag Supply, Inc. v. Pioneer HI-Bred Int'l, Inc.*, 534 U.S. 124, 142 (2001) (internal quotation marks omitted), and the doctrine disfavoring implied repeal "applies with even greater force when the claimed repeal rests solely on an appropriations act," *TVA*, 437 U.S. at 190; *see also* GAO, Principles of Federal Appropriations Law at 2-63 (4th ed. 2016) (stating that "[t]he mere failure to appropriate sufficient funds is not enough" to repeal an earlier statutory enactment).

The D.C. Circuit rejected a similar argument for implied repeal in *In re Aiken County*, 725 F.3d 255 (D.C. Cir. 2013).  There, states where nuclear waste was being stored sought a writ of mandamus against the Nuclear Regulatory Commission (NRC), which was not complying with its obligations under the Nuclear Waste Policy Act to make a final decision within a set period of time on whether to approve the Department of Energy's application to store nuclear waste at Yucca

---

[2] Consolidated Appropriations Act, 2020, Pub. L. No. 116-93, § 106(a), 133 Stat. 2317, 2504 (Dec. 20, 2019).

Mountain. *Id.* at 257–58.  The NRC argued that because Congress's recent appropriations for the Yucca Mountain project had been "relatively low or zero," the lack of appropriations indicated that Congress did not want the project to continue. *Id.* at 260.  In an opinion written by then-Judge Kavanaugh, the D.C. Circuit rejected this argument, holding that "Congress speaks through the laws it enacts," and that nothing in the appropriations acts subsequent to the Nuclear Waste Policy Act removed the NRC's obligations under that statute or provided a basis for the court to "excuse the agency" from those obligations. *Id.*  Similarly here, nothing in the FY 2026 appropriations act for DHS provides a basis for this Court to excuse Defendants from complying with their obligations under 6 U.S.C. § 205, especially where that appropriations act offers significant flexibility for DHS to transfer and reprogram funds.[3]

The court in *In re Aiken County* also noted that "the record suggests that the [NRC], as a policy matter, simply may not want to pursue Yucca Mountain as a possible site for storage of nuclear waste."  725 F.3d at 260.  Here too, Defendants have made their antipathy to OIDO's continued existence clear, describing it and the other Oversight Offices as "internal adversaries" that "obstructed immigration enforcement" and "undermin[ed] DHS's mission."[4]  But "the President and federal agencies may not ignore statutory mandates … merely because of policy disagreement with Congress." *In re Aiken Cnty.*, 725 F.3d at 260 (citing *Lincoln v. Vigil*, 508 U.S. 182, 193 (1993) ("Of course, an agency is not free simply to disregard statutory responsibilities[.]")).

Defendants here tried to bring the activities of the three Oversight Offices to a halt with their actions of March 21, 2025, despite statutory requirements that all three offices exist and

---

[3] Pub. L. No. 119-86, § 503, 140 Stat. 773, 796–97 (Apr. 30, 2026).

[4] Ellen M. Gilmer, *Trump Aides Shutter Homeland Security Civil Rights Office*, Bloomberg Gov't (Mar. 21, 2025), https://perma.cc/P88P-SEZP.

perform specified functions.  With their latest notice to this Court, Defendants dispense with even the pretense of compliance with regard to OIDO and baldly announce that they plan to "wind [it] down," using as an excuse the fact that they received the very appropriation amount they requested from Congress last year.  Defendants' persistent efforts to shut down the Oversight Offices—first by ordering a work stoppage, then by removing all of the offices' employees through a reduction in force, and then by seeking to starve the offices of resources through requesting little or no funding for them from Congress—demonstrate why injunctive relief is necessary to ensure that Defendants continue performing the statutory functions of the offices.

Dated: May 18, 2026

Respectfully submitted,

/s/ Adina H. Rosenbaum

Christine L. Coogle (DC Bar No. 1738913)
Brian D. Netter (DC Bar No. 979362)
Skye L. Perryman (DC Bar No. 984573)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090

Karla Gilbride (DC Bar No. 1005586)
Adina H. Rosenbaum (DC Bar No. 490928)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
arosenbaum@citizen.org

*Counsel for All Plaintiffs*

Anthony Enriquez (DDC Bar No. NY0626)
Sarah T. Gillman (DDC Bar No. NY0316)
Robert & Ethel Kennedy Human Rights
Center
88 Pine Street, Suite 801
New York, NY 10005
(917) 284- 6355

Sarah E. Decker (DDC Bar No. NY0566)
Robert & Ethel Kennedy Human Rights
Center
1300 19th Street NW, Suite 750
Washington, DC 20036
(202) 559-4432

*Counsel for Plaintiff KHRC*